UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NORMA D. THIEL,**<br><br>                    **Plaintiff,**<br><br>**v.**<br><br>**RIDDELL, INC. ALL AMERICAN SPORTS CORPORATION d/b/a RIDDELL/ALL AMERICAN; RIDDELL SPORTS GROUP;  EASTON-BELL SPORTS, INC.; EASTON-BELL SPORTS, LLC; EB SPORTS CORPORATION; and RBG HOLDINGS CORPORATION,**<br><br>                    **Defendants.** | **CASE NO.: _____**<br><br><br><br>**CLASS ACTION COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, Norma D. Thiel ("Plaintiff"), on behalf of herself and all others similarly situated, by and through the undersigned counsel, and hereby files this Class Action Complaint against Defendants RIDDELL, INC., ALL AMERICAN SPORTS CORPORATION d/b/a Riddell/All American, RIDDELL SPORTS GROUP, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORPORATION, and RBG HOLDINGS CORPORATION (collectively "the Defendants"), and alleges as follows:

### JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000 exclusive of interest and costs, there are more than one hundred Class members, and minimal diversity exists because Plaintiff and numerous members of the Class are citizens of different states than Defendants.  This Court also

has subject matter jurisdiction pursuant to 28 USC 1332(a) because the amount in controversy exceeds $75,000 and the lawsuit is between citizens of different states.

2.      This Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts with New Jersey, and/or Defendants have otherwise purposely availed themselves of the markets in New Jersey through the promotion, marketing, and sale of their products and services in New Jersey to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

3.      Venue is proper under 28 U.S.C. § 1391(a) because (1) Defendants are subject to personal jurisdiction in this District, and (2) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.   Defendants engaged in the extensive promotion, marketing, distribution, and sales of the products at issue in this District, and Plaintiff is a resident of this District and purchased the product at issue in this District.

## NATURE OF THE ACTION

4.      This is a class action brought on behalf of New Jersey consumers who purchased Riddell Revolution brand football helmets ("Revolution helmet" or "the helmet") based on Defendants' false promise that the helmet would prevent or substantially reduce the incidence of concussion compared to traditional and lower-cost football helmets.

5.      Each Defendant engaged in a scheme to mislead New Jersey consumers about the benefits of their premium-priced helmet by falsely advertising to New Jersey consumers that the Revolution helmet is manufactured with "concussion reduction technology" which reduces the incidence of concussion, and does so by up to 31%.   Defendants' marketing of the Revolution helmet was intended to and did create the perception among football helmet purchasers that the

Revolution helmet reduces the chance of concussion better than a traditional lower-priced football helmet.

6.     Each Defendant was involved in the creation and dissemination of the false marketing regarding the Revolution helmet and/or each Defendant was involved in or profited from the sales of such helmets knowing that their marketing representations regarding concussion reduction were false.  Further, each Defendant concealed material facts concerning the truth about the helmet's alleged ability to reduce the incidence of concussion to any degree. Indeed, scientific studies and other data (of which Defendants are aware) indicate that the Revolution helmet makes no difference in a player's risk for concussion as compared to other traditional football helmets. Thus, all reasonable New Jersey consumers were subjected to and relied on Defendants' marketing scheme and paid a premium price for helmets with no material difference in concussion reduction than traditional lower-priced football helmets.  Plaintiff and the Class she seeks to represent suffered actual damage as a result.   As such, this is an action for injunctive relief, damages, attorney's fees and costs and other statutory relief brought pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.* ("N.J.S.A.").

## <u>PARTIES</u>

7.     Plaintiff is a citizen of New Jersey and resides in Camden County, New Jersey. Plaintiff purchased a Riddell Revolution football helmet in New Jersey during the below defined Class Period.

8.     Defendant Riddell, Inc. is a corporation organized and existing under the laws of the State of Illinois and whose principal place of business is in the State of Illinois.  Riddell, Inc. is engaged in the business of designing, manufacturing, selling and distributing football equipment, including Revolution brand helmets.  Upon information and belief, this Defendant

ships its products, including Revolution helmets, to direct purchasers and distributors in New Jersey, sells its products in retail stores in New Jersey, and advertises its products in New Jersey. Riddell, Inc. operates as a subsidiary of Riddell Sports Group, Inc.

