James E. Cecchi
Caroline F. Bartlett
Zachary S. Bower
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

*Interim Class Counsel*

Dennis G. Pantazis
Craig L. Lowell
Dennis G. Pantazis, Jr.
WIGGINS CHILDS
PANTAZIS FISHER GOLDFARB LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
 (205) 314-0500

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE RIDDELL CONCUSSION REDUCTION LITIGATION | Civil Action No.  13-7585(JBS-JS) <br><br> **CONSOLIDATED CLASS ACTION <br> <u>COMPLAINT AND JURY DEMAND</u>** |

Plaintiffs Douglas Aronson, Denise Aronson, Norma D. Thiel, Nicholas W. Farrell, Gustavo Galvan, Cahokia School District, and Kenny King (collectively referred to as "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their undersigned counsel, by way of First Amended Consolidated Class Action Complaint against Defendants Riddell, Inc., All American Sports Corporation d/b/a Riddell/All American, Riddell Sports Group, Easton-Bell Sports, Inc., Easton-Bell Sports, LLC, EB Sports Corporation, and RBG Holdings Corporation (collectively "Defendants"), and allege as follows, all on information and belief, except where specifically so identified as being on personal knowledge, which allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery:

## INTRODUCTION

1.      Defendants are in the business of designing, manufacturing and marketing a line of football helmets they claim reduce concussions based on concussion reduction technology. Riddell has released three football helmet designs in the past 11 years, starting with its Revolution model, its first helmet designed to "reduce the incidence of concussions."  The next-generation helmet, the Revolution Speed, was released in 2008 with purportedly improved face-guard protection. The Riddell 360 model made its debut in 2012 and claims to be a better fit and to redirect energy from frontal impacts away from the head.[1]

2.      Defendants market these Riddell Football Helmets as having "concussion reduction technology" and make other similar marketing and advertising claims regarding the ability of the Football Helmets to provide an increased level of safety through reduced concussions.

3.      In reality, Defendants' promises are illusory and their Football Helmets do not provide the promised concussion reduction results.  In fact, recent research has shown that claims of concussion reduction related to football helmets are not valid and are instead utilized by Defendants as a marketing tool.

4.      This research shows, for example, that concussion rates remained the same regardless of the type of football helmet used, and that today's football helmets, including some of the Football Helmets manufactured and sold by Riddell, are no better at preventing concussions than the leather football helmets of the past.

---

[1]      The Revolution model, Revolution Speed, and Riddell 360 are referred to in this Complaint as "Football Helmets."

5.      In the face of this reality, Defendants nevertheless continue to charge a price premium for their Football Helmets in an effort to profit from the increased awareness and concern among consumers over the frequency and effects of concussions.

6.      Plaintiffs bring this lawsuit as a result of these false and deceptive claims of concussion reduction because the Football Helmets they purchased were not worth what they paid for them.  Indeed, despite Defendants' promises of concussion reductions, the Football Helmets are not safer than other less expensive football helmets on the market and are unable to actually reduce concussions.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000 exclusive of interest and costs, there are more than one hundred Class members, and minimal diversity exists because at least one of the Plaintiffs and numerous members of the Class are citizens of different states than Defendants.

8.      This Court has personal jurisdiction over the action because Defendants each conduct substantial business activities in New Jersey through the promotion, distribution and sale of the Football Helmets at issue, and have had substantial and continuous contacts with New Jersey.

9.      Similarly, venue is proper in this District under 28 U.S.C. §1391(a)(2) because a significant part of the events that gave rise to the claim occurred in this District. Some of the Plaintiffs purchased the Football Helmets in this District and therefore sustained their injuries in this District and Defendants routinely advertise and sell their Football Helmets in this District. This Court accordingly has jurisdiction over this action and venue is proper in this District.

## THE PARTIES

10.     Plaintiffs Douglas and Denise Aronson reside in Wayne, New Jersey.  They purchased a Riddell Football Helmet, manufactured, marketed and sold by Defendants.  As a result of the unlawful conduct alleged herein, Plaintiffs Douglas and Denise Aronson have suffered financial harm or otherwise been injured.

11.     Plaintiff Norma D. Thiel is a citizen of New Jersey and resides in Camden County, New Jersey.  Plaintiff Thiel purchased a Riddell 360 Football Helmet on or about April 24, 2013, in New Jersey during the below defined Class Period. As a result of the unlawful conduct alleged herein, Plaintiff Thiel has suffered financial harm or otherwise been injured.

12.     Plaintiff Nicholas W. Farrell is a citizen of Florida and resides in Marion County, Florida.  Plaintiff Farrell purchased a Riddell Revolution Speed Football Helmet in Florida, in September of 2010, during the below defined Class Period.  As a result of the unlawful conduct alleged herein, Plaintiff Farrell has suffered financial harm or otherwise been injured.

13.     Plaintiff Gustavo Galvan is a citizen of California and resides in Los Angeles County, California.  Plaintiff Galvan purchased multiple Riddell Revolution Football Helmets since June of 2011, in California, during the below defined Class Period.  As a result of the unlawful conduct alleged herein, Plaintiff Galvin has suffered financial harm or otherwise been injured.

14.     Plaintiff Kenny King is a citizen of Arizona residing in Maricopa County, Arizona.  Kenny King purchased multiple Riddell Revolution and Speed Youth Football Helmets since 2010, in Arizona during the below defined Class period.  As a result of the unlawful conduct alleged herein, Plaintiff King has suffered financial harm or otherwise been injured.

15.     Plaintiff Cahokia School District is a citizen of St. Clair County, Illinois and purchased Riddell Football Helmets, manufactured, marketed and sold by Defendants.  As a

result of the unlawful conduct alleged herein, Plaintiff Cahokia School District has suffered financial harm or otherwise been injured.

16.     Defendant Riddell, Inc. is an Illinois corporation whose principal place of business is in Illinois.  Riddell, Inc. is engaged in the business of designing, manufacturing, selling, and/or distributing football equipment, including Revolution brand helmets.  This Defendant ships its products, including Revolution brand helmets, to direct purchasers and distributors in New Jersey and throughout the United States, sells its products in retail stores in New Jersey and throughout the United States, and/or advertises its products in New Jersey and throughout the United States.  Riddell, Inc. operates as a subsidiary of Riddell Sports Group, Inc.

17.     Defendant All American Sports Corporation, doing business as Riddell/All American, is a corporation organized and existing under the laws of the State of Delaware and is engaged in the business of designing, manufacturing, selling, and/or distributing football equipment, including Revolution brand helmets.  This Defendant ships its products, including Revolution brand helmets, to direct purchasers and distributors in New Jersey and throughout the United States, sells its products in retail stores in New Jersey and throughout the United States, and/or advertises its products in New Jersey and throughout the United States.

18.     Defendant Riddell Sports Group, Inc. is a Delaware Corporation with its principal place of business in Irving, Texas.  This Defendant ships its products, including Revolution brand helmets, to direct purchasers and distributors in New Jersey and throughout the United States, sells its products in retail stores in New Jersey and nationwide, and/or advertises its products in New Jersey and throughout the United States.

19.     Defendant Easton Bell Sports, Inc. through its subsidiary Riddell Sports Group, Inc., manufactures, markets, advertises, and/or sells their Riddell Football Helmets throughout the United States.

20.     Defendant Easton-Bell Sports LLC is the parent corporation of Easton-Bell Sports, Inc., and is a Delaware corporation with its principal place of business in New York, New York.

21.     Defendant EB Sports Corporation is a Delaware corporation with its principal place of business in Van Nuys, California.

22.     Defendant RBG Holdings Corporation is a Delaware corporation with its principal place of business in Van Nuys, California.  It operates as a holding company, which through its subsidiaries designs, develops and markets sports equipment, including the Revolution brand helmets.

