Joseph A. Boyle
Michael A. Innes
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, New Jersey 07054
(973) 503-5900

Michael C. Lynch (admitted *pro hac vice*)
Sung W. Kim (admitted *pro hac vice*)
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10018
(212) 808-7800

John E. Villafranco (*pro hac vice to be filed*)
KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007
(202) 342-8451

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE RIDDELL CONCUSSION REDUCTION LITIGATION | Civil Action No. 13-7585(JBS)(JS) |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE AMENDED
## CONSOLIDATED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ................................................................................. 3

    A.    Riddell's Football Helmets ................................................................. 3

    B.    The Development of Riddell's "Revolution" Helmet ......................... 4

    C.    The University of Pittsburgh Medical Center Study (2006) ............... 4

    D.    The FTC Investigates Riddell and Concussions Resulting From Football,
           and Closes the Investigation Without Taking Any Action Against Riddell ......................................................................................... 6

    E.    Riddell Product Packaging and Warning ......................................... 7

THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT ................................. 7

    A.    Class Allegations ......................................................................... 7

    B.    Allegations Relating to Youth Helmets ........................................... 8

    C.    The Football Helmet Studies Referenced in the Amended Complaint ...................................................................................... 8

ARGUMENT ..................................................................................................... 10

I.      LEGAL STANDARD ............................................................................ 10

    A.    The Rule 8(a) Requirement .......................................................... 10

    B.    The Rule 9(b) Requirement .......................................................... 10

    C.    Rule 12(b)(6) Standard ................................................................ 11

II.     THE AMENDED COMPLAINT FAILS TO SATISFY RULE 8 .............................. 12

III.   THE AMENDED COMPLAINT FAILS TO SATISFY RULE 9(B)'S HEIGHTENED PLEADING REQUIREMENT ................................................. 14

    A.    The Amended Complaint Fails to Plead the Who, What, When, Where and How of the Alleged Fraud .................................. 15

i

# TABLE OF CONTENTS

**Page**

B.    The Amended Complaint Neither Pleads Specific Omissions, Nor Defendants' Knowledge of the Same ........................................................ 16

      1.    The Amended Complaint Also Fails to Allege Facts Indicating the Source of the Alleged Misrepresentations .................................................. 18

C.    The Amended Complaint Fails to Plead Causation or Injury With Specificity ................................................................ 19

D.    The Amended Complaint Lacks Basic Factual Allegations As to Each Named Plaintiff ............................................. 20

IV.    PLAINTIFFS' COMPLAINT OFFENDS THE TWOMBLY "PLAUSIBILITY" STANDARD, AND MUST BE DISMISSED ............................ 22

A.    The Inconsistency of Plaintiffs' Claims Render Them Implausible ................ 22

B.    The Contradictory Facts Alleged as to Concealment Also Render the Claims Implausible ................................................. 23

V.    PLAINTIFFS' CONSUMER PROTECTION CLAIMS SHOULD BE DISMISSED UNDER 12(B)(6) FOR FAILURE TO STATE A CLAIM ................................................................................ 24

A.    The Amended Complaint Fails to Allege Facts Demonstrating a Deceptive Act or Unlawful Practice Under Any State Consumer Protection Statute .................................................... 24

B.    Plaintiffs Fail to Allege Facts to Show Causation or Reliance Under the Applicable State Consumer Protection Laws ................... 27

C.    The Amended Complaint Fails to Allege Facts Demonstrating Ascertainable Loss or Injury ................................... 33

VI.    THE CALIFORNIA PLAINTIFF'S "UNFAIR" AND "UNLAWFUL" (BUSINESS ACTS AND PRACTICES CLAIMS (COUNTS IV & VI) FAIL AS A MATTER OF LAW ............................ 37

VII.    THE ARIZONA CONSUMER FRAUD ACT CLAIMS (COUNTS IX & X) MUST BE DISMISSED AS UNTIMELY ................................. 38

VIII.    ALL EQUITABLE CLAIMS (COUNTS XI, XII & XIII) SHOULD BE DISMISSED ........................................................ 39

## TABLE OF CONTENTS

**Page**

    A.    The Unjust Enrichment and Quasi-Contract Claims (Counts XI & XII) Should Be Dismissed Because There Is No Direct Relationship Alleged.................................................................................................... 39

    B.    Plaintiffs Fail to State a Claim for Declaratory Relief (Count XIII) ............... 42

IX.    CONCLUSION ........................................................................................... 43

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*Agostino v. Quest Diagnostics Inc.*,
    256 F.R.D. 437 (D.N.J. Feb. 11, 2009) ................................................................39

*Appalachian Enters., Inc. v. ePayment Solutions Ltd.*,
    No. 01-CV 11502, 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ..........................13

*Arar v. Ashcroft*,
    585 F.3d 559 (2d Cir. 2009) *(en banc)* ................................................................13

*Arlandson v. Hartz Mtn. Corp.*,
    792 F. Supp. 2d 691 (D.N.J. May 26, 2011) ........................................................40

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................11, 12, 13

*Astiana v. Ben & Jerry's Homemade, Inc.*,
    C 10–4387 PJH, 2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ..................................35

*Avram v. Samsung Elecs. Am. Inc.*,
    No. 2:11-6973, 2013 WL 3654090 (D.N.J. July 11, 2013) ..............................39, 40

*Barrows v. Chase Manhattan Mortgage Corp.*,
    465 F. Supp. 2d 347 (D.N.J. Dec. 8, 2006) ..........................................................33

*Beaver v. Inkmart, LLC*,
    12-60028, 2012 WL 3822264 (S.D. Fla. Sept. 4, 2012) ......................................31

*Bell v. Twombly*,
    550 U.S. 544 (2007) ....................................................................4, 10, 11, 22

*Berenguer v. Warner-Lambert Co.*,
    No. 02-05242, 2003 WL 24299241 (Fla. Cir. Ct. July 31, 2003) ....................28, 30

*Bergdale v. Countrywide Bank FSB*,
    2014 WL 2885473 (D. Ariz. Jun. 25, 2014) ........................................................39

*Bober v. Glaxo Wellcome PLC*,
    246 F.3d 934 (7th Cir. 2001) ......................................................................25, 27

*Bruggemann v. Amacore Group, Inc.*,
    No.: 8:09-cv-2562-T-30MAP, 2010 WL 2696230 (M.D. Fla. Jul. 6, 2010) ..........13

*Cal. Public Employees' Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004) ................................................................................14

*Camasta v. Jos. A Bank Clothiers, Inc.,*
No 12 C 7782, 2013 WL 474509 (N.D. Ill. Feb. 7, 2013) ..................................... 35

*Campos v. I.N.S.,*
32 F.Supp.2d 1337 (S.D. Fla. 1998) ................................................................... 22

*Carrier v. Bank of Am., N.A.,*
No. 12-cv-00104, 2014 WL 356219 (D.N.J. Jan. 31, 2014) .................................. 42

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
20 Cal. 4th 163 (Cal. Sup. Ct. 1999) ................................................................... 37

*Chavez v. Nestle USA, Inc.,*
CV 09-9192, 2011 WL 2150128 (C.D. Cal. May 19, 2011) .................................. 26

*Crouch v. City of Hyattsville, Md.,*
No. 09–CV–2544, 2010 WL 4868100 (D. Md. Nov. 23, 2010)............................. 12

*Davis v. HSBC Bank Nevada, N.A.,*
691 F.3d 1152 (9th Cir. 2012) .............................................................................. 37

*Delacruz v. Cytosport, Inc.,*
C 11-3532, 2012 WL 1215243 (N.D. Cal. Apr. 11, 2012).................................... 28

*Demaree v. Wal-Mart Stores, Inc.,*
511 F. App'x 660 (9th Cir. 2013) .......................................................................... 31

*Dewey v. Volkswagen AG,*
558 F. Supp. 2d 505 (D.N.J. 2008)........................................................................ 29

*Ehrlich v. BMW of N. Am.,*
LLC, 801 F. Supp. 2d 908 (C.D. Cal. 2010) ................................................... 28, 31

*Erickson v. Pardus,*
551 U.S. 89 (2007) ................................................................................................ 10

*ETC Int'l v. Curriculum Advantage, Inc.,*
No. 03-5898, 2006 WL 1645030 (D.N.J. June 19, 2006)(Linares, J.) ................... 15

*Fernandez v. Takata Seat Belts, Inc.,*
108 P.3d 917 (Ariz. 2005) .................................................................................... 39

*Fowler v. UPMC Shadyside,*
578 F.3d 203 (3d Cir. 2009) ............................................................................ 11, 12

*Fox v. City of Greensboro,*
807 F. Supp. 2d 476 (M.D.N.C. 2011) .................................................................. 12

*Fraker v. Bayer Corp.,*
CV F 08-1564, 2009 WL 5865687 (E.D. Cal. Oct. 6, 2009)....................... 25, 26, 27

v

*Franulovic v. Coca Cola Co.*,
390 Fed. Appx. 125 (3d Cir. 2010)............................................................................passim

*Franulovic v. Coca-Cola Co.*,
No. 07-0539 (RMB), 2009 WL 1025541 (D.N.J. Apr. 16, 2009), *aff'd* 390 Fed. App'x
125 (3d Cir. 2010) ..............................................................................................25, 26

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007) ..................................................................................11, 14

*Gerber v. Wells Fargo Bank, N.A.*,
CV-11-01083-PHX-NVW, 2011 WL 5007921 (D. Ariz. Oct. 20, 2011) ..............................30

*Glauberzon v. Pella Corp.*,
No. 10-cv-5929, 2011 WL 1337509 (D.N.J. Apr. 7, 2011) ..................................................42

*Global Total Office L.P. v. Global Allies, LLC*,
2011 U.S. Dist. LEXIS 82900 (N.D. Ill. 2011) ................................................................14

*Gredell v. Wyeth Labs., Inc.*,
854 N.E.2d 752 (Ill. App. Ct. 2006)............................................................................25

*Green v. Green Mountain Coffee Roasters, Inc.*,
279 F.R.D. 275 (D.N.J. Dec. 20, 2011) ..........................................................................34

*Greinfenstein v. Estee Lauder Corp., Inc.*,
No. 12-cv-09235, 2013 WL 3874073 (N.D. Ill. July 26, 2010) ......................................26, 27

*Hale v. Stryker Orthopaedics*,
No. 08-3367 (WJM), 2009 WL 321579 (D.N.J. Feb. 9, 2009) ..............................................14

*Haun v. Don Mealy Imports, Inc.*,
285 F. Supp. 2d 1297 (M.D. Fla. 2003)..........................................................................30

*Hemy v. Perdue Farms, Inc.*,
2011 U.S. Dist. LEXIS 137923 (D.N.J. Nov. 30, 2010) ......................................................34

*Hoffman v. Nordic Naturals, Inc.*,
No. 12-cv-05870 SDW MCA, 2014 WL 1515602 (D.N.J. Apr. 17, 2014) ............................24

*Hokama v. E.F. Hutton & Co., Inc.*,
566 F. Supp. 636 (C.D. Cal. 1983)................................................................................14

*Hughes v. Panasonic Consumer Elecs., Co.*,
2011 U.S. Dist. LEXIS 79504 (D.N.J. July 21, 2011) ........................................................40

*In re American Southwest Mortg. Litigation*,
No. 89-cv-462, 1990 WL 304214 (D. Ariz. July 12, 1990) ..................................................33

vi

*In re Gerber Probiotic Sales Practices Litig.*,
   No. 12-835, 2013 WL 4517994 (D.N.J. Aug. 23, 2013) ............................................. 28, 29, 39

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*,
   955 F. Supp.2d 1311 (S.D. Fla. 2013) ................................................................................. 31

*In re Hydroxycut Marketing & Sales Practices Litig.*,
   No. 09-md-2087, 2014 WL 295302 (S.D. Cal. Jan. 27, 2014) ............................................. 18

*In re Mercedes–Benz Tele Aid Contract Litig.*,
   257 F.R.D. 46 (D.N.J. Apr. 24, 2009) ................................................................................ 39

*In re POM Wonderful LLC*,
   No. 10–02199 DDP RZX, 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ............................. 35

*In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*,
   311 F.3d 198 (3d Cir. 2002) ................................................................................................ 15

*In re Samsung Electronics Am., Inc. Blu-Ray Class Action Litigation.*,
   No. 08-cv-0663, 2008 WL 5451024 (D.N.J. Dec. 31, 2008) ............................................... 32

*In re Samsung Front Loading Washer Mold Litigation*,
   No. 2:12-cv-05412 (WJM)(MF), 2014 WL 1334256 (D.N.J. Apr. 2, 2014) ................... passim

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012) ................................................................................. 28

*In re Toshiba Am. HD DVD Marketing and Sales Practices Litig.*,
   No. 08-939 (DRR) 2009 WL 2940081 (D.N.J. Sept. 11, 2009) ...................................... passim

*Kanter v. Barella*,
   489 F.3d 170 (3d Cir. 2007) ................................................................................................ 15

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ............................................................................................ 14

*Kramer v. Ocwen Loan Servicing LLC*,
   CV-13-01415-PHX-DGC, 2014 WL 1827158 (D. Ariz. May 8, 2014) ................................ 14

*Kuehn v. Stanley*,
   208 Ariz. 124, 91 P.3d 346 (Ariz. Ct. App. 2004) ........................................................ 28, 30

