# EXHIBIT B



United States of America
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Division of Advertising Practices

April 24, 2013

John E. Villafranco, Esquire
Kelley Drye & Warren LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007-5108

     Re:    Riddell Sports Group, Inc., FTC File No. 112-3065

Dear Mr. Villafranco:

     The staff of the FTC's Division of Advertising Practices has conducted an investigation of Riddell Sports Group, Inc. ("Riddell") for possible violations of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, in connection with Riddell's advertising for its Revolution® football helmets.  Our inquiry focused specifically on whether Riddell falsely represented from at least 2008 until early 2011 that research proves that Revolution® varsity and youth football helmets reduce concussions and the risk of concussion by 31% compared to other varsity and youth football helmets.

     Riddell's advertising of its concussion risk reduction was based on a study reported in an article entitled "Examining Concussion Rates and Return to Play in High School Football Players Wearing Newer Helmet Technology: A Three-Year Prospective Cohort Study," which was published in the journal Neurosurgery in February 2006 (hereafter "the Neurosurgery article").  The article compared the concussion rates between two groups of high school football teams:  (1) test group teams, which received new Revolution helmets, and (2) control group teams, whose players wore helmets from their schools' existing stock.  The article purported to find concussion incidence rates of 5.3% in the test group and 7.6% in the control group.  The authors described these results as a 2.3% reduction in the absolute risk of concussion, or a 31% reduction in relative risk, associated with the wearing of a Revolution helmet.

     However, the authors of the Neurosurgery article clearly identified two "significant limitations" to their study:

     •     Revolution helmets were not randomly distributed across all of the participants in the study.  The published report characterized the study as "unblinded [and] uncontrolled," and the authors stated that "Without random assignment, there is no way of knowing whether there were meaningful differences between groups on

John E. Villafranco, Esquire
April 24, 2013
Page 2

some important variable(s) that might have influenced concussion rates or recovery times."[1]

- Players in the control group who suffered concussions were younger than test group players who suffered concussions; the article's authors acknowledged that this statistically significant difference in age "may have played a role in the higher incidence of concussion seen in the traditional helmet."

The staff believes that these limitations are sufficiently serious to preclude the conclusion that the design features of the Revolution helmet, by themselves, were responsible for the difference in the concussion rates experienced by the two groups of players. Therefore, we believe that the Neurosurgery study did not prove that Revolution® varsity football helmets reduce concussions or the risk of concussion by 31% compared to other varsity football helmets.[2]

Furthermore, because only high school players wearing varsity helmets participated in the study – elementary and middle school players, who wear youth helmets, were not included – we believe that the Neurosurgery study did not prove that Revolution® youth football helmets reduce concussions or the risk of concussion by 31% compared to other youth football helmets.

Despite this conclusion, we have decided not to recommend enforcement action at this time.  The factors we considered in making this determination included:  (1) Riddell has discontinued use of the 31% claim; and (2) helmet testing results published in 2011 and 2012 by researchers at Virginia Tech appear to show that Revolution varsity helmets perform much better than Riddell's "traditional" VSR-4 helmet in reducing concussion risks attributable to linear acceleration, one of the primary forces to which helmets are subject.  We note, however, that the Virginia Tech testing did not address rotational acceleration, nor – according to the Virginia Tech researchers – can the results of the tests on varsity helmets be extrapolated to Revolution youth helmets.

We also note that our discussion above concerning the limitations of the Neurosurgery study should not be viewed as criticism either of Riddell's attempt to develop a helmet that provided better concussion protection than traditional helmets, or of the underlying research conducted by the authors of the Neurosurgery article.  Rather, we disagree only with Riddell's decision to use the results reported in that article – particularly given the authors' express acknowledgments of the research's limitations – as the basis for unqualified claims for Revolution helmets.

---

[1]  Indeed, the lead author had previously responded to a peer reviewer's comment about the lack of randomization by stating that "the current analysis is not conclusive."
[2]  These two issues do not reflect all of the staff's questions about the reliability of the Neurosurgery study, but they are sufficient for us to reach this conclusion.

John E. Villafranco, Esquire
April 24, 2013
Page 3

     This action is not to be construed as a determination that a violation of law did not occur, just as the pendency of an investigation should not be construed as a determination that a violation has occurred.  The Commission reserves the right to take such further action as the public interest may require.

                  Very truly yours,

                  Mary K. Engle
                  Associate Director