# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE RIDDELL CONCUSSION REDUCTION LITIGATION | Civil Action No. 13-7585(JBS)(JS) |

-----------------------------------------------------------------------------------------------------------

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

-----------------------------------------------------------------------------------------------------------

James E. Cecchi
Caroline F. Bartlett
Lindsey H. Taylor
Zachary S. Bower
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Dennis G. Pantazis
Craig L. Lowell
Dennis G. Pantazis, Jr.
**WIGGINS CHILDS PANTAZIS FISHER GOLDFARB LLC**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500

*Attorneys for Plaintiffs and the Proposed Classes*

[Additional Counsel Listed on Signature Page]

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... iii

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................1

II.     SUMMARY OF PLAINTIFFS' ALLEGATIONS ........................................4

III.    APPLICABLE LEGAL STANDARDS .........................................................5

      A.      Rules 8(a) and 12(b)(6)........................................................................5

      B.      Rule 9(b)…………………………………………………………6

IV.     DEFENDANTS' *TWOMBLY* ARGUMENTS ARE WITHOUT MERIT ......8

      A.      The *Twombly* Standard Has Been Met....................................................8

      B.      Plaintiffs Do Not Assert A Lack of Substantiation Claim....................9

      C.      All Defendants are Properly Named and Designated as They
            Worked in Concert, and as One, to Perpetrate the Deceptions
            on the Plaintiffs.................................................................................11

V.      PLAINTIFFS HAVE ADEQUATELY PLED EACH OF THE CLAIMS
       ASSERTED IN THE COMPLAINT. .........................................................13

      A.      New Jersey Consumer Fraud Act ("NJCFA") ....................................13

            1.      Unlawful Practice ....................................................................14

            2.      Causation ..................................................................................14

            3.      Ascertainable Loss ...................................................................16

      B.      Plaintiffs' Claims Are Properly Pled Under the Standards
            Applicable to the California Consumer Protection Statutes ................18

            1.      Plaintiffs Properly State a Claim for Violation of the CLRA .................18

            2.      The Plaintiffs Have Adequately Alleged Each Element
                of the Independent UCL Claims................................................21

                  a.      Plaintiffs Allege a Claim for Unlawful Business Practices.............21

                b.      Plaintiffs Allege a Claim for Unfair Business Practices .................22

          c.     Plaintiffs Allege a Claim for "Deceptive" or
                 "Fraudulent Business Practices ......................................................23

          d.     Plaintiffs Properly Allege a Claim for Violation
                 of the California False Advertising Law ("FAL").........................24

C.     Plaintiffs' Allegations State a Claim for Violation of the
       Florida Deceptive and Unfair Trade Practices Act .............................................25

D.     FDUTPA Does Not Require Proof of Actual Reliance .....................................27

       1.     Plaintiffs have adequately alleged damages under FDUTPA .................28

       2.     Application of Rule 9(b) to FDUTPA ......................................................29

E.     Plaintiffs Adequately Plead A Claim Under the
       Illinois Consumer Fraud Act ...............................................................................30

F.     Arizona DCPA ....................................................................................................32

       1.     Plaintiffs' Allegations Properly State Claims for Relief Under the
            Arizona Consumer Fraud Act..................................................................32

       2.     Plaintiff's ACFA Claims are not Barred by the Statute of Limitations....34

VI.    PLAINTIFFS PROPERLY ASSERT A CLAIM FOR UNJUST
      ENRICHMENT/DECLARATORY RELIEF .................................................................36

A.     A Direct Purchase From Defendants is Not Required Under New Jersey
       Law to Maintain a Claim for Unjust Enrichment .................................................36

B      Unjust Enrichment Provides Alternative Grounds for Recovery .......................37

C.     There is No Basis to Dismiss the Claim of Assumpsit and Quasi-Contract.......39

D.     Plaintiffs Adequately Plead a Right to Declaratory Relief .................................40

VII.   PLAINTIFFS SHOULD BE GIVEN LEAVE TO FILE AMENDED COMPLAINT ..42

VIII.  CONCLUSION      .........................................................................................43

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Gould,*
    739 F.2d 858 (3d Cir. 1984)...............................................................42

*Adrianne Roggenbuck Trust v. Development Resources Group, LLC,*
    2013 WL 335990 (11th Cir. Jan. 30, 2013) ...........................................28

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)....................................................................5, 6

*BASF Corp. v. Old World Trading Co., Inc.,*
    41 F.3d 1081 (7th Cir. 1994) ..............................................................30

*Bell Atlantic v. Twombly,*
    550 U.S. 544 (2007)..........................................................5, 6, 8, 34

*Blair v. Wachovia Mortgage. Corp.,*
    2012 WL 868878 (M.D. Fla. Mar. 14, 2012) ...............................28, 29

*Carrier v. Bank of Am., N.A.,*
    No. CIV. 12-104 ...........................................................................41

*Castro v. NYT Television,*
    370 N.J. Super. 282, 851 A.2d 88 (N.J. Super. Ct. App. Div. 2004)....................38

*Christidis v. First Penn. Mortg. Trust,*
    717 F.2d 96 (3d Cir. 1983)...............................................................7

*Cincinnati Ins. Co. v. Holbrook,*
    867 F.2d 1330 (11th Cir. 1989) (*per curiam*) ......................................40

*Cold Stone Creamery, Inc. v. Lenora Foods I, LLC,*
    332 Fed.Appx. 565 (11th Cir. 2009).....................................................27

*Consumer Protection Corp. v. Neo-Tech News,*
    No. 08-cv-1983, 2009 WL 2132694 (D. Ariz. July 16, 2009)................................42

*Costa v. Kerzner Intern. Resorts, Inc.,*
    2011 WL 2519244 (S.D. Fla. Jun. 23, 2011)...........................................29

*Crozier v. Johnson & Johnson Consumer Co., Inc.,*
    901 F.Supp.2d 494 (D.N.J. 2012) .....................................................13

*Davis v. Indiana State Police,*
    541 F.3d 760 (7th Cir.2008) ............................................................35

iii

*Davis v. Powertel, Inc.*,
776 So.2d 971 (Fla. 1st DCA 2000) ...................................................................26,27

*Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*,
693 So. 2d 602 (Fla. 2nd DCA 1997) ...................................................................25

*Dole v. Arco Chem. Co.*,
921 F.3d 484 (3d Cir. 1990)...................................................................42

*Dunlap v. Jimmy GMC of Tucson, Inc.*,
136 Ariz. 338, 666 P.2d 83 (Ariz. Ct. App. 1983)...................................................................32

*Dyson, Inc. v. Bissell Homecare, Inc.*,
951 F.Supp.2d 1009 (N.D. Ill. 2013) ...................................................................9

*Dzielak v. Whirlpool Corp.*,
No. CIV. 2:12-0089 KM, 2014 WL 2758746 (D.N.J. June 16, 2014) .........................16,17,38

*Fitzpatrick v. General Mills*,
635 F.3d 1279 (11th Cir. 2011) ...................................................................28

*Flagstaff Med. Ctr., Inc. v. Sullivan*,
773 F.Supp. 1325 (D. Ariz. 1991) ...................................................................32

*Francis E. Parker Memorial Home, Inc. v. Georgia-Pacific LLC*,
945 F.Supp.2d 543 (D.N.J. 2013)...................................................................17,40

*Franulovic v. Coca-Cola Co.*,
2009 WL 1025541 ...................................................................11

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007)...................................................................7

*Gastaldi v. Sunvest Communications USA, LLC*,
637 F.Supp.2d 1045 (S.D. Fla. 2009) ...................................................................28

*Gauvin v. Trombatore*,
682 F. Supp. 1067 (N.D. Cal. 1988) ...................................................................12

*Gonzalez v. Wilshire Credit Corp.*,
207 N.J. 557 (2011) ...................................................................13

*Gredell v. Wyeth Labs., Inc.*,
367 Ill.App.3d 287, 854 N.E.2d 752 (Ill. App. Ct. 2006)...................................................................30

*Greifenstein v. Estee Lauder Corp., Inc.*,
No. 12-CV-09235, 2013 WL 3874073 (N.D. Ill. July 26, 2013)...................................................................30

*Guarneri v. Buckeye Pipe Line Services Co.,*
    Civ. No. 14-1131, 2014 WL 1783072 .................................................................42

*Guerrero v. Target Corp.,*
    2012 WL 3812324 (S.D. Fla. September 4, 2012) .............................................29

*Hammer v. Vital Pharmaceuticals, Inc.,*
    2012 WL 1018842 (D.N.J. March 26, 2012) .....................................................17

*Harris v. City of New York,*
    186 F. 3d 243 (2d Cir. 1999)............................................................................35

*Hoffman v. Nutraceutical Corp.,*
    2013 WL 2650611 (D.N.J. June 10, 2013) .......................................................17

*Hughes v. Ester C Co.,*
    2013 U.S. Dist. LEXIS 36652 (E.D.N.Y. Mar. 15, 2013) ..................................10

*In re Bayer Corp., Combination Aspirin Products Mktg. & Sales Practices Litig.,*
    701 F.Supp.2d 356 (E.D.N.Y. 2010) .................................................................29

*In re Clorox Consumer Litig.,*
    894 F.Supp.2d 1224 (N.D. Cal. 2012) ..........................................................10,22

*In re Horizon Organic Milk,*
    995 F. Supp. 2d ..................................................................................................9

*Khasin v. R.C. Bigelow, Inc.,*
    2013 WL 2403579 (N.D. Cal. May 31, 2013) .....................................................7

*Kuehn v. Stanley,*
    208 Ariz. 124, 91 P.3d 346 (Ariz. Ct. App. 2004).........................................32, 34

*Lattaker v. Rendell,*
    269 F. App'x 230 (3d Cir. 2008) .......................................................................42

*Lawn v. Enhanced Serv. Billing, Inc.,*
    10-CV-1196, 2010 WL 2773377 (E.D. Pa. July 13, 2010) ................................41

*Levine v. Prudential-Bache Props.,*
    855 F. Supp. 924 (N.D. Ill. 1994) ......................................................................7

*Lewis v. Bank of Am. NA,*
    CV 13-7717..........................................................................................................41

*Lynch v. Tropicana Products, Inc.,*
    No. 2:11-CV-07382 DMC, 2013 WL 2645050 (D.N.J. June 12, 2013)...............37

*Mahmud v. Kaufmann*,
   454 F. Supp.2d 150 (S.D.N.Y. 2006)..............................................35

*Meyer v. Snyders Lance, Inc.*,
   2012 WL 6913724 (M.D. Ga. Dec. 12, 2012) ..........................................6

*Moss v. Walgreen Co.*,
   765 F. Supp. 2d 1363 (S.D. Fla. 2011) ...........................................26,27

*NN & R, Inc., v. One Beacon Ins. Group*,
   2005 WL 1520994 (June 28, 2005 D.N.J.) ...........................................13

*Oliveira v. Amoco Oil Co.*,
   201 Ill.2d 134, 776 N.E.2d 151 (2002) ...........................................30

*People ex rel. Madigan v. United Const. of Am., Inc.*,
   2012 IL App ....................................................................31

*Phillips v. County of Allegheny*,
   515 F.3d 224 (3d Cir. 2008)......................................................6, 8

*Pontrelli v. MonaVie, Inc.*,
   No. 13-CV-4649-WJM-MF, 2014 WL 4105417 (D.N.J. Aug. 19, 2014) .............37

*Price v. Philip Morris, Inc.*,
   219 Ill.2d 182, 302 Ill. Dec. 1, 848 N.E.2d 1 (2005) ............................29

*Prier v. Steed*,
   456 F.3d 1209 (10th Cir. 2006) ..................................................40

*Prohias v. Pfizer*,
   485 F.Supp.2d 1329 (S.D. Fla. 2007) ............................................26

*Raziev v. Compass Truck Sales, LLC*,
   No. 13 C 737, 2013 WL 4846894 (N.D. Ill. Sept. 10, 2013).........................31

*Riddell, Inc. v. Schutt Sports, Inc.*,
   724 F.Supp.2d 963 ..............................................................18

*Rollins, Inc. v. Butland*,
   951 So.2d 860 (Fla. 2d DCA 2006) ............................................25, 28

*Romano v. Galaxy Toyota*,
   399 N.J.Super. 470 (App.Div. 2008) .............................................16

