IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE RIDDELL CONCUSSION REDUCTION LITIGATION | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 13-7585 (JBS/JS)<br><br>**OPINION** |

APPEARANCES:

James E. Cecchi, Esq.
Caroline F. Bartlett, Esq.
CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
      -and-
Stephen A. Corr, Esq.
STARK & STARK
777 Township Line Road
Suite 120
Yardley, PA 19067
      Attorneys for Plaintiffs Norma D. Thiel, Nicholas W.
      Farrell, Cahokia School District, Gustavo Galvan, Kenny
      King, Douglas Aronson, and Denise Aronson


Joseph A. Boyle, Esq.
Michael Andrew Innes, Esq.
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, NJ 07054
      Attorneys for Defendants Riddell, Inc., Riddell Sports
      Group, Easton-Bell Sports, LLC, EB Sports Corporation, RBG
      Holdings Corporation, and All American Sports Corporation


**SIMANDLE, Chief Judge:**

I.    **INTRODUCTION**

Plaintiffs contend in these consolidated actions[1] that Riddell, Inc. and its associated corporate entities (collectively, "Riddell" or "Defendants") marketed a line of football helmets, primarily to youth and high school football players, with the purported ability to reduce concussions based on unique concussion reduction technology, yet Defendants' helmets are no more capable of reducing concussions than other football helmets.

This matter comes before the Court on a motion to dismiss filed by Defendants Riddell, Inc., Riddell Sports Group, Easton-Bell Sports, LLC, EB Sports Corporation, RBG Holdings Corporation, and All American Sports Corporation (collectively, "Defendants" or "Riddell"). [Docket Item 24.] This action arises from Defendants' allegedly false and deceptive claims in advertisements and marketing materials that their football helmets can reduce concussions by as much as 31% as compared to other football helmets. Plaintiffs are four individuals and one school district who allege that they were exposed to Defendants' allegedly false and deceptive claims, purchased Defendants' football helmets, and suffered harm because those helmets do not

---

[1] On April 10, 2014, the Court consolidated two related cases for pretrial purposes only: Thiel v. Riddell, Inc., et al., Civil No. 13-7585 (JBS-JS), and Aronson v. Riddell Inc., et al., Civil No. 14-126 (JBS-JS). [Docket Item 16.]

offer the promised protection against concussions. Plaintiffs' class action complaint asserts claims under the consumer protection laws of five states: New Jersey, Illinois, Florida, California, and Arizona. Defendants' motion seeks dismissal of Plaintiffs' claims under Rule 8(a), Rule 9(b), and Rule 12(b)(6), Fed. R. Civ. P. In addition to various purported deficiencies in Plaintiffs' Amended Complaint, Defendants contend that their advertising claims were supported by scientific, peer-reviewed study and that their helmets bear a disclaimer that no helmet can prevent brain injury or concussions.

The Court concludes that although Plaintiffs' Amended Complaint passes muster under Rule 8, it fails to satisfy the specificity requirements of Rule 9(b) because Plaintiffs have not identified which marketing statements each Plaintiff observed, nor have they identified when, where, or how they were exposed to same. The Court further finds that Plaintiffs' essential theory of the case is so unclear and inconsistent that it fails to satisfy the plausibility standard under Rule 12(b)(6). Plaintiffs in the Amended Complaint, in briefing, and at oral argument have not articulated how the marketing claims at issue are false. It remains unclear whether Plaintiffs contend that Defendants' claims of concussion reduction are false because the three helmets identified in the Amended

3

Complaint cannot reduce concussions at all or if these helmets cannot reduce concussions by 31% as compared to other helmets. Plaintiffs' vague and conclusory allegations as to ascertainable loss also warrant dismissal for failure to state a claim under New Jersey and Florida law. Because the Court finds that amendment would not be futile, the Court will dismiss without prejudice to refiling of almost all claims if Plaintiffs are able to cure these deficiencies.[2]

For the reasons discussed below, the Court will deny in part and grant in part Defendants' motion to dismiss.

## II.   BACKGROUND

### A. Facts

The Court accepts as true the following facts from Plaintiffs' Amended Complaint. [Docket Item 17.]

Defendants design, manufacture, and market a line of football helmets which they claim reduce concussions based on concussion reduction technology. (Am. Compl. ¶ 1.) Starting with its Revolution model, Riddell has released three football helmets in the past 11 years designed to reduce concussions.[3]

_____

[2] The Court only dismisses Plaintiffs' claims under the Illinois Consumer Fraud Act with prejudice.

[3] The Amended Complaint specifically names three Riddell helmet models at issue: Revolution, Revolution Speed, and Riddell 360. (Am. Compl. ¶ 1 n.1.) The Court will refer to these three football helmets collectively as "Football Helmets" or "Helmets."

Riddell released the Revolution Speed in 2008 to improve face-guard protection and the Riddell 360 in 2012 to redirect energy from frontal impacts away from the head. (Id.) Plaintiffs assert that Defendants' promises of increased safety are illusory because the Football Helmets do not actually reduce the incidence of concussions. (Id. ¶ 3.) According to Plaintiffs, research shows that concussion rates are the same regardless of the type of helmets used and that Riddell's Helmets are no better at preventing concussions than the leather helmets of old. (Id. ¶ 4.)

In 2006, the University of Pittsburgh Medical Center ("UPMC") conducted a study comparing concussion rates among high school athletes who wore the Riddell Revolution helmet with those who wore "traditional helmets." (Id. ¶ 45.) Defendants relied on this study in claiming that the Revolution helmet reduced concussions by 31%. (Id.) However, Defendants provided funding for the UPMC study and Riddell's vice president of research and development, Thad Ide, was one of the study's authors. (Id. ¶ 46.) The study, which was published in the Journal of Neurosurgery, was peer-reviewed and leaders in the field expressed concern that the study contained "serious, if not fatal, methodological flaws," discounted low-impact hits, and proved that the Revolution did not reduce the risk of concussions. (Id. ¶ 45-46.)

5

Plaintiffs contend that Defendants knew the UPMC study was flawed and that no other study of the Revolution helmet corroborated its results or supported the 31% reduction claim. (Id. ¶¶ 47-48.) Yet, Riddell continued to market its Football Helmets as having "concussion reduction technology." (Id. ¶ 48.)

Riddell advertises that its Football Helmets have superior padding over the "zygoma and mandible region" which provides better protection against concussions. (Id. ¶ 49.) In a four and a half minute promotional video on its website, Riddell details the technological and design features that reduce concussions. (Id. ¶ 50.) The video includes the statement that "on-file reconstructive studies on concussive events showed that many of the players were being struck to the side of the head and the face so we developed our patented side impact protection . . . to better handle those blows to the side of the head and the face." (Id.) Additionally, Defendants promote the increased safety of their Helmets through "Protection Tour[s] . . . a program that delivers expert-driven health and safety education to youth football players, parents and coaches nationwide." (Id. ¶ 51.)

