## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE RIDDELL CONCUSSION REDUCTION LITIGATION | Civil Action No. 13-7585(JBS)(JS) |

-------------------------------------------------------------------------------------------------------

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
### TO DEFENDANTS' MOTION TO DISMISS

-------------------------------------------------------------------------------------------------------

James E. Cecchi
Caroline F. Bartlett
Lindsey H. Taylor
Zachary S. Bower
**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Dennis G. Pantazis
Craig L. Lowell
Dennis G. Pantazis, Jr.
**WIGGINS CHILDS PANTAZIS FISHER
GOLDFARB LLC**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500

*Attorneys for Plaintiffs and the Proposed
Classes*

[Additional Counsel Listed on Signature
Page]

## TABLE OF CONTENTS

I.  BACKGROUND AND INTRODUCTION ..................................................................1

II.  APPLICABLE LEGAL STANDARDS ..................................................................2

    A.  Rules 8(a) and 12(b)(6). ......................................................................... 2

    B.  Rule 9(b). ................................................................................................ 3

III.  THE SAC CURES THE DEFICIENCIES NOTED IN THE PREVIOUS OPINION ON DEFENDANTS' MOTION TO DISMISS ..........................................................4

    A.  The SAC Provides Details as to Plaintiffs' Purchases and Alleges the Specific Statements to Which Each Plaintiff Was Exposed .................................. 4

    B.  The SAC States the Precise Substance of Defendants' Misrepresentations .......... 8

    C.  The SAC Alleges Examples of Defendants' Specific Omissions........................ 11

    D.  Plaintiffs Allege Causation and Injury................................................. 12

    E.  Plaintiffs' Claims are Facially Plausible................................................ 14

    F.  Plaintiffs Allege Ascertainable Loss.................................................... 17

IV.  PLAINTIFFS HAVE ADEQUATELY PLED EACH OF THE CLAIMS ASSERTED IN THE COMPLAINT ..........................................................................................19

    A.  New Jersey Consumer Fraud Act ("CFA") ...................................... 20

    B.  Plaintiffs' Claims Are Properly Pled Under the Standards Applicable to the California Consumer Protection Statutes.............................................. 22

    C.  Plaintiffs' Allegations State a Claim for Violation of the Florida Deceptive and Unfair Trade Practices Act................................................................. 25

    D.  Arizona Comsumer Fraud Statute....................................................... 26

V.  PLAINTIFFS PROPERLY ASSERT EQUITABLE CLAIMS ......................................29

    A.  Plaintiff Cahokia School District's Sole Claim for Unjust Enrichment is Viable 31

    B.  Plaintiffs' Claims of Assumpsit and For Declaratory Relief Are Viable ............. 32

i

VI.     ALTERNATIVELY, PLAINTIFFS SHOULD BE ALLOWED TO AMEND AS SUCH AMENDMENT WOULD NOT BE FUTILE...................................................................34

VII.    CONCLUSION    ..............................................................................................35

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adamson v. Ortho-McNeil Pharmaceutical, Inc.,*
   463 F.Supp. 2d 496 (D.N.J. 2006) ..................................................................22

*Am. Pipe & Constr. Co. v. Utah,*
   *414 U.S. 538*..................................................................................................29

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..........................................................................................2

*Ass'n Benefits Servs. V. Caremark Rx, Inc.*
   493 F.3d 841 (7th Cir. 2007) ....................................................................31, 32

*Bell Atlantic v. Twombly,*
   550 U.S. 544 (2007)..........................................................................................2

*Carrier v. Bank of Am., N.A.,*
   2014 WL 356219, at *9 (D.N.J. Jan. 31, 2014) ...........................................34

*Castro v. NYT Television,*
   370 N.J. Super. 282 (App. Div. 2004) ..........................................................30

*Cel-Tech Comms., Inc. v. L.A. Cellular Tel. Co.,*
   20 Cal. 4th 163 (1999) ...................................................................................22

*Chapman v. Skype, Inc.,*
   220 Cal. App. 4th 217 (2013) ..................................................................23, 24

*Christidis v. First Penn. Mortg. Trust,*
   717 F.2d 96 (3d Cir. 1983)...............................................................................3

*Cincinnati Ins. Co. v. Holbrook,*
   867 F.2d 1330 (11th Cir. 1989) (*per curiam*) ..............................................32

*Cleary v. Philip Morris Inc.,*
   656 F.3d 511 (7th Cir. 2011) .........................................................................32

*Collins v. eMachines, Inc.,*
   *202 Cal. App. 4th 249 (2011)*........................................................................22

*Consumer Protection Corp. v. Neo-Tech News,*
   2009 WL 2132694 (D. Ariz. July 16, 2009) ................................................34

*Cox v. Sears Roebuck & Co.*,
    647 A.2d 454 (N.J. 1994) ........................................................................20

*Crozier v. Johnson & Johnson Consumer Co., Inc.*,
    901 F.Supp. 2d 494 (D.N.J. 2012) .........................................................20

*Davis v. Powertel, Inc.*,
    776 So.2d 971 (Fla. 1st DCA 2000) .......................................................25

*Davis v. Romney*,
    490 F.2d 1360 (3d Cir. 1974) ..................................................................33

*Dole v. Arco Chem. Co.*,
    921 F.3d 484 (3d Cir. 1990) ....................................................................34

*Dunlop v. Jimmy GMC of Tucson, Inc.*,
    666 P.2d. 83 (Ariz. App. 1983) ...............................................................27

*Dzielak v. Whirlpool, Inc.*,
    No. 2:12-0089 (KM), 2014 WL 2758746 (D.N.J. June 16, 2014) ..............17, 21, 30

*Elias v. Ungar's Food Products Inc.*,
    252 F.R.D. 233 (D.N.J. 2008) .................................................................21

*Francis E. Parker Mem. Home, Inc. v. Ga.-Pac. LLC*,
    945 F. Supp. 2d 543 (D.N.J. 2013) .........................................................33

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007) ......................................................................3

*Gennari v. Weichert Company Realtors*,
    691 A.2d 350 (N.J. 1997) ........................................................................20

*Gonzalez v. Wilshire Credit Corp.*,
    207 N.J. 557 (2011) .................................................................................20

*Guarneri v. Buckeye Pipe Line Services Co.*,
    Civ. No. 14-1131, 2014 WL 1783072 (D.N.J. May 5, 2014) ..................34

*Hammer v. Vital Pharmaceuticals, Inc.*,
    No. 11-4124, 2012 WL 1018842 (D.N.J. March 26, 2012) ....................21

*Herremans v. BWM of N. Am., LLC*,
    2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) ...........................................25

*Hetrick v. Ideal Image Dev. Corp.*,
    758 F. Supp. 2d 1220 (M.D. Florida 2010) ............................................25

*Hoffman v. Nutraceutical Corp.*,
  No. 12-5803 (ES), 2013 WL 2650611 (D.N.J. June 10, 2013) ................................................18

*Horvath v. LG Electronics Mobilecomm USA Inc.*,
  2012 WL 2861160 (Feb. 13, 2012).........................................................................................32

*In re K-Dur Antitrust Litig.*,
  338 F. Supp. 2d 517 (D.N.J. 2004) .........................................................................................29

*J-Hanna v. Tucson Dodge, Inc.*,
  2011 U.S. Dist. LEXIS 115323 (D. Ariz. Oct. 4, 2011) ....................................................27, 28

*Khasin v. R.C. Bigelow, Inc.*,
  No. C12-02204 JSW, 2013 WL 2403579 (N.D. Cal. May 31, 2013).........................................3

*Kuehn v. Stanley*,
  91 P.3d 346 (Ariz. App. 2004)................................................................................................27

*Lattaker v. Rendell*,
  269 F.App'x 230 (3d Cir. 2008) ..............................................................................................34

*Lawn v. Enhanced Serv. Billing, Inc.*,
  No. 10-CV-1196, 2010 WL 2773377 (E.D. Pa. July 13, 2010)...............................................33

*Levine v. Prudential-Bache Props. Inc.*,
  855 F.Supp. 924 (N.D. Ill. 1994) ..............................................................................................3

*Lewis v. Bank of Am. NA*,
  No. 13-7717 CAS VBKX, 2013 WL 7118066, at *4 (C.D. Cal. Dec. 18, 2013)...................33

*Marcus v. BMW of North America*,
  687 F.3d 583 (2012)................................................................................................................21

*McKowan Lowe & Co. v. Jasmine, Ltd.*,
  295 F.3d 380 (3d Cir. 2002).....................................................................................................29

*Mickens v. Ford Motor Corp.*,
  900 F.Supp.2d 427 (D.N.J. 2012) ...........................................................................................21

*Millennium Communs. & Fulfillment, Inc. v. Office of the AG, Dep't of Legal Affairs*,
  761 So. 2d 1256 (Fla. 3d DCA 2000) ......................................................................................26

*Miller v. American Family Publishers*,
  663 A.2d 643....................................................................................................................21, 22

*NN & R, Inc., v. One Beacon Ins. Group*,
  No. 03-5011 (JBS), 2005 WL 1520994 (D.N.J. June 28, 2005)..............................................20

*Paduano v. American Honda Motor Co., Inc.*,
    169 Cal. App. 4th 1453 (2009) ........................................................23

*Palmeri v. LG Electronics USA, Inc.*,
    No. 07-5706 (JAG), 2008 WL 2945985 (D.N.J. July 30, 2008) ..............................31

*Peddinghaus v. Peddinghaus*,
    295 Ill.App.3d 943, 230 Ill.Dec. 55, 692 N.E.2d 1221 (1998) ...............................32

*Peterson v. Mazda Motor of Am., Inc.*,
    2014 WL 4494872 (C.D. Cal. Sept. 9, 2014) ..........................................22

