

**STARK & STARK**
A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

777 TOWNSHIP LINE ROAD, SUITE 120  YARDLEY, PA  19067-5559
267-907-9600 (PHONE)    267-907-9659 (FAX)
WWW.STARK-STARK.COM

scorr@stark-stark.com
Direct Dial:  (267) 759-9684

October 23, 2015

**VIA ECF AND FACSIMILE 856-757-5355**

Hon. Joel Schneider
United States District Court
Mitchell H. Cohen Building
& U.S. Courthouse
4th & cooper Streets
Camden, New Jersey 08101

        Re:   *In Re Riddell Concussion Reduction Litigation*
                1:13-CV-07585 (JBS) (JS)

Dear Judge Schneider:

      We represent the Plaintiffs in this matter and write to address the Defendants' refusal to comply with any of the Plaintiffs' discovery requests. Because our good faith efforts to resolve these discovery disputes with Defense counsel have failed, we seek the Court's assistance in requiring Defendants' compliance with their discovery obligations. The following sets forth Plaintiffs' position in this regard.

      I.      <u>Background</u>

      On August 3, 2015, in response to Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint [Docket Item 50], the Court summarized Plaintiffs' contentions in this case as follows:

> Plaintiffs contend that Defendants' repeated reference to concussion reduction technology in advertising and marketing materials was intended to "convey to consumers that these football helmets can reduce the incidence of concussion when compared to other modern football helmets available for sale from other manufacturers." According to Plaintiffs, however, "objective and reliable research" shows that Defendants' claims are deceptive marketing gambits because the helmets "do not provide the promised 'Concussion Reduction Technology" or result in decreasing the incidence of concussions."

Opinion 8/3/15 [Docket Item 65] at p. 4.



In denying in part and granting in part Defendants' Motion to Dismiss, the Court Ordered as follows:

> ORDERED that Plaintiffs' consumer fraud claims under New Jersey, Florida, Arizona, and California law may proceed based on allegedly false or misleading marketing statements regarding "concussion reduction technology," as well as which referenced a 31% reduction in concussions in relation to helmets not included in the UPMC study, particularly youth helmets. The Cahokia School districts claim for unjust enrichment and Plaintiffs' claim for declaratory relief may proceed at this time.

Order 8/3/15 [Docket Item 66] at pp. 1-2.

Following denial of Defendants' Motion to Dismiss, the Court entered its Scheduling Order [Docket Item 73] imposing initial discovery obligations upon the parties. On September 10, 2015, Plaintiffs served their First Requests for Production and Interrogatories upon Defendants. Plaintiffs' discovery includes 44 document requests and 24 interrogatories. The categories of information requested include identification of Defendants' helmets sold with the alleged concussion reduction technology (CRT), sales data for such helmets, identity of retailers of those helmets, helmet pricing decisions, prices paid at wholesale and retail for the helmets, Defendants' communications with helmet consumers/purchasers, advertising for the helmets, identification of individual consumer purchasers of the helmets, the design and testing of the helmets, the FTC investigation of product claims for the helmets, marketing strategies for the helmets, and the identity of entities and individuals involved in these matters. Each request and interrogatory was properly drafted and reasonably calculated to illicit information relevant to the facts and issues involved in this litigation.

On September 24, 2015, Defendants served their "Objections" to Plaintiffs' discovery requests. Copies of "Defendants' Objection to Plaintiffs' First Requests for Production of Documents" and "Defendants' Objections to Plaintiffs' First Set of Interrogatories" are attached hereto as Exhibits A and B, respectively. Attached hereto as Exhibit C is a copy of the "definitions" and "instructions" utilized by Plaintiffs in their discovery requests to Defendants.

Rather than properly respond to Plaintiffs' discovery requests, Defendants objected to each and every request and *refused to produce any* of the requested documents and information. In almost every respect, as demonstrated below, each objection asserted by the Defendants is boilerplate, obstructionist, frivolous, overbroad, and contrary to well-established and long-standing federal law and local rules regarding discovery.

