**K E L L E Y   D R Y E   &   W A R R E N** LLP

A LIMITED LIABILITY PARTNERSHIP

**ONE JEFFERSON ROAD**

**PARSIPPANY, NJ  07054**

————

(973) 503-5900

N E W   Y O R K ,   N Y

W A S H I N G T O N ,   D C

L O S   A N G E L E S ,   C A

C H I C A G O ,   I L

S T A M F O R D ,   C T

————

B R U S S E L S ,   B E L G I U M

————

A F F I L I A T E   O F F I C E

M U M B A I ,   I N D I A

F A C S I M I L E

( 9 7 3 )   5 0 3 - 5 9 5 0

www.kelleydrye.com

J O S E P H   A .   B O Y L E

DIRECT LINE: (973) 503-5920

EMAIL: jboyle@kelleydrye.com

October 23, 2015

**VIA ECF**

Hon. Joel Schneider
United States District Court
Mitchell H. Cohen Building
& U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

      Re:    *In Re Riddell Concussion Reduction Litigation*, 1:13-CV-07585 (JBS)(JS)
                  Letter Brief Regarding Defendants' Discovery Plan

Dear Judge Schneider:

      We represent the Defendants in the above-captioned consolidated action. In accordance with the Court's Order of September 3, 2015, Dkt. No. 73 (the "September 3 Order"), we submit this letter brief setting forth Defendants' position with regard to the orderly and efficient progress of discovery in this case.  Plaintiffs consent to the filing of this letter brief.

      The progress of discovery in this case must be judged in light of the limited claims that remain after Judge Simandle's Order dismissing many claims with prejudice.  This is because discovery must be tethered to the viable allegations remaining in the Second Amended Consolidated Class Action Complaint (the "Second Amended Complaint").  *See Jones v. DeRosa*, 238 F.R.D. 157, 163 (D.N.J. 2006) (relevancy is "viewed in light of the allegations of the complaint").  Despite this, Plaintiffs proceed as if Judge Simandle's Order did not dismiss large swaths of their case.  It did, and discovery must be limited to reflect this fact.

      Plaintiffs' proposed course of discovery is flawed not only because it fails to adjust to the reality of Judge Simandle's Order but also because of their own failure to provide details regarding their individual claims in the Second Amended Complaint and in accordance with this Court's September 3 Order. *See* Dkt. No. 73.  As described in further detail below, as a result of Judge Simandle's Order on Defendants' Motion to Dismiss the Second Amended Complaint, it is imperative for Defendants to know: (1) what precise helmet models were purchased by each Plaintiff, and for what price; (2) the precise marketing message viewed by each Plaintiff and how each Plaintiff understood or interpreted that message to imply superiority

**K E L L E Y   D R Y E   &   W A R R E N**  LLP

Hon. Joel Schneider
October 23, 2015
Page Two

to other, modern, helmets available to them on the market; and, (3) what other modern helmet
models from other manufacturers each Plaintiff evaluated before choosing the particular Riddell
helmet model they eventually purchased.  Without this knowledge, Riddell could be – and if
Plaintiffs sweeping discovery requests are not checked, will be – subjected to vastly overbroad
discovery that is unrelated to the remaining allegations in the SAC.

   To gain this information, and to thereby advance the orderly and efficient
progression of discovery in this case, Defendants respectfully request that the Court order
Plaintiffs to submit to a limited deposition to discern the precise nature of their individual claims
as outlined in Section II below.  Following this clarification, Defendants propose that any
substantive responses to interrogatories and document requests necessary be limited in scope in
the manner set forth in Section III below.

**I.**  **Plaintiffs' Claims Are Significantly Limited by this Court's Orders**

   Following this Court's consolidation of Plaintiffs' respective class actions against
Defendants, this Court granted Riddell's motion to dismiss the First Amended Consolidated
Class Action Complaint (the "First Amended Complaint").  *In re Riddell Concussion Reduction
Litig.*, 77 F. Supp. 3d 422, 424 (D.N.J. 2015) (hereinafter, *Riddell I*).  Of note for the issues
relating to discovery, the Court found that Plaintiffs' "essential theory of the case is so unclear
and inconsistent that it fails to satisfy the plausibility standard under Rule 12(b)(6)" – namely
because Plaintiffs did not specify whether they claimed Riddell's marketing was misleading
because "the three helmets identified in the Amended Complaint cannot reduce concussions at
all or if these helmets cannot reduce concussions by 31% as compared to others." *Id.*  The
Court granted Plaintiffs leave to replead.

