**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

NEW YORK, NY
WASHINGTON, DC
LOS ANGELES, CA
CHICAGO, IL
STAMFORD, CT

BRUSSELS, BELGIUM

AFFILIATE OFFICE
MUMBAI, INDIA

ONE JEFFERSON ROAD

**PARSIPPANY, NJ  07054**

(973) 503-5900

FACSIMILE
(973) 503-5950
www.kelleydrye.com

JOSEPH A. BOYLE
DIRECT LINE: (973) 503-5920
EMAIL: jboyle@kelleydrye.com

November 3, 2015

**VIA ECF**

Hon. Joel Schneider
United States District Court
Mitchell H. Cohen Building
& U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

>    Re:   *In Re Riddell Concussion Reduction Litigation*, 1:13-CV-07585 (JBS)(JS)
>          <u>Joint Letter Identifying Material Discovery and ESI Issues</u>

Dear Judge Schneider:

This letter serves as the joint letter identifying the Parties' material discovery and ESI issues in dispute as directed by your Order of October 26, 2015. Dkt. No. 90, ¶ 2. Counsel for both Parties conducted a telephonic meet and confer on Friday, October 30, 2015, in which they clarified and attempted to narrow the issues in dispute.[1]

<u>Limited Preliminary Depositions Prior to Extensive Discovery</u>. Defendants maintain their position, as stated in their letter-brief filed October 23, 2015, that Plaintiffs should submit to limited depositions to resolve any open questions regarding their allegations and representations in light of Judge Simandle's Order which dismissed several allegations and theories of relief alleged in the Second Amended Complaint. *See* Dkt. No. 87, at 2-7. Defendants argue that it is doubtful that some or all of the Plaintiffs have viable claims based upon Defendants' understanding of Judge Simandle's Order. Defendants will produce information related to purchases by Plaintiffs who appear to have purchased directly from Riddell, to the extent those records are in Defendants' possession.

---

[1] As Ordered by the Court, (*see* Dkt. No. 90, ¶ 7), the Parties attach hereto the three items which were ordered to be exchanged on September 10, 2015: (1) Plaintiffs' "identif[ication of] the helmet(s) purchased by each plaintiff, including the model number, and when it was purchased"; (2) Defendants' "identif[ication of] all model helmets they made and sold with 'concussion reduction technology' from 2002 to present"; and, (3) Plaintiffs' interrogatories and document requests.

**KELLEY DRYE & WARREN LLP**

Hon. Joel Schneider
November 3, 2015
Page Two

       Defendants' believe these limited depositions to be necessary because Judge Simandle dismissed a large part of Plaintiffs' case. Plaintiffs were barred from bringing claims (1) "based on marketing statements which accurately reflect the results of the UPMC study"; (2) "based on statements regarding specific design features of [Riddell] helmets"; or (3) "based on an alleged omission." Dkt. No. 65, at 29, 32, 50. Judge Simandle's Order only allowed Plaintiffs to proceed with claims "based on allegedly false or misleading marketing statements regarding 'concussion reduction technology' and a 31% reduction in concussions for helmets not included in the UPMC study, including youth helmets." *See* Dkt. No. 65, at 49-50. Because Plaintiffs' cannot claim that the UPMC study is false, that specific design features were lacking, or that Plaintiffs' were misled based upon any alleged omission, identification of the precise helmet they purchased, the precise marketing which they viewed, and their specific impressions of that marketing is essential to evaluating whether they have stated a claim and should be entitled to discovery on those claims. Judge Simandle acknowledged that "Plaintiffs do not quote verbatim the marketing language which they allegedly saw or heard prior to purchasing Defendants' helmets" and that they have only "provided examples of this language." Dkt. No. 65, at 21, n.13. While these examples may have sufficed for a Rule 9(b) analysis in Judge Simandle's Opinion, his 12(b)(6) plausibility analysis likely dismissed many of Plaintiffs' claims.

