THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| In re: RIDDELL CONCUSSION REDUCTION LITIGATION | Civil No. 13-7585 (JBS/JS) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Riddell's[1] objections to plaintiffs' request to serve ten (10) third-party document subpoenas.[2] Riddell argues the requested documents are not relevant to the class certification issues that are being addressed in the first phase of this litigation. The Court recently issued its ruling on the record after the completion of oral argument. This Order confirms and expounds upon the Court's oral ruling which overruled in part and granted in part defendants' objections.

---

[1] The named defendants are Riddell Sports Group, Easton-Bell Sports, Inc., Easton-Bell Sports, LLC, EB Sports Corporation, RBG Holdings Corporation and All American Sports Corporation d/b/a Riddell/All American. Defendants will be collectively referred to as "Riddell."
[2] The subpoenas are directed to Biokinetics, NFL Enterprises, LLC, Dr. Elliot Pellman, Dan Kult, Mindsview Innovation, Weber Shandrick, Inc., Empire Green Creative, LLC, Wishbone Design Factory, LLC, Cohn & Wolfe and MSL Chicago.

Background

This is a proposed nationwide class action filed by purchasers of Riddell's Revolution football helmets from 2007 to present seeking the return of a "price premium" allegedly paid for the helmets. This is not a personal injury case. Instead, the case focuses on the concussion reduction capabilities of Riddell's helmets and defendants' pricing, advertising and marketing of the helmets. The crux of plaintiffs' case is that Riddell's Revolution helmets offered no greater protection against concussions than other helmets and, therefore, the price premium they paid should be reimbursed. Plaintiffs claim defendants' use of the term "concussion reduction technology" or "CRT" was false and misleading. Defendants' claims concerning concussion reduction purportedly derive from a 2002 study done by the University of Pittsburgh Medical Center ("UPMC") that compared the concussion rates of users who used the Revolution helmet with those who wore "traditional helmets." The UPMC study found that in some instances the Revolution helmet could reduce concussions by as much as 31%.

Discussion

1. Procedural Background

The first stage of the case involved extensive motion practice. On August 3, 2015, the Honorable Chief Judge Jerome B. Simandle granted in part and denied in part Riddell's motion to

dismiss plaintiffs' second amended complaint. See In re Riddell Concussion Reduction Litigation, 121 F. Supp. 3d 402 (D.N.J. 2015). The Opinion set forth in clear terms the remaining claims in the case:

> For the reasons discussed below, the Court will grant in part and deny in part Defendants' motion to dismiss. The Court finds that Plaintiffs' amended pleading largely cures the deficiencies previously identified in their initial consolidated pleading. As detailed below, the Court will permit Plaintiffs' consumer fraud claims to proceed based on allegedly false or misleading marketing statements regarding "concussion reduction technology" and a 31% reduction in concussions for helmets not included in the UPMC study, including youth helmets. However, the Court will dismiss Plaintiffs' consumer fraud claims to the extent they are based on marketing statements which accurately reflect the results of the UPMC study or based on an alleged omission. The Court will also dismiss Plaintiffs' unjust enrichment and assumpsit claims with the exception of the Cahokia School District's claim for unjust enrichment.

Id. at 405.

After the pleadings closed this Court undertook to manage discovery. As the parties know, the Court declined to formally bifurcate discovery between class certification and merits issues. See In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305, 317 (3d Cir. 2008)(the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action); Bell v. Lockheed Martin Corp., 270 F.R.D. 186, 199 (D.N.J. 2010)(inquiry into the merits is appropriate at the class

3

certification stage to the extent the merits overlap with the criteria in Fed. R. Civ. P. 23); see also In re Plastics Additives Antitrust Litigation, No. 03-2038, 2004 WL 2743591, at *3 (E.D. Pa. Nov. 29, 2004)("[T]he distinction between merits-based discovery and class-related discovery is often blurry, if not spurious."). The basis of the Court's ruling was that more often than not there is no "bright line" between class certification and merits issues.[3] Nevertheless, despite the Court's ruling it was made known to the parties that "full blown" merits discovery is not required to certify a class. Plaintiffs only need sufficient merits discovery so that they can adequately prepare and file their motion for class certification. After the motion is decided plaintiffs can decide what else they reasonably need.

