# KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

NEW YORK, NY
WASHINGTON, DC
LOS ANGELES, CA
CHICAGO, IL
STAMFORD, CT

BRUSSELS, BELGIUM

AFFILIATE OFFICE
MUMBAI, INDIA

ONE JEFFERSON ROAD

PARSIPPANY, NJ 07054

(973) 503-5900

FACSIMILE
(973) 503-5950
www.kelleydrye.com

JOSEPH A. BOYLE
DIRECT LINE:(973) 503-5920
EMAIL:jboyle@kelleydrye.com

September 23, 2016

**VIA ECF**

Hon. Joel Schneider
United States District Court
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

      Re:    *In Re Riddell Concussion Reduction Litigation*
                1:13-CV-07585 (JBS)(JS)

Dear Judge Schneider:

      We write both in response to Plaintiffs' letter dated September 13, 2016 (the "September 13 Letter"), and in order to raise significant, unresolved issues with Plaintiffs' inadequate discovery responses and document productions in this case that have arisen in the past weeks. As set forth below, Plaintiffs' September 13 Letter objects to a subpoena served on third-party DePaul Catholic High School ("DePaul"). Putting aside the fact that DePaul has agreed to comply with the subpoena, as set forth below, Plaintiffs' letter is especially egregious in light of Plaintiffs' ongoing discovery deficiencies. When Riddell raised these deficiencies with Plaintiffs, Plaintiffs delayed their response for days and then ***cancelled*** a meet and confer regarding both those issues and the third-party subpoena. One hour later, Plaintiffs filed their September 13 letter without conferring with counsel for Riddell regarding the subpoena.[1] For the reasons set

---

[1] *See* Declaration of Michael Lynch ("Lynch Decl."). Because certain documents referred to and attached to the Declaration of Michael Lynch have been designated Confidential, the Declaration and its attachments have been sent to Chambers via facsimile. On September 9, Riddell raised issues regarding the collection of documents by Plaintiffs Douglas and Denise Aronson (who have produced no documents in this case) as a result of testimony and exhibits introduced during the deposition of Douglas Aronson. *See* Lynch Decl., ¶ 5, Ex. A, at 2-3. Mr. Aronson's inability to recollect facts essential to his claims in this case also led Riddell to issue the DePaul subpoena. Lynch Decl., ¶ 5. On September 12, Plaintiffs responded that they could not speak about the issues raised by Riddell until Thursday September 15. Upon Riddell's further request, Plaintiffs agreed to conduct a meet and confer on September 13 "to discuss the matters [raised by Riddell] and the DePaul subpoena." Lynch Decl., ¶ 6, Ex. A, at 1-2. At 2:06 P.M. on September 13, Plaintiffs cancelled that meet and confer, and Riddell was directed to wait until

Hon. Joel Schneider
September 23, 2016
Page Two

**KELLEY DRYE & WARREN** LLP

forth below, Riddell respectfully requests that DePaul be permitted to comply with the subpoena and that the Plaintiffs be required to provide the discovery requested herein, and other relief requested by Riddell herein.

### I. The DePaul Subpoena

At the outset, Plaintiffs do not have standing to object to a subpoena served on a third party. *Plastic the Movie Ltd. v. John Doe Subscriber Assigned IP Address 24.0.105.163*, No. CIV. 15-2446 JHR/JS, 2015 WL 4715528, at *2 (D.N.J. Aug. 7, 2015) (Schneider, J.). Even if Plaintiffs did have standing, the fact that the subpoenaed party does not object to the subpoena should be the end of this Court's analysis. Indeed, following the Court's order staying the subpoena, counsel for Riddell contacted Kenneth Mullaney, General Counsel for the Archdiocese of Paterson, who represents DePaul. Mr. Mullaney advised that DePaul has no objections to the subpoena and that he has already directed the collection of documents to be produced when the Court so orders.[2] *See* Lynch Decl., ¶¶ 9-10.

