Joseph A. Boyle
Michael C. Lynch
Melissa E. Byroade
James B. Saylor
KELLEY DRYE & WARREN LLP
One Jefferson Road
Parsippany, New Jersey 07054
(Tel.) (973) 503-5900
(Fax) (973) 503-5950

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE RIDDELL CONCUSSION REDUCTION LITIGATION | Civil Action No. 13-7585 (JBS)(JS) |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO EXCLUDE THE <u>EXPERT REPORT AND TESTIMONY OF ROBERT KLEIN</u>

*Confidential*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1
ARGUMENT .............................................................................................................................. 1
I.  KLEIN'S SURVEY DOES NOT PROVIDE EVIDENCE OF IMPLIED
    MEANINGS OF THE CLAIM ..................................................................................... 2
    A.  Klein Did Not Examine the Claim in Context ..................................................... 2
    B.  Klein Did Not Employ a Control to Isolate Pre-Existing Beliefs ........................ 3
    C.  Klein's Coding Substituted Biased Interpretations for the Inconclusive
        Statements of Respondents ................................................................................... 4
II. KLEIN'S SURVEY DOES NOT PROVIDE EVIDENCE THAT CONSUMERS
    PLACE ANY VALUE ON THE "CONCUSSION REDUCTION
    TECHNOLOGY" CLAIM ............................................................................................. 4
III. KLEIN'S SURVEY DID NOT CAPTURE MEMBERS OF THE PUTATIVE
    CLASS ............................................................................................................................ 5
CONCLUSION ........................................................................................................................... 7

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*American Home Products Corp. v. Procter & Gamble Co.*,
   871 F. Supp. 739 (D.N.J. 1994) ...................................................................................4

*In re Blood Reagents Antitrust Litig.*,
   783 F.3d 183 (3d Cir. 2015)..........................................................................................1

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
   627 F. Supp. 2d 384 (D.N.J. 2009) ...............................................................................3

*In Re ConAgra Foods, Inc.*,
   302 F.R.D. 537 (C.D. Cal. 2014) ..................................................................................1

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)..................................................................................................1, 3

*Davis v. Southern Bell Tel. & Tel. Co.*,
   1994 U.S. Dist. LEXIS 13257 (S.D. Fla. Feb. 1, 1994)................................................6

*In Re Front Loading Washington Mach. Class Action Litig.*,
   No. 08-51 (FSH), 2013 WL 3466821 (D. N.J. July 10, 2013) .....................................6

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008)..........................................................................................1

*Oddi v. Ford Motor Co.*,
   234 F.3d 136 (3d Cir. 2000)..........................................................................................2

*Stubbs v. Teleflora, LLC*,
   No. 2:13-cv-03279-ODW(CWx), 2013 WL 6709939 (C.D. Cal. Dec. 18,
   2013) .............................................................................................................................6

**Other Authorities**

Federal Rule of Evidence 702.........................................................................................1, 6

S. S. Diamond, *Control Foundations: Rationales and Approaches*, in
   TRADEMARK AND DECEPTIVE ADVERTISING SURVEYS: LAW, SCIENCE AND
   DESIGN (ABA 2012) ....................................................................................................3

Defendants Riddell, Inc., Riddell Sports Group, Inc., Easton-Bell Sports, LLC, EB Sports Corp., and RBG Holdings Corp. (collectively, "Riddell" or "Defendants") respectfully submit this Reply Memorandum of Law in support of their motion to exclude the Expert Report of Robert L. Klein, (Cecchi Decl., Dkt. No. 189, Ex. 28, the "Report") and the deposition testimony of Mr. Klein dated January 11, 2017 (Declaration of James B. Saylor, Dkt. No. 214 ("Saylor Decl."), Ex. 24) and in response to Plaintiffs' Opposition brief dated March 10, 2017 ("Opp.").

## PRELIMINARY STATEMENT

The mantra of litigants seeking to avoid close *Daubert* scrutiny of their survey experts is that methodological flaws go to the weight of the expert opinion, not its admissibility. But when the flaws pile up so as to render the opinion sufficiently weightless, it should be released and allowed to float away. This determination appropriately is within the discretion of the Court, and under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 323 (3d Cir. 2008) and *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015), it is the Court's duty to evaluate in the context of class certification. Robert Klein's expert report and opinion contain too many serious methodological flaws to provide the fact-finder with any useful information about the issues on which Klein is proffered to opine. It should be excluded.

