Joseph A. Boyle
Michael C. Lynch
Melissa E. Byroade
James B. Saylor
KELLEY DRYE & WARREN LLP
One Jefferson Road
Parsippany, New Jersey 07054
(Tel.) (973) 503-5900
(Fax) (973) 503-5950

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE RIDDELL CONCUSSION REDUCTION LITIGATION | Civil Action No. 13-7585 (JBS)(JS) |

### DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO EXCLUDE THE <u>EXPERT REPORT AND TESTIMONY OF DR. ROBERT CANTU</u>

*Confidential*

## **TABLE OF CONTENTS**

**Page**

I. PLAINTIFFS CONFIRM THE MERIT OF DEFENDANTS' MOTION THROUGH THEIR ABANDONMENT OF DR. CANTU'S SURVEY .......................... 3

II. PLAINTIFFS' OPPOSITION CONFIRMS THE IRRELEVANCE AND LACK OF FIT OF DR. CANTU'S OPINION ............................................................................... 5

III. PLAINTIFFS CONCEDE THAT DR. CANTU'S CONCLUSIONS ABOUT SCIENTIFIC AND MEDICAL LITERATURE ARE UNRELIABLE ............................ 8

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Betterbox Commc'ns Ltd. v. BB Techs., Inc.*,
   300 F.3d 325 (3d Cir. 2002)..................................................................................9

*United States v. Bonner,*
   469 F. App'x 119 (3d Cir. 2012).............................................................................9

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)........................................................................................ *passim*

*James v. Harrah's Resort Altantic City*,
   No. CV 14-5434 (JBS/JS), 2016 WL 7408845 (D.N.J. Dec. 22, 2016)
   (Simandle, J.) ....................................................................................................5, 10

*Lindsey v. Caterpillar, Inc.*,
   No. CIV 03-5762 GEB, 2007 WL 1816105 (D.N.J. June 22, 2007).........................9

*Mettias v. United States*,
   No. CIV. 12-00527 ACK, 2015 WL 224658 (D. Haw. Jan. 15, 2015) ....................9

*Mykolaitis v. Home Depot U.S.A., Inc.*,
   No. CIV.A. 13-1868 MLC, 2015 WL 4078111 (D.N.J. July 6, 2015)...................10

*Novak v. Capital Mgmt. & Dev. Corp.*,
   570 F.3d 305 (D.C. Cir. 2009)................................................................................9

*P.S. ex rel. Nelson v. The Farm, Inc.*,
   658 F. Supp. 2d 1281 (D. Kan. 2009)...................................................................10

*Pineda v. Ford Motor Co.*,
   520 F.3d 237 (3d Cir. 2008)....................................................................................9

*Poolworks, Inc. v. Aquafin, Inc.*,
   No. CV 2014-0037, 2016 WL 4544348 (D.V.I. Aug. 30, 2016)..............................9

*Rosenberg v. Renal Advantage, Inc.*,
   No. 11-CV-2152-GPC-KSC, 2013 WL 3205426 (S.D. Cal. June 24, 2013),
   aff'd, 649 F. App'x 580 (9th Cir. 2016)...................................................................9

*Schneider ex rel. Estate of Schneider v. Fried*,
   320 F.3d 396 (3d Cir. 2003)....................................................................................9

# TABLE OF AUTHORITIES
## (cont.)

    **Page**

*In re TMI Litig.*,
   193 F.3d 613 (3d Cir.1999)..................................................................................................9

*TNT Rd. Co. v. Sterling Truck Corp.*,
   No. 03-37-B-K, 2004 U.S. Dist. LEXIS 13463 (D. Me. July 19, 2004) .................................10

*United States v. Davis*,
   397 F.3d 173 (3d Cir. 2005)..................................................................................................9

*United States v. Hankey*,
   203 F.3d 1160 (9th Cir. 2000) ...............................................................................................9

*United States v. Sandoval-Mendoza*,
   472 F.3d 645 (9th Cir. 2006) ................................................................................................9

