# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE RIDDELL CONCUSSION REDUCTION LITIGATION | Civil Action No. 13-7585 (JBS)(JS)<br><br>***CONFIDENTIAL – FILED UNDER SEAL*** |

-------------------------------------------------------------------------------
## PLAINTIFFS' BRIEF IN OPPOSITION TO MOTION TO EXCLUDE THE EXPERT REPORT AND OPINION TESTIMONY OF ROBERT CANTU, M.D.
-------------------------------------------------------------------------------

James E. Cecchi
Lindsey H. Taylor
Caroline F. Bartlett
Zachary S. Bower
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Dennis G. Pantazis
WIGGINS CHILDS PANTAZIS
FISHER & GOLDFARB, LLC
301 Nineteenth Street North
Birmingham, Alabama 35203
(205) 314-0500

*Interim Lead Counsel and Proposed Class Counsel*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION .................................................................................................... 1

LEGAL STANDARD ............................................................................................... 3

ARGUMENT ............................................................................................................ 4

   I.   Dr. Cantu's Opinions Meet the *Daubert* Standards .......................................... 4

     A.  Dr. Cantu's Opinions Have Good Grounds And Are Reliable ..................... 4

     B.  Dr. Cantu's Opinions Are Relevant ........................................................... 7

CONCLUSION ........................................................................................................ 9

## TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*Betterbox Commc'ns Ltd. v. BB Techs., Inc.,*
    300 F.3d 325 (3d Cir. 2002)..................................................................................3, 10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993) ........................................................................................*passim*

*Schneider ex rel. Estate of Schneider v. Fried,*
    320 F.3d 396 (3d Cir. 2003)..........................................................................................10

*Kannankeril v. Terminix Int'l Inc.,*
    128 F.3d 802 (3d Cir. 1997)............................................................................................3

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999).......................................................................................................10

*Lapsley v. Xtek, Inc.,*
    689 F.3d 802 (7th Cir. 2012) ..........................................................................................3

*Lindsey v. Caterpillar, Inc.,*
    No. CIV 03-5762 GEB, 2007 WL 1816105 (D.N.J. June 22, 2007)......................................10

*Mettias v. United States,*
    No. CIV. 12-00527 ACK, 2015 WL 224658 (D. Haw. Jan. 15, 2015) ..................................10

*Novak v. Capital Mgmt. & Dev. Corp.,*
    570 F.3d 305 (D.C. Cir. 2009) .......................................................................................10

*Pineda v. Ford Motor Co.,*
    520 F.3d 237 (3d Cir. 2008)..........................................................................................10

*Poolworks, Inc. v. Aquafin, Inc.,*
    No. CV 2014-0037, 2016 WL 4544348 (D.V.I. Aug. 30, 2016)............................................10

*Rosenberg v. Renal Advantage, Inc.,*
    No. 11-CV-2152-GPC-KSC, 2013 WL 3205426 (S.D. Cal. June 24, 2013),
    aff'd, 649 F. App'x 580 (9th Cir. 2016) ..............................................................................10

*Summit 6, LLC v. Samsung Elecs. Co.,*
    802 F.3d 1283 (Fed. Cir. 2015)........................................................................................4

*In re TMI Litig.,*
    193 F.3d 613 (3d Cir. 1999)............................................................................................3

*United States v. Bonner*,
    469 F. App'x 119 (3d Cir. 2012) .......................................................................10

*United States v. Davis*,
    397 F.3d 173 (3d Cir. 2005).............................................................................10

*United States v. Hankey*,
    203 F.3d 1160 (9th Cir. 2000) .........................................................................10

*United States v. Sandoval-Mendoza*,
    472 F.3d 645 (9th Cir. 2006) ...........................................................................10

*United States v. Walker*,
    657 F.3d 160 (3d Cir. 2011)............................................................................10

**Other Authorities**

Federal Rule of Evidence 702 ............................................................... *passim*

**INTRODUCTION**

Defendants argue that Dr. Cantu's specific and highly germane opinions do not meet the liberal requirements for expert testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), but Defendants offer only empty rhetoric while failing to engage with the substance of Dr. Cantu's opinions and the good grounds for those opinions. Indeed, they ignore Dr. Cantu's detailed explanations of the bases for his opinions, which were the focus of his lengthy deposition, and his ample qualifications. Defendants' resort to rhetoric is a hallmark of their refusal to engage with the actual scientific and medical evidence, or the substance of Plaintiffs' claims. Much like their marketing claims regarding "concussion reduction technology," they still refuse to acknowledge the actual medical community's opinions regarding concussions, and the way to reduce the incidence thereof.