9.      Defendant All American Sports Corporation, doing business as Riddell/All American, is a corporation organized and existing under the laws of the State of Delaware and is engaged in the business of designing, manufacturing, selling and distributing football equipment, including Revolution brand helmets.  Upon information and belief, this Defendant ships its products, including revolution helmets, to direct purchasers and distributors in New Jersey, maintains a direct sales force in New Jersey, sells its products in retail stores in New Jersey, and advertises its products in New Jersey.

10.     Defendant Riddell Sports Group, Inc. is a Delaware corporation with its principal place of business at 6255 N. State Highway, Suite 300, Irving, Texas 76038.  Upon information and belief, this Defendant ships its products, including Revolution helmets, to direct purchasers and distributors in New Jersey, maintains a direct sales force in New Jersey, sells its products in retail stores in New Jersey, and advertises its products in New Jersey.

11.     Defendant Easton-Bell Sports, Inc. is a Delaware Corporation with a principal place of business at 7855 Haskell Avenue, Suite 200, Van Nuys, California 91406 and is a parent corporation of Riddell Sports Group Inc. Easton-Bell Sports, Inc. designs, develops, and markets branded athletic equipment and accessories, including marketing and licensing products under the Riddell brand.  Upon information and belief, this Defendant ships its products, including Revolution helmets to direct purchasers and distributors in New Jersey, maintains a direct sales force in New Jersey, sells its products in retail stores in New Jersey, and advertises its products in New Jersey.

4

12.     Defendant Easton-Bell Sports, LLC is the parent corporation of Easton-Bell Sports, Inc. and is incorporated in Delaware, with a principal place of business at 152 West 57th Street, New York, New York 10019.  Upon information and belief, this Defendant ships its products, including Revolution helmets, to direct purchasers and distributors in New Jersey, maintains a direct sales force in New Jersey, sells its products in retail stores in New Jersey, and advertises its products in New Jersey.

13.     Defendant EB Sports Corporation is a Delaware corporation with its principal place of business at 7855 Haskell Avenue, Van Nuys, California 91406.  Upon information and belief, this Defendant ships its products, including Revolution helmets, to direct purchasers and distributors in New Jersey, maintains a direct sales force in New Jersey, sells its products in retail stores in New Jersey, and advertises its products in New Jersey.

14.     Defendant RBG Holdings Corporation is a Delaware corporation with its principal place of business at 7855 Haskell Avenue, Suite 350, Van Nuys, California 91406.  It operates as a holding company, which through its subsidiaries designs, develops and markets sports equipment, including the Revolution brand helmets.  Upon information and belief, this Defendant, through its subsidiaries, ships its products, including Revolution helmets, to direct purchasers and distributors in New Jersey, maintains a direct sales force in New Jersey, sells its products in retail stores in New Jersey, and advertises its products in New Jersey.  RGB Holdings Corporation is a subsidiary of Easton-Bell Sports, LLC.

## FACTS

15.     Defendants have operated as a business through designing, developing, manufacturing, selling, and distributing football equipment, including helmets, in one form or another, since 1922.

16.     In or about 2000, while Defendants were designing and developing the Revolution helmet, Biokenetics, a biomechanics firm hired by the NFL and later retained by Defendants, sent Defendants a report showing that no football helmet, no matter how revolutionary, could prevent concussions.

17.     In 2002, the Defendants released for sale, manufactured, sold, and/or distributed the Riddell Revolution helmet which they claimed was designed with the intent of reducing the risk of concussion.

18.     In 2006, the Defendants provided a research grant to the University of Pittsburgh Medical Center (hereinafter "UPMC") for head injury research.  The study compared rates of concussions among high school athletes who wore the Revolution helmet with those who wore traditional helmets.