23.     Defendants are owned by the private equity firm Fenway Partners, Inc.

24.     Each Defendant was involved in some manner in the creation and dissemination of the misleading marketing campaign regarding the Football Helmets and/or was involved in or profited from the sales of such helmets.  Further, a duty to disclose arises in four relevant circumstances: (1) when the facts at issue involve an issue of safety; (2) when the Defendant has superior or exclusive knowledge of material facts not known to the Plaintiffs; (3) when the Defendants actively conceals a material fact from the Plaintiffs; and (4) when the Defendants make partial representations but also suppresses other material facts.  Each Defendant either alone or in combination made partial representations or concealed material facts within their possession concerning the actual safety of the Football Helmets and their alleged ability to reduce the incidence of concussion to any degree as compared to other helmets.

25.     At all times mentioned herein, each and every Defendant was an agent, representative, affiliate, or employee of each and every other Defendant, and in doing the things alleged in the Causes of Action stated herein, each and every Defendant was acting within the course and scope of such agency, representation, affiliation, or employment and was acting with

6

the consent, permission and authorization of the other Defendants.  During the relevant time period, Defendants misrepresented to the Class the material facts at issue herein, and/or failed to disclose to the Class the scope and nature of the illegal business practices as detailed herein, thus engaging in a conspiracy that resulted in injury in fact to members of the Class, which conspiracy is still on-going.  All actions of each Defendant were ratified and approved by the other Defendants or their respective directors, officers and/or managing agents, as appropriate for the particular time period alleged herein.

## FACTUAL ALLEGATIONS

### 1.   WHAT IS A CONCUSSION?

26.    A concussion is an injury to the brain that results in temporary loss of normal brain function.

27.    The milder indications of a concussion include headache, lack of concentration, problems with memory and judgment, sensitivity to light, lack of coordination and difficulty with balance. The more significant effects can include Chronic Traumatic Encephalopathy ("CTE") and Second Impact Syndrome.

28.    CTE is a progressive neurodegenerative disease caused by repetitive trauma to the brain, which eventually leads to dementia and other neurological disorders. Second Impact Syndrome is a condition in which the brain swells rapidly after the injured person suffers a second concussion before being able to properly heal from the first, causing substantial injury or death.

29.    The brain has three main parts – the cerebrum controls higher mental functions, such as thought, memory and language; the cerebellum controls balance and coordination; and the brainstem controls bodily function such as breathing, heart rate and blood pressure.

30.     A number of structures surround the brain to keep it safe.  It is encased in the skull to protect it from outside sources, it has supporting tissues to help stabilize it, and it is covered on all sides by three membranes and a layer of fluid.  For this reason, it is often said that the brain "floats" inside the skull.

31.     As a result, injuries to the brain occur when the head suddenly stops moving, but the brain, which was traveling at the same speed as the head, continues to move and strikes the inside of the skull, transferring part of the force to the brain.   This occurs most commonly when a blow is given to the head, and can also occur when the head is forced to accelerate or decelerate rapidly.

32.     Because the brain is soft, when the brain strikes the inside of the skull, it briefly deforms, leading to a concussion.

33.     A common analogy of how to visualize a concussion is to consider an eggshell and a yolk.  The brain is the yolk, nestled in its shell and further protected by the egg white.  When the yolk moves quickly and violently, it smashes into the rigid shell – the same as with the brain inside the skull.

34.     Accordingly, while the shell can be protected with a device that might prevent it from cracking, this device cannot prevent the yolk inside the shell from being shaken.

35.     A concussion is not a structural injury to the brain, but is rather a functional injury.  As a result, concussions don't typically show up on MRI or CT scans.

36.     The brain has to be in perfect balance or equilibrium in order to function at its fullest potential.  A concussion results in a disequilibrium, or shift in metabolic need of the brain, which then results in impaired brain function, and causes a variety of immediate symptoms including nausea, blurred vision, amnesia, dizziness and other longer term effects such as permanent brain injury.

8

37.     According to the CDC, up to 3.8 million people suffer concussions each year, the majority of which occur during competitive or recreational sports.

38.     With respect to concussions in youths, the CDC estimates that more than 170,000 emergency visits in children 18 or younger were attributable to traumatic brain injuries.[2]

2.     **INCREASED AWARNESS OF CONCUSSIONS**

39.     Concussions, and their debilitating effects, continue to receive increasing attention.  Indeed, according to The New York Times, emergency room visits by children and adolescents for brain injuries jumped more than 60% from 2001 to 2009.[3]  The CDC attributes this increase in visits to "the growing awareness among parents and coaches, and the public as a whole, about the need for individuals with a suspected T.B.I. to be seen by a health care professional."

40.     One significant reason for this increased awareness of concussions is due to the publicity and media attention on concussions in professional sports, such as the NFL and NHL, and the long-term catastrophic effects of repetitive concussive injuries.

41.     Alongside this increased awareness of concussions, and their long-term effects, has been an increased emphasis on properly recognizing and diagnosing concussions through education and training.   Indeed, the CDC and other health organizations have dedicated websites and other sources of information focused solely on increasing awareness of concussions and their symptoms.  Professional sports leagues and other media and entertainment outlets have followed suit.

---

[2]     Centers for Disease Control. Nonfatal traumatic brain injuries related to sports and recreation activities among persons $\leq$ 19 years - United States, 2001-2009. MMWR 2011;60:1337-1342.

[3]     http://www.nytimes.com/2011/10/07/sports/report-shows-rise-in-er-visits-for-concussions-among-young.html?_r=0

3.      **PROFITING FROM CONCUSSION FEARS**

42.      In order to take advantage of this increased awareness of concussions and their potentially devastating impacts, manufacturers and retailers of sports equipment have sought to profit through the production, marketing and sales of equipment that they claim can reduce the frequency and/or severity of concussions.

43.      As part of this scheme to profit from the fear of concussions, Defendants design, manufacture and market their Riddell Football Helmets, which they claim to include, *inter alia*, new technologies and designs that reduce concussions. Indeed, in 2002 the Defendants released for sale their Riddell Revolution helmet, which they claimed was designed with the intent of increasing safety and reducing the risk of concussion.

44.      The Riddell Football Helmets are marketed, advertised and sold as having "Concussion Reduction Technology."  Riddell has made and/or makes the following claims, among others, in marketing its Riddell Football Helmets and their purported concussion reduction technology:

> **Your young athlete will stay protected against impact and concussions with Riddell's® Concussion Reduction Technology due to inflatable S-pads and High-Impact ABS Shell.**

45.      In 2006, the Defendants provided a research grant to the University of Pittsburgh Medical Center (hereinafter "UPMC") for head injury research.  The study compared rates of concussions among high school athletes who wore the Revolution helmet with those who wore traditional helmets.  The Defendants used this study to uniformly claim that the Revolution helmet reduced concussions by 31%, despite UPMC's suggestion to Defendants that they not make such claims based on this study, as well as peer reviewed comments stating concerns that the study suffers "serious, if not fatal, methodological flaws."  An example of how Defendants used the study in their advertising is the following:

10



46.     But as published in the *Journal of Neurosurgery*, leaders in the concussion field revealed the study by UPMC was flawed in that it discounted low impact hits and in fact proved that the Revolution did not reduce the risk of concussions.  Moreover, Defendants subsequently failed to disclose to the public, and eventually Congress, that there were serious conflicts of interest in the development of the original study.  Defendants funded the UPMC study and Riddell's vice president of research and development at the time, Thad Ide, was one the authors of the UPMC study.

47.     Significantly, it does not appear any other study of the Revolution helmet was able to replicate the 31% result of the UPMC study that Defendants consistently cited to and relied upon to support their claims.

48.     In sum, Defendants knew that this study was flawed, was not scientifically supported, and that the government later concluded that the study "did not prove that Revolution varsity football helmets results concussions or the risk of concussions by 31% . . ." Despite this, and its agreement not to make the specific 31% claim, Riddell nonetheless continues to promote its Football Helmets as having "concussion reduction technology."