*Lane v. Capital Acquisitions & Mgmt. Co.*,
   No.: 04-60602, 2006 WL 4590705 (S.D. Fla. Apr. 14, 2006) ............................................. 12

*Lanovaz v. Twinings North Am., Inc.*,
   No. C–12–02646–RMW, 2014 WL 1652338 (N.D. Cal. 2014) ............................................. 35

*Lattaker v. Rendell*,
   269 Fed. App'x 230 (3d Cir. 2008) ..................................................................................... 42

*Lieberson v. Johnson & Johnson Consumer Cos.*,
  865 F. Supp. 2d 529 (D.N.J. 2011)(Wolfson, J.)..................................................21, 34

*Long v. Hewlett-Packard Co.*,
  C 06-02816, 2006 WL 4877691 (N.D. Cal. Dec. 21, 2006)..................................14

*Lorenzo v. Qualcomm Inc.*,
  603 F. Supp.2d 1291 (S.D. Cal. 2009) ...................................................................30

*Lum v. Bank of Am.*,
  361 F.3d 217 (3d Cir. 2004) ..................................................................................11

*McBride v. Wells Fargo Bank, NA*,
  No. CV 11–02592–PHX–FJM, 2012 WL 1078467 (D. Ariz. Mar. 30, 2012).......................14

*McGuire v. BMW of North Am., LLC*,
  No. 13-cv-7356, 2014 WL 2566132 (D.N.J. June 6, 2014) ............................................40, 41

*McMahon v. City of Riviera Beach*,
  No. 08-80499, 2008 WL 4108051 (S.D. Fla. Aug. 28, 2008)..................................22

*McMahon v. Take-Two Interactive Software, Inc.*,
  No. 13-02032-VAP, 2014 WL 324008 (C.D. Cal. Jan. 29, 2014) .........................33

*Merl v. Warner Bros. Entertainment, Inc.*,
  No. 1:12-cv-20870, 2013 WL 266049 (S.D. Fla. Jan. 23, 2013) .........................32

*Mickens v. Ford Motor Co.*,
  900 F. Supp. 2d 427 (D.N.J. 2012)........................................................................31

*Monroe v. Owens*,
  38 F. App'x 510 (10th Cir. 2002)...........................................................................13

*Montgomery v. New Piper Aircraft*,
  209 F.R.D. 221 (S.D. Fla. 2002)............................................................................30

*Montich v. Miele USA, Inc.*,
  849 F. Supp. 2d 439 (D.N.J. 2012)(Wolfson, J.)....................................................31

*Morris v. Harvey Cycle & Camper, Inc.*,
  392 Ill. App. 3d 399 (Ill. App. 1st Dist. 2009) ....................................................35

*MSKP Oak Grove, LLC v. Venuto*,
  875 F. Supp. 2d 426 (D.N.J. June 20, 2012) ........................................................41

*N.Y. Pipeline Mechanical Contractors, LLC v. Sabema Plumbing & Heating Co., Inc.*,
  No. 10-148, 2012 WL 209349 (D.N.J. Jan. 24, 2012) ........................................41

*Nelson v. XACTA 3000, Inc.*,
  No. 08-5426 (MLC), 2009 WL 4119176 (D.N.J. Nov. 24, 2009)..........................14

*Noll v. eBay Inc.*,
    5:11-CV-04585-EJD, 2013 WL 2384250 (N.D. Cal. May 30, 2013) ....................................31

*Oliveira v. Amoco Oil Co.*,
    201 Ill. 2d 134, 776 N.E.2d 151 (Ill. 2002) .........................................................................30

*Pacholec v. Home Depot USA, Inc.*,
    2006 WL 2792788 (D.N.J. Sept. 26, 2006) .................................................................11, 20

*Pappalardo v. Combat Sports, Inc.*,
    2011 U.S. Dist. LEXIS 147902 (D.N.J. Dec. 23, 2011) .....................................................41

*Peery v. Hansen*,
    120 Ariz. 266, 585 P.2d 574 (Ariz. Ct. App. 1978) ............................................................35

*People ex rel. Madigan v. United Const. of Am., Inc.*,
    981 N.E.2d 404 *app. denied*, 985 N.E.2d 307 (Ill. 2013) .............................................28, 30

*Petty v. Chrysler Corp.*,
    343 Ill. App. 3d 815 (Ill. App. 1st Dist. 2003) ...................................................................35

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ...............................................................................................12

*Prohias v. Pfizer*,
    485 F. Supp. 2d 1329 (S.D. Fla. 2007) ...............................................................................35

*Raziev v. Compass Truck Sales, LLC*,
    13 C 737, 2013 WL 4846894 (N.D. Ill. Sept. 10, 2013) ....................................................31

*Rice v. Sunbeam Prods., Inc.*,
    No. CV 12–7923–CAS–(AJWx), 2013 WL 146270 (C.D. Cal. Jan. 7, 2013)......................38

*Robbins v. Oklahoma*,
    519 F.3d 1242 (10th Cir. 2008) ..........................................................................................13

*Rollins Inc. v. Heller*,
    454 So. 2d 580 (Fla. Ct. App. 1984)...................................................................................35

*Saunders v. Michigan Ave. Nat. Bank*,
    278 Ill. App. 3d 307, 662 N.E.2d 602 (Ill. App. Ct. 1996).................................................32

*Smajlaj v. Campbell Soup Co.*,
    782 F.Supp. 2d 84 (D.N.J. Mar. 23, 2011) ....................................................................33, 34

*Spruill v. Gillis*,
    372 F.3d 218 (3d Cir. 2004) ...............................................................................................10

*Stires v. Carnival Corp.*,
    243 F. Supp. 2d 1313 (M.D. Fla. 2002)..........................................................................14, 35

*Torpey v. Anthem Blue Cross Blue Shield of California,*
    No. 13-3853, 2014 WL 1569498 (D.N.J. Apr. 17, 2014)........................................4, 38

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) .....................................................................................14

*Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.,*
    No. 08-5380, 2009 WL 4730187 (D.N.J. Dec. 3, 2009) ...........................11, 18, 41

*Warth v. Seldin,*
    422 U.S. 490 (1975) ....................................................................................................35

*Washington v. Thomas,*
    No. 09-11302, 2009 WL 1424193 (E.D. Mich. May 18, 2009) ...............................12

*Weiszmann v. Kirkland & Ellis,*
    732 F. Supp. 1540 (D. Colo. 1990) ...........................................................................13

*Weske v. Samsung Elecs. Am., Inc.,*
    2012 U.S. Dist. LEXIS 32289 (D.N.J. Mar. 12 2012) .............................................40

*Zehel-Miller v. Astrazenaca Pharmaceuticals, LP,*
    223 F.R.D. 659 (M.D. Fla. 2004) ..............................................................................35

## STATUTES

815 ILCS 505/1, *et seq.* ...............................................................................................1

Ariz. Rev. Stat. § 12-541(5) ........................................................................................38

Arizona Consumer Fraud Act § 44-1522 *et seq.* ................................................passim

Cal. Bus. & Prof. Code § 17200, *et seq.* ................................................................1, 14

Cal. Bus. & Prof. Code § 17500, *et seq.* ......................................................................1

Cal. Civ. Code § 1750, *et seq.* .......................................................................................1

Fl. Stat. § 501.201, *et seq.* .............................................................................................1

New Jersey Consumer Fraud Act, N.J.S.A. §58:8-1, *et seq.* ...............................passim

NJFCA ..........................................................................................................25, 26, 33

UCL .......................................................................................................................passim

## OTHER AUTHORITIES

Rule 8.......................................................................................................................passim

Rule 9(b)..................................................................................................................passim

Rule 12(b)(6) ................................................................................................................passim

Defendants Riddell, Inc., All American Sports Corporation, Riddell Sports Group, Inc., Easton-Bell Sports, Inc., Easton-Bell Sports, LLC, EB Sports Corp., and RBG Holdings Corp. (collectively, "Defendants"), pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, move this Court for an order dismissing the Amended Consolidated Class Action Complaint (the "Amended Complaint" or "Am. Compl.") in its entirety.[1]

## PRELIMINARY STATEMENT

The Amended Complaint is a document designed to sensationalize a dispute that was already investigated by the Federal Trade Commission ("FTC"). That investigation was closed by the FTC in April 2013 without any further action or ruling that Riddell falsely advertised or marketed its Revolution line of football helmets.

Proof that the Amended Complaint is a press release in search of a claim is the fact that the thirteen counts are all rooted in the notion that no football helmet can be safer than a leather helmet. The Amended Complaint suggests, without any requisite specifics, that Defendants' advertising and marketing was intentionally misleading and that Defendants fraudulently concealed this notion (which the Amended Complaint pleads as a "fact") from the general public.[2]

---

[1] In addition to this memorandum of law, Defendants rely on the Declaration of Michael A. Innes. ("Innes Decl.")

[2] The Complaint alleges violations of the following state statutes: (1) New Jersey Consumer Fraud Act, N.J.S.A. §58:8-1, *et seq.* ("NJFCA"); (2) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ILCFA"); (3) Florida Deceptive and Unfair Trade Practices Act, Fl. Stat. § 501.201, *et seq.* ("FDUTPA"); (4) California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"); (5) California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("CFAL"); (6) California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLR"); and (7) Arizona Consumer Fraud Act § 44-1522 *et seq.* ("ACFA"). The requisite elements of each of these claims are set forth in Appendix A attached hereto.

Not surprisingly, the Amended Complaint is totally lacking the required specificity – the "who," "what," "when," "where," and "how" of the claimed deception. It barely alleges any facts relating to the individually named Plaintiffs or the nationwide classes (or subclasses) that they purport to represent. The Amended Complaint does not specify whether any individually named Plaintiff relied on a specified statement by any Defendant when purchasing the helmet at retail, or that any specified statement by a specified Defendant caused any Plaintiff to purchase the helmets directly from Defendants pursuant to a contract. The Amended Complaint fails to allege how the referenced advertisements were deceptive, what advertising claims appeared on the product packaging, where and when the advertising claims were seen (if at all) by Plaintiffs, and, if so, how they influenced any purchases. Just as importantly, the Amended Complaint fails to allege what allegedly comparable but cheaper helmets were available for purchase, or how much more Plaintiffs actually paid for the Riddell helmets in question. Simply put, it fails to satisfy pleading requirements under Rule 9(b).

As is so often the case, the Rule 9(b) deficiencies are rooted in the inherent weakness of Plaintiffs' claims. As such, the Amended Complaint fails to state a claim. There is an inherent contradiction in Plaintiffs' claims rendering them implausible. On the one hand, Plaintiffs claim that no helmet can reduce concussion risk, but on the other hand Plaintiffs assume such reduction risk can occur but not at the 31% level claimed by Defendants. This contradiction requires dismissal under Rule 8(a). Also, dismissal is required under Rule 12(b)(6) because there are no facts alleged that, if proven, could establish the central elements of each of the state consumer protection laws (*i.e.*, deceptive act or unlawful conduct, causation or reliance, and injury or ascertainable loss). Compounding the absence of alleged actionable conduct is the very existence of studies that undercut Plaintiffs' sensationalized allegations of falsity or lack of substantiation. The Amended Complaint also fails to allege any facts to show causation or

injury.  Finally, the statute of limitations applicable to each state consumer protection statute

serve to cut off the relevant time period, and the Arizona class representative (Kenny King) does

not allege that he purchased any helmets within the applicable 1-year limitations period required

to state a claim under the Arizona Consumer Fraud Act (Counts IX and X).

The throw-in equitable claims of unjust enrichment, assumpsit, and declaratory relief

asserted in Counts XI, XII and XIII must be dismissed because none of the named Plaintiffs have

alleged a direct relationship with Defendants.

## FACTUAL BACKGROUND

### A.       Riddell's Football Helmets

Riddell designs, develops and manufactures football helmets and protective sports gear.

Even a casual sports fan, or an interested parent, knows that football helmets have evolved over

time.  The original crude leatherhead coverings have been replaced, and there are now

technologically advanced polycarbonate shells that are widely used today.  Riddell has been part

of this evolution since its entrance into the football equipment market in 1929.  In 1939, Riddell

introduced the first molded plastic shell helmets, which were stronger, lighter, and longer-lasting,

and did not deteriorate when exposed to moisture like leather helmets.  In the 1940's, Riddell

developed the first chin strap, the first plastic face mask, and invented the web sling suspension

(creating a pocket of air between the players' heads and the hard outer shells of the helmet).  In

the 1950's, helmets were fitted with soft lining comfort layers and single-bar face mask.  In the

1960's, advanced padding was developed for helmet interiors.  In the 1970's, Riddell introduced

the first "microfit" helmet, constructed from injection-molding technology, as well as the first

air-cushioned helmet.  In 1973, Riddell's helmet was the first product to meet performance

standards set by the National Operating Committee on Standards for Athletic Equipment

("NOCSAE").  In the 1990s, Riddell developed and released the VSR-4 helmet, which became

the helmet of choice of the NFL and its players for several decades.

      **B.**      <u>The Development of Riddell's "Revolution" Helmet</u>

In the mid-1990's, the NFL and Riddell requested Biokinetics & Associates Ltd.

("Biokinetics") to research the biomechanics of concussion-causing impacts on the football field.