*Rosales v. FitFlop USA, LLC*,
   2012 WL 3224331 (S.D. Cal. Feb. 8, 2012) .......................................10

*Saltzman v. Pella Corp.*,
06-cv-4481, 2007 WL 844883 (N.D. Ill. Mar. 20, 2007) ......................................................40

*Samuels v. King Motor Co.*,
782 So. 2d 489 (Fla. 4th DCA 2001) ..................................................................................25

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
742 F.2d 786 (3d Cir. 1984) ...............................................................................................7

*Shelton v. Restaurant.com, Inc.*,
543 Fed.Appx. 168 (3d Cir. 2013) .....................................................................................17

*Silvas v. GMAC Mortg., LLC*,
No. CV–09–265–PHX–GMS, 2009 WL 4573234 (D. Ariz. Dec. 1, 2009) ...........................33

*Smajlaj v. Campbell Soup Co.*,
782 F.Supp.2d 84 (D.N.J. 2011) ..............................................................................15, 16,17

*Smith v. WM. Wrigley Jr. Company*,
663 F. Supp. 2d 1336 (S.D. Fla. 2009) ..........................................................................25, 26

*State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*,
427 Fed.Appx. 714 (11th Cir. 2011) ..................................................................................39

*State of Florida, Office of Attorney General, Depart. of Legal Affairs v. Tenet Healthcare Corp.*,
420 F.Supp.2d 1288 (S.D. Fla. 2005) .................................................................................29

*Stewart v. Beam Global Spirits & Wine, Inc.*,
877 F.Supp.2d 1929 (D.N.J. 2012) .....................................................................................36

*Thiedemann v. Mercedes-Benz*,
183 N.J. 234 (2005) .........................................................................................................16

*Toback v. GNC Holdings, Inc.*
2013 U.S. Dist. LEXIS 131135 (S.D. Fla. Sept. 13, 2013) ...................................................10

*Webber v. Esquire Deposition Services, LLC*,
2011 WL 3822001 (11th Cir. Aug. 31, 2011) .......................................................................27

*White v. Taylor, Civ.*
No. 10-5485, 2014 WL 1428545 (D.N.J. Apr. 14, 2014) ......................................................42

*Zlotnick v. Premier Sales Group, Inc.*,
480 F.3d 1281 (11th Cir. 2007) .....................................................................................26, 27

## STATUTES

FDUTPA ................................................................................................25, 26, 27, 28, 29

Fla. Stat. § 501.202 ..................................................................................................25

Fla. Stat. § 501.211 ..................................................................................................28

Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq. ("FDUTPA") ..............................................................................................25

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 15(a)(2) .......................................................................................42

Federal Rule of Civil Procedure 8(a)(2) ..................................................................12

Rules 8 and 9(b) of the Federal Rules of Civil Procedure ........................................32

*Gerber* at *6 ...........................................................................................................15

Restatement of Torts ................................................................................................37

Rule 8 ...............................................................................................................7, 38

Rules 8(a) and 12(b)(6) .............................................................................................5

Rule 9(b) ........................................................................................................ passim

Rule 9(d) ...................................................................................................................15

Rule 12(b) .................................................................................................................40

Rule 12(b)(6) ......................................................................................................5, 34

## I.   <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Over the past fifteen years the public has become increasingly aware of the long term neurologic risks associated with repeated concussive injuries sustained playing recreational and professional sports.   The public's awareness and legitimate fear of concussion injury has manifested itself in positive and negative ways.   On the positive side, the NFL, recognizing its role in the many serious neurologic issues affecting its retired players, reached a landmark settlement with its players which will entitle those who have experienced neurologic injuries to recover from an uncapped settlement fund that could reach $1 billion.   The NCAA has reached a similar resolution with its collegiate athletes.

Riddell, the world's largest manufacturer of football helmets, was also keenly aware of the developing concern by the public as to the safety of youth and high school football.   Riddell's reaction, however, was not benign.   It realized that consumers of helmets would necessarily pay more for a helmet that purportedly provided greater protection from concussions.   This is entirely logical – what parent, or coach, would not want his or her player in the most concussion protective helmet?   To exploit this natural human instinct, Riddell devised a marketing strategy that claimed that Riddell's helmets contained "Concussion Reduction Technology" and, in some specific cases, could reduce the risk of concussion by an astonishing 31%.   The veracity of these claims – disseminated to parents, youth football leagues and coaches – is the core of this case.   Plaintiffs and our experts submit that Riddell's assertions of "Concussion Reduction Technology" ("CRT") are knowingly misleading and false.   At the time it told the public that its helmets were more protective, Riddell was well aware that - because of the biomechanics of concussive injury - its helmets were no better at preventing concussion than any other comparable helmet on the market.   The neurologic and biomechanical proofs developed by

1

Plaintiffs will demonstrate that it is just not possible.  Notwithstanding this fact, of which Riddell was well aware, Riddell continued to market its helmets as containing some magic elixir, some unknown "technology", some patented formula that could provide those who purchased its football helmets with reduced incidences of concussions.  This lawsuit seeks redress for this false marketing effort.

It is also important to note that after this lawsuit was filed Riddell seems to have finally received the message.  Defendants' new marketing campaign abandons the very claims at the heart of this litigation – that Riddell helmets contain Concussion Reduction Technology.  This is an important and positive development.  It is, however, not enough.

As to the substance of Defendants' Motion to Dismiss, Plaintiffs submit that it is in many ways the same as the non-existent technology in the helmets – long on marketing, short on substance.  The essential point Defendants' stress is that Plaintiffs' Complaint is simply not detailed enough for them to understand the claims and to formulate a coherent defense.  This is smoke and mirrors.  A fair and thorough reading of the Complaint demonstrates that Plaintiffs assuredly satisfy the liberal pleading standards of the Federal Rules.  By way of limited example, the Complaint alleges that each of the Plaintiffs was exposed to the Defendants' deceptive concussion reduction claim, why the concussion reduction claim is false and deceptive, when the Plaintiffs purchased their Football Helmets, and that none of the Plaintiffs received the concussion reduction benefits they paid for.  From Plaintiffs' perspective it is rather straightforward and clear – the football helmets were sold at a premium and marketed as containing technology that would protect America's youth much more so than helmets manufactured by Riddell's competitors.  Those assertions are, and were, affirmatively false and misleading.  Children, parents, coaches, youth leagues and schools, all of whom relied upon the

2

purported superiority of the Riddell helmets, all suffered a specific ascertainable loss in that the helmets they purchased could not, in fact, deliver the concussion benefits promised.

In addition to their professed confusion about the specifics and nature of Plaintiffs' claims, Defendants' make the unique and creative argument that Plaintiffs' are barred from recovery because they should have known, or should have discovered through diligent academic research, that Riddell's concussion claims were at the very least contradicted and potentially false. But Riddell cannot escape the consequences of its actions so easily. The consumer protection laws simply do not permit the snake oil salesman the luxury of slipping out of town with his wagon in the middle of the night. The simple fact is that the law does not impose upon the victimized consumer the duty to become a neurologist or bio-mechanical engineer to ascertain whether the marketing messages which he or she was exposed to was true, false or misleading. No consumer protection law contains this unknown duty particularly where the subject claim – as here – directly relates to a health and safety issue.

Defendants' other arguments regarding their disclaimer and prior substantiation are similarly baseless. While Defendants' disclaimer recognizes the unrelated fact that no helmet can *eliminate* concussions, Plaintiffs do not contend otherwise - the relevant claim in the Complaint is whether Defendants' Football Helmets have the technology to *reduce* concussions more than comparable helmets. Similarly, while Defendants wish to recast Plaintiffs' claims as simply relying upon Riddell's lack of substantiation for its claims (i.e., "prior substantiation"), the clear language of the Complaint illustrates that Plaintiffs affirmatively allege that Defendants' CRT claims are false and deceptive, and not simply that the claims of concussion reduction are not supported or lack substantiation.

II.       **SUMMARY OF PLAINTIFFS' ALLEGATIONS**

A fair reading of the Complaint demonstrates Plaintiffs' claims are supported with sufficient factual detail.  Defendants, who are collectively the leading helmet manufacturers in the United States,[1] have uniformly deceived consumers by claiming that their helmets are more effective at reducing concussions than other football helmets available to consumers.  The Complaint concisely presents the claims against them, including the following:

- The causes of concussions are such that the football helmets currently on the market cannot and do not provide a reduction in concussions. Compl., ¶¶ 26-38;

- No modern helmet is currently better or worse at preventing concussions than another, to any meaningful extent.  *Id*., at ¶ 58;

- Riddell uniformly marketed their helmets as having "Concussion Reduction Technology" and at times, went so far as to say that their helmets were specifically thirty-one percent (31%) more effective at reducing concussions when compared to a traditional helmet.  *Id.*, at ¶ 57;

- By marketing and advertising that its helmets possessed "Concussion Reduction Technology", the Defendants made claims that were false, misleading, deceptive, and/or likely to deceive the average consumer, including those named as Plaintiffs in this case. *Id.*, at ¶¶ 58-65;

- Multiple studies that were not funded by Defendants show that concussion rates are not affected by a particular type of football helmet, including Defendants' Football Helmets;  *Id*., at ¶¶ 59-69;

- Riddell's concerted effort to market the concussion reduction claims across the entire United States, via every advertising avenue in its possession, resulted in a deception to the consuming public.  The named Plaintiffs brought their claims, in

---

[1] *See e.g.* Form S-4 Registration Statement of Riddell Bell Holdings, Inc., filed with the S.E.C. on April 7, 2005.  "We believe that *Riddell* is the leading brand of high school, collegiate and professional football helmets, with an estimated U.S. market share of approximately 55%".  Available at: http://www.sec.gov/Archives/edgar/data/884063/000119312505072192/ds4.htm.

their respective states, on behalf of themselves, and all similarly situated who purchased helmets at a price premium.  *Id*., at ¶ 67.

The central point of these allegations is that between 2002 (the approximate introduction of the Football Helmets) and shortly after the filing of this lawsuit, Defendants deceptively marketed their Football Helmets as being able to reduce concussions more than other helmets on the market.  They did this without regard to the truth of the statements and in the face of research to the contrary.  Indeed, it was only in July of 2014 – after receiving Plaintiffs' first lawsuit -- that Defendants stopped making these false claims.[2]  The Complaint further alleges that each of the Plaintiffs purchased one of the Football Helmets after being exposed to one or more of the concussion reduction claims.  Compl.. ¶¶ 70-75.  Each Plaintiff was harmed by their purchase because the Football Helmet they received did not have the concussion reduction benefits they paid for.  *Id*., at ¶ 66.  In short, the Defendants' Football Helmets are not any more effective at reducing concussions than other helmets on the market.  *Id.*, at¶ 63-64.

Accordingly, taking each of Plaintiffs' allegations as true and drawing all reasonable inferences therefrom, Plaintiffs have stated a claim for relief.

## III.    **APPLICABLE LEGAL STANDARDS**

### A.    **Rules 8(a) and 12(b)(6)**.

Under *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a district court reviewing a motion to dismiss under Rule 12(b)(6) must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and

---

[2] Any assertion by Defendants that this was just a coincidence is specious. In their opening brief Defendants claim -- without any proper support and going beyond the allegations -- that when the FTC investigated their 31% concussion reduction claims, Defendants stopped making this claim simultaneously without respect to the FTC investigation.  This is not consistent with the position of the FTC, as evidenced in its letter to the Defendant and the comments of FTC investigators.

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation omitted). Thus, "a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen. Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

"A claim has facial plausibility when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (internal citations omitted); *see also*, *e.g.*, *Meyer v. Snyders Lance, Inc.*, No. 4:12-CV-215 (CDC), 2012 WL 6913724, at *1 (M.D. Ga. Dec. 12, 2012) ("[M]any lawyers fail to appreciate the distinction between determining whether a claim for relief is 'plausibly stated,' the inquiry required by *Twombly/Iqbal*, and divining whether actual proof of that claim is 'improbable,' a feat impossible for a mere mortal, even a federal judge."). Accordingly, it remains the role of discovery, not the pleadings, to "reveal evidence" as long as the factual allegations are enough to raise the right to relief above a speculative level. *Twombly*, 550 U.S. at 556.[3] Plaintiffs' allegations more than satisfy this standard.