Defendants target youth football leagues and high school teams for concussion reduction marketing, at times offering Helmets at a discount to high profile schools to increase exposure. (Id. ¶ 52.) Plaintiffs contend that Defendants seek to

capitalize on fear of concussion and brain injury among parents
by focusing their marketing on youth football, including
offering the Riddell Revolution Edge Youth Helmet, "a
combination of protection with Riddell [Concussion Reduction
Technology] and comfort and style in a youth helmet." (Id. ¶
54.) Defendants also advertise their Concussion Reduction
Technology on Facebook and other social media and Internet
outlets. (Id. ¶ 55.) Further, Defendants advertise in youth-
focused media and at youth-focused events such as NFL Play 360
Youth Football Clinics. (Id. ¶ 56.)

Defendants, through their direct sales force, product
packaging, advertisements and marketing, and through retailers
using information provided by Defendants, have made the
following representations, among others, to market their
Football Helmets:

- "Shown to reduce incidence of concussion by 31% compared to traditional helmets, the [helmet] utilizes an exclusive Revolution Concussion Reduction Technology that provides superior protection for players on the field."
- "Riddell's exclusive Concussion Reduction Technology protects young athletes against concussions and impact."
- "The most advanced piece of modern concussion prevention in the game today!"
- "Safer, more protective, and advanced frontal helmet protection designed to reduce concussions."
- "All Riddell Concussion Reduction technologies specifically designed to cushion to [sic] head, absorb impact, and reduce the risk of concussions by 31%, when compared to a traditional helmet."

- "Riddell    Revolution    CRT    (Concussion    Reduction Technology):    Research    shows    a    31%    reduction    in concussions when used versus a traditionally designed helmet."
- "Riddell    Revolution    CRT    (Concussion    Reduction Technology) to keep young players safe on the field."
- "Riddell's  Concussion  Reduction  Technology  provides increased protection against concussions and impact."

(Id. ¶ 57.)

Plaintiffs allege that, despite Defendants' claims, there is no material difference in terms of concussion prevention between Riddell's Football Helmets and other football helmets. (Id. ¶ 58.) Nevertheless, based on claims regarding increased safety and reduced concussions, Defendants charge price premiums for their Helmets. (Id. ¶ 52.)

Plaintiffs allege that recent studies show, and the majority of independent experts agree, that Defendants' claims of concussion reduction are false and misleading. (Id. ¶ 59.) For example, a University of Wisconsin study considered whether a particular brand of football helmet or mouth guard was more effective at reducing concussions and found no statistically significant difference in the rate of concussions regardless of the helmet used.[4] (Id. ¶ 60.) The researchers stated, "Despite

---

[4] The Court has examined the studies and reports cited in the Amended Complaint and upon which Plaintiffs' claims are based. See Miller v. Clinton Cnty., 544 F.3d 542, 550 (3d Cir. 2008) ("A court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiffs claims are based on the document.") (internal quotation and citation omitted); Gaul v. Bayer Healthcare LLC,

what manufacturers might claim, newer and more expensive equipment may not reduce concussion risk . . . [s]o is it worth the significant extra cost to families and schools?" (Id. ¶ 61.) Similarly, a study by the Cleveland Clinic concluded that modern football helmets offer no better protection against concussions than the old leather helmets. (Id. ¶ 62.) Cleveland Clinic researchers observed that

> helmet safety standards – as measured by the Gadd Severity Index – are based solely on the risk of severe skull fracture and catastrophic brain injury, not concussion risk. So, while modern helmets may prevent severe head injuries, this study found that they frequently did not provide superior protection in typical on-field impacts . . . . The findings suggest that helmet testing should focus on both low- and high-energy impacts, not solely on potentially catastrophic high-energy impacts. This is especially true of youth football helmets, which are currently scaled-down versions of adult helmets. The lack of adequate knowledge surrounding adult helmet protectivity at low-energy impacts, as well as the current absence of any youth-specific helmet testing standards, may have serious brain health implications for the

---

2013 U.S. Dist. LEXIS 188951, at *4 (D.N.J. June 19, 2013). The University of Wisconsin study compared the relative effectiveness of a particular brand of football helmet to reduce the incidence of concussions. 51% of the players in the study wore helmets by Riddell, compared with 30% by Schutt and 19% by Xenith. (Innes Decl., Ex H [Docket Item 30-1] at 3.) "The most commonly worn helmet models by brand were the Riddell Revolution Speed (n=617), Schutt DNA Pro+ (n=420), and Xenith X1 (n=272)." (Id.) The study concluded that "helmet brand, age, and recondition status were not associated with a lower risk of SRC in high school football players." (Id. at 4.) Notably, the University of Wisconsin study recognized its results in contrast to the UPMC study in 2006 which concluded that new Riddell Revolution helmets reduced the risk of concussions by 31% compared with traditional helmets. (Id.) The University of Wisconsin study noted limitations in the UPMC study due to insufficient information regarding the age of the helmets in the control group and the exposure data for each player. (Id. at 5.)

3 million youths participating in tackle football in the United States each year.

(Id. ¶ 63.)[5]

Moreover, Plaintiffs assert that Defendants knew that their Football Helmets cannot reduce concussions. (Id. ¶ 64.) For example, court documents related to a Colorado lawsuit indicate that Defendants received a report in 2000 from Biokinetics, a biomechanics firm hired by the NFL, showing that no football helmet can prevent concussions.[6] (Id. ¶ 64.) Additionally, Plaintiffs contend that "this issue has been the subject of repeated investigations by the U.S. Senate and Federal Trade Commission."[7] (Id. ¶ 65.)

---

[5] The Cleveland Clinic study "compared head injury risks of two early 20th Century leatherhead helmets with 11 top-of-the-line 21st Century polycarbonate helmets." (Cleveland Clinic, Vintage Leatherhead Football Helmets Often as Protective as Modern Helmets in Common Game-Like Hits Cleveland Clinic Researchers Find, available at: http://my.clevelandclinic.org/about-cleveland-clinic/newsroom/releases-videos-newsletters/2011-11-04-vintage-leatherhead-football-helmets-often-as-protective-as-modern-helmets-in-common-game-like-hits.) The parties agreed at oral argument that the Cleveland Clinic study included the Riddell VS4, Riddell Revolution, and Riddell Revolution Speed helmet models.

[6] Defendants properly note that a Biokenetics report to Riddell dated November 15, 2000 begins by stating, "Football helmets have proven to be exceptionally effective in the prevention of severe head injury." (Innes Decl., Ex. D [Docket Item 24-6] at 25.)