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)..............................................................2

*PNR, Inc. v. Beacon Property Management, Inc.*,
    842 So.2d 773 (Fla. 2003)................................................................26

*Raintree Homes, Inc. v. Vill. of Long Grove*,
    209 Ill.2d 248, 282 Ill.Dec. 815, 807 N.E.2d 439 (2004) ...................................32

*Rollins, Inc. v. Butland*,
    932 So.2d 1172 (Fla. 2d DCA 2006) ....................................................25

*Romano v. Galaxy Toyota*,
    399 N.J. Super. 470 (App. Div. 2008) ...................................................21

*Saltzman v. Pella Corp.*,
    No. 06-cv-4481, 2007 WL 844883 (N.D. Ill. Mar. 20, 2007) ...............................33

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
    742 F.2d 786 (3d Cir. 1984)..............................................................4

*Shelton v. Restaurant.com, Inc.*,
    543 F.App'x 168 (3d Cir. 2013) .........................................................17

*State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*,
    427 F.App'x 714 (11th Cir. 2011), *rev'd in part on other grounds by* 563 F.App'x
    665 (11th Cir. 2014)....................................................................31

*Walker Process Equip., Inc. v. FMC Corp.*,
    356 F.2d 449 (7th Cir. 1966) ...........................................................33

*Warren Gen. Hosp. v. Amgen Inc.*,
    643 F.3d 77 (3d Cir. 2011)...............................................................2

*Waste Mfg. & Leasing Corp. v. Hambicki*,
    183 Ariz. 84, 900 P.2d 1220 (Ariz. App. 1995).........................................29

*White v. Taylor,*
No. 10-5485, 2014 WL 1428545 (D.N.J. Apr. 14, 2014) ....................................................35

*Williams v. Bear Stearns & Co.,*
725 So.2d 397 (Fla. Dist. Ct. App. 1998) ...............................................................31

**STATUTES**

A.R.S. § 44-1522 ...........................................................................................................26

Bus. & Prof. Code §17200, *et seq.*...........................................................................23

Bus. & Prof. Code §17500, *et seq.*...........................................................................23

**OTHER AUTHORITIES**

5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1298 (1990) ..............3

Rule 8 ....................................................................................................................2,4,30

Rule 9(b) .............................................................................................................3, 4

Rule 12(b) ........................................................................................................2,11,33

I.      **BACKGROUND AND INTRODUCTION**

Plaintiffs have remedied all the perceived defects in the original complaint, and the Second Amended Complaint has sufficient information to place Defendants on notice of the claims asserted. The claims asserted by Plaintiffs are straightforward – Defendants made deceptive statements about the ability of their helmets to reduce concussions, compared to other helmets on the market. This deceptive and misleading conduct has caused each named Plaintiff, and the classes they seek to represent, to spend at least a $50.00 price premium per helmet. Plaintiffs are also entitled to a complete disgorgement of the profits from these helmet sales.

On January 15, 2015, the Court entered its Opinion, DE #41 (hereinafter "Op."), and Order, DE #42, in response to Defendants' motion to dismiss (DE# 24), Plaintiffs' Consolidated Class Action Complaint. On March 5, 2015, Plaintiffs filed their Amended Consolidated Class Action Complaint and Jury Demand, DE # 45 (hereinafter "Complaint" or "SAC"). Thereafter, Defendants filed a motion and supporting memorandum, DE #50 (hereinafter cited as "Mot."), requesting dismissal of the SAC. In its Opinion, the Court found the prior complaint deficient in that it failed to (1) identify the specific statements to which Plaintiffs were exposed, (2) state the precise substance of Defendants' misrepresentations, (3) identify specific omissions by Defendants, (4) identify causation and injury, (5) articulate a consistent theory of liability against Defendants, and (6) identify ascertainable loss. Op. at pp. 25-38. As set forth herein, the SAC specifically and properly addresses each perceived deficiency of the prior complaint and cures all deficiencies identified by the Court. Thus, the Defendants' motion to dismiss the SAC should be denied.

## II.   APPLICABLE LEGAL STANDARDS

### A.   Rules 8(a) and 12(b)(6).

Under *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a district court reviewing a motion to dismiss under Rule 12(b)(6) must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation omitted). Thus, "a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen. Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

"A claim has facial plausibility when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (internal citations omitted). Accordingly, it remains the role of discovery, not the pleadings, to "reveal evidence" as long as the factual allegations are enough to raise the right to relief above a speculative level. *Twombly*, 550 U.S. at 556.[1]  Plaintiffs' allegations more than satisfy this standard.

---

[1] The *Twombly* Court was clear, however, that this statement of the applicable standard was not intended to be an onerous or even a heightened requirement, explaining that it "comports with [the] Court's statements in the years since [1957]." *Twombly*, 550 U.S. at 563 n.8.

B.   **Rule 9(b)**.

The SAC is pleaded with sufficient precision to put Defendants on notice of the "precise misconduct with which [they are] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004)).[2]  This standard can be satisfied by *either* alleging the "date, time and place of the alleged fraud[,]" **_or_** by "otherwise inject[ing] precision or some measure of substantiation" in the allegations.  *Id.* Indeed, "focusing exclusively on [Rule 9(b)'s], 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'"  *Christidis v. First Penn. Mortg. Trust*, 717 F.2d 96, 101 (3d Cir. 1983) (quoting 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1298, at 407 (1969)).

The most basic consideration in judging the sufficiency of a pleading is whether it provides adequate notice to an adverse party to enable it to prepare a responsive pleading.  *See* 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1298, at 648 (1990); *see also*, *e.g.*, *Levine v. Prudential-Bache Props. Inc.*, 855 F.Supp. 924, 931 (N.D. Ill. 1994) ("[A] complaint does not run afoul of Rule 9(b) if the defendants can make enough sense of it so that they can mount an answer or defense."); *Khasin v. R.C. Bigelow, Inc.*, No. C12-02204 JSW, 2013 WL 2403579, at *2 (N.D. Cal. May 31, 2013) ("Rule 9(b)'s particularity requirements must be read in harmony with Rule 8's requirement of a "short and plain" statement of the claim."). "It is certainly true that allegations of 'date, place or time' fulfill these functions, *but nothing in the rule requires them*.  Plaintiffs are free to use alternative means of injecting precision and

---

[2] Plaintiffs maintain that Rule 9(b) does not apply to all the claims asserted in the Complaint because they are not solely fraud-based claims.  Given this Courts' prior ruling, however, Plaintiffs here focus on why their claims satisfy Rule 9(b).

3

some measure of substantiation into their allegations of fraud." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)(emphasis added).

The SAC articulates the core common misrepresentations made by Defendants relating to representations of concussion reduction and variants on that core message. The SAC alleges, *inter alia*: (i) that this core misrepresentation was disseminated by Defendants; (ii) the timeframes such misrepresentations were made; (iii) that the safety-related concerns of the message created an independent duty to disclose all material facts, and specifically that their helmets were no more effective at reducing concussions than any others on the market; (iv) that Plaintiffs and class members were exposed to such misstatements; (v) that purchasers of the Football Helmets, including Plaintiffs, would not have paid a premium price for the helmet had the material facts been properly disclosed; and (vi) that, as a result, Plaintiffs suffered an ascertainable loss due to Defendants' wrongful conduct. Accordingly, the Complaint satisfies the heightened pleading requirements of Rule 9(b).

## III. THE SAC CURES THE DEFICIENCIES NOTED IN THE PREVIOUS OPINION ON DEFENDANTS' MOTION TO DISMISS

The following sections compare the deficiencies identified by the Court with the amended allegations of the SAC to demonstrate and confirm Plaintiffs' compliance with the Order and the pleading requirements of Rules 8(a) and 9(b) .

### A. The SAC Provides Details as to Plaintiffs' Purchases and Alleges the Specific Statements to Which Each Plaintiff Was Exposed

With regard to the date, time and place of Defendants' misleading or fraudulent statements, the Court noted,

> "Plaintiff [is required] to plead the *date*, *time*, and *place* of the alleged fraud, or otherwise inject precision into the allegations by some alternative means." In the present action, the Amended Complaint alleges that all Plaintiffs were exposed to Defendants'

misrepresentations regarding the purported ability of the Football Helmets to reduce concussions. However, Plaintiffs' ... pleading lists examples of Defendants' marketing statements *without identifying which specific statement(s), if any, Plaintiffs were exposed to*."

. . .

"The Amended Complaint thus fails to satisfy the particularity requirements under   Rule 9(b) and fails to put Defendants on notice as to the basis of Plaintiffs' claims by *indicating the statements that Plaintiffs saw or heard and relied on*."

. . .

"Moreover, the Amended Complaint does not allege *where* these statements appeared."

Op. at p.p. 24-25 (emphasis added).

"Accordingly, the Amended Complaint does not contain sufficient details to put Defendants on notice of the 'precise misconduct with which [they are] charged.'"

Op. at p.p. 28-29.

In response, the SAC clarifies the factual allegations regarding each Plaintiff's purchase of a Riddell Revolution helmet by averring, *inter alia*, as follows:

### 1. *Aronsons*

- "Plaintiffs Douglas and Denise Aronson purchased a Revolution Speed Football Helmet for use by their son in or around August of 2011." SAC at ¶104.

- "Both the Aronsons and their son had been exposed to Defendants' claims that their Riddell Football Helmets had "concussion reduction technology" prior to making their purchase." Id.

- "Specifically, ... a representative offering Riddell Football Helmets for sale appeared at a boy's club football practice and conveyed to the players, parents and coaches that the Riddell Football Helmets he was offering for sale was the best helmet for preventing concussions because it had concussion reduction technology." Id. at ¶105.

- "The representative did not disclose any of the true facts regarding the Concussion Study set forth above." Id.