On October 21, 2015, counsel for each party met at the offices of defense counsel in Parsippany, New Jersey for the required "meet and confer" conference. Five of the attorneys representing the Plaintiffs attended the meeting. Three travelled from Alabama, another from Pennsylvania, and the other from Roseland, New Jersey. Defense counsel began the meeting by advising Plaintiffs' counsel that Defendants do not waiver from their prior written objections and



they will not produce any documents, except perhaps documents specifically relating to the named Plaintiffs. (They added that they were not even sure if any such documents exist.) Defense counsel then proceeded to explain how they intend for the case to proceed. First, Defense counsel stated that because the Court's partial dismissal of Plaintiffs' claims is so broad the Plaintiffs are not entitled to any discovery. Next, Defense counsel dictated that each Plaintiff must sit for deposition. Then, upon completion of the depositions, Defendants will file motions for summary judgment. No responsive documents or information will be produced before the depositions or a ruling on the motions for summary judgment. If the motions are denied, then Defendants may produce the requested information. Defense counsel further dictated that *nothing* would be produced until the issue of class certification has been determined. In sum, Defendants and their counsel have determined that Plaintiffs must win at summary judgment and/or class certification before any responsive discovery information will be provided.

Defense counsel made it clear they would not budge from these positions and that the Court would be required to resolve the Defendants' abject refusal to engage in discovery. Thus, the "meet and confer" lasted approximately fifteen minutes (including the exchange of pleasantries), there was no compromise on any issue, and the Plaintiffs have no other recourse than to request the Court's assistance in this matter.

II.  Applicable Law

The scope of discoverable information is delineated in Rule 26 of the Federal Rules of Civil Procedure. Rule 26(b)(1) provides in relevant part:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if information sought appears reasonably calculated to lead to the discovery of admissible evidence.

In order to fulfill discovery's purposes of providing both parties with "information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement," the discovery rules mandate a liberality in the scope of discoverable material. *Jochims v. Isuzu Motors, Ltd.,* 145 F.R.D. 507, 509 (S.D. Iowa 1992) (citing *In re Hawaii Corp.,* 88 F.R.D. 518, 524 (D. Haw. 1980)); *see also Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 34, 104 S. Ct. 2199, 81 L.Ed.2d 17 (1984) ("Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes."); *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Thus, as long as



the parties request information or documents relevant to the claims at issue in the case, and such requests are tendered in good faith and are not unduly burdensome, discovery shall proceed. *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.,* 103 F.R.D. 635, 637 (D. Mass. 1984).

The party resisting production bears the burden of establishing lack of relevancy or undue burden. *Oleson v. Kmart Corp.,* 175 F.R.D. 560, 565 (D. Kan. 1997) ("The objecting party has the burden to substantiate its objections.") (citing *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540 (10th Cir. 1984), *cert. dismissed,* 469 U.S. 1199, 105 S. Ct. 983, 83 L.Ed.2d 984 (1985)); *accord G–69 v. Degnan,* 130 F.R.D. 326, 331 (D.N.J. 1990); *Flora v. Hamilton,* 81 F.R.D. 576, 578 (M.D. N.C. 1978). The party must demonstrate to the court "that the requested documents either do not come within the broad scope of relevance defined pursuant to Fed.R.Civ.P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure...." *Burke v. New York City Police Department,* 115 F.R.D. 220, 224 (S.D. N.Y. 1987). Further, the "mere statement by a party that the interrogatory [or request for production] was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection." *Josephs v. Harris Corp.,* 677 F.2d 985, 992 (3d Cir. 1982) (quoting *Roesberg v. Johns–Manville Corp.,* 85 F.R.D. 292, 296–97 (E.D. Pa. 1980)); *see also Oleson,* 175 F.R.D. 560, 565 ("The litany of overly burdensome, oppressive, and irrelevant does not alone constitute a successful objection to a discovery request.") (citation omitted). "On the contrary, the party resisting discovery 'must show specifically how ... each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive.' " *Id.* at 992 (quoting *Roesberg,* 85 F.R.D. at 296–97); *see also Oleson,* 175 F.R.D. 560, 565 ("The objecting party must show specifically how each discovery request is burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden."); *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986) (holding that it is not sufficient to merely state a generalized objection, but, rather, objecting party must demonstrate that a particularized harm is likely to occur if the discovery be had by the party seeking it); *Degnan,* 130 F.R.D. at 331 (D.N.J. 1990) (same). *See also Redland Soccer Club, Inc. v. Department of the Army,* 55 F.3d 827, 856 (3d Cir. 1995) (stating that the mere statement by a party that the interrogatory was overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection to an interrogatory and that instead, the party resisting discovery must show specifically how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive) (citation omitted).