   In response to this dismissal, Plaintiffs filed the Second Amended Complaint,
which Defendants moved to dismiss.  This Court granted Defendants' motion to dismiss in part,
and further curtailed the claims at issue in this litigation.  *See* Dkt. No. 63.  This Court found that
Plaintiffs had eschewed a theory that Riddell's helmets did not prevent concussions at all, and
moved forward with a comparative claim – "that Defendants' helmets 'are no more effective at
reducing concussions than any other helmets on the market.'"  *In re Riddell Concussion
Reduction Litig.*, No. CIV.A. 13-7585 JBS/JS, 2015 WL 4640425, at *7 and n.17 (D.N.J. Aug. 3,
2015) (hereinafter, *Riddell II*).  The Court found that within this theory, Plaintiffs were barred
from bringing claims (1) "based on marketing statements which accurately reflect the results of
the UPMC study; (2) "based on statements regarding specific design features of [Riddell]
helmets"; or (3) "based on an alleged omission." *Id.* at *11, 17.

   Within these confines, the Court clarified that Plaintiffs' only viable claims are
those "based on allegedly false or misleading marketing statements regarding 'concussion
reduction technology' and a 31% reduction in concussions for helmets not included in the UPMC

**KELLEY DRYE & WARREN** LLP

Hon. Joel Schneider
October 23, 2015
Page Three

study, including youth helmets" as compared to other helmets on the market. *Riddell II*, 2015 WL 4640425, at *1, *7 n.17. Further, Plaintiffs cannot pursue claims that accurately reflect the UPMC study's results, which found that Riddell's helmets incorporating Concussion Reduction Technology ("CRT") reduce concussions as compared to older, "traditional helmets" that did not contain CRT or similar advanced technology.

As such, Plaintiffs' claims may only proceed to the extent that they allege that Riddell's marketing implied the superiority of its CRT-containing helmets over modern helmets from other manufacturers, which despite not using the term "CRT," advertise similar protection under a different moniker.[1] Thus, Plaintiffs have a circumscribed claim that can only be based on comparisons that fall within the above limitations, and are not entitled to discovery on other claims in the Second Amended Complaint which were dismissed with prejudice. Clearly, to know if Plaintiffs are proceeding on a viable claim and to properly define the scope of discovery in this case, the Court and Riddell must know what helmet Plaintiff's purchased and what Plaintiff relied upon in making their purchase. Neither Plaintiffs nor Defendants can provide that information from written records, and thus, the only alternative is oral testimony.

## II.  The Viability of Plaintiffs' Individual Claims is Unknown and Merits Oral Testimony to Appropriately Limit the Scope of Discovery

Defendants request that, prior to incurring the significant expense of responding to Interrogatories and Document Requests that may not be relevant to Plaintiffs' viable claims, this Court order that Plaintiffs submit to limited depositions to resolve any open questions regarding their allegations and representations. These limited depositions will greatly benefit the efficient conduct of discovery in this case, as they will assist in preventing discovery on claims which have been dismissed. Such discovery is, by definition, improper. Plaintiffs' Second Amended Complaint is the operative pleading in this action but many of its central allegations have been dismissed with prejudice along with the claims to which those allegations relate. Indeed, it is questionable whether certain Plaintiffs have any viable claims at all.

Due to the limited nature of claims going forward, and the specific grounds on which Plaintiffs are permitted to proceed, Defendants submit that these preliminary limited depositions should resolve: (1) what helmet models were purchased by each Plaintiff, and for

---

[1] For example, Xenith employs a "Shock Bonnet protective liner" and "Shock Absorber Technology" with patented "Aware-Flow Shock Absorbers." *See* Xenith.com, "Xenith Technology" *available at* http://shop.xenith.com/pages/xenith-technology. Similarly, Schutt incorporates "Thermoplasitc Urethane Cushioning System" and several other elements for "better impact absorption," *see* http://www.schuttsports.com/aspx/Sport/ProductCatalog.aspx?id=1667, and states its youth helmets "all feature the same proven technology as its older siblings." *See* http://www.schuttsports.com/aspx/Sport/ProductListing.aspx?sp=3&id=89.