       Further, as stated above, Judge Simandle has only allowed claims to go forward regarding helmet models which were not specifically included in the UPMC study. The "Revolution" model is a specific model of helmet incorporating Riddell's patented Concussion Reduction Technology. It is undisputed that the Revolution was the specific helmet model included in the UPMC study. Plaintiffs' assertion that Judge Simandle's opinion was limited to the actual helmets worn by players who were examined in the UPMC study (such that the only potential plaintiffs who would be barred from bringing a claim are the high school participants in the UPMC study, and somebody who happened to purchase or otherwise obtain the exact helmet used in the study from those players) is not a reasonable reading of Judge Simandle's Opinion. Plaintiffs' also selectively quote from Judge Simandle's Order and Opinion and state the he allowed "claims to proceed based on allegedly false or misleading statement regarding 'concussion reduction technology,'" while leaving out the rest of those sentences which clearly limits such misleading claims to "helmets not included in the UPMC study," and ignore how that language is otherwise qualified and limited in Judge Simandle's Opinion. *See* Dkt. No. 66, at 1-2, Dkt. No. 65, at 49-50. Defendants therefore assert that certain Plaintiffs should be dismissed because they either alleged in the Second Amended Complaint that they have purchased the "Revolution" helmet, or identified the "Revolution" helmet in response to this Court's subsequent Order of September 3, 2015. *See* Dkt. No. 87, at 4-5.[2]

---

[2] Plaintiff Cahokia School District identified "2009, 2010, and 2011 Model Revolution" helmets in response to this Court's September 3 Order. See Exh. A. Plaintiff Gustavo Galvan also alleged that he purchased a "Riddell

**KELLEY DRYE & WARREN LLP**

Hon. Joel Schneider
November 3, 2015
Page Three

In collecting sales records available concerning the named Plaintiffs in contemplation of Defendants' proposed limited depositions, Defendants also learned of an additional objection to discovery pertaining to the claims of Douglas and Denise Aronson. Despite having alleged to have purchased directly from the Riddell website, Riddell has no record of Douglas or Denise Aronson's alleged purchase.[3] Defendants believe that Douglas and Denise Aronson should be dismissed from the case for lack of standing, in accordance with Judge Simandle's dismissal of Kenny King who did not purchase helmets in his individual capacity. *See*. Dkt. No. 65, at 40, n.20.  Defendants requested that Plaintiffs agree to voluntarily dismiss the claims of Douglas and Denise Aronson with prejudice.

Defendants do not intend to reargue their motion to dismiss by these limited depositions or their requests for the dismissal of certain plaintiff to reargue their motion to dismiss, but only to limit discovery proportionally to the needs of this case as explicitly contemplated by the Amendments to the Federal Rules of Civil Procedure effective December 1 this Court has advised shall apply to this case. *See* Dkt. No. 90.

Plaintiffs reject the proposal for limited preliminary depositions, and reject Riddell's invitation to voluntarily dismiss Plaintiffs Douglas and Denise Aronson, or any of the Plaintiffs who alleged to have purchased the Revolution. The Plaintiffs' position is that the Court already ruled that Plaintiffs have satisfied their pleading requirements for identifying what helmets were purchased, when they were purchased, what ads were relied on by Plaintiffs and the amounts they paid for the helmets. See Opinion, Dkt. No. 65, at p. 21, finding "there is no longer any question as to what statements each plaintiff saw or heard and where such statements appeared." The court also found that "plaintiffs have adequately clarified 'the precise substance of the alleged misrepresentations which give rise to [plaintiffs'] claims,' as well as the essential theory of the case." *Id.* In light of this finding, the Plaintiffs contend the Defendants should not be allowed to re-argue their motion to dismiss and further delay Plaintiffs' discovery until Defendants depose Plaintiffs on these factual allegations already deemed sufficient by the court.

Further, Defendants' argument that claims regarding the Revolution helmets are barred because the UPMC study included the Revolution helmets is absent from the Court's opinion. The Court only dismissed claims that the Revolution helmets in the actual UPMC study (excepting, for example, youth helmets) reduced the incidence of concussion by up to 31%. The

---

Revolution" in the Second Amended Complaint, see SAC ¶ 111.  However, following Judge Simandle's Order which dismissed claims regarding the Revolution, Plaintiff Galvan changed his story and identified the "Revolution Attack Youth" in response to this Court's September 3 Order. See Exh. A. Similarly, Plaintiff Farrell also alleged that he purchased "the Revolution" in the Second Amended Complaint, see SAC ¶ 110, but then identified the "Revolution Speed" in response to the September 3 Order. See Exh. A.

[3] Defendants' search for the name "Aronson" turned up several other persons with the last name Aronson, none with the first names Douglas or Denise.

**KELLEY DRYE & WARREN LLP**

Hon. Joel Schneider
November 3, 2015
Page Four

Court did not, as argued by Defendants, dismiss all claims relating to Revolution helmets. The Order clearly allows Plaintiffs to "proceed based on allegedly false or misleading marketing statements regarding 'concussion reduction technology.'" Order, Dkt. 66 at 1-2, Opinion, Dkt. 65 at 49-50.