In order to facilitate discovery and avoid unnecessary discovery motion practice, the Court initially Ordered the parties to serve their written discovery and to only serve objections. See November 6, 2015 Order, Doc. No. 95. Thereafter, all objections to the parties' interrogatories and document requests were resolved before formal answers were served. The

---

[3] To be sure, however, there are occasions when discrete subject areas may be off-limits for class certification discovery. See Conner v. Perdue Farms, Inc., No. 11-888 (MAS)(LHG), 2013 WL 5977361 (D.N.J. Nov. 7, 2013)(discovery into how Perdue actually raised its chickens is not relevant to plaintiffs' request for class certification in a case alleging Perdue misrepresented that it "humanely raised" chickens).

Court then entered an Order approving the parties' written discovery and barring any objections. See February 9, 2016 Order [Doc. No. 130]. Plaintiffs' subpoenas are purportedly modeled after plaintiffs' Court-approved document requests.[4]

The issue now before the Court is whether plaintiffs' subpoenas are relevant to whether the proposed class should be certified. Like almost all discovery issues, the resolution is committed to the sound discretion of the Court. See Arnold Pontiac-GMC, Inc. v. General Motors Corp., 786 F.2d 564, 568 (3d Cir. 1986)(courts have broad discretion to manage their dockets, including discovery matters); Forrest v. Corzine, 757 F. Supp.2d 473, 477 (D.N.J. 2010)("Magistrate Judges are given wide discretion to manage cases and to limit discovery in appropriate circumstances"). Plaintiffs argue their subpoenas are necessary because they request documents relevant to the class certification requirements they must meet under Rule 23. Defendants disagree and contend plaintiffs do not need the requested discovery to prepare their class certification motion.

Plaintiffs' subpoenas are directed to two main subject areas. The first area is the development, testing and performance of defendants' helmets.[5] (The Court will collectively

---

[4] Plaintiffs did not attach copies of their subpoenas to their opposition to Riddell's present application.
[5] These are the subpoenas directed to Biokinetics, NFL Enterprises and Dr. Pellman.

refer to these three areas as "performance" issues.) The second area is the advertising, marketing and "messaging" of defendants' helmets.[6] (The Court will collectively refer to these three areas as "marketing" issues.)

2. Performance Discovery

As to discovery regarding the performance of Riddell's helmets, the Court concedes Riddell makes credible arguments why the requested discovery should be denied. Nevertheless, on balance plaintiffs' arguments carry the day. First, and perhaps most importantly, defendants do not concede that they will not raise helmet performance arguments, or contest plaintiffs' performance allegations, when they oppose class certification. This being the case, it is unfair to deny plaintiffs the discovery they need to rebut defendants' arguments.[7] Second, discovery regarding the performance of defendants' helmets is relevant to the commonality and predominance requirements in

---

[6] These are the subpoenas directed to Mindsview Innovation, Weber Shandrick, Empire Green Creative, Wishbone Design Factory, Cohn & Wolfe and MSL Chicago.

[7] The fact that Riddell may raise performance issues or they may challenge plaintiffs' "merits" allegations when they oppose class certification distinguishes this case from Conner, supra, where the Court barred merits discovery as to Perdue's actual chicken raising practices. In Conner, Perdue confirmed that when it opposed class certification it would not rely on evidence of its actual practices. 2013 WL 5977361, at *3. Here, when it comes time to oppose class certification, Riddell may contest plaintiffs' allegations regarding the performance of the Revolution helmet.