Moreover, there can be no question that the subpoena seeks information that is directly relevant to class certification of Plaintiff Douglas and Denise Aronson's claims under the New Jersey Consumer Fraud Act ("NJFCA"). *See e.g., McNair v. Synapse Grp., Inc.*, No. CIV.A. 06-5072 JLL, 2009 WL 1873582, at *9-12 (D.N.J. June 29, 2009).

The Aronsons allege that they "purchased a Revolution Speed Football Helmet for use by their son" because "prior to entering high school" they were exposed to a presentation by a Riddell representative to a youth team, and that "[l]ater, in 2011, after learning that his high school team was not providing a Riddell Football Helmet with what they understood to have concussion reduction technology" they purchased a Riddell Revolution Speed. They claim that Riddell's marketing was false or misleading because "the Riddell Football Helmet they purchased does not actually provide greater protection against concussions" than "other comparable football helmets on the market" or "the football helmet that was being provided by their son's high school team." *See* Lynch Decl., Ex C (Excerpts of Second Amended Complaint), at ¶¶ 104-108. The Aronsons further allege that they are entitled to damages for the full value of the Riddell helmet they purchased because "it was no better at preventing concussions than the football helmet that was being provided by their son's high school team and this was ***the only reason*** they purchased it." *Id.* at 108 (emphasis in original).

In sworn interrogatories, the Aronsons contended that the football helmet offered by DePaul was a *Schutt* helmet, but did not disclose any specific model. See Lynch Decl., Ex. D (Aronsons' Supplemental Responses to Defendants' First Set of Interrogatories), at 9, 14, and 15. Yet Mr. Aronson testified, contrary to his interrogatory responses, that he believed that DePaul

---

Thursday September 15 to address the issues. *Id.* At 3:08 P.M. that same day, Riddell received notice that Plaintiffs had electronically filed the September 13 Letter. Lynch Decl., Ex. B.

[2] Plaintiffs' arguments regarding undue burden or expense, and its request to give DePaul an extension of time in which to object to the subpoena, are therefore moot.

offered *Riddell* helmets, but could not remember the manufacturer or model of the helmets his sons wore. *See* Lynch Decl., Ex. E (Dep. of Douglas Aronson), at 47:8-49:3, 45:5-8.

In addition, Mr. Aronson revealed at his deposition – for the first time in this case – that he has been a coach at DePaul for 13 years. He testified that he was not involved of any of the purchase of football helmets or anything relating to helmet purchases, and the Aronsons have not revealed any equipment policies that Mr. Aronson may have benefited from by virtue of his position at DePaul. *See id.*, at 47:8-48:21. Mr. Aronson further testified that his purchase of a Riddell helmet was based upon a presentation made to his son Nico at DePaul his freshman year of high school, but that he was unsure when his son started at DePaul. *Id.* at 57:11-25.

Accordingly, the DePaul subpoena seeks relevant information concerning: documents and communications reflecting the helmets DePaul possessed, purchased or offered to its players, including Nico Aronson; the policies by which DePaul offered helmets to its players (for free or for a fee); any changes in policy or helmet choices as the result of litigation restricting the sale or purchase of certain models of Schutt helmets (Schutt was found liable for selling football helmets infringing Riddell concussion reduction technology during at least one of the years Nico was playing football for DePaul and Douglas Aronson was coaching for DePaul); the years that the Aronsons sons attended DePaul (Mr. Aronson could not clearly remember that); any compensation or non-monetary benefits that Mr. Aronson received by virtue of his employment at DePaul (including any stipend for football equipment); and incident reports reflecting concussions suffered by the Aronsons sons at DePaul when they were wearing Riddell helmets or the helmet provided by the school (Mr. Aronson testified that Nico stopped wearing the Riddell helmet issue because he allegedly suffered a concussion but that Mr. Aronson's older son Massimo then took that same helmet off to play football at a junior college). This information is all directly relevant to the Aronsons' NJCFA claims, including but not limited to issues of causation, injury, and damages. *See N*.J.S.A. 56:8–1 et seq. *Crozier v. Johnson & Johnson Consumer Companies, Inc.,* 901 F. Supp. 2d 494, 506 (D.N.J. 2012) (describing elements of NJCFA claim). Discovery is broad, the topics here are directly relevant, and Riddell should not be forced to gain Court approval for this clearly appropriate discovery. Plaintiffs' position is all the more untenable because DePaul has no objection to providing this clearly relevant information.