## ARGUMENT

In considering Plaintiffs' opposition to this motion, the question is whether Plaintiffs have met their burden to show, by a preponderance of the evidence, that Rule 702 is satisfied. *See Daubert*, 509 U.S. at 592 n.10; *In Re ConAgra Foods, Inc.*, 302 F.R.D. 537, 549 (C.D. Cal. 2014); *Oddi v. Ford Motor Co.*, 234 F.3d 136, 144 (3d Cir. 2000). Plaintiffs' opposition contains many conclusory rhetorical dismissals of the flaws Defendants pointed out in Klein's

expert report, but no substantive defense of any of them. This memorandum briefly reviews Defendants' criticisms and discusses why Plaintiffs' counterarguments are ineffective.

## I. KLEIN'S SURVEY DOES NOT PROVIDE EVIDENCE OF IMPLIED MEANINGS OF THE CLAIM

### A. Klein Did Not Examine the Claim in Context

Klein tested a free-floating phrase, "concussion reduction technology" ("CRT"), without locating it for respondents in its real-life context as a part of Riddell's helmet marketing. Respondents therefore might have had any situation in mind when considering the phrase, and many such situations might have influenced the meaning and credibility of the statement, such as being told the phrase by a coach or authority figure. Plaintiffs dismiss these concerns as "conjecture" and "rank speculation." Opp. at 6. However, they are only conjecture and rank speculation *because* Klein did not establish any context of the phrase CRT. Thus, Defendants and the Court are left with nothing better than conjecture and rank speculation as to what respondents were thinking when they answered his questions. Because Klein provided no context he cannot legitimately assume what the responses to "concussion reduction technology" would be if it were presented as part of a helmet advertisement. Any such assumptions are conjecture and rank speculation of his own. As a researcher, Klein's job was to set the scene so that respondents were presented with the statement as they would be in a real-world marketing context. Klein failed to do that job. As a result, he cannot opine about how consumers, in a marketing context, react to advertised "concussion reduction technology," which is the only issue that matters to the fact-finder.[1]

---

[1] The fact that Dr. Klein only tested the phrase "concussion reduction technology," and the class definitions pleaded in Plaintiffs' Motion for Class Certification, puts to bed their occasional attempts to claim that they "have not waived or abandoned" any claims, issues, or theories in this case. *See, e.g.*, Pltfs. Reply in further support of Mot. for Class Certification, Dkt. No. 232, at 2-

2

**B.     Klein Did Not Employ a Control to Isolate Pre-Existing Beliefs**

Plaintiffs make the contention that control groups are needed only in studies that seek to test causal propositions. Opp. at 6. They simply fail to realize that Klein's survey does test a causal proposition:[2] whether exposure to the description of a helmet as having "concussion reduction technology" *causes* respondents to report believing that the helmet is safer and reduces the incidence of concussions, and *causes* consumers to say they would buy the helmet. *See* S. S. Diamond, *Control Foundations: Rationales and Approaches*, in TRADEMARK AND DECEPTIVE ADVERTISING SURVEYS: LAW, SCIENCE AND DESIGN (ABA 2012) at 202 (criticizing deceptive advertising survey experts for failing to recognize that their questions are causal in nature and therefore inappropriately omitting controls). Controls are required in such a survey whenever the researcher needs to rule out plausible alternative causes of the survey responses, especially preexisting beliefs and survey artifacts such as guessing and yea-saying. *See id*. Under these conditions, the absence of a suitable control has been recognized as a fatal flaw in a survey, warranting *Daubert* exclusion. *See Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 448 (D.N.J. 2009) (excluding survey that "failed to use an adequate control mechanism to determine whether the respondents may have had preexisting or predominant views prior to viewing the advertisements that may have affected their decision" because it "is inherently unreliable and that even if it were admitted that it would be given little or no weight"); *American Home Products Corp. v. Procter & Gamble Co.*, 871 F. Supp. 739, 761-62 (D.N.J. 1994) ("in a false advertising action survey results must be filtered via an adequate control

---

3. Plaintiffs cannot expand the claims they sought to certify in their Motion for Class Certification, and failed to develop any record evidence to support certification of any claims.