*United States v. Schiff*,
   538 F.Supp.2d 818 (D.N.J.2008), aff'd, 602 F.3d 152 (3d Cir.2010).........................................9

*United States v. Walker*,
   657 F.3d 160 (3d Cir. 2011)..................................................................................................9

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ..........................................................................................5

Federal Rule of Civil Procedure 26 ..........................................................................................1, 4, 5

Federal Rule of Evidence 702..........................................................................................................2, 9

Defendants Riddell, Inc., Riddell Sports Group, Inc., Easton-Bell Sports, LLC, EB Sports Corp., and RBG Holdings Corp. (collectively, the "Defendants") respectfully submit this reply memorandum in further support of their motion to exclude the Expert Report of Dr. Robert Cantu (Cecchi Decl., Dkt. No. 189, Ex. 29) (the "Report") and the deposition testimony of Dr. Cantu dated January 11, 2017 (Declaration of James B. Saylor, Dkt. No. 215 ("Saylor Decl."), Ex. 15).

**PRELIMINARY STATEMENT**

Plaintiffs reply makes no effort to resist the exclusion the expert report submitted by Dr. Cantu or Dr. Cantu's testimony (nor that of any of their other experts). Plaintiffs did not take the deposition of Defendants' rebuttal expert, Dr. Thomas Gennarelli. Plaintiffs did not submit any supplemental/rebuttal material from Dr. Cantu. Plaintiffs did not defend the evidence relied on by Dr. Cantu or submit any supplemental evidence to try to explain and support Dr. Cantu's actual report and opinion.

Rather, Plaintiffs abandon the survey of scientific and medical literature thinly described in Dr. Cantu's report. They also abandon his testimony in support of that report. Instead of defending Dr. Cantu's methodologies, Plaintiffs argue that the report is based solely on Dr. Cantu's knowledge and experience. However, Dr. Cantu's Rule 26 disclosure and expert report explicitly purports to "survey" scientific and medical literature to support a conclusion that, "any advertisement that [Riddell's CRT] helmets reduce concussion risk more than other helmets, whether implicit or explicit, has no scientific and medical merit." Cecchi Decl., Ex. 29, at 2. Despite this explicit statement, Plaintiffs argue Dr. Cantu's report and conclusions "stem entirely from his knowledge and experience as a preeminent neurosurgeon who has devoted 60 years to his field." Opp. Br., at 6. This transmogrification runs afoul of Plaintiffs' duties under Rule 26.

Even if he were permitted to abandon the survey asserted in his report, Dr. Cantu's personal opinion contradicts with that of Plaintiffs' other scientific/medical expert, Dr. Barry Jordan. *See* Saylor Decl., Ex. 4, at 5-6. This diametric contradiction between Plaintiffs' experts offered for the same purpose cannot aid a jury and should result in the exclusion of both reports.

Plaintiffs' opposition also confirms that Dr. Cantu's report lacks the relevance and fit required by Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). Plaintiffs ignore this Court's ruling that "this case ***is not about the ability of Defendants' helmets to prevent concussions, but their relative ability to reduce the incidence of concussions as compared to competitors' helmets***." Dkt. No. 65, at 36-37. Remarkably, Plaintiffs point the finger at Defendants at misconstruing this passage, and somehow argue that "Plaintiffs' claims ***do not involve a comparison between Riddell CRT helmets and those of its competitors***, but rather that Riddell's 'Concussion Reduction Technology' claim is false and misleading." Opp. Br., at 8. This purposefully blind, unsupportable retreat pervades all of Plaintiffs' papers. This position is not tied to the facts of this case, nor will it aid the jury in resolving any factual dispute about the "relative ability [of Riddell's helmets with CRT] to reduce concussions compared to other helmets on the market." Dkt. No. 65, 33, n.17. Indeed, Dr. Cantu agrees that football helmets do reduce the incidence of concussions, Saylor Decl., Ex. 15, at 92-94, and bases his opinion instead on comparative studies. *Id.* at 58-60. If Plaintiffs are abandoning these comparative claims, Dr. Cantu's opinion serves to support Riddell's concussion reduction claim.