All of Defendants' asserted bases for exclusion of Dr. Cantu fail. Dr. Cantu's personal knowledge, credentials and experience more than satisfy the Third Circuit's standards for expert qualification. So long as good grounds exist, a methodology does not need to be explicitly stated in a written report. Indeed, numerous courts have relied on Dr. Cantu's opinions because he has good grounds for his medical and scientific opinions. *See Johnson v. All American Sports Corp.*, No. 2-05CV-204 TJW (E.D. Texas September 22, 2006), Doc. 95 (wherein Riddell defends the expert qualifications of Dr. Cantu for another case). His ample medical experience fully equips him to assist the finder of fact in analyzing and understanding issues that are highly relevant, and will assist this Court in conducting its Rule 23 analysis. His opinions will help the jury understand why Defendants' promises of concussion reduction technology ("CRT") are false and misleading and why energy displacement and impact tests do not equate to CRT. Defendants' motion should be denied.

1

As Riddell has recognized from its own use of Dr. Cantu as an expert, Dr. Robert Cantu is a nationally-known neurosurgeon with over 60 years of experience and more than 410 publications, often focused on sports related injuries, including concussions. *Id.* at 2-6. Here, Dr. Cantu's testimony and opinions will assist this Court and the ultimate finder of fact in analyzing issues at the heart of this litigation. Dr. Cantu has carefully analyzed the scientific and medical evidence, as well as record evidence. Based on Dr. Cantu's analysis of all of this evidence—most of which Defendants simply ignored—Dr. Cantu has concluded that the Revolution series football helmets are not better equipped to reduce concussions more than other helmets available on the market today. Declaration of James E. Cecchi ("Cecchi Decl."), Exh. 1, Cantu Tr. 59:5-8 ("It's my opinion today as I sit here that I've not seen evidence that convinces me that one helmet brand or type provides superior protection to another"). Nevertheless, according to defendants Riddell, Inc., Riddell Sports Group, Inc., Easton-Bell Sports, LLC, EB Sports Corp., and RBG Holdings Corp. (collectively, "Defendants"), Dr. Cantu's opinions are not relevant or reliable and based on subjective, undefined, and ephemeral methods. Defendants' arguments are based on mischaracterizations of the expert opinions and misstatements of the law.

Rather than addressing Dr. Cantu's qualifications or confronting the substance of his opinions, Defendants attempt to exclude him by heaping undeserved praise on the results of studies they agree with – which Dr. Cantu addressed during his deposition. These studies and their results provide no basis for excluding Dr. Cantu. Dr. Cantu fully understood these studies, and he correctly identified their weaknesses and defects.

Dr. Cantu's opinions are supported by his many decades of medical experience as well as his review of the scientific literature concerning concussions, the occurrence of and mechanism that cause concussions, and the ability (or lack thereof) of a football helmet to

2

reduce the incidence of concussions. Dr. Cantu's opinions regarding concussions and traditional and modern football helmets explain the medical and scientific evidence that is at the heart of this case. Defendants may be unwilling to accept Dr. Cantu's opinions, but that is not a basis to exclude his testimony.

## LEGAL STANDARD

The federal rules permit expert testimony that will help the jury when that testimony is based on sufficient data, is the product of reliable principles, and the expert has reliably applied the principles to the facts. Fed. R. Evid. 702. At base, expert testimony is admissible under Rule 702 if it "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *see Kannankeril v. Terminix Int'l Inc.*, 128 F.3d 802, 806 (3d Cir. 1997) (expert testimony admissible if the "particular opinion is based on valid reasoning and reliable methodology"). "The Rules of Evidence embody a strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact." *Kannankeril*, 128 F.3d at 806 (citing *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 780 (3d Cir. 1996)).

An expert's proffered opinion is admissible if supported by "good grounds," "even if the judge thinks that there are better grounds for some alternative conclusion." *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999). "A *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012).