19.     The Defendants used this study to claim that the Revolution helmet reduced concussions by 31%, despite UPMC's suggestion that Defendants not make such claims, as well as peer reviewed comments stating concerns that the study suffers "serious, if not fatal, methodological flaws."  Furthermore, as published in the *Journal of Neurosurgery*, leaders in the concussion field revealed the study by UPMC was flawed in that it discounted low impact hits and in turn proved that the Revolution did not reduce the risk of concussions.  Moreover, Defendants subsequently failed to disclose to the public, and eventually Congress, that there were serious conflict of interest concerns in the development of the original study: namely, that Defendants funded the study and that Riddell's vice president of research and development, was one the authors of the study.

20.     Despite the evidence showing that The Revolution helmet could not reduce the overall risk of concussion any better than traditional helmets, and despite the continuing and

mounting criticism by industry leaders, as well as Congress, relating to Defendants' promises of concussion reduction, the Defendants continued the sale, marketing, and distribution of the Revolution helmets to youth football players, high school players, college players, and to schools, with the promise of "concussion reduction."

21.     Particularly troubling is the fact that the Defendants tout the Revolution helmet as markedly safer for youth players, when, in fact, they never tested the helmet on youth players.

22.     Throughout the Class Period, Defendants have marketed, advertised, sold, and disseminated the Revolution helmet as a helmet that significantly reduces concussions.  More specifically, Defendants directly, through their direct sales force, and through their retailers utilize the following representations, inter alia, to market the Revolution helmet:

a.  "Shown to reduce incidence of concussion by 31% compared to traditional helmets, the [helmet] utilizes an exclusive Revolution Concussion Reduction Technology that provides superior protection for players on the field."

b.  "Riddell's exclusive Concussion Reduction Technology protects young athletes against concussions and impact."

c.  "The most advanced piece of modern concussion prevention in the game today!"

d.  "Safer, more protective, and advanced frontal helmet protection designed to reduce concussions."

e.  "All Riddell Concussion Reduction technologies specifically designed to cushion to head, absorb impact, and reduce the risk of concussions by 31%, when compared to a traditional helmet."

f.  "Riddell Revolution CRT (Concussion Reduction Technology): Research shows a 31% reduction in concussions when used versus a traditionally designed helmet."

g.   "Riddell CRT (Concussion Reduction Technology) to keep young players safe on the field."

h.   "Riddell's Concussion Reduction Technology provides increased protection against concussions and impact."

23.     Despite Defendants' representations to the contrary, there is no material difference in the Revolution and other football helmets in regard to concussion prevention, and certainly not a 31% reduction as claimed.  In fact, scientific studies show that the brand of football helmet makes no difference in a player's risk of concussion and that high tech helmets like the Revolution do not reduce concussion risk for players any more effectively than low-cost helmets.  In sum, scientists have concluded (and Defendants are aware of) the realities of both physics and human anatomy which make it unlikely that any football helmet can better reduce the chances of concussion than another helmet.

24.     Defendants conspicuously failed to disclose that the Revolution helmets provide no material difference in concussion reduction, despite evidence to the contrary.  Coupled with their affirmative statements to the contrary, Defendants' glaring omission that there is no material difference in concussion reduction would, and did, mislead reasonable consumers.

25.     Because Defendants' claims were included in advertisements, marketing, and sales presentations, a reasonable consumer would likely be misled into believing that the Revolution helmet will reduce concussions, and may do so by 31%.

26.     As a result of the Defendants' deceptive marketing scheme, the consumer Class members were exposed to Defendants' misleading representations and purchased Revolution helmets based on the false belief that the helmet would reduce concussions.  These consumer

8

Class members paid significantly higher prices for the helmet but received no meaningful benefits for the higher price.

27.     Upon information and belief, the Revolution Helmets sell at a premium of at least an additional $50.00 per comparable helmet.   Therefore, all consumers who purchased a Revolution helmet have been injured by Defendants' wrongful conduct and are owed restitution and damages.

28.     Plaintiff, and each Class member, has been injured and suffered actual damages by paying more for the Revolution helmet than he would have absent Defendants' deceptive, unfair and misleading practices.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this class action on behalf of herself and all others similarly situated in New Jersey as members of a proposed Class defined as follows:

> All persons residing in New Jersey who purchased a Riddell Revolution football helmet at retail in the State of New Jersey from the beginning of the applicable statute of limitations through the present (the "Class Period").