49. Similarly, Riddell routinely advertises that its Riddell Football Helmets have superior padding over the "zygoma and mandible region" and thus provide better concussion protection:



50. In Addition, in promotional videos touting the technology and safety of their Riddell Football Helmets, Defendants routinely point to specific designs and technological advances that they claim make their helmets safer.  For example, in a four and a half minute video still available on their websites, Defendants explain in detail the technological and design advances that enable their Riddell Football Helmets to reduce concussions.  Indeed, in this video, Defendants state that "on-file reconstructive studies on concussive events showed that many of the players were being struck to the side of the head and the face so we developed our patented side impact protection . . . to better handle those blows to the side of the head and the face."



51.     Defendants further tout their Riddell Football Helmets and market their purported increased safety at marketing events they label as "Protection Tour[s]… a program that delivers expert-driven health and safety education to youth football players, parents and coaches nationwide."  According to Riddell President Dan Arment, "[o]ur expertise in football headgear and protective equipment positions us well to deliver valuable information to youth football players, their parents and coaches about equipment care and fitting at the Protection Tour,"

52.     Commensurate with these concussion reduction promises are price premiums that Defendants charge for their Riddell Football Helmets.  Indeed, while less expensive products are readily available, the Riddell Football Helmets are sold at a higher price based on promises of increased safety and reduced concussions.  Defendants support this extra cost by pointing to the "technology" of the Riddell Football Helmets and to the results of studies and testing that purportedly demonstrate the effectiveness of the Riddell Football Helmets at reducing concussions.

53.     Defendants target their concussion reduction marketing to youth football leagues and high school teams, often offering their Riddell Football Helmets at a discount to high profile high   school   teams   to   increase   exposure   and   profits.   *See*,   *e.g.*,

13

http://www.northjersey.com/news/Helmets_provide_pricey_peace_of_mind_for_parents_of_you
th_football_players.html ("Bergen Catholic's athletic director, Jack McGovern, said the
manufacturer offered the school 20 of the new models at a steep discount, in part to get more
product exposure.")

54.     Defendants spend a significant portion of their marketing budgets on advertising
specifically aimed at youth football, hoping to alleviate concerns among parents that
participating in football could lead to long-term problems resulting from concussions:



55.     Defendants likewise advertise extensively on social media and elsewhere on the
Internet, routinely making the same concussion reduction claims, such as this advertisement on
their Facebook page:

.



56.     As further evidence of this marketing scheme, Defendants routinely place
advertisements in youth focused media, and advertise at youth focused events such as NFL Play
60 Youth Football Clinics.

57.     In sum, throughout the Class Period, Defendants have marketed, advertised, sold, and disseminated their Football Helmets as significantly reducing concussions.  Defendants, through their direct sales force, product packaging, promotional advertisements and marketing, and retailers using information provided by Defendants, utilize the following representations, *inter alia*, to market their Football Helmets.  The following are a sample of the types of uniform claims made by Defendants made during the Class Period:

    a.    "Shown to reduce incidence of concussion by 31% compared to traditional helmets, the [helmet] utilizes an exclusive Revolution Concussion Reduction Technology that provides superior protection for players on the field."

    b.    "Riddell's exclusive Concussion Reduction Technology protects young athletes against concussions and impact."

    c.    "The most advanced piece of modern concussion prevention in the game today!"

    d.    "Safer, more protective, and advanced frontal helmet protection designed to reduce concussions."

    e.    "All Riddell Concussion Reduction technologies specifically designed to cushion to head, absorb impact, and reduce the risk of concussions by 31%, when compared to a traditional helmet."

    f.    "Riddell Revolution CRT (Concussion Reduction Technology): Research shows a 31% reduction in concussions when used versus a traditionally designed helmet."

    g.    "Riddell CRT (Concussion Reduction Technology) to keep young players safe on the field."

    h.    "Riddell's Concussion Reduction Technology provides increased protection against concussions and impact."

58.     Making such claims has been hugely rewarding to Defendants as their Football Helmets are some of the best-selling football helmets in the United States.  Despite Defendants' representations, there is no material difference in the Riddell Football Helmets and other football helmets in regard to concussion prevention.

4.    **CLAIMS OF CONCUSSION REDUCTIONS**
**ARE FALSE AND DECEPTIVE**

59.    According to recent studies, and apparently the majority of independent experts, Defendants' claims of concussion reduction are both false and misleading, and their marketing and sales practices promote the false belief that their products are superior at preventing or reducing concussion than less expensive products.

60.    For example, the University of Wisconsin recently released the results of its study, which considered whether a particular brand of football helmet or mouth guard was relatively more effective at reducing concussions.  The results of the study, in which the researchers followed 1,332 high school football players during an entire season, demonstrated that there was no statistically significant difference in the rate of concussions, regardless of the type of helmet used.

61.    The researchers noted that "[d]espite what manufacturers might claim, newer and more expensive equipment may not reduce concussion risk . . .  [s]o is it worth the significant extra cost to families and schools?"[4]

62.    Other studies have drawn similar conclusions.  For example, the Cleveland Clinic found that modern football helmets are no better at protecting against concussions than vintage "Leatherhead" football helmets. [5]

63.    The Cleveland Clinic researchers note that:

helmet safety standards – as measured by the Gadd Severity Index – are based solely on the risk of severe skull fracture and catastrophic brain injury, not concussion risk. So, while modern helmets may prevent severe head injuries, this study found that they frequently did not provide superior protection in typical on-

---

[4]    http://www.latimes.com/science/sciencenow/la-sci-sn-concussion-high-school-football-helmet-mouthguards-20131028,0,7936827.story#axzz2jPcjmzQw

[5]    http://my.clevelandclinic.org/media_relations/library/2011/2011-11-04-vintage-leatherhead-football-helmets-often-as-protective-as-modern-helmets-in-common-game-like-hits.aspx

field impacts….The findings suggest that helmet testing should focus on both low- and high-energy impacts, not solely on potentially catastrophic high-energy impacts. This is especially true of youth football helmets, which are currently scaled-down versions of adult helmets. The lack of adequate knowledge surrounding adult helmet protectivity at low-energy impacts, as well as the current absence of any youth-specific helmet testing standards, may have serious brain health implications for the 3 million youths participating in tackle football in the United States each year.

64.     Defendants are aware that their Riddell Football Helmets cannot actually reduce the frequency of concussions.  For example, court documents made public during a Colorado lawsuit revealed that Biokinetics, a Canadian-based biomechanics firm hired by the NFL, sent Riddell a report in 2000 showing that no football helmet, no matter how revolutionary, could prevent concussions.

65.     This issue has been the subject of repeated investigations by the U.S. Senate and Federal Trade Commission.

66.     Plaintiffs and the members of the Class paid price premiums for the Riddell Football Helmets, which as stated above promised to reduce concussions.  In fact, these Riddell Football Helmets do not and cannot actually reduce concussions.  Therefore, Plaintiffs and the members of the Class were harmed by virtue of their payments of a price premium for these purportedly concussion reduction Football Helmets.

67.     Further, despite having made specific representations on an issue relating to user and child safety, and thus having a duty to disclose at the same time they made such statements the material limitations in such claims, Defendants failed to disclose that significant evidence establishes that their Football Helmets provide no material difference in concussion reduction. Coupled with their affirmative statements to the contrary, Defendants' failed to disclose that there is no material difference in concussion reduction would, and did, mislead reasonable purchasers of such helmets into paying a premium price for such helmets.

68.     Because Defendants' uniform claims were widely included and disseminated in advertisements, marketing, and sales presentations, and went to a material characteristic, benefit and use of their Football Helmets – that of user safety – a reasonable consumer would likely be misled into believing that the Revolution helmet will reduce concussions.