Riddell also sought guidance from Biokinetics in its efforts to develop a new and safer helmet

implementing the findings from the research.  One of Biokinetics' key findings was that

approximately 70% of the reconstructed concussion-causing impacts were directed to the side of

the head or face.  Biokinetics also reported that providing more space between the helmet shell

and the head (*i.e.*, increased offset) would help to manage and reduce the forces of impact.

In light of and incorporating the findings from this study, Riddell developed and released

the "Revolution" helmet in January 2002.  In contrast to the VSR-4 helmet, the Revolution

helmet featured, among other things, a spherical and "increased offset" design to provide greater

distance between the inside surface of helmet and the head, a helmet shell "jaw flaps" that extend

forward to cover more of the player's mandible, and padding in the jaw flap area to reduce forces

of impact to the side of the head and face.  Riddell has continually sought to improve and

implement additional features and upgrades to the Revolution helmet, and thus released the

Revolution Speed in 2008 and Riddell 360 in 2012.  *See* Compl., ¶ 1.

      **C.**      <u>The University of Pittsburgh Medical Center Study (2006)</u>

In 2002, the University of Pittsburgh Medical Center ("UMPC") researched and field

tested Riddell's Revolution helmet.  *See* Compl., ¶ 45; *see also* Innes Decl., Exh. A (Journal of

Neurosurgery Article, February 2006, Vol. 58, No. 2).[3]  Dr. Micky Collins, director of UMPC's

---

[3]      The article reporting the findings of the UPMC study is referenced in the Complaint, and
thus the Court may take judicial notice of the article.  *See* Compl., ¶¶ 45-46; *Bell v.*

Sports Medicine Concussion Program, led the study. *Id.* The study investigated concussion rates in 2,141 high school players who wore the Riddell Revolution helmets versus traditionally designed helmets like the VSR4. The study lasted three years. In 2006, the details and results of the study were published in the February 2006 issue of the Journal of Neurosurgery, alongside peer-reviewed comments of the article. *Id.* The results of the study expressly stated that "[w]earing the Revolution helmet was associated with approximately a 31% decreased relative risk and 2.3% decreased absolute risk for sustaining a concussion in this cohort study." *Id.*, at p. 275.

The article also disclosed that one of the co-authors, Thad Ide, was "an employee of Riddell, Inc.," that "Riddell provided a grant to the [UPMC]," that "Riddell also provided the Revolution helmets, at a reduced cost, to study participants," but that "Riddell was not involved in other aspects of the study." *Id.*, 284.

One of the peer review comments was submitted by Dr. Robert C. Cantu (Vice President of NOCSAE at the time). Dr. Cantu stated that he perceived a "methodological flaw" because "we do not know the age of the helmets that comprised the non-Riddell group." Dr. Cantu noted that this "precludes my not doubting the data, but doubting the significance of the data." Dr. Cantu concluded his comment with the following: "Finally, I would like to commend Riddell for having the courage to come forward with a new football helmet after manufacturers, for many years, were unwilling to do so because of liability issues. This has forced competitors to attempt

---

*Twombly*, 550 U.S. 544, 569 n. 13 (2007)("District Court was entitled to take notice of the full contents of the published articles referenced in the complaint, from which the truncated quotations were drawn"); *Torpey v. Anthem Blue Cross Blue Shield of California,* No. 13-3853, 2014 WL 1569498, *3 (D.N.J. Apr. 17, 2014)("A district court may…consider…documents, including those described or identified in the Complaint…if the plaintiff's claims are based upon those documents").

to make a better product as well." *Id.* Dr. Cantu's comments are available in the same Journal of Neurosurgery article.

### D.   The FTC Investigates Riddell and Concussions Resulting From Football, and Closes the Investigation Without Taking Any Action Against Riddell

In 2011, at the urging of Senator Udall, the FTC launched an investigation into various helmet manufacturers' advertising or marketing practices, including advertising claims based on the 31% reduced risk of concussion reported in the UPMC study.  After two years of investigation, the FTC closed its investigation against Riddell in April 2013 and informed the company that "we have decided not to recommend enforcement action at this time."[4]  *See* Innes Decl., Exh. B.  The factors the FTC considered in making this determination included:  that "helmet testing results published in 2011 and 2012 by researchers at Virginia Tech appear to show that the Riddell Revolution varsity helmets perform much better than Riddell's 'traditional' VSR-4 helmet in reducing concussion risks attributable to linear acceleration, one of the primary forces to which helmets are subject and that Riddell has discontinued use of the 31% claim."[5] *Id.*, Exh. B.  The Virginia Tech study tested Riddell's Revolution, Revolution Speed, Riddell 360, the traditional VSR-4 helmet, as well as helmets by other manufacturers.[6]  This study was not funded by Riddell and was designed and conducted by the Virginia Tech-Wake Forest

---

[4]     Incomplete portions of this FTC letter has been excerpted and referenced in the Complaint.  *See* Am. Compl., ¶ 48.

[5]     As the FTC letter notes, Riddell also discontinued the 31% claim in its product advertisements in April 2011.  Riddell's decision to discontinue the 31% claim was part of the company's previously scheduled marketing plans, and was not based on any "agreement" with the FTC, as the Complaint inaccurately alleges.  *See* Am. Compl., ¶ 48.

[6]     According to this study (based on data collected from 2005 to 2010), Riddell 360 performed better than any other helmet tested and reduced concussion risk by 70% compared to the traditional VSR-4 helmet.  The Revolution also tested better than the VSR-4 and reported a 54% reduced risk of concussion.

School of Biomedical Engineering & Sciences.  The results of the study have been published by

Virginia Tech and Wake Forest University in journals reported online every year since May

2011.[7]

E.      **Riddell Product Packaging and Warning**

The Amended Complaint incorrectly suggests that Defendants made concussion

prevention claims on its product packaging.  *See, e.g.*, Am. Compl. ¶ 4, 58-59, 64, and 81-82.

Throughout the relevant time period, however, Riddell's product packaging has featured the

following warning:

> No Helmet can prevent serious head or neck injuries a player
> might receive while participating in football.…  Contact in football
> may result in CONCUSSION-BRAIN INJURY which no helmet
> can prevent.

*See* Innes Decl., Exh. C.

**THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

A.      **Class Allegations**

The Amended Complaint is brought by putative class representatives located in New

Jersey, Illinois, Florida, California, and Arizona, on behalf of themselves and "others similarly

situated."   Am. Compl., ¶¶ 70-75. The nationwide Class is broadly defined as "All purchasers of

Riddell Football Helmets promoted as containing concussion reduction technology within the

United States from the beginning of the applicable statutes of limitation period through the

present." *Id.*, ¶ 76.  The Amended Complaint also asserts claims on behalf of members of the

New Jersey, Illinois, Florida, California, and Arizona subclasses pursuant to the consumer

protection statutes of those states. *Id.*, ¶¶ 89, 96, 109, 120, 127, 135, 141, 151, 161, 172.

_____

[7]     Furthermore, an April 2014 article published in the Journal of Neurosurgery further
verifies the result of the UPMC study. *See* Innes Decl., Exh. G.

The products at issue are the "Revolution model, Revolution Speed and Riddell 360." Am. Compl., ¶ 1. All of the putative class representatives are alleged to have purchased "adult" helmets, with the exception of one putative class representative from Arizona (Kenny King) that allegedly purchased a Revolution Speed "youth" football helmet. *Id.*, ¶ 75. The Amended Complaint alleges without any requisite specificity and in a conclusory manner that the various class members paid "price premiums" for the helmets at issue, even though less expensive products were readily available. *Id.*, ¶ 52. But then the Amended Complaint also alleges – inconsistently – that Defendants are "often offering Riddell Football Helmets at a discount to high profile high school teams." *Id.*, ¶ 53.

### B.   Allegations Relating to Youth Helmets

The Amended Complaint alleges that Riddell's advertising is also targeted at youth players and intended "to alleviate concerns among parents that participating in football could lead to long-term problems resulting from concussions." *Id.*, ¶ 54. This general statement is not tied to a single Plaintiffs' purchasing decision and these allegations purport to reference advertisements for Revolution Edge "Youth" Helmet and Riddell 360 "Youth" Helmet, neither of which product were allegedly purchased by any named Plaintiff. *Id.*, ¶¶ 54-56. Thus, they cannot be at issue in this lawsuit.

### C.   The Football Helmet Studies Referenced in the Amended Complaint

The Amended Complaint alleges that the claim of a 31% reduced risk of concussion was deceptive and misleading because the claim is based on the UPMC study, published in 2006, which Plaintiffs contend without specificity is "flawed" and compromised by "conflicts of interest." Am. Compl., ¶¶ 45-46. The Amended Complaint then – incorrectly – alleges that no

"other study of the Revolution helmet was able to replicate the 31% of the UMPC study." Am. Compl., ¶ 47.[8]

The Amended Complaint references a Biokinetics report from 2000 and inaccurately alleges that the report concluded that "no football helmet, no matter how revolutionary, could prevent concussions." Am. Compl., ¶ 64; *see* Innes Decl., Exh. D (attaching November 2000 Biokinetics Report). The Biokinetics report actually states that modern football helmets "have proven to be exceptionally effective in the prevention of severe head injury." *See* Innes Decl. Exh. D, Bates R 018832. The report also did not test any Revolution helmets, which were not released until 2002.

The Amended Complaint alleges that two "recent studies" support its view that no one helmet is "superior at preventing or reducing concussion than less expensive products." *Id.,* ¶ 59. The first study is from the University of Wisconsin but has yet to be published. Am. Compl., ¶¶ 60-61 (providing link to LA Times article). Based on the article, this study appears to have compared newer helmets across different brands (from 2003 to 2013), and not Revolution helmets against traditional VSR-4 helmets (which was the case in the UPMC study). The second study is from the Cleveland Clinic. *Id.,* ¶ 62-63. The Amended Complaint alleges that this study established that "modern football helmets are no better at protecting against concussions than vintage 'Leatherhead' football helmets." *Id.,* ¶ 62-63. However, the Amended Complaint neglects to mention that the study authors expressly stated they "do not advocate

---

[8]     As noted above (*see supra,* fn. 6), the Virginia Tech-Wake Forest studies showed that the Revolution helmet reduced the risk of concussions compared to traditional helmets by more than 31%.

reverting to leather headgear" and identified at least three intrinsic weaknesses of their own study.[9]  *See* Innes Decl., Exh. E.

## ARGUMENT

### I.      LEGAL STANDARD

#### A.      The Rule 8(a) Requirement

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  *Spruill v. Gillis*, 372 F.3d 218, 236 n. 12 (3d Cir. 2004).  The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level....

*Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

#### B.      The Rule 9(b) Requirement

The pleading standard for fraud-based claims, like the ones alleged in the Amended Complaint, is even more stringent.  Under Rule 9(b), a plaintiff must plead fraud-based claims with particularity.  This means the Amended Complaint here must plead the "date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a

---

[9]      The Cleveland Clinic study has also been the subject of much academic criticism and reproach.  In a letter to the editor, Dr. Cantu and other experts expressed stated that "it is unfortunate to have published this paper with the above flaws and irresponsible for the authors to publicly state that it proves leather helmets are similar to modern helmets – a patently false assertion."  *See* Innes Decl., Exh. E.

fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). "Plaintiffs must also allege who made a representation to whom and the general content of the misrepresentation." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004); *Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, No. 08-5380, 2009 WL 4730187, *5 (D.N.J. Dec. 3, 2009)(the Complaint must state "the who, what, when, where, and how: the first paragraph of a newspaper story"). The plaintiff must also "plead a specific omission of a material fact and the defendant's knowledge of it." *In re Samsung Front Loading Washer Mold Litigation*, No. 2:12-cv-05412 (WJM)(MF), 2014 WL 1334256, *7 (D.N.J. Apr. 2, 2014). Moreover, in a class action case, such as this, each "individually named plaintiff must satisfy Rule 9(b) independently." *Pacholec v. Home Depot USA, Inc.*, 2006 WL 2792788, *2 (D.N.J. Sept. 26, 2006).

### C.   Rule 12(b)(6) Standard

In deciding a Rule 12(b)(6) motion, a court "must accept all of the complaint's well-pleaded facts as true, [but] may disregard any legal conclusions," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009), as the court is "not bound to accept as true legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quotations omitted). Thus, "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," *Twombly*, 550 U.S. 544, 555 (2007) and "naked assertions devoid of further factual enhancement" are insufficient to avoid dismissal. *Ashcroft*, 556 U.S. at 678.

To survive a 12(b)(6) motion, the complaint's factual allegations must be sufficient to "raise a right to relief above the speculative level" by asserting "enough facts…to state a claim for relief that is plausible on its face." *Twombly,* 550 U.S. at 555, 570 (2007); *see also Fowler*, 578 F.3d at 210-11 ("a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts"). To find facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 677-80 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – that the pleader is entitled to relief").

This "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Fowler*, 578 F.3d at 211; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008) (in order to survive a motion to dismiss, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation").