**B.  Rule 9(b)**.

Rule 9(b) does not apply to the claims asserted in the Complaint because they are not solely fraud-based claims. Even if it did, however, Plaintiffs' Complaint is pleaded with

---

[3] The *Twombly* Court was clear, however, that this statement of the applicable standard was not intended to be an onerous or even a heightened requirement, explaining that it "comports with [the] Court's statements in the years since [1957]." *Twombly*, 550 U.S. at 563 n.8.

sufficient precision to put Defendants on notice of the "precise misconduct with which [they are] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004)).  This standard can be satisfied by *either* alleging the "date, time and place of the alleged fraud[,]" or by "otherwise inject[ing] precision or some measure of substantiation" in the allegations.  *Id.*  Indeed, "focusing exclusively on [Rule 9(b)'s], 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'"  *Christidis v. First Penn. Mortg. Trust*, 717 F.2d 96, 101 (3d Cir. 1983) (quoting 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1298, at 407 (1969)).

The most basic consideration in judging the sufficiency of a pleading is whether it provides adequate notice to an adverse party to enable it to prepare a responsive pleading.  *See* 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1298, at 648 (1990); *see also*, *e.g.*, *Levine v. Prudential-Bache Props. Inc.*, 855 F.Supp. 924, 931 (N.D. Ill. 1994) ("[A] complaint does not run afoul of Rule 9(b) if the defendants can make enough sense of it so that they can mount an answer or defense."); *Khasin v. R.C. Bigelow, Inc*., No. C12-02204 JSW, 2013 WL 2403579, at *2 (N.D. Cal. May 31, 2013) ("Rule 9(b)'s particularity requirements must be read in harmony with Rule 8's requirement of a "short and plain" statement of the claim."). "It is certainly true that allegations of 'date, place or time' fulfill these functions, but nothing in the rule requires them.  Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  *Seville Indus. Mach. Corp. v. Southmost Mach. Corp*., 742 F.2d 786, 791 (3d Cir. 1984).

In this case, the Complaint sets forth the core common misrepresentations made by Defendants relating to CRT and variants on that core message.  The Complaint alleges: (i) that

this core misrepresentation was disseminated by Defendants; (ii) the time frames such misrepresentations were made; (iii) that the safety-related concerns of the message gave Defendants an independent duty to disclose all material facts; (iv) that no helmet available at the time could reduce concussions; (v) that Plaintiffs and class members were exposed to such misstatements; (vi) that purchasers of the Football Helmets, including Plaintiffs, would not have paid the prices they did had they been aware of the true facts regarding the Football Helmets; and (vii) that, as a result, Plaintiffs suffered an ascertainable loss due to Defendants' wrongful conduct.   Accordingly, the Complaint satisfies even the heightened pleading requirements of Rule 9(b).

## IV.   DEFENDANTS' *TWOMBLY* ARGUMENTS ARE WITHOUT MERIT

### A.   The *Twombly* Standard Has Been Met.

In *Phillips*, the Third Circuit carefully considered the Supreme Court's holding in *Twombly* and stated:

> The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: "stating … a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

*Phillips*, 515 F.3d at 234 (internal citation omitted, alteration in original) (quoting *Twombly*, 127 S. Ct. at 1965).

Plaintiffs' allegations include, *inter alia*: (i) specific details and information as to what causes a concussion (Compl. ¶¶ 26-38); (ii) what Defendants promise consumers with respect to the Football Helmets' ability to reduce concussions and that "throughout the Class Period, Defendants have marketed, advertised, sold and disseminated their Football Helmets as

8

significantly reducing concussions" (Compl. ¶ 57); (iii) part of what consumers and Plaintiffs paid for was the concussion reduction benefits and characteristics of these Football Helmets; (iv) why such promises of concussion reductions are false or deceptive (for example that "[d]espite Defendants' representations, there is no material difference in the Riddell Football Helmets and other football helmets in regard to concussion prevention") (Compl. ¶ 58); and (v) that, for these reasons and others, Defendants' promises of concussion reduction technology are affirmatively false and deceptive, or failed to disclose material facts to the contrary. Compl. ¶¶ 59-68.

Accordingly, Plaintiffs' claims are straightforward – they are not contradictory or inconsistent as Defendants claim because Plaintiffs never allege that the Football Helmets are "absolutely ineffective."[4]  Instead, Plaintiffs' claims center on the relative ineffectiveness of the Football Helmets at preventing *concussions* when compared to other football helmets on the market, and in light of Defendants' promises to consumers that their Football Helmets have "concussion reduction technology."   Viewed in this light, Plaintiffs' claims are straightforward, plausible, and satisfy the *Twombly* standard as articulated by the Third Circuit in *Phillips*.

### B.  Plaintiffs Do Not Assert A Lack of Substantiation Claim.

Defendants' arguments regarding prior substantiation are equally misguided[5].   The allegations of the Complaint clearly articulate that Defendants' Football Helmets do not contain

---

[4] For example, it may be the case that the Football Helmets are effective at preventing skull fractures, which is irrelevant to whether Defendants claims of concussion reduction technology are false or deceptive.

[5] As is consistent throughout their dismissal papers, Defendants consciously ignore that states treat prior substantiation claims differently.  Thus, while they are wrong that Plaintiffs have pleaded a prior substantiation claim, even if Defendants were correct, the claims would survive in various states.  *See, e.g.*, *Dyson, Inc. v. Bissell Homecare, Inc.*, 951 F.Supp. 2d 1009, 1031 (N.D. Ill. 2013) (recognizing that a claim under the ICFA arises where a defendant makes a

any technology that is capable of reducing concussions based on the axial head rotation that causes concussions – and that no helmet currently on the market can do so.  While the Complaint alleges why Defendants' 31% reduction claim was flawed, criticized, and attacked in the academic community (which is likely why Riddell capitulated to the FTC's demands that they cease making the 31% claim), the faults in that study are by no means the sole basis for the claims asserted in the Complaint.

Instead, the Complaint includes affirmative allegations as to why Defendants' representations regarding the ability of the Football Helmets to "reduce concussions" are material, false, and deceptive.  The Complaint supports these allegations with an explanation of how concussions occur, Compl. ¶¶ 26-38, which help to illustrate why the Football Helmets do not provide the concussion reduction protections that Defendants promise.  The Complaint further alleges that there is no material difference in the Riddell football helmets and other football helmets in regard to concussion prevention, *see e.g.*, Compl. ¶¶ 3-4; 58, and that other studies not funded by Riddell affirmatively undermine Riddell's concussion reduction claims, Compl. ¶¶59-65.  These types of affirmative allegations and references to studies that contradict Defendants' marketing claims are not claims based on a theory of prior substantiation. Courts routinely deny motions to dismiss where plaintiffs allege affirmative factual support and scientific evidence to support an allegation of false advertising.  *See e.g. Hughes v. Ester C Co*., 930 F.Supp. 2d 439 (E.D.N.Y. 2013); *In re Clorox Consumer Litig*., 894 F.Supp. 2d 1224, 1233 (N.D. Cal. 2012); *Rosales v. FitFlop USA, LLC*,  882 F.Supp. 2d 1168, 1176 (S.D. Cal. 2012).

marketing claim that is based on a flawed study"); *In re Horizon Organic Milk*, 955 F.Supp. 2d, 1311,  1344 n.12 (S.D. Fla. 2013) ("Defendant has not cited to, and the Court has not found, any case that states that consumer claims for lack of substantiation are not cognizable under the consumer fraud statutes of . . . Florida.").  *See also Toback v. GNC Holdings, Inc*., No. 13-80526-CIV, 2013 WL 5206103, at *3 (S.D. Fla. Sept. 13, 2013).

10

Indeed, the *single* unpublished New Jersey case relied on by Defendants, *Franulovic v. Coca-Cola Co.*, No. 07-0539 (RMJ), 2009 WL 1025541, (D.N.J. Apr. 16, 2009), is not only distinguishable, but also illustrates the type of allegations that would be part of a prior substantiation claim – allegations vastly different than those asserted here.  As the district court noted in *Franulovic*, the complaint was based on the allegation "that there is no substantiation for Enviga's claims because there is no evidence that the product has any effect on weight for the majority of adults who are not young, healthy, and thin . . . ."  *Id.* at *1.  Here, Plaintiffs' allege affirmatively that Defendants' claims regarding concussion reduction are false or deceptive, that other tests and studies contradict Defendants' claims, and that there are material conflicts and flaws in Defendants' own study that they do not adequately disclose.  Compl. ¶¶ 59-69.  The mere fact that Plaintiffs allege, as the FTC already determined, that Defendants' 31% study is in fact severely flawed, does not shield Defendants from liability under these consumer protection statutes.

### C.   All Defendants are Properly Named and Designated as They Worked in Concert, and as One, to Perpetrate the Deceptions on the Plaintiffs.

Defendants next take the baseless position that all of the named and related Defendants in this matter must be dismissed with prejudice.  According to this argument, because Plaintiffs have not posited each Defendants' exact involvement in the illegal conduct alleged, the dismissal with prejudice should occur without any discovery into the Defendants' relationship and role in creating and/or disseminating the false and deceptive claims, and without regard to whether and which Defendants profited from such claims.  Yet again this argument is contradicted by the pleadings, in which Plaintiffs did allege each Defendant is involved in the deceptive marketing

11

practices at issue, and stated that their individual conduct, combined with the other Defendants', resulted in the violations of state law outlined in the Complaint.

Further, Defendants in this action are not the type of unrelated defendant situations referenced in the opinions Defendants cite in their Motion.  Instead, the relevant authority permits the litigation to proceed against all related entities. *See e.g.*, *Toback*, 2013 WL 5206103, at *2 (rejecting "Defendants' contention that Plaintiff's reference to Defendants collectively as "GNC" throughout the Complaint is group pleading that requires dismissal. . . . Though Plaintiff refers to Defendants collectively as "GNC", he has alleged sufficient factual detail to put Defendants on notice of the nature of the claims against them.")  The Defendants essentially act as one entity, under one corporate emblem ("Riddell").  Simply because they have an intricate corporate structure serves no basis for dismissal with prejudice[6].

All that is required for a Plaintiff suing multiple Defendants is to "allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them."  *Gauvin v. Trombatore*, 682 F.Supp. 1067, 1071 (N.D. Cal. 1988).

The Complaint states the following about the collective actions of Defendants:

> Each Defendant was involved in some manner in the creation and dissemination of the misleading marketing campaign regarding the Football Helmets and/or was involved in or profited from the sales of such helmets. . . . Each Defendant either alone or in combination made partial representations or concealed material facts within their possession concerning the actual safety of the Football

---

[6]   The concept that the Defendants acted as one is further exhibited by their conduct in this litigation.  They are all represented by the same counsel, accepted service as one, and filed their motion to dismiss as one entity.  As such, the Complaint should be sufficient against them as one entity.  The mere existence of an intricate corporate structure should not allow them to muddy the waters at the pleading stage by conveniently professing to be separate actors, since to so find would be to contradict the allegations of the Complaint at ¶¶ 16-25.

Helmets and their alleged ability to reduce the incidence of
concussion to any degree as compared to other helmets.

Compl. ¶ 24.

Each of the Defendants named in this action is owned by the private equity firm Fenway

Partners, Inc.  *Id*., at ¶ 23.  These entities worked in concert to perpetrate the deceptive conduct

upon the Plaintiffs.  They each had a role in the development, marketing, and sale of the Riddell

Football Helmets that are the subject of the Complaint.[7]  Further evidence of this reality is

Defendants' own Motion to Dismiss, where they respond with one voice.  Accordingly,

Defendants are clearly capable of intelligently pleading their defenses.