[7] After investigating whether "Riddell falsely represented from at least 2008 until early 2011 that research proves that Revolution varsity and youth football helmets reduce concussions and the risk of concussions by 31% as compared to other varsity and youth football helmets," the FTC concluded that the UPMC study did not prove that Riddell Revolution varsity football

The Amended Complaint alleges that each of the named plaintiffs was exposed to Defendants' claims that their Helmets offer more protection against concussions than other helmets, Plaintiffs purchased at least one of Defendants' Helmets for a price premium, and they suffered economic harm because the helmets do not provide the promised protection. (Id. ¶¶ 70-75.) Specifically, Plaintiffs Douglas and Denise Aronson purchased a Revolution football helmet for their son in or around August, 2009. (Id. ¶ 70.) Plaintiff Norma D. Thiel purchased a Riddell 360 helmet on April 24, 2013. (Id. ¶ 71.) Plaintiff Nicholas W. Farrell purchased a Riddell Revolution Speed helmet in September, 2010. (Id. ¶ 72.) Plaintiff Gustavo Galvan purchased a Riddell Revolution helmet in June, 2011. (Id. ¶ 73.) Plaintiff Cahokia School District purchased multiple Riddell helmets since

---

helmets reduced the risk of concussion by 31% compared with other varsity helmets. (Innes Decl., Ex. B [Docket Item 24-4] at 2.) Moreover, the FTC noted that the UPMC study did not test the effectiveness of Riddell youth football helmets in reducing concussions as compared to other youth helmets. (Id.) The FTC emphasized two significant limitations in the UPMC study: (1) "Revolution helmets were not randomly distributed across all of the participants in the study" and (2) "[p]layers in the control group who suffered concussions were younger than test group players who suffered concussions." (Id.) Nevertheless, the FTC decided in April, 2013 not to recommend enforcement action at that time because Riddell had abandoned its 31% reduction claim and a Virginia Tech study appeared to show that "Revolution varsity helmets perform much better than Riddell's 'traditional' VSR-4 helmet in reducing concussion risks attributable to linear acceleration, one of the primary forces to which helmets are subject." (Id.)

2011. (Id. ¶ 74.) Plaintiff Kenny King purchased multiple
Riddell Revolution and Speed youth helmets since 2010. (Id. ¶
75.)

**B. Procedural background**

This action began as two separate cases filed in the
District of New Jersey. Plaintiff Norma D. Thiel filed a class
action complaint on December 16, 2013, docketed as Thiel v.
Riddell, Inc., et al., Civil No. 13-7585 (JBS-JS). [Docket Item
1.] Plaintiffs Douglas and Denise Aronson filed a class action
complaint with substantially similar allegations on January 8,
2014, docketed as Aronson v. Riddell Inc., et al., Civil No. 14-
126 (JBS-JS). [Aronson Docket Item 1.] On February 27, 2014,
counsel for Plaintiffs in Aronson filed a motion to consolidate
and appoint interim class counsel. [Docket Item 10; Aronson
Docket Item 11.] On April 10, 2014, the Court, noting the
consent of all plaintiffs, and the lack of opposition from
Defendants, granted the motion to consolidate and appoint
interim class counsel. [Docket Item 16; Aronson Docket Item 21.]
The Court consolidated the actions for pretrial purposes only as
In Re Riddell Concussion Reduction Litigation, Civil No. 13-7585
(JBS-JS). The Court granted Plaintiffs 30 days to file a
consolidated complaint.

On May 12, 2014, Plaintiffs, four individuals and one
school district, filed an Amended Complaint against seven

12

defendants: Riddell, Inc.; Riddell Sports Group; Easton-Bell
Sports, Inc.; Easton-Bell Sports, LLC; EB Sports Corporation;
RBG Holdings Corporation; All American Sports Corporation.
[Docket Item 17.] The Amended Complaint contains 13 counts: (1)
violation of the New Jersey Consumer Fraud Act; (2) violation of
the Illinois Consumer Fraud and Deceptive Business Practices
Act; (3) violation of the Florida Deceptive and Unfair Trade
Practices Act; (4) violation of the "Unfair" Business Acts and
Practices provision of the California Business and Professional
Code; (5) violation of the "Deceptive" Acts and Practices
provision of the California Business and Professional Code; (6)
violation of the "Unlawful" Business Practices provision of the
California Business and Professional Code; (7) violation of the
Misleading Advertising provision of the California Business and
Professional Code; (8) violation of the California Consumers
Legal Remedies Act; (9) violation of the Arizona Consumer Fraud
Act through misrepresentation; (10) violation of the Arizona
Consumer Fraud Act through omission; (11) unjust enrichment;
(12) assumpsit and quasi-contract; and (13) declaratory
judgment. Plaintiffs assert these claims on behalf of themselves
and all others similarly situated in five discrete subclasses:
New Jersey, Illinois, Florida, California, and Arizona.[8]

---

[8] Plaintiffs' proposed class definition suggests a nationwide
class: "All purchasers of Riddell Football Helmets promoted as

Defendants filed the instant motion to dismiss on August 1, 2014. [Docket Item 24.] Plaintiffs filed opposition [Docket Item 29] and Defendants filed a reply [Docket Item 30]. The Court heard oral argument on December 16, 2014.

**C. Parties' arguments**

Defendants argue that Plaintiffs' Amended Complaint must be dismissed for failure to comply with Rule 8, Rule 9(b), and Rule 12(b)(6), Fed. R. Civ. P. Defendants contend that the Amended Complaint fails to satisfy Rule 8 because it does not adequately differentiate between the various defendants and it is impossible to identify the particular allegations against each defendant. Defendants assert that the Amended Complaint fails to satisfy Rule 9(b)'s heightened pleading standard because it lacks precise allegations as to the date, time, and place of the alleged fraud. Similarly, Defendants contend that the Amended Complaint neither pleads specific omissions nor knowledge of same; that it fails to plead injury or causation with specificity; and that it lacks specific allegations as to each named plaintiff. Defendants further argue that the Amended Complaint must be dismissed under Rule 12(b)(6) because

---

containing concussion reduction technology within the United States from the beginning of the applicable statutes of limitation period through the present." (Am. Compl. ¶ 76.) However, Plaintiffs direct certain counts in the Amended Complaint to specific state subclasses.

Plaintiffs' claims are so inconsistent and contradictory that they are implausible and because Plaintiffs have not pleaded sufficient facts to support an inference that Defendants' marketing claims are false.