- "The representative also did not disclose that … no clinical study showed that the Speed helmet was better or more protective than less expensive alternative helmets available to the Aronsons." Id.

- "Later, in 2011"... "Denise Aronson went online to Riddell's website.  While on the Riddell website and prior to making this purchase, Denise Aronson viewed Riddell's claim that its Riddell Football Helmets had concussion reduction technology."  Id. at ¶106.

- "Accordingly, on more than one occasion, the Aronsons were exposed to Defendants' claim that their Riddell Football Helmets had 'concussion reduction technology' that would make them better at preventing concussions than other helmets that were available to them." Id.

- "Based on this belief, the Aronsons purchased a Riddell Revolution Speed Football Helmet directly from Riddell." Id.

2. *Norma D. Thiel*

- Purchased a Riddell 360 helmet for her son.  Saw a Riddell You-tube videos advertising the Riddell 360, and how its technology could better protect the head from concussions than other models on the market. Id. at ¶109.

- Considered other helmets, but the claim made by Riddell concerning concussion reduction technology was dispositive.  Id.

- Purchased the Riddell Revolution 360 directly from Riddell's website for $389.98 on April 24, 2013, "because she relied upon Riddell's advertising materials that stated it would provide better protection from concussions than other helmets on the market."  Id.

3. *Nicholas W. Farrell*

- Was "exposed to Concussion Reduction Technology claims, as well as the 31% reduction claim, which were important to him because he had already had a concussion before."  Id. at ¶110.

- "He saw these ads on the internet and in magazines." Id.

- "Relying upon Riddell's concussion reduction claims, he purchased a Revolution helmet for $250.00 in September of 2010 because he thought Riddell's claims meant the Revolution was better at reducing concussions than other helmets on the market which he considered."  Id.

6

- "He purchased the helmet through a magazine." Id.

### 4. *Gustavo Galvan*

- He "purchased a Riddell Revolution Helmet in June of 2011." Id. at ¶111.

- "While shopping for the helmet, he performed internet research on football helmets from a variety of manufacturers."  Id.

- He also "noticed that the Riddell website 'news' section claimed that the helmet reduced concussions by 31%."  Id

- He further "noted that the packaging of the helmets showed Concussion Reduction Technology."  Id.

- He "relied upon these statements claiming superior concussion reduction technology, and purchased a Riddell Revolution helmet from Dick's Sporting Goods at 2753 East Eastland Center Drive, West Covina, CA 91791."  Id.

### 5. *Cahokia School District (not asserting a consumer fraud claim)*

- Purchased multiple Riddell Football Helmets since 2011. Id. at ¶¶112-13

- Was exposed to the false and deceptive claims regarding the ability of the Football Helmets to reduce concussions. Id.

- Paid a price premium of $50 per helmet. Id.

### 6. *Kenny King*

- He "regularly purchases helmets on behalf of the Alliance Youth Sport Association."  Id. at ¶114

- "In February of 2010, Mr. King met with Taylor Hanahana, a Riddell sales representative at the Glazier Clinic in Las Vegas, NV.  Riddell's sales representative represented that the Revolution helmets offered superior concussion reduction technology."  Id.

- "The Sales Representative followed up with Mr. King and met with him at Mr. King's office, and further compared the concussion reduction properties of the Revolution, to Schutt models."  Id.

- "Mr. King also reviewed concussion reduction statements in the Riddell 2010 sales catalog."  Id.

- "Mr. King then relied upon Riddell's statements and began purchasing Riddell Revolution Youth helmets for the Alliance Youth Sport Association in July of 2010, which purchases continue at least through March of 2013, because he thought they offered better concussion protection than less expensive Schutt models." Id.

The foregoing allegations specifically identify the misrepresentations each Plaintiff was exposed to, as well where those misrepresentations appeared and when the Plaintiffs saw them. Accordingly, the SAC satisfactorily identifies the specific misrepresentations to which the Plaintiffs were exposed.

**B.**     **The SAC States the Precise Substance of Defendants' Misrepresentations**

The Court also found "Plaintiffs [had] not sufficiently specified the precise substance of the alleged misrepresentations which gives rise to their claims." Op. at p. 28.  The Court explained,

> "Beyond Plaintiffs' failure to identify specific marketing statements to which each was exposed, Plaintiffs fail to identify what is false about Defendants' alleged misrepresentations. Is it the Helmets' inability to prevent concussions at all? Is it the inability to reduce concussions by 31% as compared to competitors' helmets? Is it both? Are the marketing claims false as to all of Defendants' Helmets or just youth helmets? The Amended Complaint fails to provide these answers, as did counsel in briefing and at oral argument..."
> . . .
>
> "Accordingly, the Amended Complaint does not contain sufficient details to put Defendants on notice of the 'precise misconduct with which [they are] charged.'"

Op. at pp. 28-29.

As stated in the preceding section, the SAC identifies for each Plaintiff the particular misrepresentations the Plaintiffs were exposed to and considered, when they saw those representations and where the misrepresentations appeared. The SAC also clearly alerts

Defendants as to *what* is false about their misrepresentations – i.e., that Defendants' helmets are no more effective at reducing the incidence of concussions than any other helmets on the market, and for Defendants to represent otherwise is false and misleading. *See, e.g.*, SAC at ¶¶6, 7, 10, and 11.[3] Further examples of the precise conduct with which the Defendants are charged can be found, *inter alia*, in the following averments from the SAC:

> Defendants represent that Riddell helmets are better at reducing the incidence of concussions than comparative helmets. SAC at ¶¶6, 7, 10 and 11. However, there are no scientifically reliable tests that support Defendants' concussion reduction claim. *Id.* at ¶¶73, 75. Indeed, all reliable testing indicates there is no difference in concussion protection among the various helmets marketed to the public. *Id., e.g.,* at ¶¶73, 88, 95 and 98.

> "Riddell has no other tests, clinical or otherwise, that support the Concussion Reduction claims made to the public about the Revolution line helmets." *Id.* at ¶73.

> "Riddell's claims regarding the youth helmets are particularly egregious since the youth helmets were not part of the [UPMC] study in any way. Notwithstanding this fact, Riddell still marketed the youth helmets as if some study showed that they actually

---

[3] Defendant is also incorrect to state that "Plaintiffs have not alleged any applicable false statements pertaining to Riddell "Youth" helmets". Mot. at 24. Defendant mischaracterizes Plaintiff's claims as alleging "that Riddell stated in a letter (sent to unspecified person or persons) that 'research shows that athletes who wear Riddell Revolution Youth helmets were 31% less likely to suffer a concussion than athletes who wore traditional helmets'". Mot. at 24. This attempt to change Plaintiff's claims is nonsensical as Plaintiff's actual claims about youth helmets are exactly the same as they are about varsity helmets: *i.e.* Riddell's youth helmets are no better at reducing concussions than other helmets on the market. Plaintiff's claims have nothing to do with the one letter referenced by Defendant; Defendant's attempt to categorize Plaintiff's claims as such is unavailing. The bottom line is that Defendant made statements about their youth football helmet's ability to reduce concussions in a manner that was misleading, deceptive, and likely to mislead. These representations caused Plaintiffs to purchase youth helmets to their detriment. Defendant should have to now defend its marketing statements, and defend this lawsuit.

reduced incidences of concussion amongst youth football players." *Id*. at ¶75.

"Defendants marketed their helmets as 'having technology that can reduce the frequency of concussions' when they do not possess such technology." (*Id*. at ¶¶85-86)

"Making such 'concussion reduction' claims has been hugely rewarding to Defendants as their Riddell Football Helmets are some of the best-selling football helmets in the United States. Despite Defendants' representations, there is no material difference in the Riddell Football Helmets and the other football helmets available to consumers in regard to concussion reduction." *Id*. at ¶86.

"[T]he Wisconsin Study is the largest prospective study to have reported the brand of helmets worn by High School football players in the United States. The Study concluded that there was no difference in the rate of concussion for players wearing Riddell helmets as opposed to helmets manufactured by Schutt or Xenith." *Id*. at ¶95.

"Defendants marketed the Riddell Football Helmets as having 'Concussion Reduction Technology' in order to convey to consumers that these football helmets can reduce the incidence of concussion when compared to other modern football helmets available for sale from other manufacturers... In reality, Defendants' promises are false or deceptive because their Riddell Football Helmets do not provide the promised 'Concussion Reduction Technology' or result in decreasing the incidence of concussions for corresponding concussion reduction results. In fact, objective and reliable research, which was not funded by Defendants, has shown that claims of concussion reduction related to football helmets are not valid and are instead simply a marketing tool." *Id*. at ¶¶6-7.

Accordingly, the "precise substance of Defendants' misrepresentation" is Defendants' marketing claim that their helmets can reduce the incidence of concussions better than other helmets on the market.[4] This marketing claim is misleading. Defendants' misrepresentations that

---

[4] Viewing the SAC in the light most favorable to the Plaintiffs, the Wisconsin study is on all-fours with Plaintiffs' claims – no one helmet is better at preventing concussions. Even Defendants' Motion admits as much, which is why they attempt to change the core basis of the

their helmets reduce the incidence of concussions were intended to, and did indeed, create the false and misleading perception among consumers that Defendants' helmets can reduce the incidence of concussions better than any other helmet on the market. Thus, the Plaintiffs' "essential theory" of the case is that Defendants' marketing program was intended to and did create the false "belief by all consumers that persons wearing Riddell Football Helmets were less likely to get a concussion than those persons wearing other helmets that were then available for purchase by consumers." *Id.* at ¶116.[5]   Accordingly, the SAC states the precise substance of Defendants' misrepresentations.