Further, "[t]he party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity. A party objecting on these grounds must explain the specific and particular way in which a request is vague. The responding party should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories. If necessary to clarify its answers, the responding party may include any reasonable definition of the term or phrase at issue. Discovery requests must be given a reasonable construction, and a responding party is not permitted to conjure up ambiguity where there is none." *Heller v. City of Dallas*, 303 F.R.D. 466, 491 (N.D. Tex. 2014) (citations omitted).



In this case, the Defendants fail to sustain their burden of demonstrating that the discovery sought is outside the scope of Rule 26(b)(1). Rather, they have merely asserted boilerplate objections that the discovery sought is vague, ambiguous, overbroad, unduly burdensome, etc., as well as blanket, non-specific objections without specifying how each request for production is deficient and without articulating the particular harm that would accrue if they were required to respond to Plaintiffs' discovery requests.

The following addresses the various objections asserted by Defendants.

### III.     Defendants' Objections

#### (a)     Lack of helmet model numbers as basis for objection

Defendants object and refuse to produce documents and information responsive to Plaintiffs' Request for Production numbers 2-10, 12-21, 23, 24, 26-34, 36, 38-40 and 42, and Interrogatory numbers 2, 3, 7, 8, 10-20 and 22 (52 of the 66 requests), because Plaintiffs' were unable to "identify by model number the helmets Plaintiffs allegedly purchased" and that this "hinders" (unduly burdens) the Defendants' ability to respond to the requests. The fallacy of this objection lies in the fact that there are no "model numbers" associated with the helmets at issue. Thus, the reason Plaintiffs did not identify model numbers associated with the helmets they purchased is because there are no model numbers for these helmets. Indeed, this fact is exemplified by the Defendants' own response to the Court's September 3, 2015 Scheduling Order [Docket Item 73] requiring Defendants to "identify all model helmets they made and sold with 'concussion reduction technology' from 2002 to present." Defendants responded with a list of helmet "names," not model numbers, just as the Plaintiffs did in identifying the helmets they purchased. (See Second Amended Complaint [Docket Item 45] at pp. 27-31, wherein Plaintiffs identify the helmets purchased).

During the fruitless meet and confer conference, Defense counsel acknowledged that there are no "model numbers" associated with Defendants' helmets but that there is a "product code" on each helmet. Thus, the Defendants now substitute a "lack of product code" objection for the previous "lack of model number" objection. When pressed to explain, Defense counsel admitted there is no distinct number for each helmet, as if each helmet contained a distinct serial number. Rather, the code is simply another reference to the name of the helmet. That is, as explained by Defense counsel, every Revolution Speed has the same product code. Every Riddell 360 has the same code, and so on. Thus, the lack of a product code from each Plaintiff, who has specifically identified his purchase of helmets by product name in this case, should not hinder Defendants' ability to respond to Plaintiffs' discovery requests. Simply put, each helmet is appropriately identified by its product *name*, such as Riddell "360," not by a code. Moreover, neither the Riddell website nor any of the Defendants' packaging or marketing materials for the



helmets references a product code. In every instance, each helmet is identified by its product name.

Accordingly, the Defendants' objection that they will not respond to 52 of Plaintiffs' 66 discovery requests because Plaintiffs did not provide model numbers or a code is unfounded and due to be overruled.