**K E L L E Y   D R Y E   &   W A R R E N** LLP

Hon. Joel Schneider
October 23, 2015
Page Four

what price; (2) the precise marketing message viewed by each Plaintiff and how each Plaintiff understood or interpreted that message to imply superiority to other, modern, helmets available to them on the market; and, (3) what other modern helmet models from other manufacturers each Plaintiff evaluated before choosing the particular Riddell helmet model they eventually purchased.  For the reasons set forth below, Plaintiffs' submission to limited depositions to resolve these open questions is necessary.

>           a.      **Plaintiffs' Inconsistent Identification of Helmet Models**

As a threshold matter, precise identification of helmet model types and numbers is required.  Recognizing this necessity, this Court ordered that "[b]y September 10, 2015 plaintiffs shall identify the helmet(s) purchased by each plaintiff, ***including the model number***, and when it was purchased."  *See* Dkt. No. 73.  On September 10, 2015, Plaintiffs sent a document listing only generic "helmet types," without identifying the helmet model number or specifying precisely when their purchases were made.  *See* Exhibit A hereto.  That same day, Counsel for Defendants sent a letter noting Plaintiffs' failure to adhere to this Court's Order.  *See* Exhibit B hereto.  Plaintiffs responded on September 11, 2015 by stating that this information "was not supplied through any of [Defendants'] receipts" and that "Plaintiffs provided to you all of the information, in their possession, that the Court required."  *See* Exhibit C hereto.  At the October 21, 2015 meet and confer between counsel, Plaintiffs' counsel was provided with information to assist in their identification of helmet models, but this information has not yet been provided to Defendants.

Defendants' insistence on Plaintiffs' precise identification of helmet model numbers, and submission to depositions to test the veracity of those identifications, is well founded.  This Court has only allowed Plaintiffs to proceed on claims "for helmets not included in the UPMC study."  *Riddell II*, 2015 WL 4640425, at *1.[2]  Based upon the limited information provided by Plaintiffs, it appears that certain Plaintiffs' claimed purchases were either impossible to have occurred, or their claims are expressly barred by Judge Simandle's Order.

First, three Plaintiffs should be dismissed from the case because they alleged to have purchased the Revolution – the precise helmet that was tested in the UPMC study.  Plaintiff Cahokia School District identified "2009, 2010, and 2011 Model Revolution" helmets in response to this Court's September 3 Order. *See* Exh. A.  Plaintiff Gustavo Galvan also alleged that he purchased a "Riddell Revolution" in the Second Amended Complaint, see SAC ¶ 111.

---

[2] Defendants, of course, dispute that purchasers of helmets other than the Riddell Revolution – which was the name of the helmet model tested in the UPMC study – have viable claims.  The UPMC Study tested patented Concussion Reduction Technology, which is not limited to the Revolution helmet.  The same Concussion Reduction Technology was incorporated into each later helmet model developed by Riddell, including all helmets purportedly at issue in this case.

**KELLEY DRYE & WARREN LLP**

Hon. Joel Schneider
October 23, 2015
Page Five

However, following Judge Simandle's Order which dismissed claims regarding the Revolution, Plaintiff Galvan changed his story and identified the "Revolution Attack Youth" in response to this Court's September 3 Order. See Exh. A.  Similarly, Plaintiff Farrell also alleged that he purchased "the Revolution" in the Second Amended Complaint, see SAC ¶ 110, but then identified the "Revolution Speed" in response to the September 3 Order.  See Exh. A. Accordingly, three should be dismissed pursuant to Judge Simandle's Order.