During the October 30 Meet and Confer, Plaintiffs agreed to discuss the facts of Douglas and Denise Aronson's purchase with their clients and advise Defendants as to the outcome of that inquiry. Plaintiffs' counsel have reconfirmed that the Aronson's purchased the subject helmet as alleged in the Second Amended Complaint ("SAC"). Thus, it is Plaintiffs' position that the Defendants' alleged inability to match *exact* names (Defense counsel revealed that someone named Aronson in New Jersey purchased a helmet, but that the name was not an exact match to the name stated in the SAC), and the specific details regarding this purchase is a question of fact that is irrelevant to these discovery disputes and is something that can be readily ascertained as discovery progresses in this matter. Thus, Plaintiffs contend that this argument is not a valid basis for Defendants to further delay discovery. The only issue that Defendants' record search confirms is their ability to easily search for and identify all purchasers, which should absolve any ascertainability concerns at class certification.

Relevant Time Period. Defendants' position with regard to the relevant time period is that discovery of advertising, marketing, labels, and documents relating to such materials should be limited in time to the Plaintiffs' purchases in this case, the earliest of which is alleged to have been in 2009. This case is centered upon Plaintiffs' understanding of Riddell's marketing, and Defendants therefore believe that marketing and other related information from years preceding Plaintiffs' first alleged purchase is overbroad. Defendants further believe they should not be compelled to produce any documents or information outside the longest statute of limitations period in this case, i.e. December 16, 2007 to present. Marketing and advertising, and any documents related thereto, that preceded this date have no relevance to the claims of Plaintiffs or the potential class they seek to certify. Plaintiffs stated position that they are "entitled to discovery of all information, generated at any time, that references CRT" is clearly overly broad and not limited in proportion to the needs of this case. *See* Fed. R. Civ. P. 26 (effective Dec. 1, 2015).

Plaintiffs do not agree that Defendants' obligation to produce advertising, marketing, product labels, and documents relating to such materials should be limited in time to the period of 2009 to present. Plaintiffs contend they are entitled to discovery that predates the longest statute of limitations period in this case to the extent there exists documents and communications concerning the development of Riddell's marketing of Concussion Reduction Technology. Indeed, it should be undisputed that Defendants' concussion reduction technology "CRT" design and marketing began long before plaintiffs ever purchased helmets, and the Plaintiffs are entitled to discovery of all information, generated at any time, that references CRT. The applicable statutes of limitation simply does not impose a limit on the scope of discovery

**KELLEY DRYE & WARREN LLP**

Hon. Joel Schneider
November 3, 2015
Page Five

   <u>Class Damages and Identification</u>.  Defendants' argue that a number of Plaintiffs' requests seek documents and information concerning class-wide damages and the identification of potential class members.  *See, e.g.*, Document Request Nos. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 36, and 42; Interrogatory Nos. 2, 3, 4, 5, 6, 8, 10, 11, 12, 14, 15, 16, 18, 19; *see also* Dkt. No. 87, at 8.  Defendants submit that these requests all seek sales figures, revenues, profits, and consumer related information, as well as the identification of retailers, wholesalers, and direct sales employees who sold to absent class members, which Defendants argue are only relevant to the identification of class members or class-wide damages.  Defendants' position is that the Court should defer discovery on these issues, as contemplated by its prior Order.  *See* Dkt. No. 90, ¶ 5 ("If a discrete and severable issue exists that is only relevant if the class is certified (e.g., class wide damages), the Court may defer discovery on the issue.")

   Plaintiffs reject Defendants' position, and take the position that discovery as to class damages and identification of class members should proceed immediately. The Plaintiffs point to the Court's October 26, 2015 Letter Order, Dkt. 90, at ¶ 5, stating that "[t]he Court will not bifurcate class certification and 'merits' discovery."

   <u>Vague and Ambiguous Objections</u>.  Defendants withdraw their objections to Plaintiffs' requests to the extent they characterize words or phrases therein as "vague and ambiguous."

   <u>Identification of Relevant Persons</u>.   The Parties agree that identification of Defendants' employees in response to certain interrogatories will be reasonably limited in scope to capture the most relevant persons with the aim of avoiding unnecessary costs in the collection and search of documents and information from persons with duplicative or limited knowledge of the claims at issue in this case.

   <u>Electronically Stored Information</u>.  Both Parties have their own respective form ESI Agreements.  Defendants have provided edits to Plaintiffs' proposed form which align with Defendants' typical practice and their technical capabilities.  The Parties will continue to work together in good faith to try to resolve their differences with respect to a protocol for the production of ESI and do not anticipate any significant disputes.

           Respectfully submitted,

            *s/ Joseph A. Boyle*
            Joseph A. Boyle

cc:  All Counsel Via ECF