Rules 23(a)(2) and 23(b)(3).[8] To satisfy these requirements plaintiffs must show that their legal claim is capable of common evidence. Franco v. Connecticut General Life Ins. Co., 289 F.R.D. 121, 130 (D.N.J. 2013). The Court expects that plaintiffs will want to show that defendants' helmets perform the same way no matter the particular plaintiff's size or shape.[9] Thus, performance data and discovery is relevant for class certification purposes.[10]

Besides these two reasons, there are other justifications favoring the requested performance discovery from third parties. Plaintiffs are not engaged in a fishing expedition or scattershot discovery. Plaintiffs are focusing their subpoenas on the discovery necessary to "fill in the gaps" from Riddell's document/ESI production. Plaintiffs' letter brief specifically cites to portions of important documents defendants produced. Plaintiffs make a convincing case that because of the gaps in Riddell's production there are documents relevant to class

---

[8] These two requirements are commonly analyzed together. Schwartz v. Avis Rent A Car System, LLC, Nos. 11-4052(JLL), 12-7300(JLL), 2016 WL 3457160, at *4 (D.N.J. June 21, 2016).
[9] In order to assess predominance and determine whether class certification is appropriate, "a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." Hydrogen Peroxide, 552 F.3d at 311 (citation and quotation omitted).
[10] At this stage of the case the Court is precluded from addressing any merits inquiry that is not necessary to deciding whether the class should be certified. Hydrogen Peroxide, 552 F.3d at 316-17.

certification issues that are likely to be in the hands of the listed third-parties.[11]

Another reason why the Court rules in plaintiffs' favor is because plaintiffs intend to rely upon expert affidavits or reports to support their class certification motion. These experts will address, inter alia, bio-mechanical, neurological and marketing issues. As the parties know, the Third Circuit recently held that expert testimony used to support class certification must comply with Daubert. In re Blood Reagents Antitrust Litigation, 783 F.3d 183, 187 (3d Cir. 2015). ("[A] plaintiff cannot rely on challenged expert testimony, when critical to class certification, to demonstrate conformity with Rule 23 unless plaintiff also demonstrates, and the trial court finds, that the expert testimony satisfies the standard set out in Daubert."). Further, a district court must rigorously analyze the evidence used to establish class certification. Neale v. Volvo Cars of North America, LLC, 794 F.3d 353, 361 (3d Cir. 2015). This being the case, the Court is inclined to give plaintiffs the benefit of the doubt when they argue their experts need certain discovery. As is its right, the Court anticipates Riddell will require strict compliance with Daubert.

---

[11] The Court makes it clear that it is not disparaging Riddell. Rather, given that the requested discovery goes back to 2002, it is understandable if some gaps exist in Riddell's production.

8

Plaintiffs should have a fair and reasonable, but not open-ended, opportunity to obtain what they need for their experts. As noted, given the "rigorous analysis" required for class certification, and the Daubert standard plaintiffs have to meet, the Court is inclined to give plaintiffs the benefit of the doubt when there is a legitimate dispute as to whether requested discovery is relevant to class certification issues.

Still another reason the Court favors plaintiffs is that the Court does not envision that plaintiffs' subpoenas will be unduly extensive or burdensome. Plaintiffs' document requests are focused on the discrete subject areas the Court already approved. After taking into consideration the proportionality factors in Rule 26(b)(1), including the amount at issue and the fact that the requested discovery is relevant to important class certification requirements, and the fact that the requested discovery is not cumulative and does not appear to be unduly burdensome, the Court concludes the requested discovery is proportional to plaintiffs' needs. The Court accepts plaintiffs' argument that the requested discovery will fill in important "gaps" that presently exist in Riddell's discovery responses.[12]

3.   Marketing Discovery

---

[12] The Court denies plaintiffs leave to serve Dan Kult with a subpoena. Kult testified in another case that he has no relevant documents. Plaintiffs can confirm this fact if they depose Kult.