## II. Plaintiffs' Discovery Deficiencies

Prior to sending their September 13 letter, Plaintiffs entirely disregarded the meet and confer process imposed by the Local Rules and the Court's Standing Order dated September 3, 2015. *See* Dkt. No. 72; Lynch Decl., ¶¶ 3-8. By contrast, Riddell has exchanged written correspondence and engaged in telephonic meet and confers with Plaintiffs' counsel in an attempt to resolve the following discovery disputes. Lynch Decl., ¶ 2. As these issues have not been resolved, however, Riddell respectfully requests that the Court order the following discovery of Plaintiffs.

Hon. Joel Schneider
September 23, 2016
Page Four

**KELLEY DRYE & WARREN LLP**

    a. <u>Plaintiffs' Relevant Social Media</u>

Plaintiffs should all be ordered to search their social media (including but not limited to any Facebook, Twitter, LinkedIn, Instagram, and Snapchat accounts) for additional responsive documents, including photographs, and produce them immediately. Riddell's counsel has located relevant documents discovered through its own investigation of Plaintiffs' publicly available social media, and has used those documents in two depositions to date. These include dated photographs of Plaintiffs' children wearing the Riddell helmets at issue in this suit and other helmets they may have purchased or acquired. *See, e.g.* Lynch Decl., Ex. F (Aronson Exs. 11, 12). For example, dated photographs or posts regarding Riddell helmets, helmets of other manufacturers, or concussions would be directly responsive to document requests seeking all documents relating to their claims and to their consideration, purchase or receipt of any product(s) from Riddell or its competitors. *See, e.g.*, Lynch Decl., Ex. G (Defendants' First Request for the Production of Documents), Request Nos. 2, 6, 7, 21.

The dates of the events in these pictures are vital to assessing Plaintiffs' claims, including their claims of comparative shopping. *See* Lynch Decl., Ex. C, at n. 1. Plaintiffs did not produce these documents, and their counsel even argued that it is Riddell's obligation to produce the Plaintiffs' own social media. *See* Lynch Decl., Ex. E (Dep. of Douglas Aronson), at 125:19 – 21. Riddell has no way of accessing the entirety of each Plaintiff's social media accounts, several of which are kept private.

Counsel for Plaintiffs have represented that Plaintiffs have searched their social media and will continue to monitor for relevant documents to produce. However they have not produced any documents from this search, including documents Riddell knows exist. Counsel for Riddell has found responsive documents through their own investigation that Plaintiffs have not produced, and therefore cannot it is clear that Plaintiffs have not provided relevant documents.

Riddell respectfully requests that the Court order Plaintiffs to search their social media accounts for additional relevant information and produce it immediately.

    b. <u>Plaintiffs' Assertion of Attorney-Client Privilege Regarding their Theories of Liability and Damages</u>

In response to Riddell's interrogatories, Plaintiffs repeatedly invoke attorney-client privilege, or defer to the knowledge of counsel with respect to facts supporting liability and damages. *See* Lynch Decl. Ex. H (August 31 2016 Letter sending all Plaintiffs' Answers to Defendants' Second Set of Interrogatories). For example, in response to Interrogatories 7, 21, and 22 regarding facts supporting Plaintiff's claims, the Plaintiffs defer to research and evidence compiled by their attorneys and their experts. *See id.* (each Plaintiffs' response to Interrogatories 7, 21 and 22 refer to "research and evidence" or "additional details" that are only in the possession of Plaintiffs' attorneys and experts). Similarly, Plaintiffs defer to their attorneys and experts concerning Interrogatory 11, which seeks facts supporting Plaintiffs' damages. *See id.* (each Plaintiffs' response to Interrogatory 11 refers to calculations to be performed by their

attorneys and experts). Plaintiffs have also deferred to their attorneys and experts when questioned at deposition. Riddell has had difficulty discerning if additional facts are known to Plaintiffs, and not just their attorneys.