[2] Actually, Plaintiffs contradict themselves on this point: "Mr. Klein's study was not designed to test causal connections. Instead, Mr. Klein's study determined … the material impact of [the phrase "Concussion Reduction Technology] on purchase decisions." Opp. at 7. "Impact" means "cause."

3

mechanism to screen out those participants who took away no message from the advertisement as well as to account for those consumers who may have brought to the survey certain publicly held preconceptions regarding the product").

### C. Klein's Coding Substituted Biased Interpretations for the Inconclusive Statements of Respondents

In the course of their otherwise empty defense of Klein's biased coding practices, Plaintiffs make another survey-invalidating admission:

> "Safer" is by definition a comparative word. Safer than what (a competitor's helmet, an older model helmet, or no helmet) is irrelevant to the analysis and the purpose of the survey. The same holds true for "reducing" concussions or "preventing" injury, because this survey did not seek to compare models of helmets or the incidence of concussions.

Opp. at 8. Plaintiffs' statement means, firstly, that Klein's conclusion that "the phrase 'Concussion Reduction Technology' used in marketing Riddell helmets communicates that these helmets are safer and offer better protection *than other football helmets*" (Report at 2, 23, emphasis added) is invalid, because his survey and coding did not address that (or any) particular comparison. More importantly, it means that Klein's survey is irrelevant to this litigation. If all that Klein found is that people believe that the latest technology helmets protect players better than older helmets or than no helmets at all, he has done nothing but prove obvious, uncontested facts irrelevant to either party's claims or defenses.

### II. KLEIN'S SURVEY DOES NOT PROVIDE EVIDENCE THAT CONSUMERS PLACE ANY VALUE ON THE "CONCUSSION REDUCTION TECHNOLOGY" CLAIM

Plaintiffs advance no serious defense of Klein's use of oddly phrased, facially biased questions about the materiality of the "concussion reduction technology" phrase. Klein posed to respondents a hypothetical in which they were offered a helmet with concussion reduction technology versus another helmet exactly the same in all respects except without this feature.

4

Under such circumstances, of course a consumer will choose the helmet with concussion reduction technology if there is any chance at all that the feature might have even a penny of value. Even if they thought the feature had no value at all, we would expect at least 50% to choose it randomly. But this has nothing to do with the actual marketplace.

Plaintiffs now assert, without evidence, that Riddell charged a $50 premium for helmets advertised as containing concussion reduction technology. Opp. at 10. If true, then Klein should have tested what happened in the actual marketplace by asking respondents if they would buy a helmet with concussion reduction technology for an extra $50 over an otherwise identical helmet. That might have provided some data relevant to Plaintiffs' allegations on whether consumers would accept the premium Riddell supposedly charged. Klein did not do that, and as a result, his opinion is again irrelevant to the litigation.

### III. KLEIN'S SURVEY DID NOT CAPTURE MEMBERS OF THE PUTATIVE CLASS

Plaintiffs offer no real rebuttal to the criticism that Klein's survey did not capture the perceptions[3] of a population congruent with the alleged plaintiff class. Instead, they concede this point but maintain that it is irrelevant: "[T]he survey did not attempt to identify class members so Defendants' discussion of the purported limitations of the proposed classes is totally irrelevant and should be disregarded by the Court." Opp. at 8 n.3. Plaintiffs have it backwards. The purported classes are what is relevant to this case; Klein's survey, conducted on some other population, is irrelevant and should be disregarded.

Plaintiffs argue that Klein chose the "most appropriate population" according to some criteria other than reflecting the purported classes. In a survey to support allegations that

---

[3] Plaintiffs protest that Klein's survey was "not a consumer perception survey," but then repeatedly state that its purpose was to find out "what does 'Concussion Reduction Technology' communicate." Opp. at 7, 9. That is a consumer perception survey.