Last, Plaintiffs make no attempt to defend the reliability of Dr. Cantu's conclusions. Rather, Plaintiffs' opposition ignores the expert rebuttal report of Dr. Gennarelli, which found Dr. Cantu and Dr. Barry Jordan's purported survey of the scientific and medical literature to be "considerably neglectful of the entirety of biomechanical works regarding concussion

2

biomechanics and helmet performance testing."  Nor do Plaintiffs attempt to support the reliability of Dr. Cantu's conclusions by discussing the scientific literature upon which it was supposedly based.  Rather, Plaintiffs' only response is that the Court may assume the reliability of Dr. Cantu's report from his qualifications and his subjective say-so.

For these reasons, Plaintiffs' fail to meet their burden to put forth a relevant and reliable scientific expert opinion. The Court should therefore exclude Dr. Cantu's report and testimony.

**I.     PLAINTIFFS CONFIRM THE MERIT OF DEFENDANTS' MOTION THROUGH THEIR ABANDONMENT OF DR. CANTU'S SURVEY**

Dr. Cantu's expert report contended that he "surveyed the present state of medical literature" to reach his conclusion that "any advertisement that [Riddell's CRT] helmets reduce concussion risk more than other helmets, whether implicit or explicit, has no scientific and medical merit."  Cecchi decl., Ex. 29, at 2.  Dr. Cantu further opined that "[t]here is no reliable scientific evidence to support greater efficacy of one particular type of football helmet."  *Id.* at 3.

Accordingly, Riddell sought to test this conclusion through examination of the scientific and medical literature upon which Dr. Cantu purportedly relied.  Dr. Cantu, however, only listed two scientific studies that he considered – the UPMC Study and the Wisconsin Study – and synthesized those opinions and other unidentified "literature" in a series of bullet points that are mere conclusions or observations.  *See id.*, at 3, 5.  Before his deposition, Dr. Cantu also disclosed a 2016 study by Dr. Christy Collins.  Saylor Decl., Ex. 21.

To assist in Riddell's examination of Dr. Cantu's conclusions regarding the present state of scientific and medical literature, Riddell engaged Dr. Thomas Gennarelli, a board certified neurological surgeon with more than 470 scientific publications in medical, neurosurgical and engineering journals in the fields of head injury causation and treatment, biomechanics of brain injury, and sports injury.  *See* Saylor Decl., Ex. 4, at 1.  Dr. Gennarelli, after examining the bases

3

for Drs. Cantu and Jordan's conclusions, concluded that: (1) both Doctors were "considerably neglectful of the entirety of biomechanical works regarding concussion biomechanics and helmet performance testing"; (2) both the UPMC Study and the 2014 Virginia Tech study "support the fact that the Revolution Family of helmets do reduce the incidence of concussions"; and, (3) "[o]ther studies considered by Plaintiffs' experts – a 2014 Study from researchers at the University of Wisconsin and a 2016 Study from researchers at the Research Institute at Nationwide Children's hospital cannot even attempt to test the hypothesis tested in either the UPMC or the Virginia Tech studies." *Id.* at 4-6.[1]  Defendants' motion to exclude Dr. Cantu's report and testimony focused on the absence of any consistent methodology, let alone a methodology that could lead to a reliable and testable conclusion.  *See* Mot. at 10-20.

In response, Plaintiffs abandon the survey disclosed in Dr. Cantu's Rule 26 report, and thereby confirm the merit of Defendants' motion to exclude.  Instead of defending his methodology and purported survey of the scientific and medical literature, Plaintiffs now claim that "it is clear beyond peradventure that Dr. Cantu's opinions ***stem entirely*** from his knowledge and experience as a preeminent neurosurgeon who has devoted 60 years to his field." Opp. Br., at 6.  And so, Plaintiff engage in a bait-and-switch – they offer an expert opinion purporting to summarize the body of scientific literature to determine if it supported Riddell's claims, and then ask the Court to forget that body of work and his analysis and focus on his experience alone.  Dr. Cantu's personal opinion does not suffice, and Defendants would have focused their opposition and motions to exclude his testimony differently had it been based "entirely from his knowledge

---

[1] As the Court has already found, "Plaintiffs may not base their consumer fraud claims on marketing statements which accurately reflected the results of the UPMC study, regardless of the study's purported flaws." Dkt. No. 65, at 29.  Further, the Court has already found that "nothing in the Wisconsin study suggests that Riddell misrepresented the results of the UPMC Study." *Id.* at 30.