Further, to be admissible, expert testimony need not be based upon independent tests or some type of scientific study; reviewing the facts and basing the opinions on relevant experience is sufficient. *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 329 (3d

Cir. 2002) ("[T]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.  In such cases...the relevant reliability concerns may focus upon personal knowledge or experience.") (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149-151 (1999), internal citations and quotations omitted); *see also* Fed. R. Evid. 702 advisory committee's note ("Nothing in this amendment is intended to suggest that experience alone--or experience in conjunction with other knowledge, skill, training or education--may not provide a sufficient foundation for expert testimony.  To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience.  In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.") The question of whether the expert is credible or whether the opinion is correct is generally a question for the fact finder, not the court.  *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) (affirming district court's decision to allow expert's testimony because expert's methodology was tied to the facts of the case, and correctness of methodology and results were decision for the factfinder)).

## ARGUMENT

### I.    Dr. Cantu's Opinions Meet the *Daubert* Standards

Point I of Defendants' motion argues that Dr. Cantu's opinions should be excluded because they are supposedly unreliable.  Point II argues that these opinions should be excluded because they are irrelevant.  Defendants are wrong on all counts.

### A.  Dr. Cantu's Opinions Have Good Grounds And Are Reliable

Dr. Cantu appropriately based his opinions on his wealth of personal knowledge, education, and 60 years of experience as a neurosurgeon. *See, e.g.*, Class Cert. Decl., Exh. 29,

Cantu Expert Report, at 2-3; Cecchi Decl., Exh. 1, Cantu Tr. at. 59:5-8.  *See Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 406 (3d Cir. 2003) (admitting an expert cardiologist who based his opinion solely upon appropriate literature and his own experience); *United States v. Sandoval-Mendoza*, 472 F.3d 645, 653-654 (9th Cir. 2006) (admitting the opinions of two neurologists and a neuropsychologist regarding the effects of a brain tumor on a defendant's behavior.  These opinions were primarily based on experience in dealing with brain tumor patients); *Mettias v. United States*, No. CIV. 12-00527 ACK, 2015 WL 224658, at *7 (D. Haw. Jan. 15, 2015) (admitting an expert in bariatric surgery while noting that the expert's reliability "Must depend heavily on his own knowledge and experience as a bariatric surgeon and a member of the bariatric surgery community, rather than on any specific methodology or scientific theory."); *Rosenberg v. Renal Advantage, Inc.*, No. 11-CV-2152-GPC-KSC, 2013 WL 3205426, at *3-4 (S.D. Cal. June 24, 2013), aff'd, 649 F. App'x 580 (9th Cir. 2016) (admitting expert testimony based on the expert's own, personal experience as a dietician).  *See also United States v. Walker*, 657 F.3d 160, 176 (3d Cir. 2011); *United States v. Bonner*, 469 F. App'x 119, 133-34 (3d Cir. 2012); *United States v. Davis*, 397 F.3d 173, 178-79 (3d Cir. 2005) (allowing law enforcement experts to be admitted based on experience in the field, not based on any particular methodology); *Betterbox Commc'ns*, 300 F.3d 325, 329 (3d Cir. 2002) (permitting the admission of an expert "based on his personal knowledge or experience, rather than a methodology that satisfies the *Daubert* factors.") (Internal quotes and citation omitted); *Pineda v. Ford Motor Co.*, 520 F.3d 237, 248 (3d Cir. 2008) (noting that an expert's "specialized, rather than generalized, experience," qualified the expert); *Novak v. Capital Mgmt. & Dev. Corp.*, 570 F.3d 305, 313 (D.C. Cir. 2009) (admitting a security expert who based his opinion regarding a particular standard of care upon his personal experience in the field); *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (admitting an expert,

5

"whose reliability depend[ed] heavily on the knowledge and experience," which he possessed); *Lindsey v. Caterpillar, Inc.*, No. CIV 03-5762 GEB, 2007 WL 1816105, at *4-5 (D.N.J. June 22, 2007) (admitting an expert, despite his failure to test for a hypothesis, based on his experience and knowledge of industry practice); *Poolworks, Inc. v. Aquafin, Inc.*, No. CV 2014-0037, 2016 WL 4544348, at *7-9 (D.V.I. Aug. 30, 2016) (admitting expert testimony based, in large part, on the expert's extensive experience).

Dr. Cantu carefully analyzed Defendants' CRT claims in light of the existing scientific and medical information.   He considered the incidence of concussions, the causes of concussions, and the features that differentiate the Revolution series from other football helmets available on the market today.   Cecchi Decl., Exh. 1, Cantu Tr. 50-51.   Dr. Cantu's opinions are "based on [his] education, training, teaching, research, professional consultations, publications, experience, and expertise" and other information reasonably relied upon by neurosurgeons and providers of care for sports-related injuries. *See* Class Cert Decl., Exh. 29, Cantu Expert Report at 2-3.