> Excluded from the Class are the following:

a. All judicial officers in the United States and their families through the third degree of relationship;

b. Defendants and any of their officers, directors, and employees, and any person or entities who has already settled or otherwise compromised similar claims against the defendant;

c. Plaintiff's counsel, anyone working at the direction of Plaintiff's counsel, and/or any of their immediate family members; and

d.  Anyone who has pending against a named defendant on the date of the Court's final certification order any individual action wherein the recovery sought is based in whole or in part on the type of claims asserted herein.

30.  This action is brought and may properly be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these rules.

31.  The Class is so numerous that the individual joinder of all members is impracticable. While the exact number of Class members is currently unknown and can only be ascertained through appropriate discovery, Plaintiff alleges that the Class includes at least thousands of individuals.

32.  Common legal and factual questions exist and predominate over any questions affecting only individual Class members. These common questions, which do not vary among Class members and which may be determined without reference to any Class member's individual circumstances, include, but are not limited to:

a.  Whether Defendants' representations regarding the helmet were false and misleading or reasonably likely to deceive;

b.  Whether Defendants had adequate substantiation for their claims prior to making them;

c.  Whether Defendants' failure to disclose that the helmet did not reduce the risk of concussion compared to other helmets would mislead a reasonable consumer;

d.  Whether Defendants' helmet reduces the risk of concussion by 31%, a material amount, or at all;

e.  Whether Defendants charged a price premium for the helmet;

f.   Whether Defendants engaged in unfair, unlawful, and/or deceptive business practices regarding their helmet in violation of the N.J.S.A.;

g.   Whether Defendants conduct alleged herein constitutes false advertising in violation the N.J.S.A.;

h.   Whether Defendants represented, through their words or conduct, that the helmet had characteristics, uses, or benefits that it did not actually have in violation of the N.J.S.A.;

i.   Whether Defendants' conduct alleged herein violates public policy;

j.   Whether Defendants advertised helmets with the intent not to sell them as advertised in violation of the N.J.S.A.; and

k.   Whether Plaintiff and the Class have been damaged by the wrongs complained of herein, and if so, whether Plaintiff and the Class are entitled to injunctive and/ or other equitable relief, including restitution or disgorgement, and if so, the nature and amount of such relief.

33.   Plaintiff's claims are typical of the Class members' claims.  Defendants' common course of conduct caused Plaintiff and all Class members the same harm. In particular, Defendants' conduct caused each Class member's economic losses. Likewise, Plaintiff and other Class members must prove the same facts in order to establish the same claims.

34.   Plaintiff is an adequate Class representative because she is a member of the Class she seeks to represent and her interests do not conflict with other Class members' interests. Plaintiff retained counsel competent and experienced in consumer protection class actions, and Plaintiff and her counsel intend to prosecute this action vigorously for the Class's benefit. Plaintiff and her counsel will fairly and adequately protect Class interests.

35.     The Class may be properly maintained under Rule 23(b)(2).  Defendants have acted or refused to act, with respect to some or all issues presented in this Complaint, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

36.     The Class can be properly maintained under Rule 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this litigation because individual litigation of each Class member's claim is impracticable. Even if each Class member could afford to bring individual actions, the court system could not.  It would be unduly burdensome for thousands of individual cases to proceed.  Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the courts because it requires individual resolution of common legal and factual questions. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

<u>**COUNT I**</u>
**(Violations of New Jersey Consumer Fraud Act, N.J.S.A § 56:8-1, *et seq.*)**

37.     Plaintiff incorporates by reference the above paragraphs as though fully set forth herein.

38.     The New Jersey Consumer Fraud Act provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as

aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby is declared to be an unlawful practice…

39.    Plaintiff and Class members are "persons" as defined in N.J.S.A. § 56:8-1(d).

40.    Defendants' revolution helmet is "merchandise" as defined in N.S.J.A. § 56:8-1(c).

41.    Defendants affirmatively advertised, marketed, and promoted the Revolution helmet in a misleading, inaccurate, and deceptive manner as set forth above.