69.     Accordingly, Plaintiffs assert their class allegations pursuant to Fed. R. Civ. P. 23 against Defendants, and seek claims for violations of the consumer protection laws, unjust enrichment, and declaratory relief, and seek monetary, declaratory and injunctive relief for similarly situated purchasers of Defendants' Riddell Football Helmets.

## PLAINTIFFS' SPECIFIC FACTUAL ALLEGATIONS

70.     Plaintiffs Douglas and Denise Aronson purchased a Revolution Football Helmet for use by their son in or around August of 2009, after being exposed to Defendants' representations that the Riddell Revolution helmet was superior to other helmets and provided more protection against concussions.  Plaintiffs Douglas and Denise Aronson purchased the Revolution Football Helmet online and paid a price premium for the Riddell Revolution helmet. Because the Football Helmet they purchased does not provide greater protection against concussions, Plaintiffs Douglas and Denise Aronson have suffered economic harm.

71.     Plaintiff Norma D. Thiel purchased a Riddell 360 Helmet on April 24, 2013. Plaintiff Thiel was exposed to the false and deceptive claims regarding the ability of the Football Helmets to reduce concussions as detailed herein, and paid a price premium for the Riddell 360 Helmet.   Because the Riddell 360 Helmet does not provide greater protection against concussions, Plaintiff Thiel has suffered economic harm.

72.     Plaintiff Nicholas W. Farrell purchased a Riddell Revolution Speed Helmet in September of 2010.  Plaintiff Farrell was exposed to the false and deceptive claims regarding the ability of the Football Helmets to reduce concussions as detailed herein, and paid a price

premium for the helmet.  Because the Riddell Revolution Speed Helmet does not provide greater protection against concussions, Plaintiff Farrell has suffered economic harm.

73.     Plaintiff Gustavo Galvan purchased a Riddell Revolution Football Helmet in June of 2011.  Plaintiff Galvan was exposed to the false and deceptive claims regarding the ability of the Football Helmets to reduce concussions as detailed herein, and paid a price premium for the helmet.  Because the Riddell Revolution Football Helmet does not provide greater protection against concussions, Plaintiff Galvan has suffered economic harm.

74.     Plaintiff Cahokia School District purchased multiple Riddell Football Helmets since 2011.  Plaintiff Cahokia School District was exposed to the false and deceptive claims regarding the ability of the Football Helmets to reduce concussions as detailed herein as detailed herein, paid a price premium for these Riddell Football Helmets and suffered economic harm because the Football Helmets it purchased do not provide greater protection against concussions.

75.     Plaintiff Kenny King purchased multiple Riddell Revolution and Speed Youth Football Helmets since 2010.  Plaintiff King was exposed to the false and deceptive claims regarding the ability of the Football Helmets to reduce concussions as detailed herein, and paid a price premium for the helmet.  Because the Riddell Revolution and Speed Youth Football Helmets do not provide greater protection against concussions, Plaintiff King has suffered economic harm.

## CLASS ACTION ALLEGATIONS

76.     Plaintiffs bring this action on behalf of themselves and as a class action under the provisions of Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Class is defined as follows: All purchasers of Riddell Football Helmets promoted as containing concussion reduction technology within the United States from the beginning of the applicable statutes of limitation period through the present.

77.     Excluded from the Class are Defendants, their parent, subsidiaries and affiliates, their directors and officers and members of their immediate families.  Also excluded are any federal, state or local governmental entities, any judicial officers presiding over this action and the members of their immediate family and judicial staff, and any juror assigned to this action.

78.     This action is maintainable as a class action. The Class is so numerous and geographically dispersed that joinder of all Class members is impracticable, and the resolution of their claims as a Class will provide substantial benefits to both the parties and the Court.

79.     A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted, and no unusual difficulties are likely to be encountered in the management of this class action. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it unfeasible or impossible for members of the Class to individually seek redress for the wrongful conduct alleged.

80.     Prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

81.     Rule 23(a)(2) and Rule 23(b)(3) are both satisfied because there are questions of law and fact common to the Class and that  predominate over questions affecting any individual Class member.  The common questions include, *inter alia*, the following:

a.      whether Defendants' Football Helmets can actually prevent or reduce the occurrence of concussions as compared to other football helmets;

b.      whether Defendants concealed the ineffectiveness of Football Helmets in preventing or reducing concussions;

c.      whether Defendants had a sufficient basis for their claims of concussion reduction;

d.      whether Defendants engaged in unfair, false, misleading, or deceptive acts or practices regarding in the marketing and sale of their Football Helmets;

e.      whether Defendants were unjustly enriched by their claims of concussion reduction;

f.      whether the Class is entitled to declaratory, injunctive and other equitable relief, including restitution and disgorgement, and if so, the nature of such relief; and

g.      whether the Class is entitled to compensatory damages, and if so, the amount of such damages.

82.     Plaintiffs' claims and the claims of members of the Class all derive from a common core of operative facts.  Further, irrespective of the individual circumstances of any Class member, liability in this matter will rise and fall with a relatively few core issues related to Defendants' statements regarding the effectiveness of their Football Helmets at preventing or reducing concussions.

83.     The Class may be properly maintained under Rule 23(b)(2).  Defendants have acted or refused to act, with respect to some or all issues presented in this Complaint, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

84.     Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs have the same interest as all members of the Class in that the nature and character of the challenged conduct is the same.

85.     Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs purchased Football Helmets and paid a price premium for the products because

21

of Defendants' false claims of concussion reduction or omission of material facts to the contrary. Plaintiffs' interests are entirely consistent with, and not antagonistic to, those of the other members of the Class.

86.     Plaintiffs have retained adequate counsel experienced in the prosecution of consumer and class action litigation who meet the criteria of Rule 23(g).

## ASCERTAINABLE LOSS

87.     By reason of the above-described conduct, Defendants caused actual harm, injury-in-fact, and loss of money to Plaintiffs and the Class. Plaintiffs and the Class were injured in the following ways:

a.     Plaintiffs and members of the Class paid price premiums for Defendants' Football Helmets for the purpose of preventing or reducing concussions based on Defendants' misrepresentations regarding the helmets' safety features or omission of material facts regarding the same;

b.     If Defendants' Football Helmets were actually capable of reducing the likelihood of concussions as represented, Plaintiffs would not have suffered the economic loss described herein;

c.     Plaintiffs and the Class have been deprived of the benefits of their Football Helmets promoted by Defendants, requiring restitution; and

d.     Plaintiffs and the Class have been deprived of the benefit of their bargains and suffered other damages by purchasing Football Helmets, which could not lessen the likelihood of concussions as represented.

<u>COUNT I</u>
**Violation Of New Jersey's Consumer Fraud Act, N.J.S.A. §58:8-1,** *et seq.*
**(Brought by Plaintiffs Aronson and Thiel,**
**Individually and on Behalf of the New Jersey Subclass)**

88.     Plaintiffs repeat the allegations contained in the above paragraphs, as if fully set forth herein.

89.     Plaintiffs from New Jersey bring this claim individually and on behalf of the other members of a New Jersey Subclass.

90.     Defendants misrepresented that the Riddell Football Helmets would provide certain concussion reduction and prevention benefits including, but not limited to Defendants' representations that the Riddell Football Helmets delivered a 31% reduction in the risk of concussions and provided superior anti-concussion support from its concussion reduction technology including padding and side impact protection or provided the other promised concussion reduction and prevention benefits as described herein or omitted material facts to the contrary.

91.     Defendants' affirmative misrepresentations constitute an unconscionable commercial practice, deception, fraud, false promise and/or misrepresentation as to the nature of the goods, in violation of the NJCFA.