## II.   THE AMENDED COMPLAINT FAILS TO SATISFY RULE 8.

Federal Rule of Civil Procedure 8 requires that "[w]hen a complaint involves multiple parties and multiple claims, each claim should make it clear which defendant or defendants are alleged to have committed which wrong." *Washington v. Thomas*, No. 09-11302, 2009 WL 1424193, at *2 (E.D. Mich. May 18, 2009). "A plaintiff does not satisfy Rule 8 when the complaint lump[s] all the defendants together and fail[s] to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong." *Crouch v. City of Hyattsville, Md.*, No. 09–CV–2544, 2010 WL 4868100, at *6 (D. Md. Nov. 23, 2010) (*quoting Classen Immunotherapies, Inc. v. Biogen IDEC*, 381 F. Supp. 2d 452, 455 (D. Md. 2005) (internal quotation marks omitted)); *see also Fox v. City of Greensboro*, 807 F. Supp. 2d 476 (M.D.N.C. 2011) (granting motion to dismiss because of failure to allege specific conduct as to each defendant); *Lane v. Capital Acquisitions & Mgmt. Co.*, No.: 04-60602, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) (a complaint that "lump[s] all the defendants together in each claim and provide[s] no factual basis to distinguish their conduct . . . fails to satisfy the

minimum standard of Rule 8"); *Appalachian Enters., Inc. v. ePayment Solutions Ltd.*, No. 01-CV
11502, 2004 WL 2813121, *7 (S.D.N.Y. Dec. 8, 2004) (same).

For this reason, courts routinely dismiss claims that, just as here, are collectively pleaded
against multiple defendants without identifying which conduct is attributable to which defendant.
*See, e.g., Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) (*en banc*) (affirming dismissal of a
count because Plaintiff's allegations concerning "undifferentiated" Defendants "fail[ed] to
specify any culpable action taken by any single defendant" and "fail[ed] to link [alleged actions]
to any defendant, named or unnamed"); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir.
2008) ("it is particularly important . . . that the complaint make clear exactly who is alleged to
have done what to whom, to provide each individual with fair notice as to the basis of the claims
against him or her.") (emphasis in original); *Monroe v. Owens*, 38 F. App'x 510, 515 (10th Cir.
2002) (affirming dismissal where "it is impossible to tell from the face of the complaint which
defendants were accused of which violations, what specific acts constituted violations, or when
alleged violations occurred"); *Bruggemann v. Amacore Group, Inc.*, No.: 8:09-cv-2562-T-
30MAP, 2010 WL 2696230, at *5 (M.D. Fla. Jul. 6, 2010) (dismissing unjust enrichment claim
that "lumps all of the Defendants together" because it is "vague and does not comport with
*Iqbal*"); *Weiszmann v. Kirkland & Ellis*, 732 F. Supp. 1540, 1549 (D. Colo. 1990) (holding that
"where . . . there are multiple defendants, the complaint should specify what conduct by each
defendant gives rise to the asserted claim").

Following this well-established law, this Court should dismiss with prejudice all claims
for relief because it is impossible to tell from the face of the Amended Complaint which
defendants are accused of which acts, what specific acts support liability under a particular
claim, or when alleged conduct supporting the alleged claims occurred.  As such, the Amended

Complaint should be dismissed with prejudice because it fails to give the fair notice to each

named Defendant as is required by Rule 8 of what each Defendant is accused of having done.[10]

## III.   THE AMENDED COMPLAINT FAILS TO SATISFY RULE 9(B)'S HEIGHTENED PLEADING REQUIREMENT

Rule 9(b) applies to each of the consumer protection statutes (*i.e.*, Counts I thru X)

alleged in the Amended Complaint,[11] as well as to each of the non-statutory or equitable claims

(*i.e.*, Counts XI and XIII) because they are similarly premised on a theory of fraud. *See Cal.*

---

[10]   Importantly, the law is settled that under Rule 9(b), like Rule 8(a), such indiscriminate lumping together of parties provides grounds for dismissal. *See Hale v. Stryker Orthopaedics*, No. 08-3367 (WJM), 2009 WL 321579, at *6 (D.N.J. Feb. 9, 2009)("[c]ollectivized allegations that generally allege fraud as against multiple defendants without informing each defendant as to the specific fraudulent acts he or she is alleged to have committed, do not satisfy Rule 9(b)"); *see also Nelson v. XACTA 3000, Inc.*, No. 08-5426 (MLC), 2009 WL 4119176, at *5 (D.N.J. Nov. 24, 2009); *Hokama v. E.F. Hutton & Co., Inc.*, 566 F. Supp. 636, 646 (C.D. Cal. 1983) (complaint did not satisfy Rule 9(b) where it "contain[ed] no specific allegations regarding the roles of the various defendants in the preparation and dissemination of the fraudulent representations"). Here, Plaintiffs' collective pleading inherently commits the cardinal sin of Rule 9(b) and thus should be dismissed.

[11]   See *Frederico*, 507 F.3d at 200 (3d Cir. 2007)(applying Rule 9(b) to the New Jersey Consumer Fraud Act); *Global Total Office L.P. v. Global Allies, LLC*, 2011 U.S. Dist. LEXIS 82900, *3 (N.D. Ill. 2011) ("plaintiff must plead allegations brought under the Illinois Consumer Fraud and Deceptive Practices Act with particularity"); *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002)("Most courts construing claims alleging violation of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading standard requirements of Rule 9(b)"); *Long v. Hewlett-Packard Co.*, C 06-02816, 2006 WL 4877691 (N.D. Cal. Dec. 21, 2006)(applying Rule 9(b) to the California Deceptive, Unfair and/or Unlawful Business Acts and Practices, Cal. Bus. & Prof. Code § 17200 et seq.); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1101 (9th Cir. 2003)(applying Rule 9(b) to Cal. Bus. & Prof. Code § 17500 and California's Unfair Competition Law, Bus. & Prof. Code § 17200); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)("we have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA"); *McBride v. Wells Fargo Bank, NA*, No. CV 11–02592–PHX–FJM, 2012 WL 1078467, *2 (D. Ariz. Mar. 30, 2012)( Rule 9(b) applies to claims brought under the Arizona Consumer Fraud Act, A.R.S. § 44-1522); *Kramer v. Ocwen Loan Servicing LLC*, CV-13-01415-PHX-DGC, 2014 WL 1827158 (D. Ariz. May 8, 2014)("omission" claims under A.R.S. § 44-1522 must be plead with particularity as required by Rule 9(b)).

*Public Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 160-163 (3d Cir. 2004) (where the complaint, regardless of how artfully drafted, is premised on a "core theory of fraud," Rule 9(b)'s heightened pleading requirement applies).

**A.     The Amended Complaint Fails to Plead the Who, What, When, Where and How of the Alleged Fraud**

The Amended Complaint does not contain the "precise allegations of date, time, or place" as required under Rule 9(b). *ETC Int'l v. Curriculum Advantage, Inc.*, No. 03-5898, 2006 WL 1645030, *11 (D.N.J. June 19, 2006)(Linares, J.); *see Kanter v. Barella*, 489 F.3d 170, 175 (3d Cir. 2007)(stating that Rule 9(b) requires plaintiff to plead the "'who, what, when, where, and how' of the events at issue"). Rule 9(b) "requires plaintiffs to identify the source of the allegedly fraudulent misrepresentation or omission" as well as the "substance of the alleged misrepresentations." *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002); *ETC Int'l*, 2006 WL 1645030, at *11 (citation omitted).

While Plaintiffs recite several representative examples of advertisements relating to "concussion reduction technology" or "31% reduction in risk of concussions," Am. Compl., ¶¶ 44-46, the Amended Complaint fails to allege "when" and "where" these advertisements were made or appeared, and in "what" manner or medium. To the extent these statements were part of a larger marketing campaign, the Amended Complaint does not allege "when" the campaign started or ended, or whether the advertisements are continuing today.[12] The Amended Complaint alleges that claims were made based on an actual on-field study (*i.e.*, the UPMC study), but only alleges that the methodology of the study was "flawed." The Amended Complaint *does not* contend that the study results were altered in any way or, that any defendant engaged in any

---

[12]     As noted earlier, by April 2011, Riddell had discontinued the 31% concussion reduction claim in its product advertisements.

deceptive conduct with respect to the results, let alone, how any Plaintiff was harmed by this non-alleged deceptive conduct.[13]

The Amended Complaint appears to take issue with: (i) a Riddell Revolution advertisement claim relating to "superior padding;" (ii) a promotional video explaining Riddell's "side impact protection…to better handle those blows to the side of the head and face;" and (iii) a protection tour to "deliver valuable information to youth football players, their parents and coaches about equipment care and fitting," and offers of Riddell helmets to high school teams "at a steep discount." Am. Compl., ¶¶ 49-51. However, the Amended Complaint fails to allege or explain "how" any of these advertisements were false, deceptive or misleading, or the impact of these particular claims on any particular Plaintiff. *Id.*

Lastly, Plaintiffs complain of eight statements allegedly made by Defendants, "through their direct sales force, product packaging, promotional advertisements and marketing, and retailers using information provided by Defendants." Am. Compl., ¶ 57. The Amended Complaint impermissibly casts a wide net without actually specifying the source of these statements (the "who"), the location where the statements appeared or were made (the "where"), the manner or medium in which these statements appeared (the "what"), or "when" these statements were made.

### B.     The Amended Complaint Neither Pleads Specific Omissions, Nor Defendants' Knowledge of the Same

Failing to plead the date, time, place or manner of the alleged fraud, Plaintiffs nevertheless conclude that there were "knowing or intentional omissions" in Riddell's

---

[13]   The Complaint identifies a peer review comment "stating concerns that the study suffers 'serious, if not fatal, methodological flaws." As noted above, in this same sentence, the reviewer (Dr. Cantu) said that the "flaw" he perceived "precludes my not doubting the data, but doubting the significance of the data."

advertisements. *See* Am. Compl., ¶ 92. "Under Rule 9(b), a plaintiff must plead a specific omission of a material fact and the defendant's knowledge of it." *In re Samsung Front Loading Washer Mold Litig.*, 2014 WL 1334256 at *7 (citation omitted). "Where a complaint merely alleges conclusory allegations that a defendant knew and failed to disclose material facts, dismissal is appropriate." *Id.* (citations omitted).

With respect to any alleged omission or concealment, the Amended Complaint first alludes to the "methodological flaws" or "conflicts of interest" in the UPMC study. Am. Compl., ¶¶45-46. However, there can be no omission or concealment because the same publicly available Journal of Neurosurgery article disclosing the results of the UPMC study also disclosed all peer-review comments (including the alleged "flaw") as well as Riddell's involvement or funding of the study (the alleged "conflict"). *See* Innes Decl., Exh. A. Indeed, the excerpt of the advertisement that the Amended Complaint references regarding the 31% reduction claim also discloses the citation to the Journal of Neurosurgery article itself. *See* Am. Compl., ¶ 45.

Next, Plaintiffs allege in a generalized manner that Defendants "are aware that their Riddell Football Helmets cannot actually reduce the frequency of concussions" and that Defendants "failed to disclose that significant evidence establishes that their Football Helmets provide no material difference in concussion reduction." *See* Am. Compl., ¶¶ 64, 67. Obviously, going by the results of the UPMC study, Riddell was aware of exactly the opposite. The Amended Complaint fails to specify any "significant evidence" demonstrating otherwise, let alone any specific knowledge by any Defendant of this unidentified "significant evidence." *Id.*, ¶ 67. At best, the Amended Complaint alludes to a 2000 report from Biokinetics allegedly "showing that no football helmet, no matter how revolutionary, could prevent concussions." *Id.* The problem with this allegation, much like the rest of the Amended Complaint, is that it completely mischaracterizes the "evidence." The 2000 report made no such statement regarding

17

modern helmets and never tested any of the helmets at issue in this lawsuit, as those helmets were not available until 2002.  *See* Innes Decl., Exh. D.

In *Samsung*, Judge Martini dismissed the class action plaintiffs' claims under the New Jersey Consumer Fraud Act because the complaint "lack[ed] specific facts supporting Samsung's knowledge of the alleged defect" regarding the products at issue:

> The Complaints do not pinpoint a specific time at which Samsung allegedly became aware of the purported defect.  Plaintiffs' Complaints allege that Samsung received an "avalanche of consumer complaints."  However, Plaintiffs fail to identify a particular complaint, who it was made by, who it was received by, or when it would have put Samsung on notice of the alleged defect.

*In re Samsung Front Loading Washer Mold Litig.*, 2014 WL 1334256 at *7.  Like *Samsung*, the Court should dismiss the Amended Complaint because Plaintiffs' allegations are entirely conclusory and fail to inject any measure of specificity or substantiation of its fraud-based allegations.

### 1.     The Amended Complaint Also Fails to Allege Facts Indicating the Source of the Alleged Misrepresentations

In Paragraph 57, the Amended Complaint recites eight statements in connection with the sale of Revolution helmets, and alleges in conclusory fashion that "Defendants, through directs sales and through their retailers, utilize" these eight statements.  *See* Am. Compl., ¶ 57.  The Amended Complaint fails to plead "where" these statements came from or "where" they were seen.  The Amended Complaint fails to allege facts sufficient to show Defendants' direct participation or involvement in these allegedly deceptive statements.  *See e.g.*, *In re Hydroxycut Marketing & Sales Practices Litig.*, No. 09-md-2087, 2014 WL 295302 (S.D. Cal. Jan. 27, 2014) (specific allegations of direct participation or control in dissemination of deceptive statements required); *see also Connick v. Suzuki Motor Co.*, Ltd., 174 Ill.2d 482, 501 (Ill. Sup. Ct. 1996)(dismissing claim under Illinois consumer fraud act claim based on misstatements of local

dealers, because complaint did not adequately plead agency between Suzuki and the local

dealers).