## V.   PLAINTIFFS HAVE ADEQUATELY PLED EACH OF THE CLAIMS ASSERTED IN THE COMPLAINT

### A.   New Jersey Consumer Fraud Act ("CFA").

As many courts have noted, "'the Act should be construed liberally in favor of

consumers.'"  *Crozier v. Johnson & Johnson Consumer Co., Inc*., 901 F.Supp. 2d 494, 506

(D.N.J. 2012) (citing *Cox v. Sears Roebuck & Co*., 138 N.J. 2, 15 (1994)).  Further, the

"'capacity to mislead is the prime ingredient of all types of consumer fraud.'"  *NN & R, Inc., v.*

*One Beacon Ins. Group*, No. 03-5011 (JBS), 2005 WL 1520994, at *4 (D.N.J. June 28, 2005)

(citing *In re Van Holt,* 163 F.3d 161, 168 (3d Cir. 1998)).  Against this backdrop, the elements of

a CFA claim are straightforward and require that the pleading describe the following:  (1) an

---

[7] *See* the following allegations: "Defendant Riddell Inc. . . . is engaged in the business of
designing, manufacturing, selling, and/or distributing football equipment, including Revolution
brand helmets"; "Defendant All American Sports Corporation… is engaged in the business of
designing, manufacturing, selling, and/or distributing football equipment, including Revolution
brand helmets"; "Defendant Riddell Sports Group, Inc… ships its products, including Revolution
brand helmets, to direct purchasers and distributors"; "Defendant Easton Bell Sports . . .
manufacturers, markets, advertises, and/or sells their Riddell Football Helmets"; "Defendant
Easton-Bell Sports LLC is the parent corporation of Easton-Bell Sports, Inc."; "Defendant RBG
Holdings Corporation . . . which through its subsidiaries designs, develops, and markets sports
equipment, including Revolution brand helmets".  Compl. ¶¶ 16-20, 22.

unlawful practice; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 567 (2011). As set forth below, Plaintiffs have properly pleaded each of the elements of a CFA claim.

      1.     **Unlawful Practice**

Plaintiffs allege that Defendants have engaged in an unlawful practice by falsely promoting their Football Helmets as having concussion reduction technology. By making this claim, Defendants conveyed to consumers that their Football Helmets would provide concussion reduction benefits when compared to other football helmets available for purchase by consumers. In fact, Defendants' Football Helmets do not have technology that would make them better at preventing concussions than other football helmets currently on the market. As a result, Defendants' promises constitute an unconscionable commercial practice and are false or deceptive because consumers who purchased the Football Helmets did not receive the concussion reduction benefits they would have reasonably expected to receive based on Defendants' advertising and marketing language. Such allegations, if true, constitute an unlawful practice. *See Adamson v. Ortho-McNeil Pharmaceutical, Inc.*, 463 F.Supp. 2d 496, 501 (D.N.J. 2006) (citing *Scibek v. Longette*, 339 N.J. Super. 72, 78 (App. Div. 2001)).

      2**.**     **Causation**

Plaintiffs' causation allegations are equally sufficient. Each of the New Jersey Plaintiffs allege that they purchased their respective Riddell Helmets after being exposed to Defendants' promises that their Helmets were superior to other football helmets on the market because of their ability to provide "concussion reduction" benefits. Compl., at ¶¶ 70-71. Indeed, each of the alleged false or deceptive claims made by Defendants includes promises of concussion reduction. Accordingly, regardless of *where* any particular Plaintiff may have been exposed to the concussion reduction claims, each Plaintiff clearly alleges exposure to this same

misrepresentation regarding "concussion reduction technology" and that the Football Helmet purchased did not provide such concussion reduction benefits, therefore causing them harm. Such allegations are sufficient to satisfy the causation requirement under the CFA. *See, e.g.*, *Smajlaj v. Campbell Soup Co.*, 782 F.Supp. 2d 84, 100 (D.N.J. 2011) (noting that, in the context of the causation requirement, "[t]he plaintiff has to plead that the misrepresentation was made to him or her individually").

Defendants' reliance on *In Re Gerber*, No. 12-835 (JLL), 2013 WL 4517994 (D.N.J. Aug. 23, 2013), is predictably misplaced when viewed in context of the issues raised by defendants in that case when compared to Defendants' reliance on it here. The causation issue in *Gerber* related to standing - whether Plaintiffs had standing to allege causation with respect to Defendants' "overall marketing campaign," *id.* at *15, when no Plaintiff had been exposed to all of the alleged deceptive *claims* in that broader marketing campaign. As the court in *Gerber* discussed in the sentences prior to the block quote taken out of context by Riddell: "Plaintiffs premise their claims on Gerber's overall marketing campaign in connection with the Products. However, no Plaintiff provides facts sufficient to allege causation in connection with those aspects of Defendants' marketing campaign." *Gerber* at *6. Accordingly, in *Gerber*, the court was concerned with the plaintiffs' ability to meet the causation requirement for claims they had not seen. Conversely here, Plaintiffs do not allege claims based on an overall marketing campaign that involves additional or different claims other than the ones to which they were exposed – promises that the Football Helmets have "concussion reduction technology." Accordingly Defendants' request for additional specificity as to the "where" and "when" Plaintiffs were exposed to the false or deceptive claims at issue would provide no additional information as to the nature of Plaintiffs' claims or the basis for the factual allegations alleged, as

this is not a Rule 9(d) claim.  Indeed, unlike *Gerber*, the present action is based upon Plaintiffs'
exposure to Defendants' uniform marketing campaign regarding their Football Helmets'
"concussion reduction technology," regardless of where those promises appear.

### 3. Ascertainable Loss

Finally, Defendants' argument on page 34 of their Memorandum that Plaintiffs' CFA
allegations are deficient because they are "utterly devoid of any information as to the price that
Plaintiffs paid for the helmets in question or the price of any allegedly comparable helmets"
misstates the applicable law.

Under the CFA, in order to prove an "ascertainable loss," the plaintiff must "produce
evidence from which a fact finder could find or infer that the plaintiff suffered an actual loss."
*Thiedemann v. Mercedes-Benz*, 183 N.J. 234, 248 (2005).  In order to suffer an ascertainable
loss, the plaintiff is not required to show monetary loss, only that they purchased a product and
got something less than what had been promised.  *Marcus v. BMW of North America*, 687 F.3d
583, 606 (2012); *see also Smajlaj*, 782 F.Supp. 2d at 99 ("The New Jersey Supreme Court has
repeatedly and explicitly endorsed a benefit-of-the-bargain theory under the Consumer Fraud Act
that requires nothing more than that the consumer was misled into buying a product that was
ultimately worth less to the consumer than the product he was promised."); *Elias v. Ungar's
Food Products Inc.*, 252 F.R.D. 233, 248 (D.N.J. 2008) ("With respect to the second element,
namely 'ascertainable loss,' this includes more than a monetary loss and may occur 'when a
consumer receives less than what was promised.'") (citations omitted).  It is *not* necessary for the
plaintiff to plead a specific dollar amount to survive at the pleading stage – it need only be
measurable.  *See e.g. Dzielak v. Whirlpool, Inc.*, No. 2:12-0089 (KM), 2014 WL 2758746, at *20
(D.N.J. June 16, 2014); *Gerber*, 2013 WL 4517994, at *5 n.4.  As many cases interpreting the

CFA make clear, there is no level of specificity required or any fixed rules as to how a plaintiff may calculate ascertainable loss.  *See Mickens v. Ford Motor Corp.*, 900 F.Supp.2d 427, 446 (D.N.J. 2012) (citing *Theidemann*, 183 N.J. at 249); *Romano v. Galaxy Toyota*, 399 N.J. Super. 470, 479-81 (App. Div. 2008) (discussing different methods for calculating ascertainable loss in different types of consumer fraud cases); *Hammer v. Vital Pharmaceuticals, Inc.*, No. 11-4124, 2012 WL 1018842, at *8 (D.N.J. March 26, 2012) (discussing "at least three recognized theories of ascertainable loss").

The threshold for *pleading* ascertainable loss is low, so long as the plaintiff has alleged a definite, certain and measurable loss rather than a hypothetical loss.  *Shelton v. Restaurant.com, Inc.*, 543 F.App'x 168, 170 (3d Cir. 2013) (internal citations omitted).  "The level of particularity required is sufficient details to put Defendants on notice of the 'precise misconduct with which they are charged.'"  *Francis E. Parker Memorial Home, Inc. v. Georgia-Pacific LLC*, 945 F.Supp. 2d 543, 558 (D.N.J. 2013) (quoting *Smajlaj*, 782 F.Supp. 2d at 104).  The precise amount of the ascertainable loss need not be known; it need only be measurable.  *See e.g.*, *Dzielak*, 2014 WL 2748746, at *20.  All that is required to plead is that plaintiffs receive something less than, or different from, what they reasonably expected in view of defendant's presentations.  *Id.*  The benefit-of-the-bargain theory requires nothing more than the consumer was misled into buying a product that was ultimately worth less to the consumer than the product he was promised.  *Hoffman v. Nutraceutical Corp.*, No. 12-5803 (ES), 2013 WL 2650611, at *2 (D.N.J. June 10, 2013) (quoting *Smajlaj*, 782 F.Supp. 2d at 99).

Here, Plaintiffs' allegations clearly satisfy this standard.  For example, the Complaint includes allegations that Defendants charge higher prices by advertising their Football Helmets as having superior concussion reduction technology, Compl. ¶¶ 52,61,66, that Plaintiffs have

17

suffered a loss because they paid a price premium for the Football Helmets for their expected receipt of concussion reduction benefits based on Defendants' misrepresentations, *id.* at ¶¶ 70-75, and that Plaintiffs have been deprived of the benefit of the bargain by purchasing the Riddell Football helmets because what they received do not live up to Defendants' promises of concussion reduction, *id.* at ¶¶ 87, 91.  Nothing more is required at pleading stage.

Further, there should be no question that after discovery, Plaintiffs will be able to show an ascertainable loss.  For example, in *Riddell, Inc. v. Schutt Sports, Inc.*, 724 F.Supp. 2d 963, 971 (W.D. Wis. 2010), the Court found evidence that "[t]he launch of the Revolution allowed Riddell to get a $50 premium for the new helmet, which Riddell attributes to the 'technology' of the helmet and the concussion study."[8]  Defendants' suggestion that the Complaint did not adequately put them on notice that Plaintiffs paid a price premium is simply not accurate.[9]

### B.   Plaintiffs' Claims Are Properly Pled Under the Standards Applicable to the California Consumer Protection Statutes.

#### 1.   Plaintiffs Properly State a Claim for Violation of the CLRA.

Under Section 1781(a) of the Consumers Legal Remedies Act ("CLRA"), "[a]ny consumer . . . may, if the unlawful method, act, or practice, has caused damage to other consumers similarly situated, bring an action on behalf of himself and such other consumers . . . ."  Cal. Civ. Code § 1781(a); *see also NVIDIA GPU Litig.*, No. C 08-04312 JW, 2009 WL 4020104 (N.D. Cal. Nov. 19, 2009).  Plaintiffs are only required to allege that defendants engaged in transactions that were  "intended to result" in the sale of goods or services primarily

---

[8] This is the study included in the Complaint noting a 31% reduction in concussions.

[9]  Defendants stated as much in their S-4 filed with the S.E.C. on April 7, 2005 by stating that "[w]e believe that the majority of this growth will be driven by new football helmets like our *Revolution* helmet, which are expected to elevate the average price point for helmets."  Form S-4 Registration Statement of Riddell Bell Holdings, Inc., filed with the S.E.C. on April 7, 2005, *available at* http://www.sec.gov/Archives/edgar/data/884063/000119312505072192/ds4.htm.

for personal, family or household purposes, not that defendants intended to deceive any person. Cal. Civ. Code § 1770(a).  A CLRA claim may be based on misrepresentations (*e.g.*, the Football Helmets possess "Concussion Reduction Technology") and also on omission of material facts if (1) the omission was contrary to a representation actually made by the defendant, or (2) the omission was of a fact the defendant was obliged to disclose.  *See McAdams v. Monier*, 182 Cal. App. 4th 174, 185-86 (Cal. Ct. App. 2010); *Collins v. eMachines, Inc*., 202 Cal. App. 4th 249, 255-56 (Cal. Ct. App. 2011) (both upholding CLRA claim for failure to disclose material product limitations).  A fact is "material" for CLRA purposes if a plaintiff would deem it important in determining how to act in the transaction at issue.  *Collins,* 202 Cal. App. 4th at 255; *In re Apple & AT&TM Antitrust Litig*., 596 F.Supp. 2d 1288, 1310-11 (N.D. Cal. 2008).  A duty to disclose also arises when the defendant makes partial representations but also suppresses some material fact.  *NVIDIA*, 2009 WL 4020104 at *11 (internal citations omitted); *Shin v. BMW of N. Am*., No. CV 09-00398 AHM (AJWx), 2009 WL 2163509, at *1 (C.D. Cal. July 16, 2009) (internal citations omitted).  Here, Plaintiffs allege each of these circumstances specifically as to the CLRA claim.  Compl. ¶¶ 155-156.