Moreover, Defendants identify deficiencies in Plaintiffs' specific claims. Defendants contend that the Amended Complaint lacks allegations demonstrating a deceptive act or unlawful practice, causation or reliance, and ascertainable loss or injury under the applicable state consumer protection statutes. Defendants assert that Plaintiffs' California Business Acts and Practices claims fail as a matter of law because Plaintiffs have not alleged a business practice that is "unfair;" that the Arizona Consumer Fraud Act claims must be dismissed as untimely; and that Plaintiffs' equitable claims must be dismissed for failure to allege a direct relationship with Defendants and for failure to identify any basis for declaratory relief independent of Plaintiffs' state statutory and common law claims.

Plaintiffs assert in response that they have satisfied the plausibility pleading standard by alleging specific details regarding the cause of concussions; Defendants' promises through marketing and advertising; Plaintiffs' purchase of Defendants' Helmets at price premiums based on these promises of concussion reduction; and the reasons Defendants' promises are false or deceptive – specifically the lack of material difference in

15

reducing concussions between Defendants' Helmets and their competitors. Plaintiffs refute Defendants' argument under Rule 8 that the Amended Complaint lacks specific allegations as to Defendants' conduct. Plaintiffs emphasize that their claims are not based on a lack of substantiation, as Defendants argue, but on affirmative factual support for an allegation of false advertising. Alternatively, Plaintiffs contend that they should be granted leave to file a second amended complaint.

## III. STANDARD OF REVIEW

Pursuant to Rule 8(a)(2), Fed. R. Civ. P., a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not required, and "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Ericson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted). However, while a complaint is not required to contain detailed factual allegations, the plaintiff must provide the "grounds" of his "entitle[ment] to relief", which requires more than mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff

16

failed to set forth fair notice of what the claim is and the grounds upon which it rests. Id. A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

In addition, Rule 9(b), Fed. R. Civ. P., imposes heightened pleading standards for a complaint alleging fraud, requiring a party to "state with particularity the circumstances constituting fraud or mistake." This requirement is intended "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Ciro. V. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).

## IV. DISCUSSION

### A. Rule 8

The Court begins its analysis with Rule 8, Fed. R. Civ. P. Defendants argue that the Amended Complaint fails to satisfy Rule 8 because Plaintiffs lump all Defendants together and fail to specify the alleged misconduct of each defendant. Plaintiffs

17

respond that the Amended Complaint clearly and appropriately alleges that each of the defendants was involved in the deceptive marketing at issue.

Rule 8(a)(2), Fed. Civ. P., requires that a pleading contain "a short and plain statement of the claim showing the pleader is entitled to relief" sufficient to give the defendant fair notice of the claim and the grounds upon which it rests. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). "Certainly that requires some specificity as to which grounds apply to which Defendant." H2O Plus, LLC v. Arch Pers. Care Products, L.P., Civ. 10-3089 (WJM), 2011 WL 2038775, at *2 (D.N.J. May 22, 2011).

Plaintiffs have satisfied Rule 8 because their allegations are sufficient to put Defendants on notice as to the claims against them. It is possible to determine from the Amended Complaint the alleged misconduct of each defendant. Plaintiffs clearly allege that each defendant was involved in the dissemination of the alleged misrepresentations regarding their Football Helmets:

> Each Defendant was involved in some manner in the creation and dissemination of the misleading marketing campaign regarding the Football Helmets and/or was involved in or profited from the sales of such helmets . . . . Each Defendant either alone or in combination made partial representations or concealed material facts within their possession concerning the actual safety of the Football Helmets and their alleged ability to reduce the incidence of concussion to any degree as compared to other helmets.

18

(Am. Compl. ¶ 24.) As such, Plaintiffs allege that each of the Defendants played a role in the development, marketing, and sale of the Football Helmets at issue.

The present action is similar to Toback v. GNC Holdings, Inc., Civ. 13-80526, 2013 WL 5206103 (S.D. Fla. Sept. 13, 2013), where plaintiff's claims were permitted to proceed against a group of related defendants, despite the lack of specific allegations as to each. In Toback, plaintiff filed a class action complaint against defendants GNC Holdings, Inc., GNC Corporation, General Nutrition Corporation, and General Nutrition Centers, Inc. for violations of the Florida Deceptive and Unfair Trade Practices Act arising from defendants marketing and sale of a line of nutritional products. Toback, 2013 WL 5206103, at *1. The court found that, although plaintiff referred collectively to defendants as "GNC," he "alleged sufficient factual detail to put Defendants on notice of the nature of the claims against them, satisfying the requirements of Rule 8." Id. at *2. Similarly, in H2O Plus, LLC v. Arch Pers. Care Products, L.P., Civ. 10-3089 (WJM), 2011 WL 2038775 (D.N.J. May 22, 2011), the court rejected defendants' argument that plaintiff failed to satisfy Rule 8 by referring to defendants collectively as "Arch" throughout the facts. Id. at *2-3. The court determined that "looking to the Complaint and the attached

19

exhibits as a whole clearly shows which claims" were asserted against each defendant. Id. at *2. The court noted that each count clearly identified the relevant defendant(s) and only certain counts, related to alleged misrepresentations, were asserted against both defendants. Id. at *3. Because plaintiff was "unsure whether the alleged misrepresentations originated from Arch Chemicals or Arch PCP as they appeared to be acting in concert," the court permitted the counts to be alleged against both of them pending further discovery. Id. at *3 n.3.

Here, like Toback, the Amended Complaint is sufficiently detailed to put Defendants on notice as to the nature of Plaintiffs' claims because it clearly asserts that each defendant had a role in the manufacture, marketing, or sale of Riddell Football Helmets. As in H2O Plus, it is apparent that Plaintiffs assert their claims against all Defendants for their concerted conduct under the "Riddell" brand. Defendants are all owned by the private equity firm Fenway Partners, Inc. (Am. Compl. ¶ 23.) They are represented by the same counsel, accepted service as a single entity, and all joined in the instant motion to dismiss. Defendants do not dispute their interrelatedness, nor do they disclaim their alleged role in the manufacture, sale, or marketing of the Helmets. The specific role of each defendant will be elucidated through discovery to which

Plaintiffs are entitled because the allegations in the Amended Complaint are sufficient to provide notice under Rule 8.

The cases Defendants cite are distinguishable because they do not involve claims of deceptive marketing against related entities, operating under a single brand, represented by the same counsel. Most involve civil rights claims which require identification of each defendant's individual role to adequately defend and determine liability.[9] Others involved blanket assertions against numerous defendants who could not have acted in concert in the conduct alleged.[10]

---

[9] See Arar v. Ashcroft, 585 F.3d 559, 563 (2d Cir. 2009) (claims under Torture Victim Protection Action and Fifth Amendment against the attorney general and seven other federal agency heads); Robbins v. Oklahoma, 519 F.3d 1242, 1246 (10th Cir. 2008) (Section 1983 claims against Oklahoma Department of Human Services, department director, and department social workers); Monroe v. Owens, 38 F. App'x 510, 514 (10th Cir. 2002) (pro se § 1983 claims against seventeen state and local officials); Fox v. City of Greensboro, 807 F. Supp. 2d 476, 495 (M.D.N.C. 2011) (civil rights action based on racial discrimination against members of police department and other municipal defendants); Crouch v. City of Hyattsville, Md., Civ. 09-2544, 2010 WL 4868100, at *6 (D. Md. Nov. 23, 2010) (civil rights action against various police officers and municipal defendants); Washington v. Thomas, Civ. 09-11302, 2009 WL 1424193, at *2 (E.D. Mich. May 18, 2009) (pro se civil rights action against judge and county prosecutor).