### C.      The SAC Alleges Examples of Defendants' Specific Omissions

The Court next found "the Amended Complaint fails to plead a specific omission or Defendants' knowledge of same."  Op. at p. 29. The Court explained,

> "Plaintiffs must specify the helmets or group of helmets to which Defendants' Helmets are comparatively ineffective at reducing concussions. If Plaintiffs do not rely on comparative effectiveness, and instead base their claims on the inability of any football helmets to reduce concussions, then their pleading should make that clear. Accordingly, the Amended Complaint fails to specifically identify a discrete omission by Defendants sufficient to satisfy Rule 9(b)."

*Id*. at p. 30.

In response, the SAC includes the following allegations:

> "Plaintiffs file this complaint because Defendant's helmets ... are no more effective at reducing concussions than *any other helmets*

---

claims alleged.  The Court simply cannot adopt Defendants' misrepresentation of the Amended Complaint, and accordingly must reject their request for dismissal.

[5] The Court also found "that Plaintiffs' essential theory of the case is so unclear and inconsistent that it fails to satisfy the plausibility standard under Rule 12(b)(6)." Op. at p. 3. The SAC now articulates the "essential theory."

> *on the market.*" SAC at ¶11 (emphasis added).[6]   "Specifically,
> these other helmets include the following Adult models: Riddell
> VSR-4; Xenith X2, X1, and Epic; Schutt ION 4D, Schutt DCT and
> VTD, Air XP, Air XP Pro VTD, and DNA Pro; Rawlings Quantum
> Plus, Impulse, and Tachyon.  The other helmets also include the
> following Youth models: Xenith X2E; Schutt Recruit, XP, XP
> Hybrid, and Vengeance.  Moreover, most consumers, including all
> of the named Plaintiffs, compared premium priced Riddell
> Revolution models to less expensive Schutt models….

SAC at p. 4, fn 1.

The SAC further avers,

> "Defendants failed to disclose what they knew for certain - that
> significant evidence establishes that their Riddell Football Helmets
> provide no material difference in concussion reduction. Coupled
> with their affirmative statements to the contrary, Defendants'
> failure to disclose to consumers that there is no material difference
> in concussion reduction of their helmets would, and did, mislead
> reasonable purchasers of such helmets into paying a premium price
> for such helmets."

*Id.* at ¶98.  Thus, the SAC articulates that Plaintiffs' allegation of "comparative ineffectiveness"

relates to *all* other helmets on the market, including, but not limited to, those specifically

identified above and in the SAC at fn 1.

   **D.     Plaintiffs Allege Causation and Injury**

   The Court next found that "Plaintiffs failed to plead causation or injury with specificity in

that Plaintiffs did not allege where they purchased the product at issue, how much they paid, and

when they were exposed to Defendants' alleged misrepresentations." Op. at p. 31. The Court also

noted,

---

[6] The Court noted at footnote 14 of its Opinion that Plaintiffs had made inconsistent statements
relating to helmets *reducing* concussions and *preventing* concussions. The Plaintiffs' claims in
this case center upon Defendants' misrepresentations that their helmets can reduce the incidence
of concussions as compared to other football helmets, not whether the helmets can actually
prevent the user from ever receiving a concussion. Thus, there is no allegation that Defendants'
have represented their helmet can protect its user from ever receiving a concussion.

> "[A] general recitation of various representations touting the ability of Defendants' Helmets to reduce concussions coupled with the allegation that [Plaintiffs] paid a 'price premium' for the Helmet(s) is insufficient to satisfy Rule 9(b) without corresponding allegations indicating which representations Plaintiffs were exposed to and how much of a 'premium' they paid for the allegedly non-performing or under-performing Helmets."

*Id.* at p.p. 31-32.

The details regarding *where* each Plaintiff purchased the subject helmets and *when* the Plaintiffs were exposed to Defendants' misrepresentations are identified above. How much they paid and how much of that price is a "premium" is identified at various points throughout the SAC, including the following averments:

> "Defendants nevertheless charged a price premium for their Football Helmets in an effort to profit from the increased awareness and concern among consumers over the frequency and effects of concussions.  According to Riddell and a Federal Court, this price premium was $50 per helmet." SAC at ¶9.

> "The price premium is $50 per helmet."  *Id*. at ¶81.

> "Defendants have acknowledged that they could charge a   $50 price premium per helmet (when compared to other available helmets on the market) by making the 'concussion reduction technology' claim."  *Id*. at ¶100.

> "Further, a Federal Judge has determined that Riddell was   able to charge a $50 price premium for the Revolution Helmets, noting that Riddell itself attributed the price premium  to  the  concussion reduction technology claims."  *Id*.

> "Alternatively, some members of the Class, including the Aronson Plaintiffs, suffered damages in the full amount of    the  price  they paid for the Riddell Football Helmets because they had access to other football helmets without cost, and the only reason for the purchase of the Riddell Football Helmet was the "concussion reduction technology" claim. Therefore, damages to these Plaintiffs are equal to the entire cost of the Football Helmet." *Id*. at ¶101. *See also*, SAC at fn 12.

> "The online price of the Riddell Football Helmet was at least $50

more than other comparable football helmets on the market, such
as Schutt helmets, available to the Aronsons." *Id*. at ¶107.

"Cohokia School District purchased numerous Riddell Football
Helmets at a price premium of $50 per helmet." *Id*. at ¶112.

The SAC further avers that by reason of the above-described conduct, Defendants caused

actual harm, injury-in-fact, and loss of money to Plaintiffs and the Class, and that Plaintiffs and

the Class were injured in the following ways:

> Plaintiffs and members of the Class paid price premiums of at least
> $50 per helmet for Defendants' Football Helmets for the purpose
> of preventing or reducing concussions based on Defendants'
> misrepresentations regarding the Riddell Football Helmets' having
> concussion reduction technology;
>
> Plaintiffs also plead, alternatively, that some members of the Class
> suffered full damages of the total amount paid for the Riddell
> Football Helmets because they already had access to another
> football helmet without charge, and purchased the Riddell Football
> Helmet only because of the concussion reduction technology
> promises made by Defendants;
>
> If Defendants' Riddell Football Helmets actually included
> technology that was capable of reducing the likelihood of
> concussions compared to other helmets as represented, Plaintiffs
> would not have suffered the economic loss described herein;
>
> Plaintiffs and the Class have been deprived of the benefits of their
> Riddell Football Helmets promoted by Defendants, requiring
> restitution; and
>
> Plaintiffs and the Class have been deprived of the benefit of their
> bargains and suffered other damages by purchasing Riddell
> Football Helmets, which could not lessen the likelihood of
> concussions as represented.

*Id*. at ¶130 (a)-(e).  Accordingly, the SAC satisfactorily pleads causation and injury.

> **E.**    **Plaintiffs' Claims are Facially Plausible**

The Court also concluded that "the Amended Complaint fails to articulate a consistent

theory of liability against Defendants" because "Plaintiffs allege Defendants have falsely and

14

deceptively exaggerated the concussion reduction benefits of their helmets" but "have failed to answer the crucial question: compared to what?" Op. at 33-34. As the Court explained,

> "[I]t is significant whether Plaintiffs claim that Defendants exaggerated the concussion reduction ability of their Helmets as compared to those currently on the market (and if so, which ones) or vintage leather football helmets. It also important whether Plaintiffs contend that Defendants overstated the concussion reduction ability of their Helmets based on the representation of a 31% reduction or based on the ability to reduce concussions at all (i.e. by any percentage)."
> …
>
> "Plaintiffs must affirmatively allege the falsity of Defendants' claims, and merely identifying certain flaws in the UPMC study is insufficient."
> …
>
> "Plaintiffs' attempt to allege a common marketing campaign based on disparate marketing statements impedes the Court's plausibility analysis and can only be cured by amendment. By grouping a series of advertising claims together without any clear commonality beyond a general assertion of concussion reduction, the Court is unable to determine the relevance of the various studies to the alleged falsity of particular marketing statements. That is, without a clear theory of liability, the relevance of particular studies to Plaintiffs' claims requires speculation and guesswork."

*Id*. at 34-35.

The "compared to what?" question is answered by the SAC -- "Plaintiffs file this complaint because Defendants' helmets . . . are no more effective at reducing concussions *than any other helmets on the market*. SAC at ¶11 (emphasis added). *See also, e.g.*, ¶¶ 86, 106, 109, 110, 112, 116, 143, 163, 176 and 190. The SAC identifies, without limitation, other comparative helmets – "specifically, these other helmets *include* the following Adult models:

> Riddell VSR-4; Xenith X2, X1, and Epic; Schutt ION 4D, Schutt DCT and VTD, Air XP, Air XP Pro VTD, and DNA Pro; Rawlings Quantum Plus, Impulse, and Tachyon. The other helmets also include the following Youth models: Xenith X2E; Schutt Recruit,

> XP, XP Hybrid, and Vengeance.   Moreover, most consumers, including all of the named Plaintiffs, compared premium priced Riddell Revolution models to less expensive Schutt models, as well as older Riddell models like the VSR-4."

SAC at p. 4, fn 1 (emphasis added).

Further, the SAC specifically avers the falsity of Defendants' product claims, rather than merely relying upon the numerous flaws in the UPMC study.   For example, and without limitation, the SAC states,

> "Despite Defendants' representations, there is no material difference in the Riddell Football Helmets and the other football helmets available to consumers in regard to concussion reduction," SAC at ¶86,

> "The Wisconsin Study was more robust than the UPMC and followed 2081 players for two years.   In fact, the Wisconsin Study is the largest prospective study to have reported the brand of helmets worn by High School football players in the United States. The Study concluded that there was no difference in the rate of concussion for players wearing Riddell helmets as opposed to helmets manufactured by Schutt or Xenith,"  *Id*. at ¶95,

> "Defendants failed to disclose what they knew for certain - that significant evidence establishes that their Riddell Football Helmets provide no material difference in concussion reduction.   Coupled with their affirmative statements to the contrary, Defendants' failure to disclose to consumers that there is no material difference in concussion reduction of their helmets would, and did, mislead reasonable purchasers of such helmets into paying a premium price for such helmets." *Id*. at ¶98.