(b)   <u>Dismissal of claims as basis for objection to discovery</u>

In response to Request numbers 1-21, 23, 24, 26-34, 36, 38-42, and Interrogatory numbers 2, 3, 7-20, and 22, Defendants state the following objection:

> Defendants object to [each] Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information outside of the applicable statutes of limitation or seeks discovery on claims that were dismissed by the Court's August 3 Decision on Defendants' Motion to Dismiss, Dkt. No. 65. Defendants also object to this Request as overly broad and unduly burdensome because it purports to demand information or documents beyond the scope of the remaining allegations and claims in this case.

Defendants refuse to respond to the stated discovery requests because they contend the requests may seek information relating to claims that have been dismissed by the Court. However, the Defendants do not identify what information or documents are "beyond the scope of the remaining allegations and claims in this case;" rather they elect to withhold *all* responsive documents and information. Instead of refusing to produce any information whatsoever, Defendants should have produced all information relating to the remaining claims and identified and explained why any other information was withheld. Moreover, the Court's August 3, 2015 Order [Docket Item 66] does not prohibit, bifurcate or even attempt to limit the requested discovery in this case.

The stated discovery requests are reasonably calculated to lead to the discovery of admissible evidence regarding the remaining claims in this action. It is incumbent upon Defendants to establish why all of the 54 requests to which they interpose this objection are not relevant to the remaining claims. They have failed to do so and thus the objection should be overruled.

(c)   <u>Information "wholly unrelated" to Plaintiffs as basis for objection</u>

Defendants object to Request numbers 2-24, 26-34, 36, 38-42, 44 and Interrogatory numbers 2-20, 22, 24-25, "as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information wholly unrelated to Plaintiffs."  The effect of this objection is that if the request does not specifically reference a Plaintiff, then Defendants will not produce responsive documents or information. For example,



Request number 2 seeks "documents sufficient to identify all types of helmets sold in the United States from 2007 to the present." Request number 28 seeks "all documents and communications relating to any testing, either by you or any other person, of the concussion reduction capabilities of the helmets." Interrogatory number 22 requests "[i]f you contend the helmet reduces the incidence of concussion better than other football helmets available for purchase since 2007, state all facts you believe support that contention." Because these and the other referenced discovery requests do not specifically reference the Plaintiffs, Defendants object and refuse to produce the requested documents and information. This is not an objection contemplated by Rule 26. Moreover, the objection fails to establish how producing such information that is not specifically related to the Plaintiffs is burdensome and harmful to the Defendants, or how it cannot lead to the discovery of admissible evidence.

Accordingly, the objection is not properly supported and is due to be overruled.

(d)     "Vague and ambiguous" terms as basis for objection

In response to 29 discovery requests, Defendants "object to th[e] Request as vague and ambiguous, particularly with respect to [certain terms utilized by Plaintiffs]." More specifically, see the following responses to requests for production ("RFP") and Interrogatory responses. The alleged vague and ambiguous terms are in parenthesis.

RFP response numbers and disputed terms:

5 ("average price")

6 ("average retail price")

7 ("average retail mark-up over the wholesale price")

9 ("unit sales," "profit margins")

11 ("focus groups," "drafts," "final reports," "findings," "summaries," "analyses")

13 ("design," "testing")

14 ("retailer," "distributors," "concussion reduction capabilities," "discussion," "comparison," "other football helmets," "similar head trauma")

15 ("testing," "other measures")

16 ("internal analyses")

17 ("governmental investigation," "formal or informal inquiry")



18 ("packaging materials," "exemplars," "drafts")

20 ("policy," "procedure," "marketing strategy," "market," "promote," "promotional programs")

23 ("marketing plans")

27 ("testing")

28 ("testing")

30 ("involvement," "content," "placed," "maintained," "retailer websites")

31 ("any other football helmet")

33 ("focus groups," "questionnaires," "surveys," "tools")

34 ("analyses")

40 ("performance")

Interrogatory response numbers and disputed terms:

3 ("average retail price")

10 ("total net sales," "total number of units sold," "unit price," "unit cost," "cost of goods sold," "profit margin," "market share")

11 ("dollar sales volume")

13 ("average retail price")

14 ("average markup," "wholesale price")

15 ("profit margins," "revenues")

16 ("Team Sales Center," "Customer Service," "Credit Application," "technical support center(s)," "product registration," "promotional offers or registrations," "sign-ups for newsletters," "warranty records")

17 ("third party marketing company," "involved")

20 ("design," "technical specifications," "performance").