Additionally, the details of certain Plaintiffs' purchases provided could not be accurate or suggest their claims should be dismissed.  For example, Plaintiff Alliance Youth Sports represented that they continued to purchase Riddell's helmets until August 2014, three months after their Executive President, Kenny King, brought suit in this case – thereby knowingly continuing to pay the alleged "price premium" they seek to recover here.  *See* Exh. C; SAC ¶ 114; Dkt. No. 17.   Further, Plaintiffs Douglas and Denise Aronson allege to have purchased a Revolution Speed directly from Riddell's website.  *See id*; see also SAC ¶ 107. However, a preliminary search of Riddell's records does not show anyone by the name "Douglas Aronson" or "Denise Aronson" (or similar misspellings) having purchased any helmet from Riddell's website.

These are just the latest examples of Plaintiffs' vague representations about which helmets are actually at issue in this litigation.  In the First Amended Complaint, Plaintiffs only identified three helmet models at issue: the "Revolution, Revolution Speed, and Riddell 360." *See Riddell I*, 77 F. Supp. 3d at 425, n.3 (citing First Amended Complaint at ¶ 1, n.1).  In the Second Amended Complaint, Plaintiffs did not identify any other helmets beyond these three, only acknowledging in briefing that this list of helmets may not be "exclusive[]."  *Riddell II*, 2015 WL 4640425, at *17.

All these facts – Plaintiffs' inability to identify helmet model numbers, shifting stories, and apparently impossible allegations – merit the requirement that Plaintiffs be placed under oath to testify to the details of their allegations, and thereby confirm or deny that these Plaintiffs have claims that can be used to invoke this Court's power to order discovery from Defendants.

**b.    Identification of the Precise Marketing Messages Viewed by Each Plaintiff, and What Each Plaintiff Understood that Marketing to Mean**

As stated above, the Court has dismissed all claims "based on marketing statements which accurately reflects the results of the UPMC study."  This finding eviscerates a huge portion of the case, as Plaintiffs' case turns almost exclusively on the theory that Riddell's marketing which accurately reflected the results of the UPMC study was false because the UPMC produced a false result.  *See* SAC ¶¶ 3-11, 48-86.  The SAC devotes an entire section of

**K E L L E Y   D R Y E   &   W A R R E N** LLP

Hon. Joel Schneider
October 23, 2015
Page Six

nearly 25 paragraphs to provide "details of the study, and its limitations" – including what Plaintiffs allege to be flaws "in its design and in its implementation." *See* SAC ¶¶ 48-72. Plaintiffs criticize Riddell for marketing Concussion Reduction Technology "solely on the results of the UPMC study" without any "other tests, clinical or otherwise, that support the Concussion Reduction claims made to the public about the Revolution line helmets." SAC ¶ 73.

Plaintiffs core allegation in the SAC is that "[i]n reality, Defendants' [marketing of Concussion Reduction Technology is] false or deceptive because their Riddell Football Helmets do not provide the promised 'Concussion Reduction Technology' or result in decreasing the incidence of concussions . . . In fact, objective and reliable research, which was not funded by Defendants, has shown that claims of concussion reduction related to football helmets are not valid and are instead simply a marketing tool." SAC ¶ 7; *see also* SAC ¶ 92 ("According to several studies, and the majority of independent experts, Defendants' claims that their Football Helmets have 'concussion reduction technology' are false and misleading."). Again, all such claims have already been dismissed. Plaintiffs did not allege that Riddell misrepresented the results of the UPMC study in its marketing, but rather alleges that the study was flawed. *See, e.g.*, SAC ¶¶ 49 ("[T]he study . . . was flawed both in its design and in its implementation . . . Defendants knew these flaws but still utilized the purported results of the study to flood the market with false and misleading claims.").

Given the dismissal of claims based on these core allegations, Plaintiffs must articulate what, if any, are the viable claims following Judge Simandle's Order. Because of the limited scope of claims on which Plaintiffs are permitted to proceed, their generalized allegations that they were "exposed to Defendants' claims that their Riddell Football Helmets had 'concussion reduction technology'" will not suffice – context is important. The Second Amended Complaint does not specify what precise marketing Plaintiffs' viewed, and what they understood it to mean. *See* SAC ¶¶ 104-116.