As to the subpoenas directed to marketing and "messaging" documents, the Court has no hesitation in finding these are relevant to class certification issues. Riddell's marketing and "messaging" is undoubtedly a key issue in the case. A significant part of plaintiffs' case is premised on the New Jersey Consumer Fraud Act ("NJCFA"). N.J.S.A. 56:8-1 et seq. Pursuant to the statute, an advertisement may be actionable if it has the "capacity to mislead the average consumer." Union Ink Co., Inc. v. AT&T Corp., 352 N.J. Super. 617, 644 (App. Div. 2002). Further, even if an advertisement is literally true, "it may be actionable if the overall impression [it] create[s] … is misleading and deceptive to an ordinary reader." Id. (citation and quotation omitted). Given this case law, plaintiffs are attempting to show that all purchasers of Riddell's helmets received the same or similar advertisements and messaging. It is, therefore, essential to plaintiffs' class certification arguments that they be able to conduct discovery directed to these areas. Plaintiffs' subpoenas directed to Riddell's public relations, marketing, etc., firms are plainly relevant to key class certification issues. As noted in Schwartz, 2016 WL 3457160, at *4, "[i]n cases where it is alleged that the defendant made similar misrepresentations, non-disclosures, or engaged in a common course of conduct, courts have found that conduct to satisfy the commonality and predominance

requirements." (citing <u>Varacallo v. Massachusetts Mut. Life Ins. Co.</u>, 226 F.R.D. 207, 231 (D.N.J. 2005)). This is precisely what plaintiffs' marketing discovery is designed to get at.

    4.   <u>Objections Preserved</u>

Although the Court is granting plaintiffs leave to serve their third-party subpoenas, this Order is entered without prejudice to the third-parties' right to object to all or part of the subpoenas. The Court acknowledges the designated third-parties may present objections to plaintiffs' subpoenas that Riddell cannot raise. <u>See</u> Rule 45(d)(1)("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."); Rule 45(d)(3)(a court for the district where compliance is required may quash or modify a subpoena requesting privileged or other protected matter, or requiring the disclosure of a trade secret or other confidential research, development, or commercial information). Further, the required Rule 26(b)(1) proportionality analysis may be different when the interests of a third-party are weighed as opposed to a party. <u>See</u> <u>Wahoo International, Inc. v. Phix Doctor, Inc.</u>, No. 13cv1395 GPC(BLM), 2014 WL 3573400, at *2 (S.D.Ca. July 18, 2014)(a third-party subpoena issued pursuant to Rule 45 is subject to the limitations of Rule 26). This Order makes it clear that the Court is merely granting plaintiffs leave to

11

serve their subpoenas. At this time the Court is not weighing in on objections the third-parties may raise to plaintiffs' subpoenas.[13]

Accordingly, for the foregoing reasons,

IT IS HEREBY ORDERED this 7th day of July, 2016, that plaintiffs are granted leave to serve third-party document subpoenas directed to Biokinetics, NFL Enterprises, LLC, Dr. Elliot Pellman, Mindsview Innovation, Weber Shandrick, Inc., Empire Green Creative, LLC, Wishbone Design Factory, LLC, Cohn & Wolfe and MSL Chicago. The request for leave to serve a subpoena directed to Dan Kult is DENIED; and it is further

ORDERED that plaintiffs shall attach to their subpoenas or send to the recipients, a copy of Judge Simandle's August 3, 2015 Opinion and Order and a copy of this Order; and it is further

ORDERED that this Order is entered without prejudice to the right of the third-parties served with plaintiffs' subpoenas to object to all or part of the subpoenas.

s/Joel Schneider<br>
JOEL SCHNEIDER<br>
United States Magistrate Judge

---

[13] This is especially true since the parties did not attach copies of plaintiffs' subpoenas to their papers. The Court accepts plaintiffs' representation that their document requests are modeled after the Court-approved discovery.

12