Plaintiffs should not be permitted to conceal relevant factual information simply because they learned it from their attorneys. *See, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney"); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994) ("A litigant cannot shield from discovery the knowledge it possessed by claiming it has been communicated to a lawyer; nor can a litigant refuse to disclose facts simply because that information came from a lawyer").

Riddell has requested a written statement on behalf of all Plaintiffs that there are no facts concerning liability or damages other than that that has been provided by the Plaintiffs in discovery and no such facts are being withheld based upon a claim of privilege. Plaintiffs have refused to provide this written statement. This Court should order that Plaintiffs either provide such a statement or supplement their interrogatory responses with additional facts known to Plaintiffs concerning their theories of liability and damages – even if those facts were communicated to Plaintiffs by their attorneys.

c. Alliance Youth Sports Associations' Deficiencies

Riddell, in preparation for the depositions of Alliance Youth Sports Associations' witnesses, discovered a deficiency with respect to its production of ESI in this case.

On March 21, 2016, Alliance produced a single .pdf document – more than 3,000 pages long – that was plainly not in compliance with the ESI discovery order entered by the Court. Among other problems, the .pdf contains various emails and attachments, with no way to determine which email a particular attachment belongs to. It is also not searchable, and no metadata was provided. By letter dated April 6, 2016, Alliance provided "a flash drive containing the corrected production of documents." *See* Lynch Decl., Ex. I. However, this "corrected production of documents" appears to be missing several of the documents from the "uncorrected" production. Riddell has asked Plaintiffs to explain which documents are missing from the "corrected" production, and the reason it was omitted from the "corrected" production. Plaintiff has not responded. Riddell has reserved all rights to re-depose Alliance's witnesses prior to class certification if necessary.

Plaintiffs have agreed to correct this deficiency, but argue that it is of no prejudice to Riddell. Riddell is satisfied that Plaintiffs will correct this deficiency, but disagree that Riddell is not prejudiced. For example, because the "uncorrected" production contains no metadata and is produced in an incomprehensible format, Riddell cannot understand a number of documents, discern the dates certain documents were created or modified, or who authored them. The Court should order that Plaintiffs correct this deficiency without delay, and that any resulting prejudice to Riddell be addressed at that time.

**KELLEY DRYE & WARREN** LLP

    d. <u>Additional Documents Requested from the Aronsons</u>

There are four additional categories of documents that are relevant to the claims asserted by Plaintiffs Douglas and Denise Aronson. These requests arose out of Mr. Aronson's deposition testimony on September 8, 2016. The four categories that the Aronsons should be required to produce are as follows:

- First, Mr. Aronson testified that he was a party in several other litigations involving helmets, concussions, and Riddell, including a worker's compensation case. Mr. Aronson specifically testified that he was previously deposed regarding "questions about concussions" and has submitted sworn responses to interrogatories in one or more of those litigations. *See* Lynch Decl., Ex. E at 89:20-90:9. This testimony is directly relevant to Mr. Aronson's claims in this case, including but not limited to his allegations regarding concussions and the capabilities of football helmets to reduce the incidence of concussions, the avoed reasons for purchasing the helmet at issue, as well as his suitability as a class representative.

- Second, Riddell learned at the deposition that the Aronsons' sons, Nico and Massimo, have used a number of football helmets, including helmets other than those at issue in this case. Documents reflecting the Aronsons' purchase, receipt, or use of any football helmets made by Riddell or any one of its competitors, including but not limited to credit card statements, photographs of the Aronsons' sons using helmets they received (whether paid for or provided to them for free), and any other documents reflecting the football helmets they have used throughout their playing career are relevant to their allegations in this case, including but not limited to their decision to purchase the Riddell helmet at issue and the time in which the Riddell helmet at issue was used by the Aronsons.