5

members of a class were deceived by a marketing statement and found it material, there are no such other criteria.  It does not matter who would be the "best" survey population for some purpose other than supporting Plaintiffs' claims in this litigation.  To inform the fact-finder as to whether class members were deceived by "concussion reduction technology," the expert must survey people who mirror actual class members. *See, e.g. In Re Front Loading Washington Mach. Class Action Litig.,* No. 08-51 (FSH), 2013 WL 3466821 (D. N.J. July 10, 2013) (excluding survey as unreliable where expert failed to ask questions necessary to limit survey respondents to conditions of putative class members); *Stubbs v. Teleflora, LLC*, No. 2:13-cv-03279-ODW(CWx), 2013 WL 6709939 (C.D. Cal. Dec. 18, 2013) ("[T]he survey respondents were not necessarily actual putative class members. Plaintiffs therefore ask the Court to assume damages based on what people who are not necessarily class members believe about arrangements that were not actually received by anyone during the class period."); *Davis v. Southern Bell Tel. & Tel. Co*., 1994 U.S. Dist. LEXIS 13257 (S.D. Fla. Feb. 1, 1994) ("In the context of a consumer survey, Rule 702 requires the Court to conduct a preliminary assessment . . . [of] whether the universe of the survey was properly defined [and] whether the individuals questioned in the survey constitute a representative sample of the universe. . . .").

We know, however, that Klein's survey population differs from the proposed classes in at least the following ways:

- It includes an unknown number of parents and coaches of players of flag football, a sport that is coming to rival tackle football in popularity and that has very different equipment and characteristic injuries.

- It did not survey non-coach school officials who often make the helmet purchasing decision rather than coaches.

6

- It missed the population of purchase deciders of elementary- and middle-school football players almost completely, because it surveyed parents rather than coaches or school officials, under the mistaken belief that parents select the helmets for players of these ages, which was disproven by the survey's own data.
- It surveyed no parents or coaches of non-school-based football programs or of players older than high-school age.
- It captured only present-day perceptions of "concussion reduction technology," not perceptions that existed during the class period.

In a declaration submitted with Plaintiffs' opposition, Klein tries to minimize some of these problems. He claims that he tested the responses of the 71 elementary- and middle-school parents of football players who said they purchased their children's helmets against the 130 who did not purchase the helmets and found their answers to the key questions of his survey to be similar. But as Klein testified during his deposition, not all of the 71 "direct purchaser" parents decided which helmet to purchase; parents sometimes simply buy what the coach or school official tells them to buy, and are not the purchase deciders. Klein Dep. at 20:13-21:10.

The relevance of Klein's opinion, report and testimony to this case is whether class members were deceived by the phrase "concussion reduction technology." To the extent that Klein did not survey class members, his opinion is not relevant.

## CONCLUSION

Of the faults discussed in Defendants' moving brief and by Dr. Carlson in his expert rebuttal report, three are so serious that any of them individually would justify rejection of Klein's expert report, opinion and testimony: (1) Klein's abstract, context-free use of "concussion reduction technology" as his stimulus; (2) Klein's failure to use a clearly needed

7

control group to isolate preexisting beliefs and survey artifacts; or (3) Klein's basing his conclusion on responses that helmets with concussion reduction technology are "safer" without any notion of what they are safer than.  Cumulatively, and together with Klein's leading questions and instructions, his failure to investigate whether concussion reduction is worth even a penny to respondents, and his inappropriate sampling frame, the flaws in his survey reduce the value of his conclusions and opinion to zero.

Even Plaintiffs, in their opposition, admit that Klein's central conclusion, that "the phrase 'Concussion Reduction Technology' used in marketing Riddell football helmets communicates that these helmets are safer and offer better protection than other football helmets" (Report at 2, 23), is not supported by, or even relevant to, Klein's study.  Opp. at 8 ("Safer than what (a competitor's helmet, an older model helmet, or no helmet) is irrelevant to the analysis and the purpose of the study.").  Klein's other main conclusion, that "this claim has a material and positive impact on consumer purchase decisions," also is not supported by this study because he did not ask the people who make the purchase decisions or, in the case of parents, even find out whether they made the purchase decisions.

For all of the reasons set forth above, Riddell respectfully requests that the Court grant this Motion, and grant such other and further relief as the Court deems just and proper.

Dated: Parsippany, New Jersey
March 20, 2017

Respectfully submitted,

KELLEY DRYE & WARREN LLP

By: */s/ Joseph A. Boyle*
    Joseph A. Boyle

Michael C. Lynch
Melissa E. Byroade
James B. Saylor
KELLEY DRYE & WARREN LLP
One Jefferson Road
Parsippany, New Jersey 07054
(Tel.) (973) 503-5900
(Fax) (973) 503-5950
*Attorneys for Defendants*

9