4

and experience." This is particularly so where Dr. Gennarelli observed that Dr. Cantu "disagrees with [Plaintiffs' other scientific expert] Dr. Jordan on [the] fundamental issue" of whether "football helmets reduce the incidence of concussion resulting from blows to the head that occur during football games and practice." Saylor Decl., Ex. 4, at 4.

Plaintiffs' attempt to convert Dr. Cantu's report from one based on a survey to one based entirely on his personal experience flies in the face of Plaintiffs' obligations under Rule 26, and as further detailed below, confirms that his opinion is unreliable and could not assist a factfinder in examining the support for Riddell's claims. *James v. Harrah's Resort Altantic City*, No. CV 14-5434 (JBS/JS), 2016 WL 7408845, at *3 (D.N.J. Dec. 22, 2016) (Simandle, J.) (employing a "step [that] completely changes a reliable methodology" renders expert testimony inadmissible).

## II.  PLAINTIFFS' OPPOSITION CONFIRMS THE IRRELEVANCE AND LACK OF FIT OF DR. CANTU'S OPINION

Plaintiffs' Opposition confirms that Dr. Cantu's report and testimony should be excluded because it is not relevant to Plaintiffs' claims and does not fit the facts of the case. "The fit requirement 'goes primarily to relevance' by 'requir[ing] a valid scientific connection to the pertinent inquiry as a precondition to admissibility.' . . . 'In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact.'" *James*, 2016 WL 7408845, at *3 (internal citations omitted). Plaintiffs' attempt to save Dr. Cantu's report and testimony by abandoning the comparative theory plead in the Second Amended Complaint in favor of an absolute claim that no helmets can reduce concussion risk confirms that Dr. Cantu's report and testimony are irrelevant to the claims that remain in the case.

This Court, in ruling on Plaintiffs' First Amended Complaint, found Plaintiffs' "essential theory of the case . . . so unclear and inconsistent that it fails to satisfy the plausibility standard under Rule 12(b)(6). . . . ***If Plaintiffs do not rely on comparative effectiveness, and instead base***

5

*their claims on the inability of any football helmets to reduce concussions, than their pleading should make that clear.*" Dkt. No. 41, at 2-3, 30-31. Ruling on Plaintiffs' Second Amended Complaint, the Court allowed Plaintiffs claims to proceed because "the *SAC is clear that Plaintiffs' claims are not based on the helmets' allege inability to <u>prevent</u> concussions. Plaintiffs, instead, assert a claim based on the relative ability (or inability) of Defendants helmets to reduce concussions compared to other helmets on the market.*" Dkt. No. 65, at 33 n.17, 36-37 (emphasis added). The Court's Opinion also acknowledged the competitors' helmets that Plaintiffs presented "*for comparative purposes.*" Dkt. No. 65, at 4, n.3 (emphasis added).

Plainitffs' Opposition disregards this Court's rulings and the theory Plaintiffs' chose to survive dismissal. Unabashedly, despite this Court's abundantly clear holdings about the comparative nature of their claims, Plaintiffs contend that their "claims *do not involve a comparison between Riddell CRT helmets and those of its competitors*, but rather that Riddell's 'Concussion Reduction Technology' claim is false and misleading." Opp. Br., at 8 (emphasis added). This is especially confusing where, in defense of Dr. Jordan's report, Plaintiffs contend that they "chose to focus their claims that Riddell helmets were not comparatively better than other helmets." Pltfs. Opp. to Mot. to Exclude Dr. Jordan, Dkt No. 228, at 10.