Yet, unfathomably, Defendants spend ten pages of legal argument without once acknowledging the weight of authority that supports Dr. Cantu's opinions based upon his decades of experience, knowledge, and education.   Instead, Defendants attempt to discredit Dr. Cantu by applying irrelevant factors to assess his methodology, when it is clear beyond peradventure that Dr. Cantu's opinions stem entirely from his knowledge and experience as a preeminent neurosurgeon who has devoted 60 years to his field.

After wrongly asserting that Dr. Cantu's opinions are unreliable, Defendants switch gears and argue that Dr. Cantu cherry-picked studies, (Defs' Br. at 13), and provided subjective, conclusory opinions. (Defs' Br. at 12-14.)  It is unclear what Defendants think is lacking in Dr. Cantu's report because Defendants' only offer a conclusory assertion that the

opinions are conclusory. But regardless, Dr. Cantu's opinions are admissible because they are supported by his experience, studies, and education, as well as his review of the relevant materials, which he set forth in his report and explained during his deposition. Cecchi Decl., Exh.1, Cantu Tr. at 59:5-8.

## B. Dr. Cantu's Opinions Are Relevant

Second, Defendants argue that because Dr. Cantu's testimony is not relevant and does not fit the facts the jury is being asked to consider, he does not meet Rule 702's requirement that expert testimony help the trier of fact. (Defs' Br. at 21-23.) The jury, says Defendants, cannot be aided by Dr. Cantu's testimony because "[i]n order for Plaintiffs to succeed on their false advertising claims, they will need to provide evidence that shows the Riddell Revolution series of helmets are not better at reducing concussions than any other helmet." (*Id*. at 22.) Yet Dr. Cantu provides clear testimony that he has "not seen evidence that convinces me that one helmet brand or type provides superior protection to another" and "what I'm trying to say is that all helmets that pass NOCSAE standards, there has been no shown difference in incidence of concussion in that group." Cecchi Decl., Exh. 1, Cantu Tr. at 59:5-8, 108:10-13.

In reality, it is the Defendants who continue to ignore the opinion of the medical community and who now attempt to shield the jury from same. The jurors will likely have minimal experience scrutinizing scientific and medical evidence, limited understanding of the incidence and manifestation of concussions, or the biomechanical studies that focus on impact forces (but not concussion incidence) and will benefit from the experience and insight that Dr. Cantu can share when determining whether Defendants' Revolution series helmets can perform as promised and reduce the incidence of concussions.

7

Defendants fail to explain how an average juror would know, for example, that impact forces do not equate to concussions or that dropping a helmet during lab tests does not establish that it will reduce concussions in the real world. These clinical topics fall far outside the knowledge base of the average juror and are issues that the jury will be asked to consider and evaluate when deciding this case. As an example of when expert testimony should be excluded for being about a subject that is not sufficiently connected to facts that the jury is being asked to consider, Defendants cite *United States v. Schiff* and *Wolfson-Verrichia Grp., Inc.*. (Defs' Br. at 21.) But these cases only highlight the importance of Dr. Cantu's testimony in assisting the jury. Here, Dr. Cantu's testimony is not something the jurors will know or understand unless the jury is composed of neurosurgeons and other medical professionals.

But more fundamentally, Defendants, again, misconstrue the nature of Plaintiffs' claims. (Defs' Br. at 21-23.) Plaintiffs' claims do not involve a comparison between Riddell CRT helmets and those of its competitors, but rather that Riddell's "Concussion Reduction Technology" claim is false and misleading. Dr. Cantu's opinions will aid the jury to understand how. His opinions are highly relevant. None of the authorities Defendants relies upon supports the exclusion of Dr. Cantu's salient testimony.

## CONCLUSION

For the foregoing reasons, Defendants' motion to exclude Dr. Robert Cantu's opinions and testimony should be denied.

Dated:  March 10, 2017

<div style="margin-left: 50%">

Respectfully submitted,

/s/ James E. Cecchi_____
James E. Cecchi
Lindsey H. Taylor
Caroline F. Bartlett
Zachary S. Bower
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Dennis G. Pantazis
WIGGINS CHILDS PANTAZIS
FISHER & GOLDFARB, LLC
301 Nineteenth Street North
Birmingham, Alabama 35203
(205) 314-0500

*Interim Lead Counsel*
*and Proposed Class Counsel*

</div>