42.    Defendants' promotion of the Revolution helmet's effectiveness in reducing concussions and appropriateness for players over other comparable helmets created and/or reinforced a false impression as to the quality and effectiveness of the Revolution helmet.

43.    Defendants profited from consumers purchasing and paying a premium price for the Revolution helmet under the false pretense that, among other features, the helmet was 31% or substantially better at preventing concussions.

44.    Defendants' actions described above amount to unconscionable commercial practices, false promises, false pretenses and misrepresentations that constitute multiple violations of the Consumer Fraud Act, N.J.S.A. § 56:8-2.

45.    Defendants' misrepresentations are material because a reasonable person, as well as Plaintiff and Class members would deem such information about concussion prevention important to their purchasing decisions or conduct regarding the purchase and use of a football helmet.

46.    As a result of Defendants' conduct, Plaintiff and members of the Class suffered an ascertainable loss of money or property by purchasing and paying a premium price for the Revolution helmet.

WHEREFORE, Plaintiff requests this Court enter judgment in favor of Plaintiff and members of the Class and award the treble damages, attorneys fees, fees, and costs of suit under N.J.S.A. § 56:8-19.

## COUNT II
### (Unjust Enrichment)

47.     Plaintiff incorporates by reference the above paragraphs as though fully set forth herein.

48.     As a result of Defendants' false and deceptive advertisements, promises and representations concerning the Revolution helmets, and as a consequence of Defendants' unconscionable trade practices, their sharp and deceitful marketplace practices, and their false promises, all aforesaid, Plaintiff and the class members paid money to and conferred a benefit upon Defendants in connection with the sale of Revolution helmets to Plaintiff and Class members, which benefit was received and continues to be retained by Defendants.

49.     Retention of that benefit at the expense of all Class members and without reimbursement by Defendants to Plaintiff and all Class members would be unjust and inequitable.

50.     Defendants, as a result of their false and deceptive conduct as aforesaid, became indebted to Plaintiff and the Class for the sums paid to Defendants for purchase of the misrepresented helmets.  Retention of said sums, without reimbursement, would result in the unlawful, unjust and inequitable enrichment of Defendants beyond their lawful rights in connection with the sale of the Revolution helmets to Plaintiff and the Class.

51.     All monies paid by Plaintiff and the Class to Defendants for purchase of the Revolution helmets, including all interest earned by Defendants on such monies while in the

wrongful possession thereof, should be disgorged by Defendants and reimbursed to Plaintiff and the Class under principles of unjust enrichment.

52.    As a proximate result of Defendants' conduct, Plaintiff and the Class were damaged.

## PRAYER FOR RELIEF

Plaintiff, on behalf of himself and the Class, requests that the Court order the following relief and enter judgment against Defendants as follows:

a.  An Order certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class;

b.  A declaration that Defendants have engaged in the illegal conduct described herein;

c.  An Order awarding declaratory and injunctive relief as permitted by law or equity, including permanently enjoining Defendants from continuing their unlawful practices as set forth herein;

d.  A judgment awarding Plaintiff and the Class actual damages, punitive damages, disgorgement and restitution in an amount according to proof and all other entitled awards under N.J.S.A.;

e.  Ordering Defendants to engage in a corrective advertising campaign;

f.  Awarding attorney fees and costs incurred in prosecuting this action;

g.  Pre-judgment and post-judgment interest; and

h.  All other relief that the Court deems necessary, just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury as to all issues.

Respectfully Submitted,


/s_____ *Stephen A. Corr*_____
Stephen A. Corr, Esquire
NJ Bar #:  043671992
Stark & Stark, P.C.
777 Township Line Road, Suite 120
Yardley, PA  19067
Tel:    (267) 907-9600
Fax:    (267) 907-9659
scorr@stark-stark.com
*Attorneys for Plaintiff*

**Of Counsel:**

Dennis G. Pantazis, Esquire
Dennis G. Pantazis, Jr., Esquire
Wiggins Childs Quinn & Pantazis
The Kress Building
301 19th Street North
Birmingham, AL  35203
Tel:    (205) 314-0500
Fax:    (205) 254-1500
dpantazis@wcqp.com
dpantazisjr@wcqp.com