92.     Defendants' knowing and intentional omissions as described herein constitute a violation of the NJCFA.

93.     Plaintiffs from New Jersey and the other New Jersey Subclass members suffered an ascertainable loss caused by exposure to Defendants' misrepresentations and omissions and paid a price premium due to the misleading and false advertising and deceptive promises of concussion reduction and prevention benefits of the Riddell Football Helmets, when, in fact, those qualities did not exist.

94.     Simply put, Plaintiffs from New Jersey and the other New Jersey Subclass members paid for the advertised benefits of the Football Helmets and did not get what they paid for.

## COUNT II
### Violation Of The Illinois Consumer Fraud And Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*. (Brought by Plaintiff Cahokia School District, Individually and on Behalf of the Illinois Subclass)

95.     Plaintiffs repeat the allegations contained in the above paragraphs as if fully set forth herein.

96.     Plaintiffs from Illinois bring this claim individually and on behalf of the other members of an Illinois Subclass.

97.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, et seq., prohibits unfair methods of competition and unfair and deceptive acts or practices, including among other things, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, . . . whether any person has in fact been misled, deceived or damaged thereby."

98.     Defendants misrepresented that the Riddell Football Helmets would provide certain concussion reduction and prevention benefits including, but not limited to Defendants' representations that the Riddell Football Helmets delivered a 31% reduction in the risk of concussions and provided superior anti-concussion support from its concussion reduction technology including padding and side impact protection or provided the other promised concussion reduction and prevention benefits as described herein or omitted material facts to the contrary.

24

99. Throughout the Class Period, Defendants conducted "trade" and "commerce" within the meaning of 815 ILCS 505/1(f) by its advertising, offering for sale, and sale of Riddell Football Helmets.

100. 815 ILCS. 505/1(b) of the Illinois Consumer Fraud and Deceptive Business Practices Act defines the term "merchandise" to include Riddell Football Helmets.

101. 815 ILCS. 505/1(c) of the Illinois Consumer Fraud and Deceptive Practices defines the term "person" to include Defendants.

102. 815 ILCS 505/1(e) of the Illinois Consumer Fraud and Deceptive Practices Act defines the term "consumer" to include Plaintiffs from Illinois and the other Illinois Subclass members.

103. Defendants' acts and practices, alleged herein, constitute unfair, deceptive, and/or fraudulent business practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, including but not limited to, Defendants' sale of Riddell Football Helmets.

104. Defendants intended for Plaintiffs from Illinois and Illinois Subclass members to be exposed to the aforementioned deceptive acts and practices, and such deceptive acts and practices occurred in the course of conduct involving trade or commerce.

105. Plaintiffs from Illinois and the Illinois Subclass were exposed to such misrepresentations and were deceived.

106. Defendants' violation of the Illinois Consumer Fraud and Deceptive Business Practices Act caused Plaintiffs from Illinois and the Illinois Subclass to sustain substantial and ascertainable losses of money and/or property and other damages because they were exposed to the aforementioned deceptive acts and practices and paid a price premium due to the false and misleading advertising and marketing of the Riddell Football Helmets, namely, the promises of concussion reduction and prevention benefits.

<u>COUNT III</u>
**Violation Of The Florida Deceptive And Unfair Trade Practices Act (FDUTPA),
Sections 501.201, *Et Seq*., Florida Statutes (2005)
(Brought by Plaintiff Nicholas Farrell, Individually and on Behalf of the Florida Subclass)**

107.     Plaintiffs incorporate by reference the above as though fully set forth herein.

108.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 *et seq*. ("FDUTPA").  The stated purpose of the Act is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

109.     Plaintiffs from Florida and the Florida Subclass are consumers as defined by Fla. Stat. §501.203 and have standing to pursue this claim because they were exposed to Defendants' representations regarding concussion reduction, purchased the subject Riddell Football Helmets, have suffered injury in fact and have lost money or property as a result of Defendants' actions as set forth above.

110.     The helmets in question are goods within the meaning of the Act, and Defendants are engaged in commerce with the meaning of the FDUTPA.

111.     Fla. Stat. §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

112.     Defendants' conduct alleged herein violates the legislatively declared policies in the FDUTPA because Defendants misled Florida Subclass members into believing that the Football Helmets would reduce the chances of concussion compared to other less expensive helmets when, in fact, there was no material difference in concussion protection among

26

traditional football helmets. Defendants concealed this material fact by failing to include it on their helmet's packaging or related marketing materials.

113.    As a result of Defendants' "unfair" or "deceptive" conduct, Plaintiffs from Florida were exposed to the Defendants' unfair and deceptive practices, and members of the Florida Subclass spent money on the premium-priced Riddell Football Helmets that they would not otherwise have acquired at the prices that they did and did not receive a helmet that possessed the increased concussion protection Defendants represented or omitted material facts to the contrary.

114.    Defendants have violated the FDUTPA by engaging in the unfair and deceptive practices as described herein that offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

115.    Plaintiffs from Florida and the Florida Subclass have been aggrieved by Defendants' unfair and deceptive practices because they purchased the offending helmet described herein at premium prices.

116.    The damages Plaintiffs from Florida and the Florida Subclass suffered were directly and proximately caused by the deceptive, misleading and unfair practices of Defendants as more fully described herein.

117.    Pursuant to Fla. Stat. §§501.211(2) and 501.2105, Plaintiffs from Florida and the Florida Subclass seek damages, attorneys' fees and costs of prosecuting this action.

118.    Pursuant to Fla. Stat. §501.211(1), Plaintiffs from Florida and the Florida Subclass seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

## <u>COUNT IV</u>
### VIOLATION OF CAL. BUS. & PROF. CODE § 17200, *et seq.* –
### "Unfair" Business Acts and Practices
### (Brought by Plaintiff Gustavo Galvan,
### Individually and on Behalf of the California Subclass)

119.    Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

120.    Plaintiffs from California have standing to pursue this claim on behalf of all affected persons who reside in California  as such Plaintiffs have suffered injury in fact and has lost money or property as a result of Defendants' actions, as set forth above.

121.    Defendants' actions as alleged in this Complaint constitute "unfair" business practices within the meaning of California Business and Professions Code § 17200, *et seq.* ("UCL").

122.    Defendants' business practices, as alleged herein, are "unfair" because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to their customers. Additionally, Defendants' conduct is "unfair" because Defendants' conduct violated the legislatively declared policies not to engage in such practices based on California's False Advertising Law (Bus. & Prof. Code § 17500, *et seq.*) and the Consumers Legal Remedies Act (Civ. Code § 1750, *et seq.*). Defendants misled consumers into believing that their Riddell Football Helmets reduced concussions when, in fact, there was no material difference in concussion protection between the Riddell Football Helmets and other lower-priced helmets. Defendants concealed this material fact from consumers.

123.    As a result of Defendants' "unfair" conduct, Plaintiffs from California and members of the California Subclass were exposed to the unfair conduct and spent money on premium-priced Riddell Football Helmets that they would not otherwise have spent at the levels that they did and did not receive the increased concussion protection promised by Defendants.

28

124.     Defendants' unfair business practices alleged herein constitute a continuing course of unfair competition because Defendants market and sell their Riddell Football Helmets in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to their customers.

125.     Plaintiffs from California and the California Subclass seek an order for injunctive and equitable relief, including requiring Defendants to make full restitution and disgorgement of all monies they have wrongfully obtained from Plaintiffs from California and the California Subclass, along with all other relief permitted under Bus. & Prof. Code § 17200, *et seq.*

**COUNT V**
**Violation of Cal. Bus. & Prof. Code § 17200, *et seq.* –**
**"Deceptive" Acts and Practices**
**(Brought by Plaintiff Gustavo Galvan,**
**Individually and on Behalf of the California Subclass)**

126.     Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

127.     Plaintiffs from California have standing to pursue this claim as such Plaintiffs have suffered injury in fact and have lost money or property as a result of Defendants' actions, as set forth above.