**C.**     <u>The Amended Complaint Fails to Plead Causation or Injury With Specificity</u>

The Amended Complaint also fails to plead with any specificity injury or causation,

which as explained in detail below, are necessary elements of the state consumer protection

statutes at issue. *See infra*, at Section V. B. Because the Amended Complaint fails to allege

"where" each named Plaintiff purchased the Riddell helmets in question, "how much" they paid

for the helmets and "how much" comparable helmets cost at the time (and thus "how much"

premium was allegedly paid), Plaintiffs have failed to allege any "ascertainable loss" or injury.

In *Toshiba*, Judge Debevoise similarly dismissed a claim brought under NJCFA because

the complaint failed to allege "facts upon which the court could find that the Plaintiffs have

suffered an ascertainable loss and that there was a causal relationship between the unlawful

conduct and the loss." *In re Toshiba Am. HD DVD Marketing and Sales Practices Litig.*, No.

08-939 (DRR) 2009 WL 2940081, *13 (D.N.J. Sept. 11, 2009). As the court noted:

> Regarding the ascertainable loss, the Plaintiffs fail to allege *where* (and for all Plaintiffs but three – when) *they purchased* their HD DVD Players; *how much they paid* for the HD DVD Players; and *how much regular DVD players cost* at the time (i.e., *how much of a "premium"* they claim to have paid for their HD DVD Players).

> Regarding causation, Plaintiffs fail to allege ***when*** Toshiba made its alleged misrepresentations and ***when, if ever, the Plaintiffs were exposed*** to those misrepresentations."

> With respect to the alleged omissions by Toshiba, the Plaintiff similarly do not plead facts – only conclusions – when they allege that they ***would not have purchased*** the HD HVD Players or paid a premium for the HD DVD Player if Toshiba had disclosed "that major movie studios would not be releasing their movies in the HD DVD format and that Toshiba was not committed to the HD DVD format."

*Id.*, at *13 (emphases added).  Likewise here, the Amended Complaint conclusorily alleges that Plaintiffs "paid price premiums."   This is not enough.  It does not allege the amount of those premiums or the price of comparable helmets.  *See* Am. Compl., ¶ 87.  There are no allegations as to "when" Riddell made, and "when" Plaintiffs were allegedly exposed, to any purported misrepresentations.  The Amended Complaint does not even allege the most basic element — namely that Plaintiffs "would not have purchased" the helmets at issue had they been aware of Defendants' alleged "omission of material facts," whatever they were.  *See, e.g.*, Am. Compl., ¶¶ 52, 66-67, 87.

### D.    The Amended Complaint Lacks Basic Factual Allegations As to Each Named Plaintiff

Tellingly, while Plaintiffs take great pains to attempt to discredit the fully-supported research upon which the advertising claims are based, the Amended Complaint fails to connect its ill-conceived narrative to the particular experience of any individually named Plaintiff as is required by Rule 9(b).  *See Pacholec*, 2006 WL 2792788, *2 (in the class action context each "individually named plaintiff must satisfy Rule 9(b) independently").

The section euphemistically entitled "Plaintiffs' Specific Factual Allegations" repeats, again in conclusory fashion, that each named Plaintiff was "exposed" to Riddell's "false and deceptive claims regarding the ability of the Football Helmets to reduce concussions," that each Plaintiff "paid a price premium," and that each Plaintiff "suffered economic harm."  *See* Am. Compl., ¶¶ 70–75.  Evidencing the admirable trait of consistency, there are no facts as to "when" and "where" each named Plaintiff saw the allegedly false or misleading claims, "where" each Plaintiff purchased the helmets, "why" or "how" the allegedly false or deceptive claims influenced their purchase, "what" each Plaintiff paid for the helmet and "what" were the prices of comparable helmets at the time of purchase.  The Amended Complaint fails to allege any particular advertisement that any named Plaintiff allegedly relied upon, fails to allege that any

Plaintiff was exposed to any particular advertisement mentioned in the Amended Complaint, or fails to allege that any Plaintiff bought the helmet because he or she thought it would reduce the risk of concussion and would not have purchased the helmets otherwise.

Conclusory allegations that Plaintiffs were "exposed" to allegedly "false and deceptive claims" do not satisfy Rule 9(b)'s requirements. *See* Am. Compl., ¶¶ 70–75. *See Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 539 (D.N.J. 2011)(Wolfson, J.) (court dismisses plaintiff's claims for lack of specificity because "Plaintiff[s] ha[ve] nowhere alleged whether or when the advertisements quoted in the [Amended] Complaint appeared ... nor [have they] alleged whether or when [each Plaintiff] viewed these advertisements"). Rejecting Plaintiffs' ploy here, the *Lieberson* courted noted "[i]ndeed, other than putting quotations around the alleged statements themselves, Plaintiff has provided absolutely no details concerning their origins or identity." *Id.* For the same reasons, Plaintiffs' fraud claims against all Defendants should be dismissed under Rule 9(b) for want of any level of particularity.

As stated above, the Amended Complaint fails to identify with specificity which of the alleged statements Plaintiffs relied on or were exposed to when making their purchase. *See* Am. Compl., ¶¶ 70-75. The Amended Complaint does not allege that the alleged advertisements played a substantial or influential part in the individually named Plaintiffs' purchasing decisions. The Amended Complaint utterly fails to explain why, or for what purpose, the Plaintiffs even purchased the Riddell helmets in the first place. The Amended Complaint assumes, without any basis, that there are *no other features* differentiating the Riddell helmets at issue from "less expensive" helmets, apart from the allegedly false advertisements relating to concussion

reduction.[14]  *See* Am. Compl., ¶ 52.  These glaring defects are fatal, and require dismissal of the Amended Complaint with prejudice.

**IV.    PLAINTIFFS' COMPLAINT OFFENDS THE *TWOMBLY* "PLAUSIBILITY" STANDARD, AND MUST BE DISMISSED**

Even if the Amended Complaint complied with Rule 9(b), and it does not, it must be dismissed under Rule 8(a) for the distinct reason that the claims are not plausible.  The plausibility standard announced in *Bell Atlantic v. Twombly,* 550 U.S. 544 (2007) is offended where the complaint asserts factual claims that are internally inconsistent. *See e.g. Campos v. I.N.S.*, 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998)("Courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductible therefrom, but need not accept factual claims that are internally inconsistent, facts which run counter to facts of which the court can take judicial notice, conclusory allegations, unwarranted deductions, or mere legal conclusions asserted by a party"); *McMahon v. City of Riviera Beach*, No. 08-80499, 2008 WL 4108051, *3 (S.D. Fla. Aug. 28, 2008)("a court is not required to 'accept factual claims that are internally inconsistent'").

**A.    The Inconsistency of Plaintiffs' Claims Render Them Implausible**

Here, Plaintiffs' factual claims in support of Riddell's purportedly deceptive acts are internally inconsistent. On the one hand, Plaintiffs allege that Riddell engaged in deceptive acts by marketing its products as providing a reduction in concussion risk when, as they contend, such a claim is impossible under any circumstance, and then those same Plaintiffs incongruously claim that Riddell engaged in deception by charging a price premium based on an overstated risk

---

[14]    Even the Riddell 360 model contains several features missing from the Riddell Revolution helmets, such as Quick Release™, removable moisture-resistant liner cover, an inflatable liner for back head support, and flex impact system.  As such the Amended Complaint fails to account for how these features may, or may not, contribute to any price premium allegedly charged.

22

*reduction* value.  Obviously, if the claim is that there can be no reduction of any risk, there can be no claim based on the level of reduction of risk.  Stated more simply, Plaintiffs simultaneously and inconsistently allege that Riddell's football helmets are absolutely ineffective, and then contradictorily allege that they are less effective than marketed.  Because one type of deception mutually excludes the other, the Amended Complaint does not advance a plausible claim.  Indeed, the inconsistency between these allegations, which are not plead in the alternative, renders Plaintiffs' allegations implausible, and subject to dismissal under Rule 8(a).

**B.    The Contradictory Facts Alleged as to Concealment
Also Render the Claims Implausible**

Moreover, the Amended Complaint cannot plausibly allege that Riddell concealed any material fact.  "In order to intend that others rely on the concealment of a fact, the fact must, of course, actually be *concealed.*"  *In re Toshiba,* 2009 WL 2940081, *12.  The Amended Complaint alleges that the UPMC study contained "methodological flaws" and that "Defendants subsequently failed to disclose to the public, and eventually Congress, that there were serious conflicts of interest in the development of the original [UPMC] study."  Am. Compl., ¶¶ 45-46.  However, the advertisements identified in the Amended Complaint expressly reference the UPMC study article and provide a citation to where it may be found.[15]  *See* Am. Compl., ¶ 45 (providing reference to "*Neurosurgery, February 2006, Vol. 58, No. 2").  This same article discloses all peer-review comments, including the perceived "methodological flaw" by one commenter, Dr. Cantu.  *See* Innes Decl., Exh. A.  Moreover, the first page of that same article prominently lists Riddell's VP of Research & Product Development as one of the authors.  The "acknowledgments" section of the article also discloses that Riddell provided a grant to the UPMC to help fund the study, and provided Revolution helmets at a reduced cost to study

_____

[15]    Conspicuously, Plaintiffs neglect to attach this article to their Complaint.

23

participants.  So Plaintiffs have failed to allege any facts that support their concealment theory

and they have not and cannot connect the alleged "flaws" in the study to any loss or injury they

suffered.

In any event, the Amended Complaint also admits that this advertising claim "has been

the subject of repeated investigations by the U.S. Senate and Federal Trade Commission," which

further undercuts Plaintiffs' theory of concealment.  *See* Am. Compl., ¶ 64; *In re Toshiba*, 2009

WL 2940081 at *12 ("As an initial matter, the notion that Toshiba could 'conceal' something

that was so well covered in the media defies logic").  Thus, Plaintiffs have not and cannot put

forward a plausible claim that Defendants concealed or made any material omissions.  *See*

*Hoffman v. Nordic Naturals, Inc.*, No. 12-cv-05870 SDW MCA, 2014 WL 1515602, *4 (D.N.J.

Apr. 17, 2014)(Wigenton, J.).

## V.   PLAINTIFFS' CONSUMER PROTECTION CLAIMS SHOULD BE DISMISSED UNDER 12(B)(6) FOR FAILURE TO STATE A CLAIM

In addition to Rules 8(a) and 9(b), Plaintiffs' consumer protection claims are subject to

dismissal under Rule 12(b)(6) for failure to allege facts in support of the elements common to

each state's laws, namely (1) a false or deceptive act, (2) causation or reliance, and (3)

ascertainable loss or injury.

### A.   The Amended Complaint Fails to Allege Facts Demonstrating a Deceptive Act or Unlawful Practice Under Any State Consumer Protection Statute

Plaintiffs' entire Amended Complaint rests on the single premise that Riddell cannot

substantiate the advertising claims that it made about the products, and which Plaintiffs

challenges in this action.  However, a false advertising case, like the one at bar, premised solely

on allegations that the defendant lacks substantiation does not state a viable cause of action and

must be dismissed.  *See, e.g., Franulovic v. Coca Cola Co.*, 390 Fed. Appx. 125, 127-28 (3d Cir.

2010) ("a [CFA] claim cannot be premised on a prior substantiation theory of liability").[16]

Stated differently, Plaintiffs' allegations are nothing more than "prior substantiation" claims

masquerading as "misrepresentations" and "knowing and intentional omissions."  This Court

should not countenance such disingenuous pleading designed to evade binding precedent.

The central allegations of fraud in the Amended Complaint are based on Defendants'

concussion reduction claims, and in particular the claim that Riddell Revolution helmets reduce

concussions by 31% compared to traditional helmets, which Plaintiffs contend are false and

unsubstantiated because they are based on a study that has "methodological flaws" and "conflicts

of interest."  Am. Compl., ¶¶ 45-48 ("Significantly, it does not appear any other study of the

Revolution helmet was able to replicate the 31% result of the UPMC study that Defendants

consistently cited to and relied upon in support of their claims").  Not only are these allegations

factually inaccurate (*i.e.*, the concussion reduction claims have been substantiated in subsequent

independent studies as pointed out by the FTC), but they are legally insufficient to state legally

cognizable claims under the New Jersey, California and Illinois consumer protection laws.

In *Franulovic*, a class action plaintiff asserted that Coca Cola's marketing of its "Enviga"

green tea soft drink violated the NJFCA, because the advertisements stated that drinking three

cans of Enviga daily would lead to weight loss.  *See Franulovic v. Coca-Cola Co.*, No. 07-0539

(RMB), 2009 WL 1025541, *1 (D.N.J. Apr. 16, 2009), *aff'd* 390 Fed. App'x 125 (3d Cir. 2010).