Defendants only attack Plaintiffs' CLRA claim as being "based on fraud" and thus subject to Rule 9(b)'s heightened pleading requirements.[10]  But there is no fraudulent intent element of a CLRA claim.  Instead, the CLRA prohibits numerous specified "unfair methods of competition and unfair or deceptive acts or practices" in transactions for the sale of goods to

---

[10] This is not the applicable standard.  In *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003), the Ninth Circuit reversed the dismissal of a CLRA and UCL claim under Rule 9(b) because those claims did not solely depend on averments of fraud because "fraud is not an essential element of a claim under these statutes."  The Ninth Circuit held that Rule 9(b)'s particularity requirements apply only when a CLRA claim, unlike here, is *entirely* "grounded in fraud."  *Id.* at 1105-06.

consumers.  Cal. Civ. Code § 1770(a).  And the Complaint specifies five separate violations, none of which contain an intent element.  *See* Compl. ¶ 154.

Regardless, even if the Court applied Rule 9(b) to Plaintiffs' CLRA claims, as set forth in detail in Section III.B. above, Plaintiffs' allegations satisfy any reasonable particularity standard.  Plaintiffs allege the safety-related material facts that Defendants misrepresented and failed to disclose, the underlying misrepresentations, and Defendants' principal role in the wrongdoing.  Compl. ¶¶ 43-69.

Plaintiffs further allege, as set forth in detail above, that Defendants had prior knowledge of the Football Helmet's limitations and made representations going directly to the issue of safety, which independently provides a duty to disclose all material facts.  *See, e.g., Falk,* 496 F.Supp. 2d at 1095-97.  Furthermore, Plaintiffs allege that a reasonable person would attach importance to the information, and that Defendants intended for consumers to act upon such claims in making purchase decisions, and that Plaintiffs did so.  Compl. ¶¶ 157-58.  Thus, the Complaint properly alleges that Defendants failed to disclose material facts, in violation of the CLRA.  *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 36-37 (Cal. Ct. App. 1975) (CLRA claims can properly be based on the omission of material facts they were bound to disclose but did not that is contrary to what represented and that "is calculated to induce a false belief"); *Stanwood v. Mary Kay*, 941 F.Supp. 2d 1212, 1221 (C.D. Cal. 2012) (CLRA claim properly based on allegation, such as at paragraphs 42-44 of Complaint, that Defendants hid material facts in order to increase sales). Similar allegations have been found sufficient to survive a motion to dismiss.  *See e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141-43 (9th Cir. 2012) (CLRA claim can be based on concealment of material facts where the plaintiffs

could reasonably allege the manufacturer did not notify consumers of key information in its possession that went to the safety of the product).

Such information in a defendants' possession can also be established by showing the defendant knew of these limitations while the plaintiffs did not, and that such limitations were "difficult to discover." *Collins*, 202 Cal. App. 4th at 256. Defendants' assertion here that consumers should have: (1) had access to the *Journal of Neurology* and located and read the studies Defendants relied on; (2) understood them; and (3) read and accurately evaluated opposing comments, actually supports Plaintiffs point under *Collins* based on the reasonable consumer standard discussed in *McAdams,* and *In re Steroid Hormone Cases*, 181 Cal. App. 4th 145, 157 (Cal. Ct. App. 2010).

### 2.    The Plaintiffs Have Adequately Alleged Each Element of the Independent UCL Claims

The California Unfair Competition Law ("UCL") prohibits three independent categories of wrongdoing: "unlawful," "unfair," or "fraudulent" business practices. The UCL also prohibits any act violating the False Advertising Law ("FAL"). Cal. Bus. & Prof. Code § 17200, *et seq.*; *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal. 4th 163, 180 (Cal. 1999); *NVIDIA*, 2009 WL 4020104, at *11. The UCL provides equitable relief, including restitution, measured as between what the plaintiff paid and the value of what was received.

Defendants bear a heavy burden in moving to dismiss the UCL claims, for Plaintiffs need only allege one "'unlawful, unfair, or fraudulent business act or practice'" to survive a motion to dismiss. *Lipitt v. Raymond James Fin. Servs., Inc*., 340 F.3d 1033, 1043 (9th Cir. 2003). It is "the rare situation in which granting a motion to dismiss [a UCL claim] is appropriate." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008). This is in part because intent to injure is not an element of such a claim. *See Cortez v. Purolator Air Filtration Prods. Co*., 23

Cal. 4th 163,181 (Cal. 2000).  As this is a strict liability statute, it is not solely grounded in fraud

and thus not subject to Rule 9(b).  *Morgan v. AT&T Wireless Services, Inc.*, 177 Cal. App. 4th

1235, 1256 (Cal. Ct. App. 2009).

a.  <u>**Plaintiffs Allege a Claim for Unlawful Business Practices**</u>

The "unlawful" prong of the UCL is triggered by any violation of another law, whether or

not it provides a private cause of action, be it "constitutional, statutory, regulatory, common law,

or other determinable legal standard" as "independently wrongful."  *Korea Supply Co. v.

Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (Cal. 2003); *Saunders v. Superior Court*, 27 Cal.

App. 4th 832, 839 (Cal. Ct. App. 1994).  "By proscribing 'any unlawful' business practice,

Section 17200 borrows violations of other laws and treats them as unlawful practices that the

unfair competition law makes independently actionable."  *Cel-Tech,* 20 Cal. 4th at 180 (internal

citations omitted); *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th

Cir. 2007).  This includes all provisions of Section 17200 *et seq.   See* Cal. Bus. & Prof. Code §

17200.

As shown above, Plaintiffs state claims for violations of the CLRA and other laws.  *See

In Re Toyota Hybrid*, 890 F.Supp. 2d 1210, 1220 (C.D. Cal. 2011) ("Plaintiffs allege that Toyota

committed 'unlawful' business acts by violating the CLRA.")  Since Defendants only allege the

CLRA claims are not particularly pled, and this claim is wrong, Plaintiffs sufficiently allege a

cause of action under the UCL's unlawful prong. *See Collins*, 202 Cal. App. 4th at 258.

Moreover, claims for violations of the FTC Act (which could include the substantiation

doctrine), have been found to be "more than ordinarily persuasive" in establishing violations of

the UCL. *O-Conner v. Sup. Ct*, 177 Cal. App. 3d 1013, 1018 (Cal. Ct. App. 1986); *see also In re

Clorox,* 894 F.Supp. 2d at 1232 (denying defendants' motion to dismiss UCL claim on a lack of

22

substantiation challenge, where plaintiffs' Complaint alleged two studies that directly contradicted defendants' advertising).   As set forth above, the Complaint contains such allegations, *see, e.g.*, Compl. ¶¶ 59-63, which defeats Riddell's motion to dismiss Plaintiffs' UCL claim.

> **b.**      **Plaintiffs Allege a Claim for Unfair Business Practices**

Contrary to Defendants' suggestion, California courts routinely apply a definition of "unfair" business practices to consumer claims as alleged in paragraphs 123-124 of the Complaint.   Under the UCL, an "unfair" practice is any business practice the utility of which is outweighed by the harm to the consumer.   *Gafcon, Inc. v. Ponsor & Assocs.*, 98 Cal. App. 4th 1388, 1425 n.15 (Cal. Ct. App. 2002).   "The 'unfair' prong provides an intentionally broad independent basis for relief."   *Toyota Hybrid*, 890 F.Supp. 2d at 1220.   Whether Defendants' conduct is "unfair is generally a question of fact which requires consideration and weighing of evidence from both sides."   *Paduano v. American Honda Motor Co., Inc.,* 169 Cal. App. 4th 1453, 1469 (Cal. Ct. App. 2009).

Defendants assert that Plaintiffs must plead that they specifically read and relied upon the product advertising to assert UCL claims.   However, for claims of "unlawful" and "unfair" business practices, such independent prongs of the UCL do not even contain a reliance element. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 325 n.7 (Cal. 2009) (noting many types of unfair business practices do not require a reliance component).

> **c.**      **Plaintiffs Allege a Claim for "Deceptive" or "Fraudulent" Business Practices**

Contrary to Defendants' suggestion in their Motion, the California Supreme Court has held that a claim for fraudulent or deceptive business practices is not subject to common law fraud-based pleading requirements, and that citing a representative sample of advertisements is

sufficient to state a claim under this prong of the UCL.  *See Comm. On Children's Tel., Inc. v. Gen. Foods*, 35 Cal. 3d 197, 218 (Cal. 1983); *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (Cal. 1992); *see also In re Mattel, Inc.*, 588 F.Supp. 2d 1111 (C.D. Cal. 2008). "[T]he term 'fraudulent' in [Section 17200] does not refer to the common law tort of fraud." *Qarbon.com Inc. v. eHelp Corp.*, 315 F.Supp. 2d 1046, 1052 (N.D. Cal. 2004).  A "violation of the UCL may be proven 'even without allegations of actual deception, reasonable reliance, and damage.'"  *Parkinson v. Hyundai Motor Co.*, 258 F.R.D. 580, 597 (C.D. Cal. 2008).  Here, the Complaint contains such allegations, including that Plaintiff Galvan paid a price for the Football Helmets he would not have otherwise would not have paid if the true facts had been disclosed. *See, e.g.*, Compl. ¶¶ 128-131.

The California Supreme Court also held that a misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question', and as such materiality is generally a question of fact unless the 'fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.'" *Tobacco II,* 46 Cal. 4th at 327 (citations omitted).  Plaintiffs need not allege that those misrepresentations were the sole or even the decisive cause of the injury-producing conduct.  *Id*. As set forth above, each of the Plaintiffs have alleged why such misrepresentations and omissions of fact were material, and their exposure to such misrepresented facts.  *Stearns v. Ticketmaster*, 655 F.3d 1013, 1020 (9th Cir. 2011) (exposure to common statements all that is required to assert claims under the UCL as no individualized proof of causation and reliance is required).  As materiality is a common question of fact, *see Hormone*, 181 Cal. App. 4th at 157, Defendants' attacks on this claims cannot be resolved in this Motion.

24

**d.      Plaintiffs Properly Allege a Claim for Violation of the California False Advertising Law ("FAL")**

Pursuant to the FAL, it is unlawful to make any statement which is "untrue or misleading, and which is known, or which by exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.  This standard is similar to the standard for a fraudulent business practice set forth above and is not subject to the requirements of Rule 9(b), which appears to be Defendants' only attack on this claim.  *Comm. on Children's Television*, 35 Cal. 3d at 215-17; *Tobacco II Cases*, 46 Cal. 4th at 312 n.8.  Plaintiffs have alleged in detail that Defendants have made untrue and misleading statements in advertisements regarding the Football Helmets that they reasonably should have known were not accurate, in violation of the FAL.  Compl at ¶ 143-146.  Plaintiffs have therefore properly stated a FAL claim.

**C.      Plaintiffs' Allegations State a Claim for Violation of the Florida Deceptive and Unfair Trade Practices Act**

Plaintiffs have adequately pled a claim under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* ("FDUTPA"). FDUTPA provides that the statute should be "construed liberally" to, *inter alia*, "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202; *see also Samuels v. King Motor Co.*, 782 So. 2d 489, 499 (Fla. Dist. Ct. App. 2001) ("[T]he Legislature . . . has mandated that FDUTPA is to be liberally construed."). *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2d 602, 606 (Fla. Dist. Ct. App. 1997).

"[A] consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland,* 951 So.2d

860, 869 (Fla. Dist. Ct. App. 2006).  The plaintiff "must allege, at a minimum, that she has been

aggrieved." *Smith v. WM. Wrigley Jr. Company,* 663 F.Supp. 2d 1336, 1339 (S.D. Fla. 2009)

(citing *Macias v. HBC of Fla., Inc.,* 694 So.2d 88, 90 (Fla. Dist. Ct. App. 1997) ("[I]n order for

the consumer to be entitled to any relief under FDUTPA, the consumer must not only plead and

prove that the conduct complained of was unfair and deceptive but the consumer must also plead

and prove that he or she was aggrieved by the unfair and deceptive act."); *Moss v. Walgreen Co*.,

765 F.Supp. 2d 1363 (S.D. Fla. 2011).  In addition, "a plaintiff that is able to allege that he or she

'has suffered a loss' will qualify for relief under both standards." *Wrigley,* 663 F.Supp. 2d at

1339.[11]

Generally, a practice is deceptive under FDUTPA where there is "a representation,

omission, or practice that is likely to mislead the consumer acting reasonably in the

circumstances, to the consumer's detriment."   *Zlotnick v. Premier Sales Grp., Inc*., 480 F.3d

1281, 1284 (11th Cir. 2007) (citing *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777

(Fla. 2003)); *see also Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000)

(explaining that federal courts have held "a deceptive practice is one that is likely to mislead

consumers") (internal citations omitted).