[10] See Bruggemann v. Amacore Grp., Inc., Civ. 09-2562, 2010 WL 2696230, at *1 (M.D. Fla. July 6, 2010) (claims for fraud, breach of fiduciary duty, and unjust enrichment against corporation, its president and chief executive, and one of corporation's directors arising from corporate merger); Lane v. Capital Acquisitions & Mgmt. Co., Civ. 04-60602, 2006 WL 4590705, at *1 (S.D. Fla. Apr. 14, 2006) (claims under the Civil Rights Act and Fair Labor Standards Act against plaintiff's former employer, three of its corporate officers, and parent

The only case bearing a resemblance to the present action is <u>Appalachian Enterprises, Inc. v. ePayment Solutions, Ltd.</u>, Civ. 01-11502 (GBD), 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004), in which plaintiff asserted claims against 17 defendants, six allegedly affiliated companies and their officers. However, unlike here, plaintiff failed to allege the relationship between the defendants and asserted a breach of contract claim without even identifying the contracting party. <u>Id.</u> at *7. In the present action, the Amended Complaint details the relationship between Defendants and clearly expresses Plaintiffs' contention that all Defendants were involved in the alleged misrepresentations. Therefore, the Court will deny Defendants' motion to dismiss to the extent it is based on Plaintiffs' purported failure to comply with Rule 8.

**B.   Rule 9(b)**

The Court next addresses Defendants' argument under Rule 9(b). Defendants assert that Rule 9(b) applies to Plaintiffs' claims under the state consumer protection laws because they are premised on fraud and the Amended Complaint fails to satisfy Rule 9(b)'s heightened pleading standard. Plaintiffs respond that Rule 9(b) does not apply to all of their claims, but even

---

corporation); <u>Weiszmann v. Kirkland & Ellis</u>, 732 F. Supp. 1540, 1543 (D. Colo. 1990) (pro se RICO claims against law firm and financial group arising from plaintiff's default on note and subsequent collection suit).

if it did, their Amended Complaint contains sufficient
specificity to put Defendants on notice.

To the extent that Plaintiffs' claims sound in fraud or
misrepresentation they "must state with particularity the
circumstances constituting fraud."[11] Rule 9(b), Fed. R. Civ. P.

---

[11] Although they do so in conclusory fashion without identifying
specific claims that are exempt, Plaintiffs correctly note that
not all of their claims require compliance with Rule 9(b).
Courts have applied Rule 9(b) to claims under the New Jersey,
California, and Arizona consumer protection statutes, as well as
to New Jersey state law claims premised on underlying fraud. See
Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007)
(applying Rule 9(b) to claim under the NJCFA); Vess v. Ciba-
Geigy Corp. USA, 317 F.3d 1097, 1105 (9th Cir. 2003) (applying
Rule 9(b) to claims under CLRA, FAL, and UCL); Kramer v. Ocwen
Loan Servicing LLC, Civ. 13-01415, 2014 WL 1827158, at *3 (D.
Ariz. May 8, 2014) (applying Rule 9(b) to claims under ACFA);
Virginia Sur. Co. v. Macedo, Civ. 08-5586 (JAG), 2009 WL
3230909, at *11 (D.N.J. Sept. 30, 2009) (dismissing plaintiff's
claims for unjust enrichment and declaratory relief where
plaintiff failed to plead the underlying fraud with
particularity as required by Rule 9(b)). However, Rule 9(b)'s
applicability to the the Florida and Illinois laws is less
clear. See Toback v. GNC Holdings, Inc., Civ. 13-80526, 2013 WL
5206103, at *2 (S.D. Fla. Sept. 13, 2013) (declining to require
compliance with Rule 9(b) because "the plaintiff need not prove
the elements of fraud to sustain an action under the statute")
(citation omitted); Windy City Metal Fabricators & Supply, Inc.
v. CIT Tech. Fin. Servs., Inc., 536 F.3d 663, 670 (7th Cir.
2008) ("Because neither fraud nor mistake is an element of
unfair conduct under Illinois' Consumer Fraud Act, a cause of
action for unfair practices under the Consumer Fraud Act need
only meet the notice pleading standard of Rule 8(a), not the
particularity requirement in Rule 9(b)."). While acknowledging
this ambiguity, the Court finds that Rule 9(b) applies to
Plaintiffs' claims to the extent they are premised on fraud.
Plaintiffs' claims are based at least in part on the alleged
intentional misrepresentation that the Football Helmets reduce
concussions by 31% as compared to other football helmets despite
knowing this claim to be false. This allegation of a knowing
misrepresentation which induces another party to act is

But the rule does not require specificity just for specificity's
sake. The level of particularity required is sufficient details
to put Defendants on notice of the "precise misconduct with
which they are charged." Seville Indus. Machinery Corp. v.
Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir. 1984);
Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). "This
requires a plaintiff to plead the date, time, and place of the
alleged fraud, or otherwise inject precision into the
allegations by some alternative means." Grant v. Turner, 505 F.
App'x 107, 111 (3d Cir. 2012), cert. denied, 133 S. Ct. 2770
(U.S. 2013) (citing Frederico, 507 F.3d at 200).