The SAC also avers a "clear commonality" among Defendants' advertising claims. For example, the SAC avers,

> "Because Defendants' uniform claims regarding 'concussion reduction technology' were widely included and disseminated in advertisements, marketing, and sales presentations, and went to a material characteristic, benefit and use of their Football Helmets – that of user safety – a reasonable consumer would likely be misled into believing that the Revolution helmet will reduce the frequency of concussions."

16

Id. at ¶ 102.

As for the "relevance of the various studies to the alleged falsity of particular marketing statements," Op. at p. 34, the Plaintiffs' reference to certain studies and the FTC report merely establishes a factual background and foundation for the falsity of Defendants' marketing claims.[7] That is, the UPMC study is referenced because of its many flaws and the fact that it is the only study relied upon by Defendants to support their promises of concussion reduction. Nonetheless, this case, at least at the motion to dismiss phase, is not about competing helmet studies, but rather, Plaintiffs' articulation of their claims for relief.

Accordingly, the SAC addresses the specific deficiencies the Court found in the previous iteration of the Complaint.

### F.    Plaintiffs Allege Ascertainable Loss

The Court also noted the "Amended Complaint merely states that each plaintiff paid a 'price premium' for Defendants' product and fails to identify the specific price paid or allege any other facts necessary to plead injury or ascertainable loss." Op. at 37.[8] The Court explained:

---

[7] While the Complaint provides *background* information explaining the Defendants' scheme to manufacture support for their desired claims of concussion reduction in order to profit from the developing concern by the public as to the dangers of concussions, as manifested in the UPMC study, these background allegations are not the factual basis for the claims alleged.  This section discussing the UPMC study is even explicitly titled "background," as instructed by the Court in its January Opinion to avoid confusion regarding the basis for the claims alleged, (*see* Op. at 28).  Thus, while the UPMC study is certainly evidence of Defendants' plot to manufacture support for the concussion reduction claims it wanted to make to profit from consumers' concussion fears, Plaintiffs claims here do no rely on the findings of that study.

[8] Plaintiffs note that the threshold for *pleading* ascertainable loss is low, as long as the allegations include a definite, certain and measurable loss rather than a hypothetical loss. *Shelton v. Restaurant.com, Inc*., 543 F.App'x 168, 170 (3d Cir. 2013)(internal citations omitted).  The precise amount of the ascertainable loss need not be known; it need only be measurable. *See e.g., Dzielak*, 2014 WL 2748746, at *20.  All that is required to plead is that plaintiffs receive

17

> "Courts in this District have required plaintiffs to specify the price paid for the product and the price of comparable products to adequately state a claim under the NJCFA."
>
> . . .
>
> "Similarly, under the Florida Deceptive and Unfair Trade Practices Act, 'the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.' Plaintiffs have pleaded no facts to make such a determination. Therefore, the Court notes that Plaintiffs' failure to adequately plead ascertainable loss under New Jersey and Florida law provides an additional basis for dismissal."

*Id.* at p. 38

In response, the SAC avers the following:

> "According to Riddell and a Federal Court, this price premium was $50 per helmet." SAC at ¶9.
>
> "Plaintiffs and the members of the Class paid price premiums for the Riddell Football Helmets.   In fact, Defendants have acknowledged that they could charge a $50 price premium per helmet (when compared to other available helmets on the market) by making the "concussion reduction technology" claim.   Further, a Federal Judge has determined that Riddell was able to charge a $50 price premium for the Revolution Helmets, noting that Riddell itself attributed the price premium to the concussion reduction technology claims.   Therefore, Plaintiffs and the members of the Class were harmed, and suffered an ascertainable loss, by virtue of their payments of a price premium for these purportedly concussion reduction Riddell Football Helmets." *Id*. at ¶100.
>
> "Alternatively, some members of the Class, including the Aronsons, suffered damages in the full amount of the price paid for the Riddell Football Helmets because they had access to other

---

something less than, or different from, what they reasonably expected in view of defendant's presentations.  *Id.*  The benefit-of-the-bargain theory requires nothing more than the consumer was misled into buying a product that was ultimately worth less to the consumer than the product he was promised.  *Hoffman v. Nutraceutical Corp.,* No. 12-5803 (ES), 2013 WL 2650611, at *2 (D.N.J. June 10, 2013) (*quoting Smajlaj*, 782 F.Supp. 2d at 99).

football helmets without cost, and the only reason for the purchase of the Riddell Football Helmet was the "concussion reduction technology" claim. Therefore, damages to these Plaintiffs are equal to the entire cost of the Football Helmet." *Id.* at ¶101.

"The launch of the Revolution allowed Riddell to get a $50 premium for the new helmet, which Riddell attributes to the 'technology' of the helmet and the concussion study". *Riddell, Inc. v. Schutt Sports, Inc*., 724 F. Supp. 2d 963, 980 (2010). *Id*. at fn 12.

Riddell Football Helmets are sold at a higher price based on promises of increased safety and reduced concussions.  The price premium is $50 per helmet."  *Id*. at ¶81.

"Plaintiffs from Florida and the Florida Subclass have been aggrieved by Defendants' unfair and deceptive practices because they purchased the offending helmet described herein at premium prices over comparable helmets from competing manufacturers. The premium was at least, according to Riddell, $50 per helmet." *Id.* at ¶147.

"Plaintiffs and members of the Class paid price premiums of at least $50 per helmet for Defendants' Football Helmets for the purpose of preventing or reducing concussions based on Defendants' misrepresentations regarding the Riddell Football Helmets' having concussion reduction technology." *Id.* at ¶130-a. "Alternatively, some members of the Class suffered full damages of the total amount paid for the Riddell Football Helmets because they already had access to another football helmet without charge, and purchased the Riddell Football Helmet only because of the concussion reduction technology promises made by Defendants." *Id.* at ¶130-b.

Accordingly, the SAC sufficiently pleads injury and ascertainable loss.

## IV.   PLAINTIFFS HAVE ADEQUATELY PLED EACH OF THE CLAIMS ASSERTED IN THE COMPLAINT

Defendants also attempt to narrow this Court's view of the various consumer protection statutes under which Plaintiffs have asserted claims.  Here, Defendants repeatedly argue that Plaintiffs have failed to allege "literal falsity" in the SAC.  However, literal falsity is not required to raise a cognizable claim under any of the consumer protection laws.  Rather, as set forth

below, each state law requires something less than literal falsity, *i.e.,* that the statements or acts of the Defendants are "likely to mislead."

A.   **New Jersey Consumer Fraud Act ("CFA")**

When referring to the CFA, courts recognize that "'the Act should be construed liberally in favor of consumers.'"  *Crozier v. Johnson & Johnson Consumer Co., Inc*., 901 F.Supp. 2d 494, 506 (D.N.J. 2012) (citing *Cox v. Sears Roebuck & Co*., 138 N.J. 2, 15 (1994)).  Defendants can violate the NJCFA through an affirmative act, an omission or a violation of an administrative regulation.  *Gennari v. Weichert Company Realtors*, 691 A.2d 350, 365 (N.J. 1997); *see also, Cox v. Sears Roebuck & Co.*, 647 A.2d 454 (N.J. 1994) (Consumer fraud violations can be divided, broadly, into three categories: affirmative acts, knowing omissions, and regulatory violations.)  Further, the "'capacity to mislead is the prime ingredient of all types of consumer fraud.'"  *NN & R, Inc., v. One Beacon Ins. Group*, No. 03-5011 (JBS), 2005 WL 1520994, at *4 (D.N.J. June 28, 2005) (citing *In re Van Holt,* 163 F.3d 161, 168 (3d Cir. 1998)).  With this understood goal of protecting consumers, the elements of a CFA claim are straightforward and require that the pleading describe the following:  (1) an unlawful practice; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss.  *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 567 (2011).  As set forth below, the Complaint includes allegations to support each of the elements of a CFA claim.

Plaintiffs, in the SAC, have properly pled a cause of action under the NJCFA.  Plaintiffs allege unlawful conduct by, *inter alia*, alleging that the Defendants:

> "misrepresented that the Riddell Football Helmets would provide certain concussion reduction and prevention benefits including, but not limited to Defendants' representations that the Riddell Football Helmets delivered a 31% reduction in the risk of concussions and provided superior anti-concussion support from its concussion reduction technology including padding and side impact protection

20

> or provided the other promised concussion reduction and prevention benefits as described herein or omitted material facts to the contrary."

*SAC at ¶133.  See also* ¶¶ 73-86.

Plaintiffs have also alleged an ascertainable loss that has been independently found by at least one court to be in the range of $50 per helmet attributable to this specific representation (SAC at ¶¶ 9, 81, 100, 107, 109, 112, 130, 136 and 147)[9] as well as a causal relationship between the unlawful conduct and the ascertainable loss (SAC at ¶¶ 109 and 136).