Because the Defendants unilaterally determined the foregoing terms to be vague and ambiguous, the Defendants refuse to produce any documents or information responsive to discovery requests containing those terms. These terms are utilized, as they are commonly



understood in the English language.  Overwhelmingly, the terms are not vague and ambiguous and certainly are not so vague or ambiguous as to be incapable of reasonable interpretation and to prohibit Defendants' responses. Moreover, Defendants' objections included no explanation for the specific and particular way in which a particular request's wording was vague or ambiguous, and the circumstances here indicate that Defendants' vague and ambiguous objections were made without Defendants' counsel's pausing and considering whether, based on a reasonable inquiry, there is a factual basis for an objection. And, based on the many requests to which these objections were raised, the Court should hold these were simply boilerplate objections for which there was no substantial justification.

Accordingly, Defendants' objections that requests are vague and ambiguous should be overruled.

> (e) <u>Defendants argue Plaintiffs' discovery is premature until liability is established or a class is certified</u>

In response to 11 Requests and 13 Interrogatories, Defendants "object to the Request as premature as the significant burden and expense of producing such information should only be undertaken if liability is established and any class is certified."  More specifically, see the following responses to requests for production ("RFP") and Interrogatory responses. The disputed areas of discovery are in parenthesis.

RFP response numbers and disputed discovery request:

    3 (sales of helmets)

    4 (identity of retailers)

    5 (average price defendants received for helmets)

    6 (average retail price paid for helmets)

    7 (average retail markup over wholesale)

    8 (sales data)

    9 (unit sales, profit margins, revenues derived from helmet sales)

    12 (identities of consumer purchasers)

    36 (competitor pricing)

    38 (identity of retailers)

    42 (defendants' helmet pricing)



Interrogatory response numbers and disputed discovery:

2 (number of helmets sold)

3 (average retail price)

7 (identity of defendants' employees involved in marketing and advertising)

8 (identity of employees involved in assessing sales data from third parties)

10 (dollar sales of helmets)

11 (identity of retailers and distributors)

12 (average price paid to defendants by wholesalers, distributors and retailers)

13 (average price paid by consumers)

14 (average markup over wholesale price)

15 (unit sales, profit margins and revenues)

16 (identity of consumer purchasers)

18 (the types and categories of information defendants have about individual consumer purchasers)

19 (identity of all customers known to defendants)

By this objection Defendants have unilaterally decided that discovery should be bifurcated as to issues selected by Defendants, with no documents or information being provided to Plaintiffs until liability is established, presumably after trial, or until a class is certified. The Court has not bifurcated discovery in this case. This objection is another obstructionist attempt to thwart Plaintiffs' discovery in this action. Accordingly, the Court should overrule this objection.

        (f)    <u>Defendants allege Plaintiffs are barred from bringing certain claims</u>

Defendants assert that "Plaintiffs are barred from bringing: (1) claims based on marketing statement[s] which accurately reflected the results of the UPMC study, regardless of the study's purported flaws; (2) claims based on an alleged omission; (3) claims based upon the specific design features of Concussion Reduction Technology and whether those design features are incorporated into the helmets at issue." The Defendants do not state specifically that this is the



basis for the withholding of all documents and information requested by Plaintiffs, but Defendants do include this statement in response to Request numbers 11, 13-19, 21-24, 26, 29, 32-34, 39, 40-41, and Interrogatory response numbers 7 (seeking identity of employees involved in marketing and advertising), 9 (seeking identity of employees involved in development of term "concussion reduction technology"), 17 (seeking identity of third party marketing companies), 20 (seeking identity of persons responsible for design, technical specifications and performance of helmets), 22 (requesting all facts supporting contention that defendants' helmets reduce the incidence of concussion better than other football helmets), 23 (requesting defendants' definition of concussion as utilized in marketing), 24 (What is concussion reduction technology?), and 25 (Describe how any technology in defendants' helmets reduces concussions).