Nor do any of the "examples" and descriptions of marketing for Riddell helmets cited in the Second Amended Complaint point to any specific marketing statements that were viewed by Plaintiffs – let alone any that Plaintiffs viewed which misrepresent the results of the UPMC study. In fact, Plaintiffs admit that "[m]ost of the advertisements also included a reference to the <u>Neurosurgery article</u>." SAC ¶ 76. However, claims based on the Neurosurgery article, which simply reports the results of the UPMC study, are not actionable. Those now dismissed claims are rife in the SAC. *See* SAC ¶ 77 (referencing a March 16, 2009 press release which states "The Riddell Revolution helmet [the specific helmet tested in the UPMC study] is . . . shown in published research to reduce the risk of concussion by nearly a third."); SAC ¶ 79 (describing promotional videos in which Defendants "routinely point to specific designs and technological advances that they claim make their helmets safer"); SAC ¶ 85 (listing generic claims, all made by third parties and not by Riddell).

**K E L L E Y   D R Y E   &   W A R R E N** LLP

Hon. Joel Schneider
October 23, 2015
Page Seven

        For this additional reason, Plaintiffs should be ordered to submit to limited depositions to address these important issues concerning their individual claims.

### c.      Identification of Other Modern Helmets Considered

        Because Plaintiffs are now proceeding on a comparative claim, it is essential to understand the comparative basis for their claims.  No Plaintiff identifies a comparable model made by a competitor that they considered, and only one identifies a single competitor by name. *See* SAC ¶¶ 104-116.

        For this, and all the reasons described above, Defendants submit that limited depositions of Plaintiffs are necessary to resolve the open questions regarding Plaintiffs' individual claims, and to ensure that Defendants are not required to engage in discovery that is not tied to a viable claim in the Second Amended Complaint.

### III.    Defendants' Proposed Scope of Discovery

        Following resolution of the details of Plaintiffs' individual claims, and if there is any remaining basis for Plaintiffs to seek discovery, Defendants propose that the scope of discovery be limited in the following ways, consistent with federal standards, the particular demands of this case, and this Court's prior orders.

        As stated above, Plaintiffs' Requests make no effort to adjust to the reality of Judge Simandle's Order, and Defendants' object to the scope of Plaintiffs' requests to the extent they go beyond the remaining, viable claims in this litigation.  Further, a number of Plaintiffs' requests are duplicative, overly broad, and unduly burdensome, because they seek information that is not only outside the scope of the remaining viable claims in this litigation, but because within those viable claims, they seek unduly cumulative and irrelevant data.  Defendants have lodged detailed objections to these requests, too lengthy to reproduce here, and therefore refers the Court to Defendants' Objections served September 24, 2015, attached hereto as Exhibit D, should it wish to delve into specific requests.  Synthesized below are what Defendants feel to be appropriate guidelines to the efficient progress of discovery in this action.

        <u>Relevant Time Period</u>. Defendants' submit that, with very few limited exceptions, the cutoff for all discovery material to be produced should be December 16, 2007.  This date is generous for most Plaintiffs and their state-specific subclasses, as it represents a longer statute of limitations period to which they would otherwise be entitled on their consumer protection claims.[3]  Outside this time period, the only potentially relevant information could be general

---

[3] The statute of limitations period for each state claim brought by the individual defendants on behalf of themselves and their respective state-subclasses are: (1) Count I: 6 years, N.J.S.A. § 2A:14–1; (2) Count II: 4 years.  Fla. Stat. §

**KELLEY DRYE & WARREN LLP**

Hon. Joel Schneider
October 23, 2015
Page Eight

design, development, and testing of the helmet technology, development of the "Concussion Reduction Technology" advertising slogan/campaign and any consumer research regarding the interpretation of that term and how it reflects upon competitors' technology.

        <u>Damages and Class-Identification Should Be Postponed</u>.  Numerous of Plaintiffs' requests demand Defendants identify all of their retailers, wholesalers, and direct sales employees, as well as provide sales figures, revenues, profits, and consumer related information that is only relevant to identification of class members, should class certification be granted, or damages, should liability be established.  *See, e.g.* Document Request Nos. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 36, and 42; Interrogatory Nos. 2, 3, 4, 5, 6, 8, 10, 11, 12, 14, 15, 16, 18, 19.  As such, Defendants submit that the burden and cost of such discovery should be postponed Plaintiffs until such time as can achieve those milestones.