- Third, Mr. Aronson testified that Nico Aronson was allegedly concussed in the helmet at issue in this lawsuit, decided not to use the helmet anymore, and that Massimo Aronson then used the helmet at college. Mr. Aronson also testified that DePaul High School implemented a concussion protocol whereby Nico Aronson was directed to sit out of practice for approximately four days. Documents reflecting concussions that the Aronsons may have suffered in the Riddell helmet at issue or other football helmets they may have used are directly relevant to their allegations in this case, including their allegations that the Riddell football helmet they purchased did not offer any protection against concussions that was superior to other football helmets available to them on the market, or for free from DePaul Catholic High School.

- Fourth, Mr. Aronson testified that he and his wife purchased the helmet at issue in this lawsuit for Nico Aronson to use in high school. However, Mr. Aronson could not recall the precise dates his son attended high school, and the Aronsons have produced no documents to show when Nico Aronson attended high school.

> Documents reflecting the time that the Aronsons' sons attended DePaul Catholic High School are directly relevant to their allegations in this case concerning the reasons they purchased the Riddell helmet at issue.

These documents are plainly responsive to Plaintiffs' allegations and Riddell's discovery requests. *See* Lynch Decl., Ex. G, Request Nos. 2, 3, 6, 7, 11, 20, 21, 22, 25, 26, 27, 28, 29, 36, and 39. Apart from Riddell's discovery requests, these documents should be independently produced by Plaintiffs pursuant to their obligations under Rule 26(a) and (b). Plaintiffs have failed to produce these documents.

Despite Plaintiffs' abrupt cancellation of a meet and confer on these requests and the DePaul subpoena (which they submitted to the Court just an hour after cancelling), Counsel for Riddell patiently met and conferred with Plaintiffs via written correspondence and telephone for two weeks in an attempt to resolve these issues. *See* Lynch Decl., Ex. J. Remarkably, Counsel for Plaintiffs denied that these documents had any relevance to this case. *See id.* at 2-3. at Plaintiffs offered a "compromise" where they would search for documents responsive to half of the requests to avoid Court intervention. *See id.* at 3. Plaintiffs did not explain if they even looked for these documents, if there was any difficulty Plaintiffs would encounter in responding to these requests, or how they are not relevant to the issues presented by this litigation.

Accordingly, it is respectfully requested that this Court order that Plaintiffs collect and produce these documents without delay.

e. <u>Verification of Responses to Second Set of Interrogatories by Nicholas Farrell</u>

On August 31, 2016, Counsel for Plaintiffs served Plaintiff Nicholas Farrell's responses to Defendants' Second Set of Interrogatories. These responses were not verified by Mr. Farrell.

Riddell promptly raised this issue with Plaintiffs and requested that his verified responses be provided in advance of his deposition now scheduled for September 28, 2016. While Riddell understands that Mr. Farrell is in military service, Riddell should have verified responses by now, and it is unclear if that verification is forthcoming in advance of Mr. Farrell's deposition. It is respectfully requested that the Court order that the verified responses be provided in advance of Mr. Farrell's deposition. Riddell reserves all rights with respect to Mr. Farrell's unverified responses and deposition in light of the fact that no verified responses have been received.

### III.   <u>Conclusion</u>

In light of the foregoing, Riddell respectfully requests that the Court disregard Plaintiff's letter in opposition to DePaul subpoena, and order that Plaintiffs' deficiencies identified herein be addressed without delay.

Hon. Joel Schneider
September 23, 2016
Page Eight

**KELLEY DRYE & WARREN LLP**

              Respectfully submitted,

              */s/ Joseph A. Boyle*_____
              Joseph A. Boyle

cc: All Counsel of Record (via ECF)