Plaintiffs' keep the scope of their claims vague so that they can shift and amend their arguments and experts' opinions as they see fit. This brings Defendants and the Court back to the conundrum that required dismissal of Plaintiffs' FAC – the fundamentally "unclear and inconsistent" theories of relief put forth by Plaintiffs. Moreover, despite the express repudiation of a comparative claim in the instant opposition, Plaintiffs throughout their class certification brief and reply continue to describe their claims as both comparative or non-comparative, and with different scopes of comparison. Plaintiffs' Motion in Support of Class Certification, at 1

6

("better . . . than *any other* helmets"), 2 (offer no greater protection . . . than *other* helmets"), 4 ("better at reducing concussions than *all other* helmets"), 13 ("better protect the head from concussions than *other helmet models on the market*"); Plaintiffs' Reply in Support of Class Certification, at 1 ("other helmets"), 4 ("all other helmets"), 22 31 ("any other football helmet"); *but see* 32 ("damage premium is properly calculated internally, not by comparing competitor pricing"). Plaintiffs also ignore this Court's admonition: "If Plaintiffs do not rely on comparative effectiveness, and instead base their claims on the inability of any football helmets to reduce concussions, than their pleading should make that clear." While Plaintiffs represented to the Court that they had chosen their theory of the case to avoid dismissal, the present briefing confirms that they will change it back, at will, in a futile attempt to relieve themselves of insurmountable evidentiary burdens.

Putting aside this fundamental problem, Plaintiffs' Opposition fails to address Defendants' argument that Dr. Cantu's report ignores the law of the case and Dr. Gennarelli's conclusions about the few studies Dr. Cantu discussed during his deposition. The Court has already ruled that Plaintiffs' may not base their claims on accurate reporting of the UPMC Study's results, and that the Wisconsin Study does not negate the findings of the UPMC Study. Dkt. No. 65, at 29-30. Plaintiffs offer no defense to Defendants' critique of Dr. Cantu's "expert opinion" that the UPMC Study and Virginia Tech Study are somehow outweighed by studies like Wisconsin and the 2016 Collins studies, failing to carry their burden to support the reliability of this conclusion. Further, Dr. Cantu's opinion in this regard is irrelevant because Plaintiffs' opposition abandons his survey, and thereby concedes that these studies do not support their false advertising claim. Plaintiffs' opposition also states that Dr. Cantu can assist potential jurors because they "will likely have minimal experience scrutinizing scientific and medical evidence."

7

However, as Plaintiffs concede by not defending Dr. Cantu's purported survey, he will not offer opinions based on scientific or medical evidence but only ones that "stem[] entirely from his [personal] knowledge and experience." Thus, Dr. Cantu will be of no assistance to the jury on this critical question and should be excluded. Plaintiffs cannot satisfy their burden to defend the reliability of Dr. Cantu's scientific opinion by pointing to his experience alone.

### III.   PLAINTIFFS CONCEDE THAT DR. CANTU'S CONCLUSIONS ABOUT SCIENTIFIC AND MEDICAL LITERATURE ARE UNRELIABLE

As described above, Plaintiffs make no attempt to defend the reliability of the methodology employed by Dr. Cantu in his purported survey of scientific literature. They did not explain the methodology employed by Dr. Cantu, submit any additional disclosure or supplemental report, or attempt to address the arguments made by Defendants regarding the inscrutability of his unsupported conclusions. Perhaps most tellingly, Plaintiffs did not depose Dr. Thomas Gennarelli, who found that Dr. Cantu was "considerably neglectful of the entirety of biomechanical works regarding concussion biomechanics and helmet performance testing." Saylor Decl., at 4. Directly calling into doubt the reliability of the purported conclusions that Dr. Cantu reached, Dr. Gennarelli went on to observe and conclude that:

> Both of Plaintiffs' experts appear to agree that tests such as UPMC or Virginia Tech, are the most significant component of the scientific medical literature on the efficacy of the Revolution Family of helmets to reduce the incidence of concussions. Both support the fact that the Revolution Family of helmets do reduce the incidence of concussions. Thus, the scientific medical literature supports that claim. Other studies considered by Plaintiffs' experts – a 2014 Study from researchers at the University of Wisconsin and a 2016 Study from researchers at the Research institute at Nationwide Children's Hospital cannot even attempt to test the hypothesis tested in either the UPMC or the Virginia Tech studies. Both examine concussion incidence rates or the symptomatic characteristics of concussions among helmet brands, without any test or control groups to isolate findings between modern helmets and traditional helmets. Thus, these two

8

>> studies should not even be weighed against the findings in UPMC or Virginia Tech.

Saylor Decl., Ex. 4, at 6.

That Plaintiffs offer no rebuttal to this argument is telling, particularly where they bear the burden of satisfying the Court, by a preponderance of the evidence, that the Rule 702 requirements are met. *See In re TMI Litig.*, 193 F.3d 613, 705 (3d Cir.1999); *United States v. Schiff*, 538 F.Supp.2d 818, 834 (D.N.J.2008), aff'd, 602 F.3d 152 (3d Cir.2010).  Rather than attempt to explain Dr. Cantu's methodology (which remains unascertainable in light of the gap between his conclusions and the scientific literature available to him), Plaintiffs claim that the factors outlined in *Daubert* and the Third Circuit cases interpreting its progeny are "irrelevant . . . to assess his methodology" because his conclusions "stem entirely from his knowledge and experience." Opp. Br., at 6. Plaintiffs' attempt to sidestep a reliability inquiry by pointing only to Dr. Cantu's experience fails. *See* Opp., at 3-4. They selectively quote from the Third Circuit's *Betterbox Communications* decision as support for this proposition, but leave out the critical passage that such a flexible inquiry only applies "in cases ***not involving scientific testimony***." *Betterbox Commc'ns Ltd. v. BB Techs., Inc.,* 300 F.3d 325, 329 (3d Cir. 2002)).[2] Such a

---

[2] All of the cases that Plaintiffs point to in the string citation do not demonstrate the reliability of the survey of scientific and medical literature that Dr. Cantu disclosed because they are "cases not involving scientific testimony." *See* Opp. Br., at 3-4.  As recognized by these decisions, it is only in cases involving medical, technical or otherwise specialized expert opinion testimony rather than scientific opinion testimony that "the relevant reliability concerns may focus upon personal knowledge or experience. *See United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006) (medical opinion).  *See also Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396 (3d Cir. 2003) (medical opinion); *Mettias v. United States*, No. CIV. 12-00527 ACK, 2015 WL 224658, at *7 (D. Haw. Jan. 15, 2015) (medical opinion); *Rosenberg v. Renal Advantage, Inc*., No. 11-CV-2152-GPC-KSC, 2013 WL 3205426, at *3 (S.D. Cal. June 24, 2013), aff'd, 649 F. App'x 580 (9th Cir. 2016) (opinion re: job duties); *United States v. Walker*, 657 F.3d 160, 176 (3d Cir. 2011) (law enforcement); *United States v. Bonner*, 469 F. App'x 119 (3d Cir. 2012) (same); *United States v. Davis*, 397 F.3d 173, 179 (3d Cir. 2005) (same); *Pineda v. Ford Motor Co*., 520 F.3d 237, 248 (3d Cir. 2008) (warning labels expert); *Novak v. Capital Mgmt. & Dev. Corp*., 570 F.3d 305, 313 and n.4 (D.C. Cir. 2009) (nightclub security expert); *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (law enforcement); *Lindsey v. Caterpillar, Inc*., No. CIV 03-5762 GEB, 2007 WL 1816105, at *3 (D.N.J. June 22, 2007)