128.     Defendants' actions as alleged in this Complaint constitute "deceptive" or "fraudulent" business practices within the meaning of California Business and Professions Code § 17200, *et seq.*, although no intent is alleged or required to establish Defendants' violation of this prong of the UCL.

129.     Defendants' business practices, as alleged herein, are "deceptive" or "fraudulent" because they are likely to deceive consumers, including Plaintiffs and members of the California Subclass.

130.    Defendants made material misrepresentations as stated above, failed to disclose all material information to purchasers of their Riddell Football Helmets concerning the lack of concussion protection offered by the Riddell Football Helmets as compared to less expensive helmets even though, based on the safety-related impacts of such claims and the products at issue they had a duty to do so, and affirmatively concealed the fact that there is no material difference between Riddell Football Helmets and other lower-priced helmets in terms of concussion protection or reduction.

131.    As a result of Defendants' "deceptive" or "fraudulent" conduct, Plaintiffs from California and members of the California Subclass were exposed to the Defendants' deceptive and fraudulent conduct, and spent money on premium-priced Riddell Football Helmets that they would not otherwise have spent at the levels that they did and did not receive the increased concussion protection represented by Defendants.

132.    Defendants' business practices alleged herein constitute a continuing course of unfair competition since Defendants market and sell their Riddell Football Helmets in a manner that was and remains likely to deceive California Subclass members.

133.    Plaintiffs from California and the California Subclass  seek an order for injunctive and equitable relief, including requiring Defendants to make full restitution and disgorgement of all monies they have wrongfully obtained from Plaintiffs from California and the California Subclass, along with all other relief permitted under Bus. & Prof. Code § 17200, *et seq.*

### COUNT VI
**Violation of Cal. Bus. & Prof. Code § 17200, *et seq.***
**"Unlawful" Business Practices**
**(Brought by Plaintiff Gustavo Galvan,**
**Individually and on Behalf of the California Subclass)**

134.    Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

135.    Plaintiffs from California have standing to pursue this claim as Plaintiffs have suffered injury in fact and have lost money or property as a result of Defendants' actions as set forth above.

136.    Defendants' actions as alleged in this Complaint constitute an "unlawful" business practice within the meaning of California Business and Professions Code § 17200, *et seq.*, because Defendants' actions violated, *inter alia*, California Business and Professions Code § 17500, *et seq.*, which proscribes misleading advertising, and because they violated Civil Code § 1750, *et seq.*, the Consumers Legal Remedies Act, as alleged in this Complaint and the prior substantiation rules of the Federal Trade Commission.

137.    As a result of Defendants' "unlawful" conduct, Plaintiffs from California and members of the California Subclass were exposed to the unlawful conduct and spent money on premium-priced Riddell Football Helmets that they would not otherwise have spent at the levels that they did and did not receive the increased concussion protection or reduction represented by Defendants.

138.    Defendants' business practices alleged herein constitute a continuing course of unfair competition since Defendants market and sell their products in a manner that was and remains likely to be unlawful.

139.    Plaintiffs from California and the California Subclass seek an order for injunctive and equitable relief, including requiring Defendants to make full restitution and disgorgement of all monies they have wrongfully obtained from Plaintiffs from California and the California Subclass, along with all other relief permitted under Bus. & Prof. Code § 17200, *et seq.*

<u>COUNT VII</u>
**Violation of Cal. Bus. & Prof. Code § 17500,** *et seq.* **–**
**Misleading Advertising**
**(Brought by Plaintiff Gustavo Galvan,**
**Individually and on Behalf of the California Subclass)**

140.    Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

141.    Plaintiffs from California have standing to pursue this claim as such Plaintiffs have suffered injury in fact and has lost money or property as a result of Defendants' actions as set forth above.

142.    Defendants engaged in the advertising and marketing alleged herein to the public and offered for sale Riddell Football Helmets in California with the intent to directly or indirectly induce the sale of their Riddell Football Helmets to purchasers of such helmets in California, or such advertisements originated in California and were intended to be conveyed to persons outside California.

143.    Defendants' advertising and marketing representations regarding the superior concussion protection of their Riddell Football Helmets were false, misleading, and deceptive as set forth in detail above. Defendants also concealed material information from the consuming public as set forth above that they were obligated to disclose about the actual level of concussion protection or reduction of their Riddell Football Helmets as compared to less expensive helmets in their product packaging and other advertising and marketing materials.

144.    Defendants' misrepresentations and omissions of material fact alleged herein deceived, or have the tendency and likelihood to deceive, the general public regarding the benefits and characteristics contained in the Riddell Football Helmets.

145.    Defendants' misrepresentations and omissions of material fact as alleged herein were the type of factual statements  that are objectively material, in that a reasonable person

32

would attach importance to them, and were intended by Defendants to induce such persons to act on such information in making their purchase decisions.

146.    At the time they made the misrepresentations and omissions alleged herein, Defendants reasonably should have known that such statements were untrue or misleading and thus in violation of Bus. & Prof. Code § 17500, *et seq.*

147.    Defendants' business practices alleged herein constitute a continuing course of unfair competition since Defendants market and sell their products in a manner that was and remains likely to deceive California Subclass members.

148.    As a result, Plaintiffs from California and the California Subclass seek injunctive and equitable relief, including full restitution and disgorgement, and all other relief permitted under Bus. & Prof. Code § 17500, *et seq.*

<u>**COUNT VIII**</u>
**Violation of Cal. Civ. Code § 1750, *et seq.* –**
**Consumers Legal Remedies Act**
**(Brought by Plaintiff Gustavo Galvan,**
**Individually and on Behalf of the California Subclass)**

149.    Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

150.    Defendants are "persons" as defined in Cal. Civ. Code § 1761(c).

151.    Plaintiffs from California and members of the California Subclass who purchased the Riddell Football Helmets primarily for personal, family or household purposes are "consumers" as defined in Cal. Civ. Code § 1761(d).

152.    The Riddell Football Helmets that Plaintiffs from California and the California Subclass purchased from Defendants are "goods" within the meaning of Cal. Civ. Code § 1761(a).

153.    The purchases by Plaintiffs from California and members of the California Subclass as set forth above of the goods sold by Defendants, alleged herein, constitute "transactions" within the meaning of Cal Civ. Code § 1761(e).

154.    In connection with their sale of the goods in question, Defendants violated the CLRA by:

a.    Misrepresenting to Plaintiffs from California and members of the California Subclass that Defendants' Riddell Football Helmets offered more concussion protection when compared to traditional helmets, when they in fact do not, in violation of Cal Civ. Code §§ 1770(a)(5), (7), (14), and (16);

b.    Misrepresenting to Plaintiffs from California and members of the California Subclass that Defendants' Riddell Football Helmets had characteristics, uses and benefits they did not have, in violation of Cal. Civ. Code § 1770(a)(5);

c.    Representing to Plaintiffs of California and members of the California Subclass that Defendants' Riddell Football Helmets were of a particular standard, quality, or grade, when they were of another, in violation of Cal. Civ. Code § 1770(a)(7);

d.    Misrepresenting that their transactions with Plaintiffs from California and members of the California Subclass conferred benefits and rights on Plaintiffs from California and the California Subclass, and obligations on Defendants, which were not, in fact, conferred or which were prohibited by law, in violation of Cal. Civ. Code § 1770(a)(14); and

e.    Misrepresenting to Plaintiffs from California and members of the California Subclass that the subject of a transaction has been supplied in accordance with a previous representation when it had not, in violation of Cal. Civ. Code § 1770(a)(16).