Like here, the plaintiff alleged that the "weight–loss representations for the product (whether

express or implied) cannot be substantiated because the small number of studies that exist are

---

[16]    *Fraker*, 2009 WL 5865687, *8 ("Because there is no private remedy for unsubstantiated advertising, Plaintiff may bring an action, if at all, only for false or misleading advertising."); *Bober v. Glaxo Wellcome PLC,* 246 F.3d 934, 939 n.2 (7th Cir. 2001); *see also Gredell v. Wyeth Labs., Inc.,* 854 N.E.2d 752, 756 (Ill. App. Ct. 2006) ("[A] lack of substantiation is deceptive only when the comparative claim at issue implies that there is substantiation for the claim made.")

25

conflicting and inadequate to substantiate the representations." *Franulovic*, 2009 WL 1025541, at *1. Coca Cola argued that plaintiff must affirmatively prove that the challenged representation is false and cannot shift the burden to defendant to prove that the claim is true and substantiated. *Id.* The district court agreed, and dismissed plaintiff's claim, pointing out that NJCFA "does not recognize this theory of liability." *Franulovic*, 390 Fed. App'x at 127. The Third Circuit affirmed and stated that "[n]o New Jersey or Third Circuit decision has applied the prior substantiation theory to the [NJFCA], and we, therefore, decline to do so here." *Id.* at 128.

In *Fraker*, the Eastern District of California similarly dismissed class action claims under the UCL, FAL and CLRA against Bayer, alleging that defendant's "One-A-Day Weight Smart" vitamin supplement advertising claims were false and deceptive because they were not supported by reliable scientific evidence. *Fraker v. Bayer Corp.*, CV F 08-1564, 2009 WL 5865687, *2 (E.D. Cal. Oct. 6, 2009). The court rejected plaintiff's attempts to "shoehorn an allegation of violation of the [Federal Trade Commission Act] … into a private cause of action," and noted that "Plaintiff has the burden to plead and prove facts that show that the claims that Defendants made in connection with [the] product are false and misleading." *Id.* at *7. In *Chavez*, the Central District of California also dismissed class action claims under the UCL and FAL, alleging that Nestle's immunity and brain development claims about its Juicy Juice beverages were false and misleading because they were unsubstantiated. *Chavez v. Nestle USA, Inc.*, CV 09-9192, 2011 WL 2150128, *5 (C.D. Cal. May 19, 2011) ("[p]laintiff has provided no authority for the proposition that the absence of substantiation of an advertising claim is, itself, falsity or somehow misleading").

In *Greifenstein*, the Northern District of Illinois dismissed a class action complaint under the ILFCA against Estee Lauder because it failed to plead with particularity "how the wrinkle-repair claims she identifies are false." *Greinfenstein v. Estee Lauder Corp., Inc.*, No. 12-cv-

09235, 2013 WL 3874073, *4 (N.D. Ill. July 26, 2010) (emphasis in original).  The plaintiff here

alleged that Estee Lauder had "no competent clinical evidence" to support of its advertising

claims despite defendants' representations that the claims were "clinically proven" and "proven

by science." *Id.* at *4.  However, the district court found this unpersuasive to allow the claim to

stand:

> And Greifenstein's complaint itself alleges that substantiation
> exists for Origins' claims that the serum is "clinically proven" to
> reduce wrinkles. *See* Compl. ¶ 25 (alleging that Origins
> collaborated with the University of Strasbourg to test the serum).
> Greifenstein may quarrel that Origins *failed to disclose the study's
> methodology and that Origins itself funded the study, see id.,* but
> the *mere existence of the study alone defeats her argument* that
> Origins' wrinkle-free claims lack substantiation.

*Id.* at *4 (emphasis added); *see also Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 939 n. 2 (7th

Cir. 2011)("a lack of substantiation is deceptive only when the comparative claim at issue

implies that there is substantiation for the claim made").  The Amended Complaint is similarly

defective because its attempts to premise its theory of fraud on a lack of substantiation.[17]

In sum, this Court should not sanction Plaintiffs' disingenuous attempt to plead around

the holdings of *Franulovic*, *Fraker*, *Greifenstein*, and the like, and dismiss Plaintiffs' claims with

prejudice.

**B.     Plaintiffs Fail to Allege Facts to Show Causation or Reliance
        Under the Applicable State Consumer Protection Laws**

A common element under each of the state consumer protections laws alleged is that

there must be a "causal nexus" between the alleged unlawful conduct and any alleged injury.

---

[17]     Moreover, like the facially defective complaint in *Greifenstein*, the Complaint in this case
also acknowledges that the 31% concussion reduction claim is based on the UMPC study.
Am. Compl., ¶¶ 45-48.  Thus, irrespective of any issues Plaintiffs may have with the
alleged "flaw" or "conflict of interest," the *very existence* of the UPMC study eliminates
any notion that the advertising claims are false or misleading because they are
unsubstantiated.

*See, e.g., In re Gerber Probiotic Sales Practices Litig.*, No. 12-835, 2013 WL 4517994, *6

(D.N.J. Aug. 23, 2013)(finding that class action plaintiffs failed to sufficiently allege causation);

*People ex rel. Madigan v. United Const. of Am., Inc.*, 981 N.E.2d 404, 408 *app. denied*, 985

N.E.2d 307 (Ill. 2013)("valid claim must show that the consumer fraud proximately caused

plaintiff's injury"); *Berenguer v. Warner-Lambert Co.*, No. 02-05242, 2003 WL 24299241, *2

(Fla. Cir. Ct. July 31, 2003)(a FDUPTA claim must be dismissed where plaintiff does "not allege

that [he] saw any of the advertisements … let alone that [he] saw an alleged misrepresentation in

an advertisement that caused [him] to purchase" the product).

      The California and Arizona consumer protection laws additionally require reliance.  *See*

*Ehrlich v. BMW of N. Am.*, LLC, 801 F. Supp. 2d 908, 920 (C.D. Cal. 2010)(because plaintiff did

not allege that had he reviewed or seen any misrepresentations by the defendant and did not

allege that he would have behaved differently had he known about the alleged defect, the court

dismissed the UCL claim); *Delacruz v. Cytosport, Inc.*, C 11-3532, 2012 WL 1215243, *8 (N.D.

Cal. Apr. 11, 2012)(discussing the reliance requirement under California's UCL, FAL and

CLRA); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942,

969 (S.D. Cal. 2012)("[f]or fraud-based claims under all three consumer statutes (i.e., UCL,

FAL, and CLRA) the named Class members must allege actual reliance"); *Kuehn v. Stanley*, 208

Ariz. 124, 129, 91 P.3d 346, 351 (Ariz. Ct. App. 2004)(actual reliance is a required element

under the Arizona Consumer Fraud Act).

      In *Gerber*, a number of plaintiffs alleged that there was a causal connection between

plaintiffs' injury and defendant's conduct because plaintiffs thought "they were purchasing, and

paying for, products with immune benefits Gerber stated they had," but plaintiffs "did not

receive what they paid for because [] Gerber misrepresented the qualities of its products."  *In re*

*Gerber Probiotic Sales Practice Litig.*, 2013 WL 4517994, *5-6.  The complaint in *Gerber*

referenced a number of different types of representative "advertisements" including TV

commercials, press releases, and excerpts from Gerber's website, and premised its claims on

Gerber's "overall marketing campaign" in connection with the products.   Nonetheless, Judge

Linares found the complaint defective:

> However, no Plaintiff provides facts sufficient to allege causation in connection with those aspects of Defendant's marketing campaign.  For example, other than the Products' label, no Plaintiff alleges even the *general type or medium of "advertising" to which they were allegedly exposed*.   Nor do Plaintiffs otherwise allege *facts as to how* misrepresentations in the "advertising" caused their injuries.   Therefore the [complaint] does not contain sufficient facts to allege that the injuries which resulted to Plaintiffs were *fairly traceable* to any of Gerber's representations other than those on the Products' labeling.

*Id.* at *6 (citations omitted and emphases added).  Like the defective complaint in *Gerber*, the

Amended Complaint here fails to specifically link any of the representative "advertisements" in

the Amended Complaint (*see* ¶¶ 42-69) to any of the named Plaintiffs' alleged injuries.

Because the Amended Complaint does not plead where and when Plaintiffs saw or were

exposed to the alleged misrepresentations, it has failed to adequately plead causation.   Merely

stating in conclusory fashion that Plaintiffs "relied" or were "exposed" is not sufficient to cure

the deficiency.  *See, e.g.*, Am. Compl., ¶¶ 70-75; *Gerber*, 2013 WL 4517994, *6.   Indeed, these

generalized allegations of causation are prime examples of the "formulaic recitation of the

elements" which are subject to dismissal.

In *Dewey*, the class action plaintiffs alleged that they relied on alleged misrepresentations

on the defendant's website and in the owner's manual without alleging any facts to demonstrate

when the statements were made or at what point they were exposed to any of the statements in

question.  *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505 (D.N.J. 2008).   The court dismissed

the NJCFA claim, finding that these conclusory allegations of causation or reliance were

insufficient.  *See Dewey*, 558 F. Supp. 2d at 526-627 (mere allegations that defendants'

representations had the "cause and effect of inducing cautious consumers into leasing and/or

purchasing the Class Vehicles" are simply "legal conclusions, not factual allegations that would,

if true, establish a 'causal nexus'"). In *Toshiba*, the court also found the class action complaint

against Toshiba defective insofar as it pled causation in only a conclusory manner. *See In re

Toshiba*, 2009 WL 2940081, *13 (D.N.J. 2009) ("[r]egarding the causation, Plaintiffs fails to

allege when Toshiba made its alleged misrepresentations and when, if ever, the Plaintiffs were

exposed to those misrepresentations").[18]

---

[18]     The consumer protection laws of the other states are no different in this regard. *See
Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 155, 776 N.E.2d 151, 164 (Ill.
2002)(dismissing Illinois consumer fraud claims where, *inter alia*, Plaintiff failed to
sufficiently allege that he was exposed to advertisements and suffered injury as a result);
*People ex rel. Madigan v. United Const. of Am., Inc.*, 981 N.E.2d 404, 208, appeal
denied, 985 N.E.2d 307 (Ill. 2003)(a plaintiff must allege "he had seen or heard the
advertisement and was deceived by it" and merely alleging a market theory that "prices
were inflated by consumer demand based on deceptive advertising, is not enough to state
a claim"); *Haun v. Don Mealy Imports, Inc.*, 285 F. Supp. 2d 1297, 1307 (M.D. Fla.
2003)(dismissing FDUPTA claim for failure to allege causation because of "conclusory
statements" as to exposure and resulting injury); *Berenguer v*, 2003 WL 24299241, *2
(FDUTPA claim must be dismissed where plaintiff does "not allege that [he] saw any of
the advertisements . . . let alone that [he] saw an alleged misrepresentation in an
advertisement that caused [him] to purchase" the product); *Montgomery v. New Piper
Aircraft*, 209 F.R.D. 221, 229 (S.D. Fla. 2002)(to establish causation under the FDUTPA,
a court must determine that "each putative class member was exposed to the Defendants'
advertising and marketing materials alleged to constitute a deceptive trade practice" and
"if exposed, the advertising and marketing materials caused . . . damage"); *Surzyn v.
Diamond Foods, Inc.*, C-14-0136 SBA, 2014 WL 2212216 (N.D. Cal. May 28, 2014)
(dismissing California UCL, FAL, and CLRA claims because Plaintiff failed to allege
they were exposed to the alleged false advertisements at issue); *Lorenzo v. Qualcomm
Inc.*, 603 F. Supp.2d 1291, 1303 (S.D. Cal. 2009)(complaint must be dismissed where
plaintiff fails to allege she "relied on representations made by [defendant] when he
purchased" the product or where she "would not have purchased" the product); *Kuehn v.
Stanley*, 208 Ariz. 124, 129, 91 P.3d 346, 351 (Ct. App. 2004) (dismissing Arizona
consumer fraud claim where Plaintiffs failed to allege they were exposed to alleged
misrepresentation prior to entering into transaction); *Gerber v. Wells Fargo Bank, N.A.*,
CV-11-01083-PHX-NVW, 2011 WL 5007921 (D. Ariz. Oct. 20, 2011) (dismissing for
failure to plead reliance on alleged advertisements).

To the extent Plaintiffs are advancing a "fraudulent omission" claim, each individually named Plaintiff must allege facts to show that "had the omitted information been disclosed, [she] *would have been aware of it* and *behaved differently*." *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 451 (D.N.J. 2012)(Wolfson, J.)(analyzing sufficiency of plaintiffs' allegations under California's UCL and FAL). Such allegations – that Plaintiffs would not have purchased the Riddell helmets at issue had they known about the allegedly omitted facts – are conspicuously missing from the Amended Complaint. *See also Mickens v. Ford Motor Co.,* 900 F. Supp. 2d 427, 447 (D.N.J. 2012)(to survive a motion to dismiss on causation grounds, a New Jersey consumer fraud plaintiff must allege that consumers would not have purchased product if alleged defect had been disclosed); *Raziev v. Compass Truck Sales, LLC*, 13 C 737, 2013 WL 4846894, *5 (N.D. Ill. Sept. 10, 2013)(Illinois consumer fraud plaintiff must allege that he "would not have purchased the [product] at the price at which he did"); *Beaver v. Inkmart, LLC*, 12-60028, 2012 WL 3822264, *4 (S.D. Fla. Sept. 4, 2012)(a FDUTPA plaintiff must allege he "would not have decided to purchase" the product); *Noll v. eBay Inc.,* 5:11-CV-04585-EJD, 2013 WL 2384250 (N.D. Cal. May 30, 2013)(dismissing UCL, FAL and CLRA claims where Plaintiff could not establish that he would have acted differently absent alleged misrepresentations); *Ehrlich*, 801 F. Supp.2d 908, 920 (finding a complaint alleging UCL claim defective because it was "devoid of allegations that Plaintiff would have plausibly been aware of the cracking defect before he purchased his MINI had BMW publicized this information"); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.,* 955 F. Supp.2d 1311, 1327 (S.D. Fla. 2013)(a claim under Arizona consumer fraud act must allege that Plaintiffs would not have purchased product to survive motion to dismiss); *Demaree v. Wal-Mart Stores, Inc.*, 511 F. App'x 660, 661 (9th Cir. 2013)(akin to a causation requirement, "an actionable omission" under Arizona consumer fraud act "'must be logically related to the transaction in which it occurs'").