---

[11] The *Wrigley* court also distinguished a case cited by Defendants here, *Prohias v. Pfizer,* 485 F.Supp. 2d 1329, 1337 (S.D. Fla. 2007), finding that it was critical to the *Prohias* court's holding that the plaintiffs still paid for the product at issue notwithstanding their knowledge of the product's alleged lack of benefits.  *See Wrigley*, 663 F.Supp. 2d at 1340 (citing *Prohias*, 485 F.Supp. 2d at 1334).  The *Prohias* court had rejected "price inflation" damages as too speculative as "proof of any such 'price inflation' injury would depend on evidence that the pharmaceutical market is 'efficient.'"  *Id.* (citing *Prohias,* 485 F.Supp. 2d at 1336). In comparison, the *Wrigley* court did not reject the "price premium" allegations, finding that there was "no such need for speculation or reliance on market forces because Plaintiff alleges that 'as a result of the misleading messages . . ., Wrigley has been able to charge a price premium for Eclipse® gum over other chewing gum products, including other Wrigley chewing gum products."  *Id.* Paragraphs 52 and 87 of the Complaint have similar allegations.

Much like the allegations that were found to be sufficient to state a claim for violation of FDUTPA in *Wrigley* and *Moss,* Plaintiff Farrell alleges that he was "exposed to" Defendants' false and deceptive claims regarding the ability of the Football Helmets to reduce concussions, purchased a Football Helmet, and suffered injury in fact and monetary loss as a result of the unfair trade practices described in the Complaint.  Compl. ¶¶ 12,67,68,72.  He further alleges that as a result of the misleading messages conveyed through Defendants' advertising and sales efforts, Defendants have been able to charge a significant price premium for their Football Helmets, and that he would not have purchased the Helmet at the amount he paid if the truth had been adequately disclosed.  *Id*. at ¶ 87.  Accepting these allegations as true, Plaintiff Farrell has plausibly stated a claim for violation of FDUTPA.

### D.      FDUTPA Does not Require Proof of Actual Reliance.

Defendants assert, again incorrectly, that Plaintiffs must establish actual reliance and causation in order to state a FDUTPA claim.  However, "[t]he Florida Supreme Court has noted that, for purposes of a FDUTPA claim, 'deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'"  *Zlotnick v. Premier Sales Group,* 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.,* 842 So .2d 773, 777 (Fla. 2003)).  To establish causation and damages, a plaintiff "need not show actual reliance on the representation or omission at issue."  *Davis v. Powertel, Inc.,* 776 So. 2d 971, 973 (Fla. Dist. Ct. App. 2000); *see also, e.g., Cold Stone Creamery, Inc. v. Lenora Foods I, LLC,* 332 F.App'x 565, 567 (11th Cir. 2009) ("[T]he FDUTPA does not require a plaintiff to prove actual reliance on the alleged conduct.  But the plaintiff must prove that the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.") (internal citation and quotation

omitted); *Fitzpatrick v. General Mills*, 635 F.3d 1279, 1283 (11th Cir. 2011); *Adrianne Roggenbuck Trust v. Development Resources Group, LLC*, 505 F.App'x 857, 862 (11th Cir. 2013) (reversing district court's dismissal of FDUTPA claim where district court erroneously held that justifiable reliance is a necessary element of a FDUTPA claim); *Webber v. Esquire Deposition Services, LLC*, 439 F.App'x 849, 851 (11th Cir. 2011) ("In analyzing whether common questions of fact and law predominate, the district court correctly noted that FDUTPA does not require individualized proof of subjective reliance.").

In sum, FDUTPA does not require a plaintiff to prove the misrepresentation caused them to do anything; rather, the Plaintiff must plead that the reasonable consumers would have been deceived by Defendants' conduct.  Plaintiffs have done so here.  *E.g.* Compl. ¶¶ 67-68.

## 1.   Plaintiffs have adequately alleged damages under FDUTPA

A FDUTPA claim requires the plaintiff to allege actual damages.  Fla. Stat. § 501.211 ("In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs . . . .").   To succeed, each plaintiff is required to prove that he or she paid more for the product than it was worth.  *Rollins, Inc*., 951 So. 2d at 869 ("[T]he measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value . . . .") (citations omitted).  Here, the Florida Plaintiff avers that he purchased the offending Football Helmet at a price he otherwise would not have paid if the true facts had been known, and as a result suffered economic harm. Compl. ¶¶ 72, 116.  This is a plausible theory of damages, sufficient to withstand a motion to dismiss.

2.      **Application of Rule 9(b) to FDUTPA**

Finally, contrary to Defendants' assertion, the heightened pleading requirements of Rule 9(b) do not necessarily apply to FDUTPA claims. *See Guerrero v. Target Corp.*, 889 F.Supp. 2d 1348, 1354-55 (S.D. Fla. 2012); *Costa v. Kerzner Intern. Resorts, Inc.*, No. 11-60663-CV-COHN, 2011 WL 2519244, at *2 (S.D. Fla. Jun. 23, 2011); *Gastaldi v. Sunvest Communications USA, LLC*, 637 F.Supp. 2d 1045, 1058 (S.D. Fla. 2009) (finding that Rule 9(b)'s requirements cannot serve as a basis to dismiss FDUTPA claims). [12]  Rule 9(b)'s pleading requirements do not apply because "[a] deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." *Florida v. Tenet Healthcare Corp.*, 420 F.Supp. 2d 1288, 1310-11 (S.D. Fla. 2005) (citing *State Office of Atty. Gen., Dept. of Legal Affairs v. Wyndham Int'l. Inc.*, 869 So.2d 592, 598 (Fla. Dist. Ct. App. 2004)).  And even if Rule 9(b) applied, the allegations, as discussed in section V.A., are sufficiently particularized to put Defendants on notice as to what Plaintiffs allege their fraudulent conduct consisted of - the date, time and place need not be pled with absolute precision. *See In re Bayer Corp., Combination Aspirin Products Mktg. & Sales Practices Litig.*, 701 F.Supp. 2d 356, 366 (E.D.N.Y. 2010).

---

[12] Plaintiffs recognize that some Federal Courts in Florida may apply Rule 9(b) to FDUTPA claims. *See*, *e.g.*, *Blair v. Wachovia Mortgage. Corp.*, No. 5:11-cv-566-Oc-37 TBS,2012 WL 868878, at *2-3 (M.D. Fla. Mar. 14, 2012).  While *Blair* acknowledged a split among federal district courts as to whether Rule 9(b) is applicable to FDUTPA claims, it also recognized that "[a] deceptive act or unfair practice may be found when there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." Id. at *3.  Certainly, Plaintiff's allegations satisfy this standard.

Here, as discussed in section V.A. *supra*, the Complaint's allegations are more than sufficient to apprise Defendants of the conduct being challenged, and should not be rejected even if the Court were to apply the pleading requirements of Rule 9(b).

**E.      Plaintiffs Adequately Plead A Claim Under the Illinois Consumer Fraud Act.**

The Illinois Legislature enacted the Illinois Consumer Fraud Act ("ICFA") as "a regulatory and *remedial* statute for the *purpose of protecting consumers* and others against fraud, unfair methods of competition, and *unfair or deceptive* acts or practices in the conduct of any form of trade or commerce."  *Price v. Philip Morris, Inc.*, 219 Ill.2d 182, 233–34, (2005) (emphasis added) (internal citations omitted),  Consistent with Illinois law, the Seventh Circuit in *BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081 (7th Cir. 1994) has stated:

> Quaker State recognizes a fundamental point: since the conditions under which a statement is true or false vary according to the statement at issue, a plaintiff's burden of proof may be satisfied in different ways with respect to different statements. Statements in the form "tests show x" are literally false if tests do not establish "x." But more general comparative claims can only be proven false by affirmative evidence of falsity. Of course, claims of product superiority are a close cousin to claims that "tests show x," for "implicit in most assertions of superiority ... is that some type of comparison between products has been made."

*Id*. at 1091 (internal citations omitted).  Here, Plaintiffs have alleged affirmative proof and referenced studies that dispute Defendants' marketing claims.[13]  And while flaws in Defendants' own studies are included in the Complaint, they do not form the basis for the claims alleged.

---

[13] Defendants' cases to the contrary are distinguishable.  For example, in *Greifenstein v. Estee Lauder Corp., Inc.*, No. 12-CV-09235, 2013 WL 3874073 (N.D. Ill. July 26, 2013), the court ultimately concluded that there was no study identified by the plaintiff that contradicted the defendant's claims.  Similarly, in *Gredell v. Wyeth Labs., Inc.*, 367 Ill. App. 3d 287, 291 (Ill. App. Ct. 2006), the court found, consistent with the allegations here, that a claim is deceptive "when the claim at issue implies there is substantiation for that claim, *i.e.*, if defendants had claimed something along the lines of 'tests show that Phenergan Expectorant Plain is effective

Defendants' claim that Plaintiffs have not alleged proximate causation, *i.e.,* that plaintiff was exposed to the advertisement.  However, in paragraph 74 of the Complaint, Plaintiffs plead that "Cahokia School District purchased multiple Riddell Football Helmets since 2011.  Plaintiff Cahokia School District *was exposed to the false and deceptive claims* regarding the ability of the Football Helmets to reduce concussions as detailed herein" (emphasis added).  Nothing more is required here, as the cases cited by Defendants in their footnote are distinguishable.[14]

Defendants also argue the omission claim fails because Plaintiffs have not alleged that they would have acted differently if they knew the truth (Dkt. Nos. 24-1 at 31).  But again, in paragraph 74 of the Complaint, Plaintiffs plead that Plaintiff Cahokia School District "paid a price premium for these Riddell Football Helmets and suffered economic harm because the Football Helmets it purchased do not provide greater protection against concussions."  This allegation, along with the reasonable inferences drawn therefrom, satisfies this standard.  Indeed, when compared to the allegations that the court found sufficient in the case cited by the Defendants, it is clear that the pleadings here are sufficient.  *See Raziev v. Compass Truck Sales, LLC*, 2013 WL 4846894, at *5 (N.D. Ill. Sept. 10, 2013) ("In any event, Raziev has alleged facts sufficient to make a Consumer Fraud Act claim. According to Raziev, defendants concealed the true mileage of the truck by rolling back the odometer and made intentionally false representations about the mileage on the truck and its warranty eligibility.  Absent those false

---

for cough suppression' or 'Phenergan Expectorant Plain is more effective for cough suppression than XYZ Expectorant.'"

[14] The court in *Oliveria* concluded that the plaintiff's claim failed because he relied on a "market theory" of causation.  *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 140-41 (2002) ("Nor did plaintiff claim that he saw, heard or read any of the allegedly deceptive advertisements.").  Here, Plaintiffs have alleged actual proximate causation because they were exposed to Defendants' deceptive advertisements and paid a premium price for the Football Helmets.  And *People ex rel. Madigan v. United Const. of Am., Inc.*, 981 N.E.2d 404, 411 is similarly not on point because Plaintiffs here do not allege market theory causation – each Plaintiff was exposed to the deceptive claims.

representations, Raziev claims that he would not have purchased the truck at the price at which he did.").

F.   **Arizona DCPA.**

    1.   **Plaintiffs' Allegations Properly State Claims for Relief Under the Arizona Consumer Fraud Act**

Plaintiff King (the "Arizona Plaintiff") brings this cause of action under the Arizona Consumer Fraud Act.  *See* Compl. at Counts IX and X.  The Arizona Consumer Fraud Act ("ACFA") states, in relevant part, as follows:

> The act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

Ariz. Rev. Stat. § 44–1522(A).  The [ACFA] grants an "implied private right of action against a violator of the act."  *Dunlap v. Jimmy GMC of Tucson, Inc.,* 136 Ariz. 338, 342 (Ariz. Ct. App. 1983) (internal citations omitted).