   In the present action, the Amended Complaint alleges that
all Plaintiffs were exposed to Defendants' misrepresentations
regarding the purported ability of the Football Helmets to
reduce concussions. However, Plaintiffs' scatter-shot pleading
lists examples of Defendants' marketing statements without
identifying which specific statement(s), if any, Plaintiffs were

---

quintessential fraud. As the Ninth Circuit has aptly noted
"where fraud is not an essential element of a claim, only
allegations ('averments') of fraudulent conduct must satisfy the
heightened pleading requirements of Rule 9(b). Allegations of
non-fraudulent conduct need satisfy only the ordinary notice
pleading standards of Rule 8(a)." Vess, 317 F.3d at 1105; see
also In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256,
270 (3d Cir. 2006) (acknowledging this distinction in the
context of securities fraud). The Court need not parse
Plaintiffs' claims at this point because the Court will dismiss
the Amended Complaint without prejudice under Rule 9(b) and Rule
12(b)(6), as explained herein.

exposed to. See Lieberson v. Johnson & Johnson Consumer
Companies, Inc., 865 F. Supp. 2d 529, 539 (D.N.J. 2011) (finding
plaintiff did not satisfy Rule 9(b) where plaintiff did not
identify when statements were made or whether and when plaintiff
actually viewed them). Rule 9(b) may be satisfied here if the
marketing statements Plaintiffs identify were uniform, but they
are not. Some contain the express claim that the Helmets reduce
concussions by 31% while others make no reference to the 31%
reduction. Compare id. ¶ 57(a) ("Shown to reduce incidence of
concussion by 31% compared to traditional helmets . . .") with
id. ¶ 57(c) ("The most advanced piece of modern concussion
prevention in the game today!"). Still others make no specific
claim of reduction and only tout the Helmets' concussion
reduction technology. Id. ¶ 57(h) ("Riddell's Concussion
Reduction Technology provides increased protection against
concussions and impact."). Some of the exemplary marketing
statements appear directed at youth helmet consumers while
others are more generic. Compare id. ¶ 57(b) ("Riddell's
exclusive Concussion Reduction Technology protects young
athletes against concussions and impact.") with id. ¶ 57(d)
("Safer, more protective, and advanced frontal helmet protection
designed to reduce concussions."). Despite Plaintiffs'
assertions to the contrary, these marketing statements are
distinct and there is no way in the current pleadings to

determine which, if any, of these statements Plaintiffs saw or heard.[12] The Amended Complaint thus fails to satisfy the particularity requirements under Rule 9(b) and fails to put Defendants on notice as to the basis of Plaintiffs' claims by indicating the statements that Plaintiffs saw or heard and relied on. See Hodges v. Vitamin Shoppe, Inc., Civ. 13-3381 (SRC), 2014 WL 200270, at *3 (D.N.J. Jan. 15, 2014) (concluding that complaint failed to state "with plausibility, much less particularity," that defendant's statements violated the NJCFA where complaint contained quotations from the product label and pages from defendant's website, then asserted in conclusory fashion that defendant's claims about the product were false).

Moreover, the Amended Complaint does not allege where these statements appeared. See Kramer v. Ocwen Loan Servicing LLC, Civ. 13-01415, 2014 WL 1827158, at *4 (D. Ariz. May 8, 2014) (dismissing ACFA claims under Rule 9(b) where plaintiff failed "to identify the person who made the alleged false statement,

---

[12] The Court rejects Plaintiffs' assertion at oral argument that all of the named Plaintiffs were exposed to Defendants' claims of "Concussion Reduction Technology" or Plaintiffs' assertion in briefing that all were exposed to "variants on that core message." (Pl. Opp. at 7.) Plaintiffs' belated attempt to distill a common theme from the marketing statements reproduced in the Amended Complaint is belied by the disparate assertions in each of the allegedly false marketing statements. As discussed below, the various distinctions are significant and represent distinct theories of the case that would require different evidentiary support.

when or where it was made, or why it was untrue or misleading at the time it was made"); Lieberson, 865 F. Supp. 2d at 539 (noting failure to allege where statements appeared or differentiate between various potential sources); Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003) (noting that plaintiff did not identify any specific misrepresentations or specify when and where they occurred). Plaintiffs allege that Defendants made these statements "through their direct sales force, product packaging, promotional advertisements and marketing, and retailers using information provided by Defendants." (Am. Compl. ¶ 57.) Plaintiffs then list eight statements without any further information to identify the source. In addition, the Amended Complaint includes images containing statements about concussion reduction, but it is unclear whether these images are from marketing materials, and if so, when and where they appeared. (Id. ¶¶ 45, 49, 50, 54.) Certainly, there is no allegation connecting any of the named Plaintiffs to these images. The same is true of Defendants' vague reference to "Protection Tours" and Defendants' targeting of youth players at the NFL Play 60 Youth Football Clinics. (Id. ¶ 51, 56.) There is no allegation that Plaintiffs attended any such marketing events. Perhaps reference to such "Protection Tours" and clinics is meant to be background evidence of Defendants' conduct, rather than specification of the

27

misrepresentations on which Plaintiffs relied, and Plaintiffs
again should clarify this aspect of their pleading.

Similarly, as in <u>Frederico</u>, Plaintiffs have not
sufficiently specified the precise substance of the alleged
misrepresentations which gives rise to their claims. Beyond
Plaintiffs' failure to identify specific marketing statements to
which each was exposed, Plaintiffs fail to identify what is
false about Defendants' alleged misrepresentations. Is it the
Helmets' inability to prevent concussions at all? Is it the
inability to reduce concussions by 31% as compared to
competitors' helmets?[13] Is it both? Are the marketing claims
false as to all of Defendants' Helmets or just youth helmets?
The Amended Complaint fails to provide these answers, as did
counsel in briefing and at oral argument. The general allegation
that Defendants' claims of concussion reduction are false can be
gleaned from the totality of the Amended Complaint, but the
particular falsity of each statement is unclear because
Plaintiffs list without additional information a range of
dissimilar statements.[14] Accordingly, the Amended Complaint does

---

[13] It is apparent that Defendants at some point prior to April,
2013 discontinued the 31% reduction claim.
[14] Plaintiffs' opposition brief is also inconsistent in this
regard. Plaintiffs contend that they have sufficiently alleged
that "no helmet available at the time could reduce concussions."
(Pl. Opp. at 8.) Yet, Plaintiffs, in an apparent effort to
clarify the basis of their claims, only make matters worse by
asserting on the next page that their claims "center on the

not contain sufficient details to put Defendants on notice of
the "precise misconduct with which [they are] charged."
Frederico, 507 F.3d at 200.

    Defendants also argue that the Amended Complaint fails to
plead a specific omission or Defendants' knowledge of same. The
Court agrees. Plaintiffs allege that Defendants were aware that
their Football Helmets could not reduce the incidence of
concussions. (Am. Compl. ¶ 64.) They note a report sent to
Riddell in 2000 by Biokinetics, a biomechanics firm hired by the
NFL, indicating that no football helmet could prevent
concussions, and repeated investigations by the United States
Senate and the Federal Trade Commission. Plaintiffs emphasize
supposed flaws in the UPMC study upon which Defendants' claims
of 31% concussion reduction were based, as well as additional
studies by the University of Wisconsin and the Cleveland Clinic
that supposedly undercut the UPMC findings. However, Plaintiffs'
allegations do not present a consistent theory of the case and
do not identify a specific omission about which Defendants knew.