Plaintiffs are not required to plead or prove actual falsity.  Rather, Plaintiffs can show a *prima facie* violation of the NJCFA by pleading and proving that Defendants conduct is likely to mislead. *Miller v. American Family Publishers,* 663 A.2d 643, 651 ("In the three areas discussed above, plaintiffs have demonstrated (at least for purposes of meeting a motion for summary judgment) that defendant's activities are likely to mislead an average, reasonable consumer. Thus, plaintiffs' have shown a *prima facie* violation of the Act.")  Since the acts alleged in the

---

[9] In order to suffer an ascertainable loss, the plaintiff is not required to show monetary loss, only that they purchased a product and got something less than what had been promised. *Marcus v. BMW of North America*, 687 F.3d 583, 606 (2012); *see also Smajlaj*, 782 F.Supp. 2d at 99 ("The New Jersey Supreme Court has repeatedly and explicitly endorsed a benefit-of-the-bargain theory under the Consumer Fraud Act that requires nothing more than that the consumer was misled into buying a product that was ultimately worth less to the consumer than the product he was promised."); *Elias v. Ungar's Food Products Inc.*, 252 F.R.D. 233, 248 (D.N.J. 2008) ("With respect to the second element, namely 'ascertainable loss,' this includes more than a monetary loss and may occur 'when a consumer receives less than what was promised.'") (citations omitted).  It is *not* necessary for the plaintiff to plead a specific dollar amount to survive at the pleading stage – it need only be measurable. *See e.g. Dzielak*, 2014 WL 2758746, at *20. As many cases interpreting the CFA make clear, there is no level of specificity required or any fixed rules as to how a plaintiff may calculate ascertainable loss. *See Mickens v. Ford Motor Corp.*, 900 F.Supp.2d 427, 446 (D.N.J. 2012) (citing *Theidemann*, 183 N.J. at 249); *Romano v. Galaxy Toyota*, 399 N.J. Super. 470, 479-81 (App. Div. 2008) (discussing different methods for calculating ascertainable loss in different types of consumer fraud cases); *Hammer v. Vital Pharmaceuticals, Inc.*, No. 11-4124, 2012 WL 1018842, at *8 (D.N.J. March 26, 2012) (discussing "at least three recognized theories of ascertainable loss").

SAC constitute "affirmative act" violations, plaintiffs need not show an "intent" to mislead.  *Id.*[10]
Taken as true, as the Court must at this stage, these allegations support a claim for violation of
the CFA.  *See Adamson v. Ortho-McNeil Pharmaceutical, Inc.*, 463 F.Supp. 2d 496, 501 (D.N.J.
2006) (*citing Scibek v. Longette*, 339 N.J. Super. 72, 78 (App. Div. 2001)).

### B.   Plaintiffs' Claims Are Properly Pled Under the Standards Applicable to the California Consumer Protection Statutes.

The UCL "establishes three independent prongs of unfair competition—acts or practices
which are unlawful, or unfair, or deceptive. A practice is prohibited as unfair or deceptive even if
not unlawful and vice versa." *Cel-Tech Comms., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163,
180 (1999). "By proscribing 'any unlawful' business practice, Section 17200 borrows violations
of other laws and treats them as unlawful practices that the unfair competition law makes
independently actionable." *Id.* at 180.  Plaintiff adequately pleads violations of the CLRA and
the other California state law claims asserted in the SAC.  This sufficiently pleads a cause of
action under the UCL's unlawful prong.  *Collins v. eMachines, Inc., 202 Cal. App. 4th 249, 258
(2011).*

Plaintiff further alleges that Defendants violated the UCL by selling youth football
helmets touting "Concussion Reduction Technology" that in fact was not supported by
independent study analysis, because marketing and selling defective and dangerous helmets is
"substantially injurious to their customers" and thus "unfair".  SAC at ¶157.  This claim, absent
any allegation of fraudulent intent, constitutes a viable claim under the UCL.  *Peterson v. Mazda
Motor of Am., Inc.*, 2014 WL 4494872, at *6 (C.D. Cal. Sept. 9, 2014)("Taking Ms. Peterson's

---

[10] Plaintiffs also alleged that Defendants' promises constitute an unconscionable commercial
practice and are false or deceptive because consumers who purchased the Football Helmets did
not receive the concussion reduction benefits they would have reasonably expected to receive
based on Defendants' advertising and marketing language.

allegations as true, this Court finds that Ms. Peterson has adequately stated a claim under the 'unfair' prong of the UCL.").  Whether Defendants' conduct is "unfair is generally a question of fact which requires consideration and weighing of evidence from both sides."  *Paduano v. American Honda Motor Co., Inc.*, 169 Cal. App. 4th 1453, 1469 (2009).

Finally, as the Supreme Court held in *Committee on Children's Television*, *supra*, 35 Cal. 3d at 213, "it is sufficient for plaintiff to describe a scheme to mislead customers, and allege that each misrepresentation to each customer conforms to that scheme" to assert a claim for violation of the deceptive and misleading advertising prongs of the UCL, since the complaint only needs to allege a "likelihood" of deception.  The SAC contains allegations how Defendants' scheme was likely to mislead targeted consumers at ¶¶6, 7, 10, 49, 67, 68, 75, 92-99, 102, 163, and 176-178, supporting all aspects of Plaintiffs' UCL claim.

Under both the UCL and FAL, the advertising can be true but still actionable if it is misleading. In *Chapman v. Skype, Inc.*, 220 Cal. App. 4th 217 (2013), the California Court of Appeals reversed the dismissal of a class action complaint that alleged violations of the Unfair Competition Law ("UCL") Bus. & Prof. Code §17200, *et seq.*, the False Advertising Law ("FAL") Bus. & Prof. Code §17500, *et seq.*, and the Consumer Legal Remedies Act ("CLRA") Civ Code §1750, *et seq.* The Court found allegations of actual falsity were not an element of such claims:

> The UCL and the false advertising law "prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.' [Citation.] Thus, to state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, 'it is necessary only to show that "members of the public are likely to be deceived."' [Citations.]" (*Kasky, supra*, 27 Cal.4th at p. 951.) This is determined by considering a reasonable consumer who is neither the most vigilant and suspicious of advertising claims nor the most

23

> unwary and unsophisticated, but instead is "the ordinary consumer within the target population." (*Lavie v. Procter & Gamble Co.* (2003) 105 Cal.App.4th 496, 509–510 [129 Cal. Rptr. 2d 486].) "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." (*Id.* at p. 508.) The question whether consumers are likely to be deceived is a question of fact that can be decided on a demurrer only if the facts alleged in the complaint, and facts judicially noticed, compel the conclusion as a matter of law that consumers are not likely to be deceived. (*People v. McKale* (1979) 25 Cal.3d 626, 635 [159 Cal. Rptr. 811, 602 P.2d 731]; *Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1380–1381 [137 Cal. Rptr. 3d 293] (*Klein*); *Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235, 1257 [99 Cal. Rptr. 3d 768].)

*Chapman* at 226.  Clearly, falsity is not required under the UCL or the FAL.

Likewise, with respect to the CLRA claim, the *Chapman* Court went on to state:

> The standard for determining whether a defendant misrepresented the characteristics, uses or benefits of goods and services under Civil Code section 1770, subdivision (a)(5) is the same as that for determining whether there was false advertising under the UCL and the false advertising law. (*Klein, supra,* 202 Cal.App.4th at p. 1382; see *Kasky, supra*, 27 Cal.4th at p. 951.)  Thus, the question is whether the representation was likely to deceive consumers. (*Klein, supra*, at p. 1382.)

*Chapman* at 230.  Thus, under California law, literal falsity is not required to be pled or proven to assert a claim under the UCL or CLRA.  Rather, the proper inquiry is whether a reasonable consumer is likely to be deceived by the representations of the Defendant.

Here, the California Plaintiff adequately pled their cause of action under the UCL, FAL and CLRA in the SAC.  The misrepresentations and omissions at issue concern the functionality of the Revolution youth football helmets in terms of reducing concussions that can have long-term health consequences for children that play football.  This is unquestionably material to a

24

reasonable consumer – why else, as alleged in the above-identified paragraphs of the SAC, would Riddell make it a central piece of their marketing campaign to justify the higher price charges for such helmets?   Accordingly, Plaintiff has sufficiently alleged he and others relied on Defendant's omissions of material fact to their detriment.  *Cf. Herremans v. BWM of N. Am., LLC*, 2014 WL 5017843, at *18-19 (C.D. Cal. Oct. 3, 2014) ("Herremans has sufficiently alleged that a reasonable consumer would have found the water pump defect material in deciding whether or not to purchase a class vehicle.  The court may thus reasonably infer Herremans' actual reliance on the failure to disclose of that material information.").

  Throughout the general allegations of the SAC, Plaintiffs allege the deceptive (and false) nature of the Defendants' advertising.  The California Plaintiff, Gustavo Galvin, alleges that he saw the statements made by Defendants on Riddell's website and he relied upon those statements when purchasing the helmet.  SAC at ¶ 111.  As set forth above, the Plaintiffs have also alleged specific harm in the form of a premium payment of $50.00.  Plaintiffs have pled all the elements of claims under the UCL, FAL and CLRA with specificity and therefore Defendants' Motion to Dismiss should be denied.

   **C.**   **Plaintiffs' Allegations State a Claim for Violation of the Florida Deceptive and Unfair Trade Practices Act**

   To establish a Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim, Plaintiffs must prove three elements: (i) a deceptive act or unfair practice; (ii) causation; and (iii) actual damages.  *Hetrick v. Ideal Image Dev. Corp.*, 758 F. Supp. 2d 1220 (M.D. Florida 2010); *Rollins, Inc. v. Butland,* 932 So.2d 1172, 1180 (Fla. 2d DCA 2006).  As with other state laws, a deceptive act is an act that is likely to mislead consumers. *Davis v. Powertel, Inc.,* 776 So.2d 971, 974 (Fla. 1st DCA 2000). This "likely to mislead" standard does not require reliance on the

part of the consumer.  *Id.*  An unfair practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"  *PNR, Inc. v. Beacon Property Management, Inc.,* 842 So.2d 773, 777 (Fla. 2003) (citing *Samuels v. King Motor Co. of Fort Lauderdale,* 782 So.2d 489, 499 (Fla. 4th DCA 2001)).