As noted above, the Court has dismissed certain claims asserted by Plaintiffs but it has not limited the scope of Plaintiffs' discovery in this case. This general statement/objection by Defendants is merely another obstructionist attempt to limit discovery and should be overruled.

   (g) <u>Defendants contend documents and information that did not reach the Plaintiffs are irrelevant</u>

In response to Request numbers 13, 24, 28, 29, 31, 32, 36, 39, 40, 41 and Interrogatory response number 17, Defendants assert that the documents and information requested, "to the extent they are not reflected in any advertising that reaches a consumer or Plaintiffs, are irrelevant to the claims and defenses in this litigation." More specifically, see RFP Response: 13 (seeking communications concerning the design and testing of helmets), 24 (seeking documents identifying third party companies or persons involved in marketing, advertising or sales), 28 (helmet testing), 29 (helmet performance), 31 (seeking documents supporting concussion reduction claim), 32 (documents containing term "concussion reduction technology"), 36 (prices charged by competitors), 39 (communications with reporters, news outlets, etc. regarding CRT), 40 (documents comparing performance of helmets to competing helmets), 41 (documents relating to patents for CRT). See also Response to Interrogatory 17 (seeking identity of third party marketing companies or persons).

It is not for the Defendants to determine relevancy. It is their burden when claiming an area of inquiry lacks relevance to establish with specific facts why the requested information is not relevant. It is also improper for Defendants to unilaterally limit discovery in this case to information "that reaches a consumer or Plaintiffs."

Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery does not come within the broad scope of relevance as defined under [Rule 26(b)(1)](#), or is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure. "Conversely, when relevancy is not apparent on the face of the interrogatory or request, the party seeking the discovery has the



burden to show the relevancy of the information or documents sought*."  DIRECTV, Inc. v. Puccinelli,* 224 F.R.D. 677, 684 (D. Kan. 2004).

Accordingly, the Court should overrule the Defendants' relevancy objections.

(h)   Defendants' privilege objections are improper

In response to request number 25 seeking "ALL DOCUMENTS CONCERNING YOUR DOCUMENT retention policies, including DOCUMENT retention or destruction policies with respect to e-mail or other electronically stored or recorded DOCUMENTS," Defendants "object to this Request to the extent it calls for information protected by attorney-client privilege, the attorney work product doctrine or any other applicable privilege or doctrine."

In response to Request number 35 seeking "ALL DOCUMENTS and COMMUNICATIONS (including deposition transcripts and related exhibits) in the litigation styled *Riddell, Inc. v. Schutt Sports, Inc*., case no. 08-CV-711 in the United States District Court for the Western District of Wisconsin," Defendants object to the request "to the extent it calls for information protected by attorney-client privilege, the attorney work product doctrine or any other applicable privilege or doctrine. Defendants also object to this Request to the extent such documents are equally available to Plaintiffs as they are publicly available."

Also, in response to Request number 41 seeking "ALL DOCUMENTS and COMMUNICATIONS relating to any patents, patent applications and the research involved in such applications CONCERNING CRT," Defendants respond, in part, by objecting to the request "to the extent it calls for information protected by attorney-client privilege, the attorney work product doctrine or any other applicable privilege or doctrine."

The Defendants' "privilege" objections fail to satisfy the requirements of Rule 26(b)(5), Fed. R. Civ. P., or Local Rules 33.1(c) and 34.1. Rule 26(b)(5) requires:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Specifically, the Defendants' objections fail to identify the lawyers involved in the conversations, the people present during the conversation, and a description of the nature of the communication sufficient to enable Plaintiffs to assess the applicability of the claimed privilege. *See Pham v. Hartford Fire Ins. Co.,* 193 F.R.D. 659, 662 (D. Colo. 2000); *see also MMAR Group Inc. v. Dow Jones & Co. Inc.,* 187 F.R.D. 282, 292 n. 6 (S.D. Tex. 1999) (describing the assertion of attorney-client privilege and work product doctrine as boilerplate objections); *Athridge v. Aetna Casualty & Surety Co.,* 184 F.R.D. 181, 190 (D.D.C. 1998) (stating that such