        <u>Scope of "Advertising" or Related Marketing Materials</u>.  Plaintiffs' put forth vastly overbroad requests regarding not only advertisements that reached actual consumers, but for any policies, procedures or marketing strategy, as well as communications with retailers or distributors, promotional programs offered to retailers, materials provided to direct sales personnel, and other information regardless of whether it could have actually reached a consumer or influenced a consumer's decision to purchase a Riddell helmet. *See, e.g.,* Document Request Nos. 14, 20, 21, 22, 23, 26, 30, 39.  Advertising and marketing materials should be limited to advertisements that could have reached a Plaintiff.

        <u>Relevant Custodians</u>.  Many of Plaintiffs Requests demand the identification of all employees in certain categories of Riddell's organization – direct sales employees, employees involved in the determination of pricing, employees involved in the analysis of sales, employees involved in the determination of marketing and advertising, etc.  *See, e.g.,* Interrogatory Nos. 5, 6, 7, 8, 11.  Defendants submit that custodial record collection and identification should be limited in the same manner as agreed to by the Federal Trade Commission when it conducted its exhaustive investigation of Riddell's Concussion Reduction Technology Claims – that is, the relevant custodians who should be identified, and whose records should be searched should be limited to the heads of the four relevant Riddell corporate departments identified in Defendants' initial disclosures, as well as their direct reports and relevant regional sales managers.

        <u>No Compilation or Recreation of Information</u>.  Certain of Plaintiffs' Requests seek incredibly detailed breakdowns of certain categories of information.  Defendants will only produce documents and respond to interrogatories based upon the way their information is

---

95.11(3)(f); Count III-V: 4 years,  Cal Bus. & Prof. Code § 17208; Count VI: 3 years, Cal. Code of Civ. P. § 338(a); Count VII: 3 years, Cal. Civ. Code  § 1783; Count VIII-IX: 1 year, A.R.S. § 12-541(5).

**K E L L E Y  D R Y E  &  W A R R E N** LLP

Hon. Joel Schneider
October 23, 2015
Page Nine

stored, or the ways in which it is reasonably retrievable, without resort to unduly burdensome compilations of information or recreation of data to respond to Plaintiffs' Requests.

   Third Party Subpoenas.  On September 23, 2015, Plaintiffs advised by e-mail that they intended to serve subpoenas upon "third party retailers in this case, once identified," including "Amazon.com, Sportsunlimited.com, Academy Sports, Sports Authority, and Dick's Sporting Goods."  Plaintiffs attached an "Exhibit A to Subpoena to Produce Documents" containing 14 proposed document requests.  See Exhibit E hereto.

   Plaintiffs' proposed subpoenas to third party retailers primarily call for the production of documents which relate to sales, revenues, pricing, and customer identification, which, as described above, are relevant only if Plaintiffs are able to certify a class and establish liability against Defendants.  *See* Exh. E, Request Nos. 1, 2, 3, 4, 5, 6, 9, 10, and 14.  As such, Defendants find all such requests should be postponed as premature given the present circumstances of the case.  Further, the remaining requests, which pertain to how these third party retailers advertised or described Defendants' helmets, or call for the production of their communications with Defendants, are either irrelevant because they do not involve Defendants' marketing or otherwise covered by Plaintiffs' document requests to Defendants. *See* Exh. E., Request Nos. 7, 8, 12, and 13.

   As this Court made clear both during the September 3, 2015 status conference, and in the subsequent September 3 Order, discovery in this case shall follow an orderly and specific progression, as contemplated by Rule 26.  *See, e.g., Techtronic Indus. N. Am., Inc. v. Inventek Colloidal Cleaners LLC*, No. CIV. 13-4255 NLH/JS, 2013 WL 4080648, at *2 (D.N.J. Aug. 13, 2013) (Schneider, J.).  Defendants submit that Plaintiffs' proposed third party subpoenas are inappropriate at this time for the reasons addressed above, and that this Court should exercise its discretion and postpone the service of any third party subpoenas until the appropriate stage of this litigation and following any necessary document production by Defendants.

   Respectfully submitted,

   *s/ Joseph A. Boyle*
   Joseph A. Boyle

cc:  All Counsel Via ECF