response – refusing to "offer[] any affidavit from Dr. [Cantu] or submit[ing] any evidence (or request[ing] an evidentiary hearing) to support the reliability of his opinions," but rather telling the Court that "one may assume the reliability of Dr. [Cantu's] opinions from his qualifications [and] the report's statement that Dr. [Cantu's] method is based on decades of research" is insufficient to meet Plaintiffs' burden. *See P.S. ex rel. Nelson v. The Farm, Inc*., 658 F. Supp. 2d 1281 (D. Kan. 2009); *see also TNT Rd. Co. v. Sterling Truck Corp.,* No. 03-37-B-K, 2004 U.S. Dist. LEXIS 13463 (D. Me. July 19, 2004) ("[I]t is incumbent on the proponent to ensure that the record contains evidence explaining the methodology the expert employed to reach the challenged conclusion and why this methodology is a reasonably reliable one to employ.").

Dr. Cantu's report and testimony "has not followed any methodology that would render his opinion reliable, and rather produces an opinion that is 'subjective belief or unsupported speculation.'" *James*, 2016 WL 7408845, at *5 (citing *Daubert*, 509 U.S. at 590). "The record does not demonstrate how [Dr. Cantu] would define his 'methodology,' and what particular industry norms informed his decision to consider the materials he relied on in this case." *Id.* The lack of reliability in Dr. Cantu's conclusions are highlighted by the "changing nature of [Dr. Cantu's] theories." *Mykolaitis v. Home Depot U.S.A., Inc*., No. CIV.A. 13-1868 MLC, 2015 WL 4078111, at *10 (D.N.J. July 6, 2015) (finding that "changing nature of [expert's] theories indicates to the Court that [the expert] has said nothing to a reasonable degree of scientific certainty"). During his deposition, Dr. Cantu had to modify the language in the report drafted by his attorneys, because contrary to the statement in his report that "[t]here is not enough known about the mechanism of concussion to affirmatively state that a helmet can reduce the incidence

---

(engineering); *Poolworks, Inc. v. Aquafin, Inc*., No. CV 2014-0037, 2016 WL 4544348, at *7 (D.V.I. Aug. 30, 2016) (pool expert). Dr. Cantu's opinion, by contrast, purports to summarize scientific literature and reach a conclusion thereon, much like the scientific experts in *Daubert*. *Daubert*, 509 U.S. at 583.

10

of concussions," he in fact believes that helmets "reduce [the incidence of concussions] to some degree, but we don't know the extent." *See* Saylor Decl., Ex. 15, at 92-95. Yet, even this concession is incomplete, as demonstrated by Dr. Cantu's past statements and endorsements. For example, Dr. Cantu thought it appropriate for Riddell's competitor, Xenith, to distribute marketing materials to football coaches touting "that the Xenith X1 Football Helmet may reduce the risk of concussive episodes in football players by 50% or more" with an indication (on the very same page) that he reviewed and concurred in that conclusion: "This data report was reviewed by Emerson Hospital Neurosurgeon Dr. Robert Cantu prior to distribution." *See* Saylor Decl., Ex. 74, at RIDDELL-FTC-049737.

The Court is left guessing as to how Dr. Cantu, when engaged by Plaintiffs' counsel, would reach the conclusions he did in his report, particularly where they are contradicted by his own deposition testimony and past endorsements. Plaintiffs only answer is to tell the Court to ignore all of this, and assume his reliability based upon his 60-year career as a medical doctor. This simply does not satisfy Plaintiffs' burden to establish reliability.

## **CONCLUSION**

For all of the reasons set forth above, Riddell respectfully requests that the Court grant the Motion to exclude Dr. Cantu's report and testimony in its entirety, and grant such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated:   Parsippany, New Jersey<br>              March 20, 2017 | Respectfully submitted,<br><br>KELLEY DRYE & WARREN LLP<br><br>By: */s/ Joseph A. Boyle*<br>       Joseph A. Boyle<br><br>Michael C. Lynch<br>Melissa E. Byroade<br>James B. Saylor<br>KELLEY DRYE & WARREN LLP<br>One Jefferson Road<br>Parsippany, New Jersey 07054<br>(Tel.) (973) 503-5900<br>(Fax) (973) 503-5950<br>*Attorneys for Defendants* |