155.    In addition, under California law, Defendants had a duty to disclose to Plaintiffs from California and California Subclass members the true amount of concussion protection

34

offered by their Riddell Football Helmets (which was none or significantly less than represented), as such material facts related to issues of safety; Defendants had superior, if not exclusive, knowledge of this information at the time of sale as compared to Plaintiffs from California and California Subclass members; Defendants actively concealed from Plaintiffs from California and California Subclass members the true amount of concussion protection offered by their Riddell Football Helmets, which was material to customers; and Defendants made partial representations to Plaintiffs from California and the California Subclass that did not fully disclose the lack of additional concussion protection offered by their Riddell Football Helmets as compared to less expensive helmets. Defendants thus also violated the CLRA by concealing material information from Plaintiffs from California and California Subclass members regarding the lack of additional concussion protection offered by the Riddell Football Helmets.

156.    Defendants' misrepresentations and omissions of material fact as alleged herein were material in that a reasonable person would attach importance to the information and Defendants intended consumers to act upon the information in making purchase decisions.

157.    Defendants' misrepresentations and omissions of material fact were likely to mislead consumers. Plaintiffs from California and California Subclass members were exposed to these misrepresentations and omissions, and reasonably acted in response to Defendants' material representations and omissions of fact that Defendants' Riddell Football Helmets offered more protection against concussions than other helmets as shown by their purchasing such helmets at a premium price, and suffered damage as a result thereof.

158.    Plaintiffs from California, on behalf of themselves and the California Subclass, demand judgment against Defendants under the CLRA for injunctive relief and restitution to Plaintiffs and the California Subclass, as well as an award of attorneys' fees and costs.

159.    Pursuant to Cal. Civ. Code § 1782(a), Plaintiffs have previously served Defendants with notice of their alleged violations of the CLRA by certified mail return receipt requested. As Defendants failed to provide appropriate relief for their violation of the CLRA as requested in that letter, Plaintiffs from California also seek actual, compensatory, special and exemplary damages under the CLRA.

**COUNT IX**
**Misrepresentation in Violation of the Arizona**
**Consumer Fraud Act § 44-1522 *et seq*.**
**(Brought by Plaintiff Kenny King,**
**Individually and on Behalf of the Arizona Subclass)**

160.    Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

161.    Plaintiffs from Arizona have standing to pursue this claim because such Plaintiffs suffered a distinct and palpable injury and have lost money or property as a result of Defendants' actions as set forth above.

162.    Defendants' Riddell Football Helmets are "merchandise" as defined in §44-1521(5).

163.    Defendants engaged in deception, false pretense, false promise, and/or misrepresentation by making the false and/or misleading representations to consumers about the effectiveness and appropriateness of the Riddell Football Helmets, as described above in violation of the Arizona Consumer Fraud Act §44-1522 et seq.

164.    Defendants made these misrepresentations in connection with the sale and advertisement of merchandise as stated in §44-1522(A).

165.    Defendants uniformly marketed and advertised the Riddell Football Helmets as being more effective at preventing concussions, and being especially appropriate for youth

36

players, but the Riddell Football Helmets offers no additional concussion prevention compared to other helmets and was never even tested for youth players.

166.    Defendants made statements and representations of material facts regarding the effectiveness of their Riddell Football Helmets' ability to reduce concussions and appropriateness for particular players with the intent that consumers rely on these misrepresentations in deciding to purchase and use these helmets and omitted material facts to the contrary.

167.    Defendants' representations about the Riddell Football Helmets' quality, effectiveness, and use standards are material because a reasonable person, as well as Plaintiffs from Arizona and Arizona Subclass members would deem such information about concussion prevention important to their purchasing decisions or conduct regarding the purchase and use of a football helmet.

168.    As a result, Plaintiffs from Arizona and members of the Arizona Subclass were exposed to the Defendants' statements, misrepresentations, and omissions of material fact and purchased the Riddell Football Helmets and paid a premium price for the Riddell Football Helmets over comparable helmets.

169.    Defendants' practice of misleading consumers about the effectiveness of their Riddell Football Helmets to prevent an injury to the head/brain, and profiting from this deception was done with reckless or conscious disregard to the rights of Plaintiffs from Arizona and members of the Arizona Subclass and was outrageous due to Defendants' evil motive or reckless indifference to the rights of Plaintiffs from Arizona and members of the Arizona Subclass, and merits the imposition of punitive damages in an amount sufficient to punish Defendants and to deter Defendants and others from wrongful conduct in the future.

170.     As a result of defendants conduct, Plaintiffs from Arizona and Arizona Subclass members suffered damage and seek actual damages, attorney fees, costs and expenses of suit, punitive damages and any further relief this court deems just and proper.

<u>**COUNT X**</u>
**Omission In Violation Of The Arizona**
**Consumer Fraud Act § 44-1522 *et seq.***
**(Brought by Plaintiff Kenny King,**
**Individually and on Behalf of the Arizona Subclass)**

171.     Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

172.     Plaintiffs from Arizona have standing to pursue this claim because Plaintiffs from Arizona suffered a distinct and palpable injury and have lost money or property as a result of Defendants' actions as set forth above.

173.     Defendants' Riddell Football Helmets are "merchandise" as defined in §44-1521(5).

174.     Defendants engaged in deception, a deceptive or unfair act or practice, and/or concealment, suppression, or omission by concealing the effectiveness and appropriateness of the Riddell Football Helmets from consumers, as described above, in violation of the Arizona Consumer Fraud Act §44-1522 *et seq.*

175.     Defendants' omissions were in connection with the sale and advertisement of merchandise as stated in §44-1522(A).

176.     Defendants failed to disclose all material information to purchasers of their Riddell Football Helmets concerning the lack of amount of concussion protection offered by the Riddell Football Helmets and affirmatively concealed the fact that there is no material difference between Riddell Football Helmets and other lower-priced helmets.

177.    Defendants actively marketed and sold the Riddell Football Helmets' effectiveness at being better at preventing concussions despite evidence from a study they commissioned stating otherwise.

178.    Defendant failed to disclose all material information regarding the Riddell Football Helmets' effectiveness at preventing concussions with the intent that consumers rely on this concealment and continue purchasing and paying a premium price for the Riddell Football Helmets.

179.    As a result of Defendants' omissions and concealment, Plaintiffs from Arizona and members of the Arizona Subclass were exposed to said omissions and purchased the Riddell Football Helmets and paid a premium price for the Riddell Football Helmets over comparable helmets.

180.    Defendants' practice of concealing material information about the effectiveness of their Riddell Football Helmets to prevent an injury to the head/brain, and profiting from this deception  was done with reckless or conscious disregard to the rights of Plaintiffs from Arizona and members of the Arizona Subclass and was outrageous due to Defendants' evil motive or reckless indifference to the rights of  Plaintiffs from Arizona and members of the Arizona Subclass, and merits the imposition of punitive damages in an amount sufficient to punish Defendants and to deter Defendants and others from wrongful conduct in the future.

181.    As a result of defendants conduct, Plaintiffs from Arizona and Arizona Subclass members suffered damage and seek actual damages, attorney fees, costs and expenses of suit, punitive damages and any further relief this court deems just and proper.

## COUNT XI
## Unjust Enrichment
## (Applicable to All Classes)

182.     Plaintiffs incorporate the allegations set forth in the above paragraphs as if fully set forth herein.

183.     Plaintiffs bring this claim individually, as well as on behalf of the members of the nationwide Class, and respectively on behalf of the New Jersey, Illinois, California, Florida and Arizona Subclasses against Defendants.

184.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and the other Class and Subclass members' purchases of the Football Helmets, which retention under these circumstances is unjust and inequitable because Defendants misrepresented and omitted material facts relating to the efficacy of the Football Helmets, which caused injuries to Plaintiffs and the other Class and Subclass members because either they paid a price premium due to the deceptive advertising and false promises of anti-concussion and concussion reduction efficacy.

185.     Plaintiffs and the other Class and Subclass members conferred a benefit on Defendants by purchasing one or more of the Football Helmets.