31

It is also insufficient to set forth only conclusory allegations as to "omission."  As the court in *Toshiba* held:

> With respect to the alleged omissions by Toshiba, the Plaintiffs similarly do not plead facts – only conclusions – when they allege that they would not have purchased the HD DVD Player if Toshiba had disclosed "that major movie studios would not be releasing their movies in the HD DVD format and that Toshiba was not committed to the HD DVD format."

*In re Toshiba*, 2009 WL 2940081, *13.  The Amended Complaint in this case does not allege that any Plaintiff would not have purchased the Riddell helmets at issue had he or she known of the alleged defect or omission (*e.g.*, that Riddell's Revolution helmets "provide no material difference in concussion reduction").  *See, e.g.*, Am. Compl., ¶¶ 67-75.  It is worth repeating here that Plaintiffs have not even sufficiently alleged a defect, and have only proffered speculative and conclusory allegations that Riddell's helmets "provide no material difference in concussion reduction."  Am. Compl., ¶ 67.

Lastly, the Amended Complaint cannot plausibly allege that any of the Plaintiffs purchased the Riddell helmets based on any advertising claim that Riddell's helmets "could prevent concussions," in light of Riddell's clear warnings on its product packaging to the contrary.  *See supra*, p. 8.  Indeed, courts have held that it is unreasonable for a consumer to rely on statements made in the face of a clear disclaimer to the contrary.  *See In re Samsung Electronics Am., Inc. Blu-Ray Class Action Litigation.*, No. 08-cv-0663, 2008 WL 5451024, *2-4 (D.N.J. Dec. 31, 2008)(dismissing NJCFA claim that manufacturer attempted to conceal defect that Blu-ray players were not compatible with many titles, where this very information was disclosed by a disclaimer inside the packaging); *Saunders v. Michigan Ave. Nat. Bank*, 278 Ill. App. 3d 307, 312, 662 N.E.2d 602, 608 (Ill. App. Ct. 1996) (dismissing Illinois Consumer Fraud Act claim that bank "hid" overdraft charge because the pamphlets provided to the customer expressly stated charges therein); *Merl v. Warner Bros. Entertainment, Inc.*, No. 1:12-cv-20870,

2013 WL 266049 (S.D. Fla. Jan. 23, 2013)(dismissing FDUTPA claim that manufacturers

misrepresented availability of digital copies of movies with DVD purchases where disclaimer on

packaging disclosed expiration date of such availability); *McMahon v. Take-Two Interactive*

*Software, Inc.*, No. 13-02032-VAP, 2014 WL 324008 (C.D. Cal. Jan. 29, 2014)(dismissing

California's UCL and FAL claims that manufacturer concealed availability of online component

of videogame where disclaimers on packaging indicated that access to the online component was

not guaranteed and "may not be available to all users"); *In re American Southwest Mortg.*

*Litigation*, No. 89-cv-462, 1990 WL 304214, *4-5 (D. Ariz. July 12, 1990) (dismissing state law

claims, including ACFA claims, where projections provided to investors contained disclaimers

that indicated projections were subject to certain influences and assumptions).  In light of the

clear disclaimer here, Plaintiffs cannot plausibly allege that a consumer (much less a reasonable

one) was misled to believe that products in question could prevent or eliminate all risks of

concussions.

### C.    The Amended Complaint Fails to Allege Facts Demonstrating Ascertainable Loss or Injury

Another common element of the various state consumer protection laws is the

requirement of injury or "ascertainable loss."  To adequately plead this element, Plaintiffs must

allege facts to show "ascertainable loss," which under the NJFCA must be "quantifiable or

measurable" and not "hypothetical or illusory."  *Barrows v. Chase Manhattan Mortgage Corp.*,

465 F. Supp. 2d 347, 361 (D.N.J. Dec. 8, 2006); *Smajlaj v. Campbell Soup Co.*, 782 F.Supp. 2d

84, 96 (D.N.J. Mar. 23, 2011)(a plaintiff alleging a benefit-of-the-bargain theory must show that

the difference in value between the product promised and the one received can be reasonably

quantified" and the "[f]ailure to quantify this difference in value results in the dismissal of a

claim").

Here, the Amended Complaint fails to allege any ascertainable loss. Indeed, although there is a section of the Amended Complaint entitled "Ascertainable Loss," it is utterly devoid of any information as to the price that Plaintiffs paid for the helmets in question or the price of any allegedly comparable helmets. Am. Compl., ¶ 87. The Amended Complaint merely alleges in conclusory manner that "Plaintiffs and members paid price premiums...." *Id.* The Plaintiffs do not attempt to quantify the measure of their out-of-pocket loss. *See Smajlaj*, 782 F.Supp.2d at 101 ("[f]ailure to quantify this difference in value results in the dismissal of a claim").

NJCFA claims are routinely dismissed where, as here, plaintiffs fail to allege and specify at the outset the ascertainable loss. *See Lieberson,* 865 F. Supp. 2d at 541 ("absent any specific information concerning the price of the Products or the price of any comparable products, Plaintiff's allegations concerning the ascertainable loss are nothing more than unsupported conclusory statements that are insufficient to withstand a motion to dismiss"); *Solo v. Bed Bath & Beyond*, Inc., No. 06-1908(SRC), 2007 WL 1237825, *3 (D.N.J. Apr. 26, 2007)(dismissing complaint because plaintiff failed to "set forth either an out-of-pocket loss or a demonstration of loss in value sufficient to satisfy the ascertainable loss requirement"); *Hemy v. Perdue Farms, Inc.*, 2011 U.S. Dist. LEXIS 137923, *43-54 (D.N.J. Nov. 30, 2010)(unsupported allegations of a "price premium" are insufficient to establish ascertainable loss); *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 282 (D.N.J. Dec. 20, 2011)(plaintiff fails to plead ascertainable loss because he fails to "allege how much he paid for his [coffee] brewer and how much other comparable brewers manufactured by Defendants' competitors cost at the time of purchase"); *In re Samsung Front Loading Washer Mold Litig.*, 2014 WL 1334256, at *6. In addition, none of the individually named Plaintiffs have alleged facts pertinent to his or her "own experience" with the product, other than that he or she purchased the products. In *Franulovic*,

the court held that such bare allegations by the individually named Plaintiff were insufficient to allege "ascertainable loss" as to herself:

> Here, Melfi has not alleged in her Complaint any particulars as to her own experience with Enviga. The only specific allegation is that she purchased Enviga. She has not alleged when she purchased Enviga or for what price, how much of the beverage she purchased and consumed, which advertising enticed her to buy Enviga, her expectations for Enviga based on the advertising, or Enviga's failure to live up to those expectations. Instead, Melfi has alleged general statements that Enviga's claims are false and misleading to the majority of "average reasonable consumers." While it could be implied that Melfi's allegations concerning the "average reasonable consumer" are also her own, such an implication is insufficient, however, because her claim is based on a statute that requires a plaintiff to plead a particularized ascertainable loss in order to have standing to bring such a claim.

See *Franulovic*, 2007 WL 3166953, at *7. Like the plaintiff in *Franulovic*, the Plaintiffs in this case do not allege what the prices each paid for the helmets in question, whether the helmets were actually used by each of the Plaintiffs, what advertisements enticed the purchases, each of the Plaintiffs' expectations for the helmets in light of the advertising and the Riddell helmets' failure to meet those expectations. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975)(to survive dismissal, the putative class representative "still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants"). The consumer protection laws of other states similarly require class action plaintiffs to plead a plausible theory of damages at the pleading stage and to later substantiate those allegations with evidence.[19]

---

[19] *See, e.g., Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d 399, 402 (Ill. App. 1st Dist. 2009)(under the Illinois Consumer Fraud Act, "[a]ctual damages must be calculable" and "measured by the plaintiff's loss"); *Petty v. Chrysler Corp.*, 343 Ill. App. 3d 815, 823 (Ill. App. 1st Dist. 2003)(ICFA "damages may not be predicated on mere speculation, hypothesis, conjecture or whim"); *Camasta v. Jos. A Bank Clothiers, Inc.*, No 12 C 7782, 2013 WL 474509, at *4 (N.D. Ill. Feb. 7, 2013)(allegations that plaintiff would not have purchased the products in question was insufficient to show harm because plaintiff received the shirts, which was the benefit of the bargain, and he could

35

The Amended Complaint fails to plead a plausible theory of damages because it is unable to reduce the allegedly deceptive claims to any quantifiable or measurable number.  As best, it sets forth conclusory and contradictory allegations about "price premiums." *See, e.g.*, Am. Compl., ¶¶ 52-53 (alleging in conclusory manner that "[c]ommensurate with these concussion reduction promises are price premiums that Defendants charge," but then stating contradictory allegations that the same helmets are being offered by Defendants "at a steep discount").

None of the individually named Plaintiffs are able to allege or quantify the actual value of the helmets, or that any of them paid more than the helmets' value absent the allegedly deceptive claims.  Plaintiffs' inability to plead a plausible theory of damages is underscored by its overly broad class definition, which purports to encompass "[a]ll purchasers of Riddell Football

---

not show that "he paid more than the value of the merchandise"); *Rollins Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. Ct. App. 1984)("actual damages" is defined under the FDUTPA as "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties"); *Zehel-Miller v. Astrazenaca Pharmaceuticals, LP*, 223 F.R.D. 659, 664 (M.D. Fla. 2004)("the question whether an individual class member got his or her money's worth is inherently individual" and "involves very much the same questions as would a claim for money damages for personal injury"); *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002)(dismissing action where plaintiff failed to plead diminished market value); *Prohias v. Pfizer*, 485 F. Supp. 2d 1329, 1337 (S.D. Fla. 2007)(to prevail on the so-called "price inflation," class plaintiffs must show that they paid a higher price for the product than the "market would have borne if not for the allegedly deceptive advertising scheme"); *Lanovaz v. Twinings North Am., Inc.*, No. C–12–02646–RMW, 2014 WL 1652338, *6 (N.D. Cal. 2014)("proper measure of restitution in a mislabeling case" brought under California's FAL, UCL and CLRA is "contemplates the production of evidence that attaches a dollar value to the 'consumer impact or advantage' caused by the unlawful business practices"); *In re POM Wonderful LLC*, No. 10–02199 DDP RZX, 2014 WL 1225184, *3 (C.D. Cal. Mar. 25, 2014)(rejecting a full refund model because consumers benefited from consumption of the defendant's products); *Astiana v. Ben & Jerry's Homemade, Inc.*, C 10–4387 PJH, 2014 WL 60097, *12–13 (N.D. Cal. Jan. 7, 2014)(denying class certification for "all natural" ice cream labels based in part on insufficient proof of damages); *Peery v. Hansen*, 120 Ariz. 266, 585 P.2d 574, 578 (Ariz. Ct. App. 1978) ("injury" means "out-of-pocket expenses caused by" the unlawful conduct prohibited by the Arizona Consumer Fraud Act).

Helmets promoted as containing concussion reduction technology within the United States," but so regardless of whether any class member purchased the helmets based on the concussion reduction claims.  *See* Am. Compl., ¶ 76.

## VI.    THE CALIFORNIA PLAINTIFF'S "UNFAIR" AND "UNLAWFUL" (BUSINESS ACTS AND PRACTICES CLAIMS (COUNTS IV & VI) FAIL AS A MATTER OF LAW

The California Plaintiff's "Unfair" and "unlawful" Business Acts and Practices Claims (Count IV & VI) fail as a matter of law.  There is simply no cognizable argument that Defendants' alleged acts in any way fall within the "unfair" prong of the UCL (Count IV).  First, the law does not define "unfair" and California courts have not decided which test applies to such actions when they involve consumers.  *See Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012); *see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163, 187 (Cal. Sup. Ct. 1999)(disapproving of the "unfair conduct" test where courts examine the "the utility of the defendant's conduct against the gravity of the harm to the alleged victim").  Even if a clear test were to emerge in the law, however, the Amended Complaint does not explain how any of the challenged advertisements "offend established public policy" or were "immoral, unethical, oppressive, unscrupulous or substantially injurious" to consumers.  The Amended Complaint does not allege that any California consumer purchased and was injured due to a defect in Riddell's product.  At best, the Amended Complaint alleges that the Riddell helmets at issue "made no material difference" in terms of concussion protection than less expensive helmets, and thus they were no worse than other products in the marketplace.  The only injuries that these consumers allegedly suffered were economic injuries – *i.e.*, the price differences each California consumer presumably paid for the Riddell helmets at issue (and which differential Plaintiffs are not even able to specify or quantify).  And even this appears to be far-fetched, as the Amended Complaint notes that Defendants are "often offering Riddell

37

Football Helmets at a discount to high profile high school teams…." Am. Compl., ¶ 53. In short, there is no plausible theory that Plaintiffs can advance to suggest that any California consumer was "unfairly victimized." Thus, Count IV must be dismissed.