"To succeed on a claim of consumer fraud, a plaintiff must show a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and consequent and proximate injury resulting from the promise." *Kuehn v. Stanley,* 208 Ariz. 124, 129 (Ariz. Ct. App. 2004) (citing *Correa v. Pecos Valley Dev. Corp.,* 126 Ariz. 601, 605 (Ariz. Ct. App. 1980)).  "An injury occurs when a consumer relies, even unreasonably, on false or misrepresented information." *Id.* (citing *Correa,* 126 Ariz at 605).  "It is not necessary to show specific intent to deceive; the intent to do the act involved is sufficient."  *Flagstaff Med. Ctr., Inc. v. Sullivan,* 773 F.Supp. 1325, 1361–62 (D. Ariz. 1991) (citing *State ex rel. Babbitt v.*

32

*Goodyear Tire & Rubber Co.,* 626 P.2d 1115, 1118 (Ariz. Ct. App. 1981)), *rev'd in part on other grounds,* 962 F.2d 879 (9th Cir.1992).

Plaintiffs' ACFA claim satisfies the pleading requirements under Rules 8 and 9(b) of the Federal Rules of Civil Procedure.  Plaintiffs allege that Defendants' marketing statements regarding concussion reduction are false and misleading.  Specifically, Plaintiffs allege that Defendants market Riddell Football Helmets as having "concussion reduction technology" and make other similar marketing and advertising claims regarding the ability of the Football Helmets to provide an increased level of safety through reduced concussions.  Compl. ¶¶ 2, 57.  Plaintiffs further allege that Defendants' promises are illusory in that their Football Helmets do not provide the promised concussion reduction results, and that, in fact, recent research has shown that claims of concussion reduction related to football helmets are not valid.  *Id.* at ¶¶ 3, 59-65.  In addition, the Arizona Plaintiff alleges that he was exposed to these false and deceptive claims, and as a result purchased the subject Football Helmets and paid more than he would have if the true facts had been disclosed, thereby suffering economic harm.  *Id.* at ¶¶ 75, 161, 168, 179, 181.

Plaintiffs have sufficiently alleged that Defendants' concussion reduction representations are false or misleading.  *See Silvas v. GMAC Mortg., LLC,* No. CV–09–265–PHX–GMS, 2009 WL 4573234, at *7 (D. Ariz. Dec. 1, 2009) (stating that "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false"); *see also Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (stating that under Rule 9(b) the complaint must set forth "precisely what statements were made in what documents or oral representations . . . were made").  These allegations sufficiently set forth the time, place, and specific content of the alleged false statements and misrepresentations made in connection with the sale or advertisement of the

subject helmets and sufficiently identify Defendants as the parties making the alleged false statements and misrepresentations.  *See Kuehn,* 208 Ariz. at 129 (stating that a "plaintiff must show a false promise or misrepresentation made in connection with the sale or advertisement of merchandise" under the ACFA) (citing *Correa,* 126 Ariz. at 605).

The foregoing allegations, among others detailed above, sufficiently set forth how Defendants' statements regarding concussion reduction misled and injured the Arizona Plaintiff by allegedly inducing him to purchase products to the exclusion of other, less expensive products.  *See Kuehn,* 208 Ariz. at 129 (stating that under the ACFA, "[a]n injury occurs when a customer relies, even unreasonably, on false or misrepresented information") (citing *Correa,* 126 Ariz at 605).

Furthermore, Plaintiffs allege that Defendants sold their helmets at a price premium over other comparable products, and that had the true facts been disclosed they would not have paid the same price for the Football Helmets.  Compl. ¶ 52.  Thus, Plaintiffs have sufficiently alleged that Defendants obtained monetary compensation as a consequence of the alleged fraud.  *See Ziemba,* 256 F.3d at 1202 (the complaint must set forth "what the defendants obtained as a consequence of the fraud") (internal citations omitted).

Accordingly, because Plaintiffs have pled all of the elements of a claim under the ACFA, and because Plaintiff has satisfied the pleading requirements of Rule 9(b)(to the extent they apply to this claim), the Court should deny Defendants' Motion to dismiss Plaintiffs' ACFA claim.

        **2.**       **Plaintiffs' ACFA Claims are not Barred by the Statute of Limitations.**

Defendants assert that Plaintiff's ACFA claims "are time barred by the applicable one-year statute of limitations."  *See* Def. Mot. at 38.  In support of this allegation, Defendants allege

that "Kenny King is the only named Plaintiff in Arizona and the Amended Complaint does not allege that he purchased any of the helmets within the one year limitations period." *Id*. Defendants are incorrect.

On a motion to dismiss under Rule 12(b)(6), a claim may be dismissed as time-barred under the statute of limitations only if the factual allegations in the complaint clearly show that the claim is untimely. *Harris v. City of New York,* 186 F. 3d 243, 250 (2d Cir. 1999); *see also Davis v. Indiana State Police,* 541 F.3d 760, 763 (7th Cir. 2008) (concluding that the Supreme Court's opinion in *Twombly* "did not revise the allocation of burdens concerning affirmative defenses," and restating the rule that "complaints need not anticipate, and attempt to plead around, potential affirmative defenses"). Dismissal is proper only when, drawing all reasonable inferences in favor of the plaintiff, the court concludes that the plaintiff's own factual allegations prove the defendant's statute of limitations defense. For a defendant's statute of limitations arguments to succeed, the plaintiff must "plead[ ] itself out of court." *In re marchFIRST Inc.,* 589 F.3d 901, 905 (7th Cir. 2009).

Here, the Arizona Plaintiff alleges that he has "purchased multiple Riddell Revolution and Speed Youth Football Helmets since 2010." Compl. ¶¶ 14, 75. Thus, the Complaint does not clearly show that his claims are untimely, as there is no indication that he did not purchase a helmet within the year preceding the filing of his initial complaint. *See Mahmud v. Kaufmann*, 454 F.Supp. 2d 150, 162-63 (S.D.N.Y. 2006) (motion to dismiss denied where complaint alleged defendant's comments were made "from 2001 to present" on the grounds that the complaint "does not clearly show that these claims are untimely as the comments have been made from 2001 to present"). Further, the statute of limitations does not run from the date of purchase, but rather from when the underlying true facts were, or reasonably could have been, discovered,

which is beyond the scope of this motion.  *Alaface v. National Inv. Co*., 181 Ariz. 586,  892 P.2d

1375, 1384 (1994)(statute of limitations for a claim under Arizona's Consumer Fraud Act only

begins to run after the defrauded party discovers or with reasonable diligence could have

discovered the who and what of the fraud, which "is normally a question for finder of fact"

unless only one reasonable inference can be drawn from the undisputed facts).

Accordingly, Plaintiffs' ACFA allegations are sufficient to survive dismissal based on the

statute of limitations, and Defendants' motion to dismiss Plaintiffs' ACFA claims should be

denied.

## VI.   PLAINTIFFS PROPERLY ASSERT A CLAIM FOR UNJUST ENRICHMENT AND DECLARATORY RELIEF

### A.   A Direct Purchase From Defendants is Not Required Under New Jersey Law to Maintain a Claim for Unjust Enrichment.

Defendants argue that Plaintiffs' claim for unjust enrichment must be dismissed because

Plaintiffs purchased the helmets from third-party retailers and not from the manufacturer itself.

Opp. at 40.  As set forth below, Defendants' argument should be rejected.

Some Plaintiffs may have purchased helmets "sold by Defendants" and Plaintiffs allege

generally that Riddell Inc. sells helmets "to direct purchasers" and through its "distributors"

Compl. ¶¶ 16-18. Thus, there is no basis to dismiss their unjust enrichment claim.  Moreover,

Defendants' argument wrongfully ignores the "some direct relationship" language in the case

law in arguing that there must be a "direct purchase."  At no point has New Jersey law mandated

that a direct *purchase* is required from the defendant in order for a plaintiff to pursue a claim for

unjust enrichment.  To the contrary, in *Stewart v. Beam Global Spirits & Wine, Inc.*, 877 F.Supp.

2d 192 (D.N.J. 2012), the Court stated as follows:

> This Court finds that where a plaintiff alleges that a defendant
> manufacturer has made false claims or misrepresentations directed

36

>       for the purpose of generating retail sales, and where those retails
>       sales could have the effect of increasing the amount of wholesale
>       sales to the manufacturer, it is plausible that a plaintiff can show
>       evidence of a sufficiently direct relationship between the parties
>       under New Jersey law.

*Id*. at 197-201 (footnotes omitted).

Here, Plaintiffs mistakenly believed the Defendants when they represented that their Football Helmets had "concussion reduction technology." Compl. ¶ 2. If Plaintiffs had known, at the time of purchase, that the Football Helmets did not have the promised ability to "reduce the incidence of concussions," *id.* at ¶ 1, Plaintiffs would not have paid for the Football Helmets at the prices they did and thus are entitled to compensation for such payments. *id.* at ¶¶ 70-75.[15] Thus, as was the case in *Stewart*, it would be inequitable to hold that Plaintiffs cannot state claims against Defendants here for lack of a direct relationship. *See also Pontrelli v. MonaVie, Inc.*, No. 13-CV-4649-WJM-MF, 2014 WL 4105417, at *7 (D.N.J. Aug. 19, 2014) ("Given that MonaVie benefits financially from their Distributors' sales tactics, MonaVie clearly retains financial benefits from consumers purchasing MonaVie products, and, therefore, MonaVie is not an 'innocent party' that should be insulated from an unjust enrichment claim."); *Lynch v. Tropicana Products, Inc.*, No. 2:11-CV-07382 DMC, 2013 WL 2645050, at *10 (D.N.J. June 12, 2013) ("In determining whether a claim for unjust enrichment has been sufficiently plead, a

---

[15] In fact, perhaps the reason the court in *Premier Pork LLC v. Westin Inc.,* No. 07-1661, 2008 WL 724352 (D.N.J. Mar. 17, 2008), did not delve into the facts of *VRG Corp.* and *Callano* is because the facts of the cases were remarkably similar. In *Premier Pork*, the plaintiff sold pork bellies to a business that became insolvent before it paid the plaintiff, 2008 WL 724352, at *1. The Plaintiff, now a creditor of the defunct business, sued, *inter alia*, the insolvent company's senior creditor, the winning bidder at auction (which happened to be the parent company of the insolvent company), the company to which the assets of the insolvent company were eventually sold to, and that company's parent. *Id.* Because the relationship of the various parties was "somewhat convoluted", the court determined that there was no "direct relationship" to allow the unjust enrichment claim to proceed – a conclusion not only understandable given the nature of the relationships but also buttressed by the fact that the only contract was between the plaintiff and the insolvent company. *Id.* at *15.

distinction has been made between defendants who were alleged to have misrepresented the product at the heart of litigation and defendants who were innocent third parties 'who did not unjustly retain a benefit, did not engage in allegedly fraudulent conduct, and had little to no dealings with the plaintiffs who sought relief from them.'").

B. **Unjust Enrichment Provides Alternative Grounds for Recovery.**

Defendants argue that New Jersey law does not recognize an unjust enrichment claim "premised on a fraud or tort theory." *See* Dkt. 24-1 at 41. While it is true that the "Restatement of Torts does not recognize unjust enrichment as an independent tort cause of action", *Castro v. NYT Television*, 370 N.J. Super. 282, 299 (App. Div. 2004), here the claim for unjust enrichment is not being brought as an independent tort – it is being brought to obtain the equitable relief of "restitution." Compl. ¶ 187. The allegations regarding the misrepresentations and omissions made by Defendants exhibit the conduct that would make it "inequitable" or "unjust" for the Defendants to retain revenues derived from Plaintiffs' "purchases of the Football Helmets." *Id.* at ¶ 186.