     Even accepting Plaintiffs' assertions as true, these
studies do not point to a discrete omission. According to
Plaintiffs, the Biokinetics report indicated that "no football

---

relative ineffectiveness of the Football Helmets at preventing
*concussions* when compared to other football helmets on the
market." (Id. at 9.) Plaintiffs' counsel failed to clarify this
discrepancy at oral argument.

helmet . . . could prevent concussions." (Am. Compl. ¶ 64.)
Similarly, the Cleveland Clinic study concluded that "modern
football helmets are no better at protecting against concussions
than vintage 'Leatherhead' football helmets." (Id. ¶ 62.) In
contrast, the University of Wisconsin and UPMC studies
considered the relative effectiveness of a particular brand or
particular model of football helmet as compared with other
available brands or styles of helmets. The Wisconsin study found
that there was "no statistically significant difference in the
rate of concussions" regardless of the brand of helmet used.
(Id. ¶ 60.) The Wisconsin study contrasted its results with the
2006 UPMC study which concluded that new Riddell Revolution
helmets reduced the risk of concussions by 31% compared with the
helmets worn by the control group. (Innes Decl., Ex H [Docket
Item 30-1] at 3.) Consequently, the studies and reports
Plaintiffs rely on in the Amended Complaint addressed at least
two distinct questions: (1) whether modern football helmets can
prevent or reduce concussions at all and (2) whether any
particular brand or model is more effective at preventing or
reducing concussions compared to other currently available
brands or models. Plaintiffs must specify the helmets or group
of helmets to which Defendants' Helmets are comparatively
ineffective at reducing concussions. If Plaintiffs do not rely
on comparative effectiveness, and instead base their claims on

30

the inability of any football helmets to reduce concussions, then their pleading should make that clear. Accordingly, the Amended Complaint fails to specifically identify a discrete omission by Defendants sufficient to satisfy Rule 9(b).[15]

The Court further finds that Plaintiffs have failed to plead causation or injury with specificity. Defendants rely on In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig., Civ. 08-939 (DRD), 2009 WL 2940081 (D.N.J. Sept. 11, 2009), in which the court found that plaintiffs' claims under the NJCFA failed to satisfy Rule 9(b) regarding ascertainable loss and causation where plaintiffs did not allege where plaintiffs purchased the product at issue, how much they paid, and when plaintiffs were exposed to defendants' alleged misrepresentations. Id. at *13. In the present action, the Amended Complaint provides a general timeframe for when each Plaintiff purchased Defendants' Helmets. However, as in Toshiba, Plaintiffs have not alleged where they purchased the product at issue,[16] how much they paid, and when

---

[15] Specifying the type of misrepresentation to which Plaintiffs were exposed – either that the Football Helmets decrease the incidence of concussions compared with competitors' helmets, or that the Football Helmets decrease concussions at all, and the precise contours of misrepresentations as to youth helmets – will advance this case and provide due notice for purposes of both Rule 9(b) and Rule 12(b)(6), as discussed below. It appears that such theory or theories will be actionable if the present ambiguity and unclarity is cured.

[16] The Amended Complaint does not state where Plaintiffs purchased Defendants' Helmets with one exception. The Amended Complaint states that Plaintiffs Douglas and Denise Aronson

they were exposed to Defendants' alleged misrepresentations. To
the extent the Amended Complaint contains allegations that they
paid more for Defendants' product than they would have for a
competitor's helmet, and that they were harmed when the Helmets
failed to perform as promised, such allegations are conclusory
and thus insufficient under Rule 9(b), as well as Rule 12(b)(6).
(See Am. Compl. ¶ 70-75.) Contrary to Plaintiffs' assertion, a
general recitation of various representations touting the
ability of Defendants' Helmets to reduce concussions coupled
with the allegation that they paid a "price premium" for the
Helmet(s) is insufficient to satisfy Rule 9(b) without
corresponding allegations indicating which representations
Plaintiffs were exposed to and how much of a "premium" they paid
for the allegedly non-performing or under-performing Helmets.

   **C.   Rule 12(b)(6)**

      **1. Facial plausibility**

   Defendants argue that Plaintiffs' claims fail under Rule
12(b)(6) because they are internally inconsistent and
contradictory, and thus, not plausible. Defendants also argue
that the studies cited by Plaintiffs do not demonstrate the
falsity of Defendants' concussion reduction claims. Plaintiffs

---

purchased a Revolution Football Helmet online for their son (Am.
Compl. ¶ 70), but does not indicate the vendor or the price or
the alleged premium they paid.

do not directly confront these arguments in their opposition, nor did they provide satisfactory clarification at oral argument.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotations and citation omitted).

As discussed above, the Amended Complaint fails to articulate a consistent theory of liability against Defendants. The Court finds that Plaintiffs' simultaneous allegations that it is impossible for any football helmet to reduce concussions and that Defendants overstated the ability of their Helmets to reduce concussions as compared to other helmets do not support a plausible claim for relief. Plaintiffs request that the Court construe their allegations as stating that Defendants falsely and deceptively exaggerated the concussion reduction benefits of their Helmets. However, Plaintiffs have failed to answer the

crucial question: compared to what?[17] As discussed above, it is
significant whether Plaintiffs claim that Defendants exaggerated
the concussion reduction ability of their Helmets as compared to
those currently on the market (and if so, which ones) or vintage
leather football helmets. It also important whether Plaintiffs
contend that Defendants overstated the concussion reduction
ability of their Helmets based on the representation of a 31%
reduction or based on the ability to reduce concussions at all
(i.e., by any percentage). Plaintiffs cannot argue that the
above inconsistency is the result of alternative theories of
liability because they have not pleaded in the alternative.

Falsity here depends on the precise nature of the alleged
misrepresentations. Having eschewed a theory based on lack of
substantiation, Plaintiffs must affirmatively allege the falsity
of Defendants' claims, and merely identifying certain flaws in
the UPMC study is insufficient. See Hodges v. Vitamin Shoppe,
Inc., Civ. 13-3381 (SRC), 2014 WL 200270, at *4 (D.N.J. Jan. 15,
2014) (concluding that "lack of clarity as to pleading prevents
the Court from evaluating whether the allegations concern
ineffectiveness or non-substantiation and thus from concluding
whether the allegations are probative of falsity"); Fraker v.

---

[17] Again, if Plaintiffs' claims are not based on a comparison
with other helmets on the market, they must make that clear in
their pleading, not just their motion papers.

Bayer Corp., Civ. 08-1564, 2009 WL 5865687, at *8 (E.D. Cal. Oct. 6, 2009) ("Plaintiff can only maintain her [false advertising claims] against Defendant by pleading facts to support an allegation that Defendant's advertising claims are *false or misleading*.").

Until Plaintiffs choose and specify the specific factual basis of their misrepresentation-based claims, it is not feasible to ascertain how the cited scientific studies by the University of Wisconsin and the Cleveland Clinic support the notion that Defendants' marketing statements were false.