Here, throughout the general allegations, Plaintiffs set forth specific statements and claims made by Defendants Plaintiffs allege are false or deceptive.  *See, e.g.*, SAC at ¶¶ 73 – 86 and 92 – 103.  The Florida Plaintiff, Nicholas Farrell, alleges that he was exposed to Defendants' false or deceptive statements in advertisements on the internet and in magazines, and that he relied upon those advertisements and the concussion reduction claims when making his purchase.  *See* SAC at ¶ 110.  They have also alleged actual damage, both in the general allegations and the Florida specific allegations.  *See* SAC at ¶¶ 9, 100 and 110.  Actual falsity is not a necessary element of the cause of action under the FDUTPA.  *see Millennium Communs. & Fulfillment, Inc. v. Office of the AG, Dep't of Legal Affairs,* 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000) (stating that a deceptive act occurs if there is a "'representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'") (quoting *Southwest Sunsites, Inc. v. Fed. Trade Comm'n,* 785 F.2d 1431, 1435 (9th Cir. 1986)).

### D.     Arizona Consumer Fraud Statute

The Arizona Consumer Fraud statute ("ACF"), A.R.S. § 44-1522, states:

> The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person

26

has in fact been misled, deceived or damaged thereby, is declared
to be an unlawful practice.

To succeed on a claim of consumer fraud under Arizona law, a plaintiff must show a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and consequent and proximate injury resulting from the promise. *Kuehn v. Stanley,* 91 P.3d 346, 351 (Ariz. App. 2004), *citing Correa v. Pecos Valley Dev. Corp.*, 617 P.2d 767, 771 (App. 1980); *see also, Dunlop v. Jimmy GMC of Tucson, Inc.,* 666 P.2d 83, 87 (Ariz. App. 1983) ("The elements of a private cause of action under the act are a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury."). An injury occurs when a consumer relies, even unreasonably, on false or misrepresented information. *Id.*

In *J-Hanna v. Tucson Dodge, Inc.,* 2011 U.S. Dist. LEXIS 115323, *7-8 (D. Ariz. Oct. 4, 2011), the Court held:

> In her original Complaint, J-Hanna alleges:
>
> 12. Enterprise Rent-A-Car Company of San Francisco, LLC and Chrysler Group LLC didn't disclose history on the vehicle creating a false idea that it was worth more money when it devalued due to theft and abuse as a rental vehicle. This left the Plaintiff with a vehicle that was non repairable and salvage. (Complaint, p. 2).
>
> In her proposed Amended Complaint, J-Hanna alleges:
>
> 14. Enterprise Rent-A-Car and Chrysler Group LLC did not disclose history on the vehicle creating a false idea that it was worth more money when it devalued due to theft and, frame damage and abuse as a rental vehicle. (Proposed Amended Complaint, p. 4).
>
> Arizona recognizes that producing a false impression to mislead another may be the basis for a fraud claim. *See Sarwark Motor Sales, Inc. v. Husband,* 5 Ariz. App. 304, 426 P.2d 404 (1967); *see also Madsen v. Western American Mortgage Co.,* 143 Ariz. 614, 618, 694 P.2d 1228, 1232 (App. 1985) (includes "representations

27

> that have a 'tendency and capacity' to convey misleading impressions to consumers even though interpretations that would not be misleading also are possible"). The Court finds J-Hanna has adequately pleaded a claim upon which relief can be granted under the Arizona Consumer Fraud Act against Enterprise.

*Id.* at *7. The Court found that Arizona recognizes that producing a false impression to mislead another may be the basis for a ACF claim. Actual or literal falsity is not required under Arizona law. Simply creating a false impression, either through statements or omissions, is a violation of the ACF, even if there are other reasonable interpretations of the statements or omissions that would not be misleading.

As noted above, Plaintiffs have alleged, throughout the SAC, material misrepresentations with respect to "Concussion Reduction Technology." The SAC describes specific representations made to the Arizona Plaintiffs with respect to concussion reduction technology (SAC at ¶ 114) and the consequent and proximate injury suffered by the Plaintiffs (SAC at ¶¶ 115-116, 130, and 193 – 203). The specific and detailed allegations contained in the SAC far exceed the simple, one paragraph allegation the District Court of Arizona found adequate to defeat a Motion to Dismiss in *J-Hanna*.

With respect to Plaintiffs Kenny King and Alliance Youth Sports, both filed timely complaints. Defendant makes an incorrect two fold argument as to why the Arizona Plaintiffs' claims are barred by the statute of limitations: (1) Plaintiff King is not the proper party to file suit, and (2) because Plaintiff Alliance Youth was not added until the SAC, there claims are also barred.

The first part of their argument fails because Plaintiff King is a proper party to bring suit in this action. He is the President of Alliance Youth Sports, the purchaser of the helmets, the individual who took part in the sales presentations by Riddell employees, and has a financial

28

interest in the company and use of Riddell helmets by his clients. SAC, at ¶114.  Thus, because Plaintiff King purchased the helmets and filed his case within one year of the last purchase, he is a proper party to this suit.  Indeed, he was a consumer in a transaction to come under the protection of the ACFA.  *Waste Mfg. & Leasing Corp. v. Hambicki*, 183 Ariz. 84, 900 P.2d 1220, 1224 (Ariz. App. 1995)("The purpose of the Act is to provide injured consumers with a remedy").

Likewise, Plaintiff Alliance Youth has timely filed its claim.  As an initial matter, the filing of the original suit tolled the running of all applicable statutes of limitation as to all Class members, including Alliance Youth, under the *Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 550* doctrine. *McKowan Lowe & Co. v. Jasmine, Ltd.*, 295 F.3d 380, 385 (3d Cir. 2002)(discussing and confirming the tolling of unnamed class members claims once class action is filed, due to Supreme Court's ruling in *American Pipe*).  Second, while Arizona has a one year statute of limitations, the SAC does not allege Plaintiff Alliance Youth was only part of a purchase that occurred longer than one year prior to the filing of its suit against Defendant. Indeed, the SAC reads "Mr. King then relied upon Riddell's statements and began purchasing Riddell Revolution Youth helmets for the Alliance Youth Sport Association in July of 2010, which purchases continues at least through March of 2013".  This language allows for purchase to have occurred more recently than March of 2013.

## V.    PLAINTIFFS PROPERLY ASSERT EQUITABLE CLAIMS

Defendants contend that each of the Plaintiffs' claims for unjust enrichment and assumpsit fails because they are not independently viable and because Plaintiffs received the product they purchased.  But Defendants ignore that these claims should be analyzed independently and there is no basis to dismiss their unjust enrichment claim merely because a consumer fraud claim is also alleged.  *See In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517,

29

544-546 (D.N.J. 2004) (stating that dismissal of an unjust enrichment claim is improper even when a remedy at law is available, because the federal rules allow pleading alternative theories of recovery; and that benefits received are a question of fact, not suitable for a motion to dismiss).

Here, Plaintiffs allege that if, at the time of purchase, the Revolution football helmets did not have the technology that would reduce concussions, Plaintiffs would not have paid the prices they did and thus are entitled to compensation for such payments.  SAC at ¶130 (a)-(e).  It would be inequitable to hold that Plaintiffs cannot state claims against Defendants here for their inequitable conduct.

Defendants also argue that New Jersey law does not recognize an unjust enrichment claim "premised on a fraud or tort theory." *Mot.* at 36.  While it is true that the "Restatement of Torts does not recognize unjust enrichment as an independent tort cause of action", *Castro v. NYT Television*, 370 N.J. Super. 282, 299 (App. Div. 2004), here the claim for unjust enrichment is not being brought as an independent tort – it is being brought to obtain the equitable relief of restitution.  The allegations regarding the misrepresentations and omissions made by Defendants exhibit the conduct that would make it "inequitable" or "unjust" for the Defendants to retain revenues derived from Plaintiffs' "purchases of the Football Helmets."  *Id.* at ¶ 186.

In addition, Plaintiffs are allowed pursuant to Rule 8 to plead unjust enrichment in the alternative.  *See e.g. Dzielak*, 2014 WL 2758746, at *17 ("Unjust enrichment is a backstop cause of action that often turns out to be superfluous if, for example, a breach of contract is shown.  But Plaintiffs plead this claim in the alternative, as they are permitted to do.") (*citing* Fed. R. Civ. P. 8(d)(2)).  At this stage, it would be premature to dismiss an unjust enrichment claim

simply because it may later be parallel tosome other cause of action.[11]  *See Palmeri v. LG Electronics USA, Inc.*, No. 07-5706 (JAG), 2008 WL 2945985, at *7 (D.N.J. July 30, 2008) ("[U]njust enrichment is, by its nature, an *alternative remedy to* contract and *tort remedies*. . . . It is inherent in a claim for unjust enrichment that it is pled in the alternative to a claim for recovery on the contract.") (emphasis added).  To the extent that a plaintiff has adequate legal remedies under theories of liability other than a claim of breach of an express contract, those remedies do not bar an unjust enrichment claim.

### A.    Plaintiff Cahokia School District's Sole Claim for Unjust Enrichment is Viable

Plaintiff Cahokia's sole claim for unjust enrichment is properly pled as Defendant only cites one distinguishable case to make its argument to the contrary.  The Court in *Ass'n Benefits Servs. V. Caremark Rx, Inc.* 493 F.3d 841, 855 (7th Cir. 2007) dismissed the Plaintiff's claims for unjust enrichment in the following manner:

> we merely conclude that, when the plaintiff's particular theory of unjust enrichment is based on alleged fraudulent dealings and we reject the plaintiff's claims that those dealings, indeed, *were* fraudulent, the theory of unjust enrichment that the plaintiff has pursued is no longer viable… under the circumstances present here, resolution of the fraud issue was dispositive of the unjust enrichment claim as well.