general objections such as attorney-client privilege and work product privilege are disfavored); *Miller v. Pancucci,* 141 F.R.D. 292, 302 (C.D. Cal. 1992) (stating that to properly claim attorney-client privilege, the claimant must specifically designate and describe the documents claimed to be within the scope of the privilege and to be reasonably precise in stating the reasons for preserving their confidentiality) (citing *United States v. Osborn,* 561 F.2d 1334, 1339 (9th Cir. 1977)). Moreover, as indicated previously, boilerplate objections are improper. *Miller v. Pancucci,* 141 F.R.D. 292 at 302 (citation omitted).

The privilege objections also fail to comply with Local Rules 33.1(c) and 34.1. LR 33.1(c) requires:

> (c) Where a claim of privilege is asserted in responding or objecting to any discovery requested in interrogatories and information is not provided on the basis of such assertion, the party asserting the privilege shall in the response or objection identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, set forth the state privilege rule being invoked. When any privilege is claimed, the party asserting it shall indicate, as to the information requested, whether (a) any documents exist, or (b) any oral communications took place.

LR 34.1 requires:

> Where a claim of privilege is asserted in responding or objecting to any discovery requested in requests for documents, and information is not provided on the basis of such assertion, the party asserting the privilege shall in the response or objection identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, set forth the state privilege rule being invoked. When any privilege is claimed, the party asserting it shall indicate, as to the information requested, whether any such documents exist.

The Defendants fail to comply with any of the Rules regarding the claim of privilege and therefore their privilege objections are due to be overruled.

(i) "Equally available" is not a valid objection

The Defendants also object to Request number 35 on the ground that it seeks information and documents equally available to the propounding parties from their own records or from records which are equally available to the propounding parties. However, with respect to this objection, courts have unambiguously stated that this exact objection is insufficient to resist a discovery request. *See, e.g., City Consumer Services v. Horne,* 100 F.R.D. 740, 747 (D. Utah 1983) (stating that it is "not usually a ground for objection that the information is equally available to the interrogator or is a matter of public record.") (citing *Petruska v. Johns–Manville,*



83 F.R.D. 32, 35 (E.D. Pa. 1979)); *Associated Wholesale Grocers, Inc. v. U.S.,* 1989 WL 110300, *3 (D. Kan. June 7, 1989) (stating that defendant's argument of equal accessibility is not sufficient to resist discovery) (citing *City Consumer Services*). Nevertheless, Defendants assert this meritless ground as a basis for their objection.

    (j)  <u>Defendants attempt to limit discovery to helmets purchased by Plaintiffs</u>

  In response to Request number 43 seeking "ALL DOCUMENTS and COMMUNICATIONS CONCERNING the use of CRT in the Riddell Speedflex Helmets, and the use of the CRT claim in the marketing and advertising for those Speedflex helmets," the "Defendants object to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information beyond the scope of the remaining allegations and claims in this case. In the chart detailing 'Plaintiff Helmet Types' produced September 10, 2015, no Plaintiff was identified as having purchased a Riddell Speedflex Helmet."

  The claims in this case relate to and arise from Defendants' marketing and sales of football helmets with "concussion reduction technology" (CRT). Each Plaintiff purchased a helmet with the alleged CRT technology. Thus, any information held by Defendants and relating to CRT is discoverable, even if a Plaintiff did not purchase that particular helmet with CRT. Further, Defendants' marketing of CRT did not vary among Riddell helmet styles with CRT. That is, the representations regarding CRT were the same for all helmets with CRT. Therefore, the overall marketing scheme for CRT (including all helmets with CRT whether purchased by Plaintiffs or not) is relevant and discoverable in this case.