186.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class and Subclass members' purchases of the Football Helmets, which retention under these circumstances is unjust and inequitable because Defendants misrepresented and omitted material facts relating to the efficacy of the Football Helmets, which caused injuries to Plaintiffs and Class and Subclass members because either they paid a price premium due to the deceptive advertising and false promises of anti-concussion and concussion reduction efficacy.

187.     Because Defendants' retention of the non-gratuitous benefit conferred on it by Plaintiffs and the other Class and Subclass members is unjust and inequitable, Defendants must

40

pay restitution to Plaintiffs and the other Class and Subclass members for their unjust enrichment, as ordered by the Court.

<u>COUNT XII</u>
**Assumpsit And Quasi-Contract**
**(Applicable to All Classes)**

188.    Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

189.    By virtue of the purchase and sale of the Revolution helmets, Defendants entered into a series of implied-at-law contracts that resulted in money being had and received by Defendants, either directly or indirectly, at the expense of Plaintiffs and Class members under agreements in assumpsit and quasi-contract.  Plaintiffs and other Class members conferred a benefit upon Defendants by purchasing one of the Revolution helmets. Defendants had knowledge of the general receipt of such benefits, which Defendants received, accepted and retained.   For the reasons set forth above, Plaintiffs and the Class show just grounds for recovering money to pay for benefits Defendants received from them, and have a right to restitution at law through an action derived from the common-law writ of assumpsit by implying a contract at law, or a quasi-contract as an alternative to a claim for breach of contract.

190.    Defendants, having received such benefits, are required to make restitution as the circumstances here are such that, as between the two, it is unjust for Defendants to retain such monies based on the illegal conduct described above. Such money or property belongs in good conscience to the Plaintiffs and the Class members and can be traced to funds or property in Defendants' possession. Plaintiffs' detriment and Defendants' enrichment were related to and flowed from the conduct challenged in this Complaint.

191.    An entity who has been unjustly enriched at the expense of another is required to make restitution to the other. Under common law principles recognized in claims of common

41

counts, assumpsit, and quasi-contract, under the circumstances alleged herein it would be inequitable for Defendants to retain such benefits without paying restitution or damages therefor. Defendants should not be permitted to retain the benefits conferred via payments by Plaintiffs and Class members, and other remedies and claims may not permit them to obtain such relief, leaving them without an adequate remedy at law.

192.    Plaintiffs and Class members seek, *inter alia*, damages and restitutionary disgorgement of all profits resulting from such payments. Based on the facts and circumstances set forth above, in order to prevent unjust enrichment and to prevent Defendants from taking advantage of its own wrongdoing, Plaintiffs and the Class are further entitled to the establishment of a constructive trust of all monies charged and collected or retained by Defendants from which Plaintiffs and Class members may seek equitable and legal restitution.

## COUNT XIII
### Declaratory Relief
### (Applicable to All Classes)

193.    Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

194.    There currently exists between the parties an actual and on-going controversy regarding the respective rights and liabilities of the parties regarding, *inter alia*, the need for Defendants to accurately disclose or correct disclosure of the actual lack of additional concussion protection offered by the Riddell Football Helmets in question as detailed above and/or the need of Defendants to restore some or all amounts that should not have been paid by Class members based on these misrepresentations and omissions of material facts, as alleged in detail above.

195.    Plaintiffs, members of the Class and the general public may be without adequate remedy at law, rendering declaratory relief appropriate in that:

a.      Damages may not adequately compensate the Class members for the injuries suffered, nor may other claims permit such relief;

b.      The relief sought herein in terms of ceasing such practices, providing full and complete corrective disclosure and/or declaring there is an obligation of Defendants to pay such monies to Class members may not be fully accomplished by awarding damages; and

c.      If the conduct complained of is not enjoined, harm will result to Class members because Defendants' wrongful conduct is continuing, claims are unresolved, persons (primarily minors) are wearing helmets that do not provide the promised protection, and persons are entitled to the direct monies taken from them.

196.    Class members may suffer irreparable harm if a determination of the parties' rights and obligations is not ordered.

197.    Accordingly, Plaintiffs request the Court issue an order granting the following declaratory relief:

a.      That a judicial determination and declaration be made of the rights of Class members and the corresponding responsibilities of Defendants;

b.      That Defendants be ordered to provide notice in clear and conspicuous language to Class members and the public of the actual lack of additional concussion protection or reduction the Revolution helmet provides as compared to other helmets; and/or

c.      An order declaring Defendants are obligated to pay restitution to all members of the Class as appropriate and/or otherwise pay over all funds Defendants wrongfully acquired either directly or indirectly by which Defendants were unjustly enriched.

WHEREFORE, Plaintiffs pray for relief as follows as applicable to the above causes of action:

a.        That the Court determine that this action may be maintained as a class action under Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, that Plaintiffs be certified as class representatives and Plaintiffs' counsel be appointed as counsel for the Class;

b.        That the unlawful conduct alleged herein be declared to be illegal and in violation of the state and common law claims alleged herein;

c.        That Plaintiffs and members of the Class recover damages, as provided by law, determined to have been sustained as to each of them, and that judgment be entered against Defendants on behalf of Plaintiffs and members of the Class;

d.        That Defendants be enjoined from engaging in the same or similar practices alleged herein;

e.        That Plaintiffs and members of the Class receive restitution and disgorgement of all Defendants' ill-gotten gains or excessive monies paid;

f.        That Plaintiffs and members of the Class receive pre-judgment and post-judgment interest as allowed by law;

g.        That Plaintiffs and members of the Class recover their costs of the suit, and attorneys' fees as allowed by law; and

h.        All other relief allowed by law and equity.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
*Interim Class Counsel*

By:     /s/ *James E. Cecchi*
        JAMES E. CECCHI

        Dated: May 12, 2014

44

Dennis G. Pantazis
Craig L. Lowell
Dennis G. Pantazis, Jr.
WIGGINS, CHILDS, PANTAZIS,
FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

> CARELLA, BYRNE, CECCHI,
> OLSTEIN, BRODY & AGNELLO, P.C.
> *Interim Class Counsel*
>
>
> By:     /s/ *James E. Cecchi*
>         JAMES E. CECCHI
>
> Dated: May 12, 2014

Dennis G. Pantazis
Craig L. Lowell
Dennis G. Pantazis, Jr.
WIGGINS CHILDS
PANTAZIS FISHER GOLDFARB LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500

*Interim Class Counsel*

*Additional counsel for Plaintiffs*:

Robert M. Foote, Esq.
Kathleen C. Chavez, Esq.
FOOTE, MIELKE, CHAVEZ, & O'NEIL LLC
10 West State Street, Suite 200
Geneva, Illinois 60134
(630) 232-7450

Joe R. Whatley Jr.
WHATLEY KALLAS, LLP
1180 Avenue of the Americas, 20th Floor
New York, New York 10036
(212) 447-7060

Alan M. Mansfield
WHATLEY KALLAS, LLP
10200 Willow Creek Road, Suite 160
San Diego, California 92131
(619) 308-5034

Stephen A. Corr
STARK & STARK, P.C.
777 Township Line Road, Suite 120
Yardley, Pennsylvania 19067
(267) 907-9600

E. Clayton Lowe, Jr.
THE LOWE LAW FIRM, LLC
301 19th Street North, Ste. 525
Birmingham, Alabama 35203
(205) 314-0607

Joshua R. Gale
WIGGINS CHILDS
PANTAZIS FISHER GOLDFARB LLC
101 N. Woodland Blvd., Ste. 600
DeLand, Florida  32720
386-675-6946

Richard Burke
Jamie Weiss
COMPLEX LITIGATION GROUP LLC
513 Central Avenue, Suite 300
Highland Park, Illinois 60035
847-433-4500

Thomas R. Ysursa
BECKER, PAULSON, HOERNER
& THOMPSON, P.C.
5111 West Main Street
Belleville, Illinois 62226
 (618) 235-0020