Similarly, Count VI of the Amended Complaint fails to state a plausible claim for relief. In order to state a claim under the "unlawful" prong of UCL, Plaintiffs are required to allege with particularity that Defendants violated a state or federal law. *See Rice v. Sunbeam Prods., Inc.*, No. CV 12–7923–CAS–(AJWx), 2013 WL 146270, *8 (C.D. Cal. Jan. 7, 2013)(without an actual statutory violation, "there is no unlawful conduct to serve as the basis of plaintiff's UCL claim"). In this case, the California Plaintiff's "unlawful" claim is premised on Defendants' alleged violations of the CLRA and FAL. Because the Amended Complaint fails to state a claim under either the FAL or CLRA, Count VI of the Amended Complaint must be dismissed.

## VII.   THE ARIZONA CONSUMER FRAUD ACT CLAIMS (COUNTS IX & X) MUST BE DISMISSED AS UNTIMELY

The Arizona Consumer Fraud Act claims (Count IX and X) are barred by the applicable one-year statute of limitations. "A statute of limitations defense may appropriately be raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6) under the law of this Circuit." *Torpey v. Anthem Blue Cross Blue Shield of Cal.,* CIV.A. 13-3853, 2014 WL 1569498, *2 (D.N.J. Apr. 17, 2014). The statute of limitations applicable to claims brought under the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §44-1522 *et seq.* (Counts IX and X) is one year. *See* Ariz. Rev. Stat. § 12-541(5). Counts IX and X are brought on behalf of the Arizona consumer class. Am. Compl., ¶ 172. Kenny King is the only named Plaintiff in Arizona and the Amended Complaint does not allege that he purchased any of the helmets within the one year limitations period. The Amended Complaint also asserts that the "issue has been the subject of repeated investigations by the U.S. Senate and Federal Trade Commission." *Id.*, ¶ 65. This highly publicized investigation against Riddell began at least as early as January 2011, undercutting any notion that

Kenny King could not have discovered the basis for his claims since at least that time. *See Bergdale v. Countrywide Bank FSB*, 2014 WL 2885473 (D. Ariz. Jun. 25, 2014)(limitation period runs when "plaintiff knows or should have known of both the *what* and *who* elements of causation"). Therefore, Counts XI and X must be dismissed in their entirety as untimely. *See Fernandez v. Takata Seat Belts, Inc.*, 108 P.3d 917, 919 (Ariz. 2005)(if the named plaintiff does not have an individual claim against a defendant, then he cannot maintain a class action against that defendant).

## VIII.  ALL EQUITABLE CLAIMS (COUNTS XI, XII & XIII) SHOULD BE DISMISSED

### A.  The Unjust Enrichment and Quasi-Contract Claims (Counts XI & XII) Should Be Dismissed Because There Is No Direct Relationship Alleged

"As a general matter, absent a conflict, a court sitting in diversity applies the law of the forum state." *In re Gerber Probiotic Sales Practices Litig.*, 2013 WL 4517994, *11 (citations omitted). "Choice of law analysis must also be applied in the class action context." *Id.*; *see also In re Samsung Front Loading Washer Mold Litig.*, 2014 WL 1334256, at *2 ("a number of courts in this district have determined choice of law analysis to be appropriate at the motion to dismiss stage"). The claim of "[u]njust enrichment is a shared feature of many states' common law ... [and] many courts have found that there is no actual conflict between different states' laws." *Avram v. Samsung Elecs. Am. Inc.*, No. 2:11-6973, 2013 WL 3654090 (D.N.J. July 11, 2013) (collecting cases); *In re Mercedes–Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. Apr. 24, 2009) (finding that any differences under the laws of the various states are "not material and do not create actual conflict"); *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 464 (D.N.J. Feb. 11, 2009) (concluding that "there are no actual conflicts among the laws of unjust enrichment").

39

To state a claim for unjust enrichment, a Plaintiff must allege that Defendants "received a benefit [conferred by Plaintiffs] and that retention of that benefit without payment would be unjust." *See McGuire v. BMW of North Am., LLC*, No. 13-cv-7356, 2014 WL 2566132, *2 (D.N.J. June 6, 2014). The requirement that a plaintiff must confer a benefit on the defendant has consistently been interpreted as requiring the plaintiff "allege a sufficiently direct relationship with the defendant to support the claim." *See, e.g.*, *Avram v. Samsung Elecs. Am., Inc.* Nos. 2:11-6973, 2:12-976, 2013 WL 3654090, *20-21 (D.N.J. July 11, 2013). Thus, under New Jersey law, "an indirect purchaser cannot succeed on a claim for unjust enrichment. When an individual purchases a consumer product from a third-party store and not the manufacturer, the purchaser has not conferred a benefit directly to the manufacturer such that the manufacturer could be found to have been unjustly enriched." *Weske v. Samsung Elecs. Am., Inc.*, 2012 U.S. Dist. LEXIS 32289, *23 (D.N.J. Mar. 12 2012); *see also Hughes v. Panasonic Consumer Elecs., Co.*, 2011 U.S. Dist. LEXIS 79504, *27 (D.N.J. July 21, 2011)(dismissing unjust enrichment claim on 12(b)(6) motion where plaintiffs in purported class action purchased allegedly defective product from third-party sellers); *Avram*, 2013 WL 3654090 at *1 (same).

The Amended Complaint fails to allege any relationship between the named Plaintiffs and Defendants, and does not allege that any of the named Plaintiffs purchased the helmets in question directly from Defendants. *See* Am. Compl., ¶¶ 70-75. In fact, Plaintiffs do not even allege where they purchased the helmets. Therefore, the unjust enrichment claim brought on behalf of members of the nationwide Class must be dismissed. *See Arlandson v. Hartz Mtn. Corp.*, 792 F. Supp. 2d 691, 711 (D.N.J. May 26, 2011)(finding that class plaintiffs failed to establish a sufficiently direct relationship to defendant where they purchased the defendant's products through a third party retailer).

Additionally, New Jersey does not recognize unjust enrichment as a viable claim to the extent that it is premised on a fraud or tort theory. *See McGuire*, 2014 WL 2566132, at *3; *Warma Witter Kreisler, Inc.*, 2009 WL 4730187, at *7 (dismissing unjust enrichment claim because "Plaintiff does not claim that it failed to receive the printer for which it conferred a benefit on the Defendant; rather, Plaintiff's theory of recovery is based on the assertion that it was misled by Samsung as to the fitness of the printer and that as a result of Samsung's tortious conduct, Plaintiff is allowed to recover damages"); *Pappalardo v. Combat Sports, Inc.*, 2011 U.S. Dist. LEXIS 147902, *31–35 (D.N.J. Dec. 23, 2011) (granting motion to dismiss unjust enrichment claim because "[i]t was presented as a tort-based theory of recovery, in that Plaintiffs d[id] not allege that they did not receive the composite barreled bats they purchased, but rather that the Manufacturer Defendants and League Defendants misrepresented that the composite barreled bats ... were suitable for use in organized youth baseball").

Plaintiffs' claim of assumpsit or quasi-contract (Count XII) rests on the notion that there is "money being had and received by Defendants, either directly or indirectly, at the expense of Plaintiffs." *See* Am. Compl., ¶ 189.  This claim appears duplicative of Plaintiffs' unjust enrichment claim, but recast in a slightly different light.  *See, e.g., MSKP Oak Grove, LLC v. Venuto*, 875 F. Supp. 2d 426, 442 (D.N.J. June 20, 2012)(examining claim for "unjust enrichment" as a "theory of quasi-contractual relief"); *see also N.Y. Pipeline Mechanical Contractors, LLC v. Sabema Plumbing & Heating Co., Inc.*, No. 10-148, 2012 WL 209349, *2 (D.N.J. Jan. 24, 2012)("[o]ne cause of action for unjust enrichment at common law was the action in assumpsit").  As before, because there is not alleged any direct relationship between any of the named Plaintiffs and Defendants, this count must similarly be dismissed.  In short, the Amended Complaint fails to allege any money that Plaintiffs paid to Defendants.

41

**B.**     <u>Plaintiffs Fail to State a Claim for Declaratory Relief (Count XIII)</u>

The final claim in the Amended Complaint seeks declaratory relief on the grounds that Defendants' conduct is "continuing" and class members "may suffer irreparable harm." Plaintiffs seek an order requiring Defendants, among other things, to "provide notice in clear and conspicuous language" that the helmets in question do not provide "additional concussion protection." Am. Compl. ¶ 193-197.  Plaintiffs' claim for declaratory relief is entirely derivative and dependent on Plaintiffs' consumer fraud claims and claims for unjust enrichment.  As previously discussed, Plaintiffs have failed to state a plausible claim for relief under any of the theories they have alleged.  Accordingly, because Plaintiffs' declaratory relief claim is premised on their nonexistent statutory and equitable claims, the claim for declaratory relief should be dismissed.  *See, e.g.*, *Carrier v. Bank of Am., N.A.*, No. 12-cv-00104, 2014 WL 356219, *9 (D.N.J. Jan. 31, 2014)(dismissing claim for declaratory relief based on same insufficient allegations as underlying consumer fraud claims); *Glauberzon v. Pella Corp.*, No. 10-cv-5929, 2011 WL 1337509, *15 (D.N.J. Apr. 7, 2011).

Moreover, there is no basis for the injunctive relief sought by Plaintiffs because Riddell's products and advertisements clearly displayed (and have always displayed) the warning that "NO HELMET CAN PREVENT SERIOUS HEAD OR NECK INJURIES" and "Contact in football may result in CONCUSSION-BRAIN INJURY which no helmet can prevent."  *See* Innes Decl., Exh. C.  Plaintiffs also cannot demonstrate a substantial likelihood that they will suffer any future immediate or irreparable harm.  *See Lattaker v. Rendell*, 269 Fed. App'x 230, 233 (3d Cir. 2008)("a party requesting a declaratory judgment must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future").

42

## IX.    <u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request that the Court grant

Defendants' motion and dismiss the Amended Consolidated Class Action Complaint in its

entirety.

Dated:  August 1, 2014

Respectfully submitted,

   /s/ Joseph A. Boyle
Joseph A. Boyle
Michael A. Innes
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, NJ 07054
Phone: (973) 503-5900
Fax: (973) 503-5950

Michael C. Lynch (admitted *pro hac vice*)
Sung W. Kim (admitted *pro hac vice*)
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 808-7800
Fax:  (212) 808-7898

John E. Villafranco (*pro hac vice to be filed*)
KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, D.C. 20007
Tel:  (202) 342-8400
Fax: (202) 342-8451

*Attorneys for the Defendants*

# APPENDIX

**APPENDIX A**

Summary of Elements for State Consumer Protection Laws Alleged in Amended Complaint

| Count | Elements |
|---|---|
| **Count I:**  New Jersey Consumer Fraud Act (N.J.S.A. 56:8–1 et seq.) | (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. *See Crozier v. Johnson & Johnson Consumer Companies, Inc.*, 901 F. Supp. 2d 494, 506 (D.N.J. 2012) |
| **Count II:**  Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 et seq.) | (1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception.  *See Chicago Faucet Shoppe, Inc. v. Nestle Waters N. Am. Inc.*, 12 C 08119, 2014 WL 541644 (N.D. Ill. Feb. 11, 2014) |
| **Count III:**  Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. 501.201 et seq.) | (1) deceptive act or unfair practice, (2) causation, and (3) actual damages.  *See Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) |
| **Count V:**  California Deceptive, Unfair and/or Unlawful Business Acts and Practices (Cal. Bus. & Prof. Code § 17200 et seq.) | (1) Defendants made actionable statements likely to deceive and that (2) the Plaintiffs relied upon Defendants' statements ; (3) standing (injury and causation).   *See In re Sony Gaming Networks And Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 967-69 (S.D. Cal. 2012) |
| **Count VII:**  California False or Misleading Advertising Law (Cal. Bus. & Prof. Code § 17500 et seq.) | (1) Defendants made actionable statements likely to deceive and that (2) the Plaintiffs relied upon Defendants' statements; (3) standing (injury and causation).  *See In re Sony Gaming Networks And Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 965 (S.D. Cal. 2012) |
| **Count VIII:**  California Legal Remedies Act (Cal. Civ. Code § 1750 et seq.) | (1) Any consumer who (2) suffers any damage (3) as a result of practice declared to be unlawful by Sec. 1770.  *See* Cal. Civ. Code § 1780. |
| **Counts IX & X:**  Ariz. Rev.Stat. § 44-1522 et seq. | (1) a false promise or misrepresentation made (with the intent that consumers rely on the statements or concealment) in connection with the sale or advertisement of merchandise and (2) the hearer's consequent and proximate injury. *See Cornelis v. B & J Smith Associates LLC*, CV-13-00645-PHX-BSB, 2014 WL 1828891 (D. Ariz. May 8, 2014) |