In addition, Plaintiffs are allowed pursuant to Rule 8 to plead unjust enrichment in the alternative. *See Dzielak*, 2014 WL 2758746, at *17 ("Unjust enrichment is a backstop cause of action that often turns out to be superfluous if, for example, a breach of contract is shown. But Plaintiffs plead this claim in the alternative, as they are permitted to do.") (citing Fed. R. Civ. P. 8(d)(2)). At this stage, it would be premature to dismiss an unjust enrichment claim simply because it may later be eclipsed by some other cause of action. *See Palmeri v. LG Electronics USA, Inc.*, No. 07-5706 (JAG), 2008 WL 2945985, at *7 (D.N.J. July 30, 2008) ("[U]njust enrichment is, by its nature, an *alternative remedy to* contract and *tort remedies. . . .* It is

inherent in a claim for unjust enrichment that it is pled in the alternative to a claim for recovery

on the contract.") (emphasis added).

Plaintiffs agree with Defendants that the laws of the states are similar on this point.  For

example, the Eleventh Circuit recently addressed this issue in a case involving a claim under the

FDUTPA and an unjust enrichment claim, stating as follows:

> It is generally true that equitable remedies are not available under
> Florida law when adequate legal remedies exist.  *Williams v. Bear
> Stearns & Co.,* 725 So.2d 397, 400 (Fla. Dist. Ct. App. 1998).
> However, that rule does not apply to unjust enrichment claims.  *Id.*

*State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.,* 427 F.App'x 714, 722 (11th

Cir. 2011), *rev'd in part on other grounds by* 563 F.App'x 665 (11th Cir. 2014).  The Eleventh

Circuit clarified that "'[i]t is only upon a showing that an express contract exists [between the

parties] that the unjust enrichment . . . count fails.'"  *Id.* (quoting *Williams,* 725 So. 2d at 400).

To the extent that a plaintiff has adequate legal remedies under theories of liability other than a

claim of breach of an express contract, those remedies do not bar an unjust enrichment claim.  *Id.*

## C.    <u>There is No Basis to Dismiss the Claim of Assumpsit and Quasi-Contract.</u>

Defendants argue that the claim of assumpsit and quasi-contract should be dismissed

because it "appears duplicative of Plaintiffs' unjust enrichment claim" and such claims require a

"direct relationships."  Dkt. No. 24-1 at 41.  This argument is puzzling as Defendants also argued

that Plaintiffs' claim for unjust enrichment was "premised on a fraud or tort theory" yet

acknowledged that this claim is one for "quasi-contract."  While Defendants attempt to minimize

this discrepancy by stating that this claim in assumpsit is "recast in a slightly different light,"

there is no doubt there is a difference between tort and contract claims.  Furthermore, Plaintiffs

have established above that New Jersey law does not require a direct purchase for unjust

enrichment claims.   Finally, the Defendants have not cited a single case to support their proposition that a claim for assumpsit or quasi-contractual relief should be dismissed on these grounds.

### D.      **Plaintiffs Adequately Plead a Right to Declaratory Relief.**

Defendants move to dismiss Plaintiffs' claim for declaratory relief despite the fact that the Declaratory Judgment Act ("DJA") "should be liberally construed to effectuate the ends of justice." *Cincinnati Ins. Co. v. Holbrook*, 867 F.2d 1330, 1333 (11th Cir. 1989) (*per curiam*) (explaining that the Declaratory Judgment Act "should be exercised liberally in favor of granting such relief in order to accomplish the purposes of the Declaratory Judgment Act").  Given its purpose, the DJA provides district courts with "wide discretion to provide declaratory relief." *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pacific LLC*, 945 F.Supp. 2d at 566.  Such broad discretion is provided to the District Courts because the DJA created a new and additional remedy, which is available to interested parties like the Plaintiffs in this case.  *See e.g. Walker Process Equip., Inc. v. FMC Corp.*, 356 F.2d 449, 451 (7th Cir. 1966) (internal citation omitted); *Prier v. Steed*, 456 F.3d 1209, 1212 (10th Cir. 2006). Such remedies are appropriate even though other remedies are also available, and relief under the DJA is proper either as a basis of additional relief or to establish an essential component to liability whether or not other relief is sought. *Davis v. Romney*, 490 F.2d 1360, 1370 (3d Cir. 1974).

It is therefore premature to dismiss claims seeking declaratory and injunctive relief at this early stage of the proceedings because Plaintiffs have not moved for determination of what relief is appropriate must be considered only after liability has been established. *See Saltzman v. Pella Corp.*, No. 06-cv-4481, 2007 WL 844883, at *6 (N.D. Ill. Mar. 20, 2007) (refusing to dismiss the DJA claim under Rule 12(b) standards by finding it "premature to make that determination

here."); *Lawn v. Enhanced Serv. Billing, Inc.*, No. 10-CV-1196, 2010 WL 2773377, at *6 (E.D. Pa. July 13, 2010) ("This Court will address the issue of remedies, including the possibility of injunctive relief, if there is a finding of liability.  We see no need to limit the potential remedies available to Plaintiff at this time, however, and will not dismiss Plaintiff's claim for injunctive relief."); *Lewis v. Bank of Am. NA*, No. 13-7717 CAS VBKX, 2013 WL 7118066, at *4 (C.D. Cal. Dec. 18, 2013) ("At this juncture, it would be premature to find that injunctive relief may not be granted").  Thus, the Motion to dismiss Plaintiffs' claim for declaratory relief should be denied.

Defendants assert that "Plaintiffs' claim for declaratory relief is entirely derivative and dependent on Plaintiffs' consumer fraud claims and claims for unjust enrichment."  Dkt. 24-1 at 42.  But Defendants provide no analysis regarding  the purported duplicity between the other causes of action and the DJA claim.  In fact, Defendants merely devote a single, conclusory sentence to this argument followed by a string cite.[16]  In addition, as set forth above, Plaintiffs have adequately stated their claims for consumer fraud, unjust enrichment and assumpsit/quasi-contract.

Finally, Defendants simply ignore the fact that Plaintiffs here are seeking not only remedies to address past issues with Defendants' representations, but are also seeking prospective relief.  Such relief is necessary and proper to prevent the accrual of future damages and is in addition to the monetary relief sought by the other claims.  It has thus been recognized that "[i]nasmuch as a declaration could aid Plaintiff in the pursuit of *injunctive relief*, it is *not*

---

[16] In *Carrier v. Bank of Am., N.A.*, Nos. 12-104 RMB/JS et. al., 2014 WL 356219, at *9 (D.N.J. Jan. 31, 2014), the court dismissed the NJCFA claim and then proceeded to also dismiss the declaratory judgment claim because the relief plaintiffs sought were "based on 'the unclean hands violation of the New Jersey Consumer Fraud Act.'"  *Id*. at *9.  Thus, because the DJA claim was clearly premised on the NJCFA claim, both failed together.

*duplicative.*"  *Consumer Protection Corp. v. Neo-Tech News*, No. 08-cv-1983-PHX-JAT, 2009

WL 2132694, at *3 (D. Ariz. July 16, 2009) (emphasis added).[17]

## VII.   **PLAINTIFFS SHOULD BE GIVEN LEAVE TO FILE AMENDED COMPLAINT**

Although the burden is high for granting a motion to dismiss, if the Court is inclined to

agree with Defendants in any aspect of their Motion, any order should permit Plaintiffs to file an

amended complaint that will satisfy the liberal pleading standards established by the Federal

Rules of Civil Procedure.[18]  *See, e.g., Guarneri v. Buckeye Pipe Line Services Co.,* Civ. No. 14-

1131, 2014 WL 1783072, at *3 (D.N.J. May 5, 2014).  This is consistent with Fed. R. Civ. Proc.

15(a)(2)'s mandate that motions for leave to amend a complaint be freely granted.  *See Dole v.*

*Arco Chem. Co*., 921 F.3d 484, 486-87 (3d Cir. 1990).  That Rule "embodies the liberal pleading

philosophy of the federal rules" and thus "limits the district court's discretion to deny leave to

amend."  *Adams v. Gould*, 739 F.2d 858, 864 (3d Cir. 1984).  None of the bases for denial for

leave to amend are even articulated by Defendants, and none exist.  *White v. Taylor,* No. 10-

5485, 2014 WL 1428545, at *2 (D.N.J. Apr. 14, 2014) (*citing Calif. Pub. Employees' Ret. Sys. v.*

*Chubb Corp*., 394 F.3d 126, 165 (3d Cir. 2004)) (stating that a district court "justifiably may

deny leave to amend on grounds 'such as undue delay, bad faith, dilatory motive, prejudice and

futility") (internal citations omitted).  Much of the requested information could also be obtained

---

[17] In this regards, the case *Lattaker v. Rendell*, 269 F.App'x 230 (3d Cir. 2008), is clearly distinguishable.  First, it was not a putative class action.  Second, in *Lattaker*, the plaintiff sought declaratory judgment that a bill that would have made the failure to pay child support a summary offense is unenforceable.  The court found that the plaintiff had no substantial likelihood of injury from the application of the bill because his "complaint acknowledged that his child support proceedings were terminated by July 2006, and he did not allege any continuing child support obligations on his part."  *Id*. at 233.

[18] Plaintiffs note that the allegations of Complaint have never been adjudicated by a Court, and that these cases were consolidated by agreement among counsel and with the Court's permission in lieu of an MDL proceeding.  As such, and as Defendants make no argument as to why the case should be dismissed with prejudice, Plaintiffs should have the opportunity to amend.

in the discovery process, which is the more appropriate mechanism for obtaining what Defendants claim is lacking.

For example, while it is unclear why knowing where Plaintiffs purchased their Football Helmets would better inform Defendants of the basis for the claims asserted (especially where the CRT claims were ubiquitous, and where the claims are also based on omissions of material facts), Plaintiffs could allege where they purchased their helmets.  In addition, Plaintiffs could allege, *inter alia*, the following:

- The prices paid for the Football Helmets (which information Defendants also have access to);

- Additional information as to why the Football Helmets cannot reduce the frequency of concussions.  Here, Plaintiffs could provide further factual explanation from their retained experts, including Dr. Cantu, whom even Defendants recognize as one of the preeminent scholars on concussions in sports, as to how concussions are caused by rotational forces that the Football Helmets do not and cannot affect;

- Additional details as to the other studies that were not funded by Defendants, including the recently published University of Wisconsin study, showing conclusively that the Riddell Helmets do not reduce the frequency of concussions.

Thus, while Plaintiffs maintain that the Complaint, as pled, is sufficient, if the Court finds the Complaint deficient in any respect, Plaintiffs respectfully request leave to file an amended complaint to address any deficiencies.

## VIII.   CONCLUSION

For all of the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety.   Should the Court disagree, and grant Defendants' Motion, Plaintiffs respectfully request leave to amend their Complaint.

Dated: September 19, 2014

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
Attorneys for Plaintiffs and the Proposed
Classes

By: _____ /s/ James E. Cecchi _____
        JAMES E. CECCHI

Dennis G. Pantazis
Craig L. Lowell
Dennis G. Pantazis, Jr.
WIGGINS, CHILDS, PANTAZIS, FISHER
& GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500

Additional counsel for Plaintiffs:

Robert M. Foote, Esq.
Kathleen C. Chave, Esq.
FOOTE, MIELKE, CHAVEZ & O'NEIL LLC
10 West State Street, Suite 200
Geneva, Illinois 60134
(630) 232-7450

Joe R. Whatley, Jr.
WHATLEY KALLAS, LLP
1180 Avenue of the Americas, 20th Floor
New York, New York 10036
(212) 447-7060

Alan M. Mansfield
WHATLEY KALLAS, LLP
10200 Willow Creek Road, Suite 160
San Diego, California 92131
(619) 308-5034

Stephen A. Corr
STARK & STARK, P.C.
777 Township Line Road, Suite 120
Yardley, Pennsylvania 19067
(267) 907-9600

E. Clayton Lowe, Jr.

THE LOWE LAW FIRM, LLC
301 19th Street North, Ste. 525
Birmingham, Alabama 35203
(205) 314-0607

Joshua R. Gale
WIGGINS CHILDS PANTAZIS FISHER
GOLDFARB LLC
101 N. Woodland Blvd., Ste. 600
DeLand, Florida 32720
(386) 675-6946

Richard Burke
Jeffrey A. Leon
QUANTUM LEGAL, LLC
513 Central Avenue, Suite 300
Highland Park, Illinois 60035
(847) 433-4500

Thomas R. Ysursa
BECKER, PALSON, HOERNER &
THOMPSON, P.C.
5111 West Main Street
Belleville, Illinois 62226
(618) 235-0020