Plaintiffs' failure to identify with specificity the marketing statements which they allege are false, which proved fatal under Rule 9(b), compels the same result under Rule 12(b)(6). Plaintiffs' attempt to allege a common marketing campaign based on disparate marketing statements impedes the Court's plausibility analysis and can only be cured by amendment. By grouping a series of advertising claims together without any clear commonality beyond a general assertion of concussion reduction, the Court is unable to determine the relevance of the various studies to the alleged falsity of particular marketing statements. That is, without a clear theory of liability, the relevance of particular studies to Plaintiffs' claims requires speculation and guesswork. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (noting that

35

<u>Twombly</u> requires "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotation and citation omitted). Accordingly, Plaintiffs' depiction of Defendants' marketing of their Football Helmets with such a wide brush has only obscured their claims. In lumping their allegations and in failing to articulate a consistent basis for their assertions of false advertising, Plaintiffs have rendered implausible what may be viable claims. The allegations in the Amended Complaint "do not permit the court to infer more than the mere possibility of misconduct" and thus fail to show that Plaintiffs are entitled to relief. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009). Therefore, the Court will dismiss Plaintiffs' Amended Complaint without prejudice to the right to amend.[18]

### 2. Specific state statutory claims

Defendants argue that under any state consumer protection statute the Amended Complaint fails to identify a deceptive act

---

[18] "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). The decision to grant leave to amend a complaint rests within the sound discretion of the trial court. <u>Massarsky v. General Motors Corp.</u>, 706 F.2d 111, 125 (3d Cir. 1983). The district court may deny leave to amend only if (a) the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party; or (b) the amendment would be futile. <u>Adams v. Gould, Inc.</u>, 739 F.2d 858, 864 (3d Cir. 1984). Defendants have failed to articulate any basis to deny leave to amend and the Court finds none.

or unlawful practice; fails to allege causation or reliance; and fails to allege ascertainable loss or injury. In light of the significant shortcomings identified in the foregoing, the Court will not undertake an extensive analysis of Plaintiffs' claims under each state statute at this time.

The Court notes, however, the merits of Defendants' argument regarding injury and ascertainable loss under New Jersey and Florida law. The Amended Complaint merely states that each plaintiff paid a "price premium" for Defendants' product and fails to identify the specific price paid or allege any other facts necessary to plead injury or ascertainable loss. For example, a plaintiff states a claim for damages under the New Jersey Consumer Fraud Act based on a benefit-of-the-bargain theory if he or she alleges (1) a reasonable belief about the product induced by a misrepresentation; and (2) that the difference in value between the product promised and the one received can be reasonably quantified. Courts in this District have required plaintiffs to specify the price paid for the product and the price of comparable products to adequately state a claim under the NJCFA. See, e.g., Lieberson v. Johnson & Johnson Consumer Companies, Inc., 865 F. Supp. 2d 529, 541-42 (D.N.J. 2011) ("The Court finds that absent any specific information concerning the price of the Products or the price of any comparable products, Plaintiff's allegations concerning the

ascertainable loss are nothing more than unsupported conclusory statements that are insufficient to withstand a motion to dismiss."); Green v. Green Mountain Coffee Roasters, Inc., 279 F.R.D. 275, 282 (D.N.J. 2011) (same); Solo v. Bed Bath & Beyond, Inc., Civ. 06-1908 (SRC), 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007) ("Plaintiff has failed to set forth either an out-of-pocket loss or a demonstration of loss in value sufficient to satisfy the ascertainable loss requirement."). Plaintiffs have failed to do so here.

Similarly, under the Florida Deceptive and Unfair Trade Practices Act, "the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006) (quoting Rollins, Inc. v. Heller, 454 So. 2d 580, 585 (Fla. Dist. Ct. App. 1984)). Plaintiffs have pleaded no facts to make such a determination. Therefore, the Court notes that Plaintiffs' failure to adequately plead ascertainable loss under New Jersey and Florida law provides an additional basis for dismissal. Plaintiffs will have an opportunity to cure this pleading deficiency in a Second Amended Complaint, as the present dismissal will be without prejudice.

### 3. Illinois Consumer Fraud Act

The Court separately addresses Defendants' standing argument under the Illinois Consumer Fraud Act because it warrants dismissal with prejudice. Defendants argue that Plaintiffs' claims under the Illinois Consumer Fraud Act must be dismissed because a school district lacks standing to assert a claim under the ICFA. Plaintiffs conceded this point at oral argument.

The ICFA defines "person" to include

> any natural person or his legal representative, partnership, corporation (domestic and foreign), company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof.

815 Ill. Comp. Stat. 505/1 § 1(c). In Board of Education of City of Chicago v. A, C & S, Inc., 546 N.E.2d 580 (Ill. 1989), the Illinois Supreme Court held that a school district or body politic is not permitted to bring a cause of action under the ICFA. Id. at 599. Accordingly, claims by the Cohokia School District under the ICFA must be dismissed with prejudice because the school district lacks standing and amendment would be futile.[19]

---

[19] Plaintiffs noted at oral argument, and the Court agrees, that Defendants' standing argument has no effect on the school district's standing to assert equitable claims in this action.

39

### 4. Equitable relief

The Court will dismiss without prejudice Plaintiffs' claims for equitable relief, namely their claims for unjust enrichment, assumpsit and quasi-contract, and declaratory relief, because each is premised on the underlying allegation of false advertising which the Court has found insufficiently pleaded. Plaintiffs' equitable claims are predicated on Defendants' misrepresentation of the concussion reduction benefits of the Helmets at issue, which the Court finds lacking in the Amended Complaint. See Gaul v. Bayer Healthcare LLC, 2013 U.S. Dist. LEXIS 188951, at *9-10 (D.N.J. June 19, 2013) ("Because this Court has determined that the Amended Complaint fails to state sufficient facts to make plausible the claim that Bayer made such false statements, these claims [for unjust enrichment, breach of express warranty, and breach of implied warranty of merchantability] are not viable and cannot survive the motion to dismiss."). Therefore, the Court will also dismiss Plaintiffs' equitable claims without prejudice.

## V.   CONCLUSION

For the reasons discussed above, the Court will deny in part and grant in part Defendants' motion to dismiss. The Court will deny Defendants' motion to the extent it is based on Plaintiffs' alleged failure to comply with Rule 8. The Court will grant Defendants' motion to the extent it is based on

40

Plaintiffs' failure to comply with Rule 9(b) and Rule 12(b)(6). Defendants' claims will be dismissed without prejudice, except the Cohokia School District's claim under the Illinois Consumer Fraud Act which the Court dismisses with prejudice due to lack of standing. An accompanying Order will be entered.


**January 15, 2015**                          **s/ Jerome B. Simandle**
Date                                          JEROME B. SIMANDLE
                                              Chief U.S. District Judge