*Id.*

---

[11] Plaintiffs agree with Defendants that the laws of the states are similar on this point.  For example, the Eleventh Circuit recently addressed this issue in a case involving a claim under the FDUTPA and an unjust enrichment claim, stating as follows:  "It is generally true that equitable remedies are not available under Florida law when adequate legal remedies exist.  *Williams v. Bear Stearns & Co.,* 725 So.2d 397, 400 (Fla. Dist. Ct. App. 1998).  However, that rule does not apply to unjust enrichment claims."  *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.,* 427 F.App'x 714, 722 (11th Cir. 2011), *rev'd in part on other grounds by* 563 F.App'x 665 (11th Cir. 2014).

The problem with Defendant's argument is that here, there are no longer any underlying fraud claims for this Plaintiff.   The Court's previous Order dismissed Plaintiff's Illinois Consumer Fraud Act ("ICFA"). Op., at ¶ 39.   Thus, the rationale in *Ass'n Benefits Servs.* does not apply to the current set of facts, as the unjust enrichment claim is a stand-alone cause of action and the previous dismissal was not due to a lack of wrongful or deceptive conduct. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) lays out the above-stated principles in greater detail.   S*ee also Raintree Homes, Inc. v. Vill. of Long Grove,* 209 Ill.2d 248, 282 Ill.Dec. 815, 807 N.E.2d 439, 445 (2004)("plaintiffs have no substantive claim grounded in tort, contract, or statute; therefore the only substantive basis for the claim is restitution to prevent unjust enrichment"); *Peddinghaus v. Peddinghaus,* 295 Ill.App.3d 943, 230 Ill.Dec. 55, 692 N.E.2d 1221, 1225 (1998) (ruling that Illinois recognizes an independent cause of action for unjust enrichment).   Accordingly, Plaintiff Cahokia has a viable and independent cause of action for unjust enrichment under Illinois law.

**B.**      **Plaintiffs' Claims of Assumpsit and For Declaratory Relief Are Viable**

Defendants argue that the claims of assumpsit and quasi-contract should be dismissed because they are "duplicative of Plaintiffs' unjust enrichment claim" Mot at 36.   This argument is puzzling as Defendants argue that Plaintiffs have no claim for unjust enrichment. Nevertheless, such a claim is properly included as an alternative claim. *Horvath v. LG Electronics Mobilecomm USA Inc.*, 2012 WL 2861160 *11 (Feb. 13, 2012).

Defendants lastly move to dismiss Plaintiffs' claim for declaratory relief despite the fact that the Declaratory Judgment Act ("DJA") "should be liberally construed to effectuate the ends of justice."   *Cincinnati Ins. Co. v. Holbrook*, 867 F.2d 1330, 1333 (11th Cir. 1989) (*per curiam*).

Given its purpose, the DJA provides district courts with "wide discretion to provide declaratory relief." *Francis E. Parker Mem. Home, Inc. v. Ga.-Pac. LLC*, 945 F. Supp. 2d 543, 566 (D.N.J. 2013).  Such broad discretion is provided to the District Courts because the DJA provides an alternate and additional remedy to consumers either as a basis of additional relief or to establish an essential component to liability whether or not other relief is sought.   *Davis v. Romney*, 490 F.2d 1360, 1370 (3d Cir. 1974).. *See also Walker Process Equip., Inc. v. FMC Corp.*, 356 F.2d 449, 451 (7th Cir. 1966) (internal citation omitted).

It is premature to dismiss claims seeking declaratory and injunctive relief at this early stage of the proceedings. What relief is appropriate must be considered only after liability has been established. *See Saltzman v. Pella Corp.*, No. 06-cv-4481, 2007 WL 844883, at *6 (N.D. Ill. Mar. 20, 2007) (refusing to dismiss the DJA claim under Rule 12(b) standards by finding it "premature to make that determination here."); *Lawn v. Enhanced Serv. Billing, Inc.*, No. 10-CV-1196, 2010 WL 2773377, at *6 (E.D. Pa. July 13, 2010) ("This Court will address the issue of remedies, including the possibility of injunctive relief, if there is a finding of liability.  We see no need to limit the potential remedies available to Plaintiff at this time, however, and will not dismiss Plaintiff's claim for injunctive relief."); *Lewis v. Bank of Am. NA*, No. 13-7717 CAS VBKX, 2013 WL 7118066, at *4 (C.D. Cal. Dec. 18, 2013) ("At this juncture, it would be premature to find that injunctive relief may not be granted").

Defendants further assert that Plaintiffs' claim for declaratory relief is entirely derivative and dependent on Plaintiffs' consumer fraud claims and claims for unjust enrichment, but provide no analysis regarding the purported duplicity between the other causes of action and the DJA

claim.  In fact, Defendants merely devote a single, conclusory sentence to this argument followed by a string cite.[12]

Finally, Defendants simply ignore the fact that Plaintiffs here are seeking not only remedies to address past issues with Defendants' representations, but are also seeking prospective relief.  Such relief is necessary and in addition to the monetary relief sought by the other claims.  It has thus been recognized that "[i]nasmuch as a declaration could aid Plaintiff in the pursuit of *injunctive relief*, it is *not duplicative*."  *Consumer Protection Corp. v. Neo-Tech News*, No. 08-cv-1983-PHX-JAT, 2009 WL 2132694, at *3 (D. Ariz. July 16, 2009) (emphasis added).[13]

## VI.   ALTERNATIVELY, PLAINTIFFS SHOULD BE ALLOWED TO AMEND AS SUCH AMENDMENT WOULD NOT BE FUTILE

If the Court is inclined to agree with Defendants in any aspect of their Motion, any order should permit Plaintiffs to file another amended complaint that will satisfy the liberal pleading standards established by the Federal Rules of Civil Procedure.  *See, e.g., Guarneri v. Buckeye Pipe Line Services Co.,* Civ. No. 14-1131, 2014 WL 1783072, at *3 (D.N.J. May 5, 2014).  This is consistent with Fed. R. Civ. Proc. 15(a)(2)'s mandate that motions for leave to amend a complaint be freely granted.  *See Dole v. Arco Chem. Co*., 921 F.3d 484, 486-87 (3d Cir. 1990).

---

[12] In *Carrier v. Bank of Am., N.A.*, 2014 WL 356219, at *9 (D.N.J. Jan. 31, 2014), the court dismissed the NJCFA claim and then proceeded to also dismiss the declaratory judgment claim because the relief plaintiffs sought were "based on 'the unclean hands violation of the New Jersey Consumer Fraud Act.'"  *Id*. at *9.  Thus, because the DJA claim was clearly premised on the NJCFA claim, both failed together.

[13] The case cited by Defendants, *Lattaker v. Rendell*, 269 F.App'x 230 (3d Cir. 2008), is distinguishable.  First, it was not a putative class action.  Second, in *Lattaker*, the plaintiff sought declaratory judgment that a bill that would have made the failure to pay child support a summary offense is unenforceable.  The court found that the plaintiff had no substantial likelihood of injury from the application of the bill because his "complaint acknowledged that his child support proceedings were terminated by July 2006, and he did not allege any continuing child support obligations on his part."  *Id*. at 233.

None of the reasons cited by Court for denying leave to amend are articulated by Defendants, and none exist. *White v. Taylor,* No. 10-5485, 2014 WL 1428545, at *2 (D.N.J. Apr. 14, 2014) (*citing Calif. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 165 (3d Cir. 2004)) (stating that a district court "justifiably may deny leave to amend on grounds 'such as undue delay, bad faith, dilatory motive, prejudice and futility") (internal citations omitted). Thus, while Plaintiffs maintain that the SAC, as pled, is sufficient, if the Court finds the Complaint deficient in any respect, Plaintiffs respectfully request leave to file an amended complaint to address any deficiencies.

## VII.   <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety.   Should the Court disagree, and grant Defendants' Motion, Plaintiffs respectfully request leave to amend their Complaint.

Dated: May 22, 2015

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
Attorneys for Plaintiffs and the Proposed
Classes

By:   ___/s/ *James E. Cecchi*___
      JAMES E. CECCHI

Dennis G. Pantazis
Craig L. Lowell
Dennis G. Pantazis, Jr.
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB LLC
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
(205) 314-0500

Additional counsel for Plaintiffs:

Robert M. Foote, Esq.
Kathleen C. Chave, Esq.
FOOTE, MIELKE, CHAVEZ & O'NEIL LLC
10 West State Street, Suite 200
Geneva, Illinois 60134
(630) 232-7450

Joe R. Whatley, Jr.
WHATLEY KALLAS, LLP
1180 Avenue of the Americas, 20th Floor
New York, New York 10036
(212) 447-7060

Alan M. Mansfield
WHATLEY KALLAS, LLP
10200 Willow Creek Road, Suite 160
San Diego, California 92131
(619) 308-5034

Stephen A. Corr
STARK & STARK, P.C.
777 Township Line Road, Suite 120
Yardley, Pennsylvania 19067
(267) 907-9600

E. Clayton Lowe, Jr.
THE LOWE LAW FIRM, LLC
301 19th Street North, Ste. 525
Birmingham, Alabama 35203
(205) 314-0607

Joshua R. Gale
WIGGINS CHILDS PANTAZIS FISHER
GOLDFARB LLC
101 N. Woodland Blvd., Ste. 600
DeLand, Florida 32720
(386) 675-6946

Richard Burke
Jeffrey A. Leon
QUANTUM LEGAL, LLC
513 Central Avenue, Suite 300
Highland Park, Illinois 60035
(847) 433-4500

Thomas R. Ysursa
BECKER, PALSON, HOERNER &
THOMPSON, P.C.
5111 West Main Street
Belleville, Illinois 62226
(618) 235-0020

#578816