    (m)  <u>Defendants' "general objections" are improper</u>

  Defendants assert general blanket objections to all of Plaintiffs' discovery requests. These "General Objections" are included at pages 3 through 6 of Defendants' Objections to Plaintiffs' First Requests for Production and pages 3 through 6 of Defendants' Objections to Plaintiffs First Interrogatories. (See Exhibits A and B hereto). Courts disapprove of the practice of asserting a general objection "to the extent it may apply" to particular requests for discovery. Courts characterize these types of objections as worthless for anything beyond delay of the discovery. Such objections are considered mere hypothetical or contingent possibilities, where the objecting party makes no meaningful effort to show the application of any such theoretical objection to any request for discovery. Thus, Courts have deemed such ostensible objections waived or have declined to consider them as objections. See, *Mancia v. Mayflower Textile*, 253 F.R.D. 354, 359 (D. Md. 2008).

  Accordingly, the Defendants' "general objections" to all of the Plaintiffs' discovery requests should be overruled.



VI. <u>Additional discovery issues</u>

(a) <u>Non-party subpoenas</u>

In addition to the forgoing, Plaintiffs anticipate an additional issue requiring Court intervention - non-party subpoenas.

In an effort to work with Defense counsel with regard to non-party subpoenas, Plaintiffs' counsel provided defense counsel with a draft "Exhibit A" for attachment to such non-party subpoenas. The subpoenas are to be issued by Plaintiffs to non-party retailers once Defendants identify the retailers in response to Plaintiffs' discovery requests. (See Exhibit D hereto containing emails from Plaintiff and Defense counsel and the proposed document requests.) Defendants have indicated they will object to these subpoenas "on the basis of Plaintiffs' inability to identify by model number the helmets Plaintiffs allegedly purchased." (See Exhibit D, September 25, 2015 email from Michael Innes to D.G. Pantazis).

As noted above, the model number issue is not a proper basis for objection in this case. Moreover, the fact that Defendants attempt to obfuscate this matter by feigning ignorance of synonymous product names, model numbers and product codes is not a proper basis to challenge a non-party subpoena. If a burden exists in identifying information responsive to a subpoena, it is for the non-party recipient of the subpoena to raise the objection, not the Defendants. See e.g. *Plastic the Movie Limited v. John Doe Subscriber Assigned*, 2015 WL 4715528 *2 (D.N.J. August 7, 2015) ("Generally, a party cannot challenge a third party subpoena based on a theory of undue burden").

Accordingly, Plaintiffs request the Court to forestall Defendants' "no model number" objection as a basis for opposing the issuance of non-party subpoenas.

(b) <u>ESI dispute</u>

The parties disagree over an ESI protocol and are unable to reach an accord as to a stipulated ESI order. The Defendants contend that neither the Scheduling Order nor the local rules require that an ESI Stipulated Order be entered or that the parties must resolve an ESI protocol by October 24, 2015.

In an effort to prevent any further delay in discovery, Plaintiffs submit herewith as Exhibit E their proposed ESI Order for the court's consideration.

VII. <u>Conclusion</u>

As demonstrated, the litany of Defendants' boilerplate objections are unsubstantiated because they fail to show specifically how each discovery request is burdensome, oppressive or any of the other grounds upon which they base their objections by submitting affidavits or offering evidence revealing the nature of the objections. Further, this is not a case where one, or even two, of the objections asserted by Defendants are obstructionist, boilerplate and improper.



Rather, every single objection is obstructionist, boilerplate, frivolous and contrary to federal law and local rules. Indeed, every objection should be deemed as waived.

Moreover, the Defendants' unilateral mandate as to how discovery should proceed in this case should be rejected.

In light of the foregoing, Plaintiffs request the Court to enter an Order overruling each of the Defendants' objections to Plaintiffs' discovery requests, directing Defendants to fully and completely respond to each request within 30 days without further objections, entering Plaintiffs' proposed ESI Order, and granting to Plaintiffs such further and additional relief to which they may be entitled.

Respectfully submitted,

s/ *Stephen A. Corr*

Stephen A. Corr

One of the attorneys for Plaintiffs

cc:   All Counsel Via ECF